IVAN KILGORE, PETITIONER
IVAN KILGORE V 31306
CALIFORNIA STATE PRISON SACRAMENTO
PO BOX 290066
REPRESA, CA 95671
IN PRO SE



FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IVAN KILGORE,

        PETITIONER

**J. Walker(Acting Warden)**

        RESPONDENT

Case No: C-07-5124 SI(PR)

**MOTION FOR APPOINTMENT OF
COUNSEL.**

    I, Ivan Kilgore, am the petitioner in the above entitled case,
proceeding pro se requesting appointment of counsel. I am indigent and
have been granted in forma pauperis to proceed with this case. I have
previously requested of my former appellant counsel, Stephen Bedrick,
to assist me with the complex legalities and factual investigation
required in this matter, to no avail.(See Exhibit #1)

    The legalities I have placed before this court are meritorious,
though unusually complex and beyond my comprehension. Furthermore, I
am not familar with applicable case law or the intricate rules of
court.

    I am incarcerated at a maxium security prison, therefore my
access to the law library is extremely limited and difficult.

(1)

1  Considering the average attorney has spent six(or better) years in
2  law school familiarizing themselves with the intricate legal system,
3  plus years of on the job experience, it would be exceedingly
4  advantageous for the Attorney General to face an inept adversary
5  who has colorable due process violations, yet for the lack of know-
6  ledge on the petitioner's behalf, the Attorney General succeeds.
7  (See Exhibit #1B, "Order On Initial Review) This mismatch does not
8  reflect well on the image of our nations due process assurances.

9  The legalities presented to this court will require significant
10  factual investigation that petitioner cannot perform due to his
11  imprisonment. For example, previously petitioner requested of his
12  appellant attorney to contact forensic consultants who performed
13  specific duties during the inital stages of his case at the trial
14  court. Mr. Bedrick declined petitioner's request on account his
15  appointment had concluded. Petitioner's purpose for making this
16  request was to procure supportive evidence with regard to IAC of
17  trial counsel in failing to object to the pathologist's inadmissible
18  and unsupported trial testimony regarding ballistics and the opinioned
19  distance the fatal gun shot was fired.(See Exhibit #2, claim #5(L)
20  Due to Mr. Bedrick's conclusion of appointment, petitioner thereafter
21  sought to contact forensic consultant, Dr. Robert D. Lawrence, on
22  his on behalf.(See Exhibit #3) Dr. Lawrence's response to petitioner's
23  inquiry was,"he doesn't work directly with criminal defendants,
24  yet he explained he would be more than willing to discuss the purposed
25  inquires with an attorney or private investigator representing
26  petitioner. Obtaining declarations from Dr. Lawrence and Chuck
27  Morton are vital expert opinions to petitioner's claim of IAC. They
28

(2)

1  are also relevant to the ever controversial Court of Appeal's

2  opinion(COA) whereas the court relied on the pathologist's opinion

3  to imply petitioner's intent to kill the alleged victim in the

4  present case.(See Exhibit #4, pp 27) The COA was not the only party

5  tainted by the pathologist's opinion, the jury was as well. Another

6  example, petitioner has requested of this court for provisions of

7  funds to obtain transcripts of an out of state(OKLAHOMA) 1997 jury

8  trial which resulted in a conviction of manslaughter under the

9  equivalent of California's imperfect self-defense. The can of worms

10 these transcripts will unravel has the potential to prove the COA

11 opinion unreasonable, as well as support petitioner's claims of IAC.

12 Moreover, the procuring of this evidence and accompanying litigation

13 will prove challenging due to petitioner's incarceration and limited

14 legal insight.(See Motion For Provision of Funds, which details

15 specifics, Exhibit #5)

16      Again, the issues in this case are complex. A lawyer would

17 help petitioner to apply the law properly in the arguements before

18 the court. Pursuant to the Criminal Justice Act, 18 U.S.C. §3006

19 A(a)(2)(B), where the petitioner is not sufficiently able to

20 articulate his claims and some legal complexity and/or likelihood

21 of success on the merits exists, the district court may appoint

22 counsel.

23      Wherefore, petitioner request that the court appoint counsel

24 to represent him in this case.

25      Respectfully submitted, this ____ 13 day of July , 2008

26                                      _____
                                          (Petitioner)

27

28                                  (3)

EXHIBIT #(1)

STEPHEN B. BEDRICK
——— ATTORNEY AT LAW ———
1970 BROADWAY, SUITE 1200
OAKLAND, CALIFORNIA 94612

TELEPHONE: (510) 452-1900
FAX: (510) 452-1980

April 30, 2007

Mr. Ivan Kilgore, V-31306
Housing FA8-225
New Folsom Prison, P. O. Box 290066
Represa, CA 95671

Dear Mr. Kilgore:

I am glad that you are making progress on your federal habeas. Before you file your
Traverse, you may wish to ask the federal judge to appoint counsel because of the
complicated issues that the Attorney General requires you to address. The odds of having
counsel appointed at that point are small, but it may be worth the try.

I am no longer your lawyer. I will not contact any witness or do any legal work on your
federal habeas.

I enclose the small number of pages from Deborah Levy's file which I obtained from Walt
Pyle. I did not obtain police reports or crime scene photos from either Mr. Pyle or Ms.
Levy.

I also enclose Walt Pyle's notes of his interview with Ms. Levy.  As best I can tell from
Mr. Pyle's notes of his interview with Ms. Levy, Ms. Levy consulted Dr. Robert
Lawrence solely to ask whether the victim could walk after being shot.

Ms. Levy said she consulted Chuck Morton regarding the shotgun firing pattern.  Mr.
Morton often is called as a expert witness on topics of this sort in Alameda County. Ms.
Levy said that Chuck Morton test-fired a Mossburg shotgun. Walt Pyle then wrote,
quoting Ms. Levy "he said 5-8 feet. Ivan knows that."

I return your materials to you.

Very truly yours,

STEPHEN B. BEDRICK

cc:    Walt Pyle

**EXHIBIT #1A**

1

2

FILED

3

MAR 1 1 2008

4

5

UNITED STATES DISTRICT COURT 

6

NORTHERN DISTRICT OF CALIFORNIA

7

8    IVAN KILGORE,                          No. C 07-5124 SI (pr)

9          Petitioner,                      **ORDER ON INITIAL REVIEW**

10        v.

11   J. WALKER, acting warden,

12        Respondent.

13

14

15                          **INTRODUCTION**

16    Ivan Kilgore,  an inmate at the California State Prison - Sacramento, filed this pro se

17   action for  a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the

18   court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254

19   Cases.  His in forma pauperis application and a motion for funds also are before the court.

20

21                          **BACKGROUND**

22    Kilgore states in his petition that he was convicted in Alameda County Superior Court of

23   first degree murder with a special circumstance of discharging a firearm from a motor vehicle.

24   see Cal. Penal Code §§ 187, 190.2(a)(21).  On April 9, 2006, he was sentenced to life

25   imprisonment without the possibility of parole. He appealed. His conviction was affirmed by

26   the California Court of Appeal in 2004 and his petition for review was denied by the California

27   Supreme Court in 2006.  He also filed a petition for writ of habeas corpus in the California

28   Supreme Court that was denied on September 10, 2007. He then filed this action.

United States District Court
For the Northern District of California

1

**DISCUSSION**

2 A.    Review Of Petition

3        This court may entertain a petition for writ of habeas corpus "in behalf of a person in
4 custody pursuant to the judgment of a State court only on the ground that he is in custody in
5 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A
6 district court considering an application for a writ of habeas corpus shall "award the writ or issue
7 an order directing the respondent to show cause why the writ should not be granted, unless it
8 appears from the application that the applicant or person detained is not entitled thereto." 28
9 U.S.C. § 2243. Summary dismissal is appropriate only where the allegations in the petition are
10 vague or conclusory, palpably incredible, or patently frivolous or false. See Hendricks v.
11 Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

12        The petition asserts the following claims: (1) the trial court violated Kilgore's right to due
13 process by ruling that, if Kilgore testified, he could be cross-examined with his testimony in his
14 Oklahoma involuntary manslaughter case, (2) he received ineffective assistance of appellate
15 counsel when appellate counsel failed to present to the state court the federal question regarding
16 the instructional error on particular points of second-degree drive-by murder, (3) the court's
17 failure to instruct the jury on the doctrine of transferred intent as to a shooting in self-defense
18 violated his right to due process, (4) the trial court's refusal to allow evidence of bad character
19 regarding Anderson and Dandy violated his Sixth and Fourteenth Amendment rights to confront
20 witnesses and present a defense, (5) Kilgore received ineffective assistance of trial counsel in
21 the numerous ways alleged at pages. 6(A)-6(B) of the petition. Liberally construed, these claims
22 are cognizable in a federal habeas action and warrant a response.

23

24 B.    Motion For Funds

25        Kilgore filed an "ex parte motion for provisions of funds to obtain transcripts of
26 Oklahoma trial and court order to produce and submit transcript to the court and petitioner."
27 (Docket # 3.) (He apparently wants an authorization of up to $5,000 to obtain those transcripts.)

28

2

1  Respondent will be given an opportunity to be heard on the motion before the court rules on it.
2  The court will set a briefing schedule.

4                                    **CONCLUSION**

5          For the foregoing reasons,

6      1.      The petition states cognizable claims for habeas relief and warrants a response.
7  The court will not set a briefing schedule at this time, however, because it prefers to decide the
8  motion for provision of funds first.

9      2.      The clerk shall serve by certified mail a copy of this order, the petition and all
10  attachments thereto upon respondent and respondent's attorney, the Attorney General of the State
11  of California. The clerk shall also serve a copy of this order on petitioner.

12     3.      Respondent must file and serve upon petitioner, on or before **May 30, 2008**, an
13  opposition to the motion for provision of funds or a statement of non-opposition.

14     4.      If petitioner wishes to respond to the opposition, he must do so by filing a reply
15  with the court and serving it on respondent on or before **June 27, 2008**.

16     5.      Petitioner's in forma pauperis application is GRANTED.   (Docket # 2.)

17            IT IS SO ORDERED.

18  DATED: March 11, 2008

                                    SUSAN ILLSTON
19                                   United States District Judge

3

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

IVAN KILGORE,

       Plaintiff,

v.

J. WALKER et al,

       Defendant.

_____/

Case Number: CV07-05124 SI

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 12, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ivan Kilgore V-31306
California State Prison Sacramento
P.O. Box 290066
Represa, CA 95671

Dated: March 12, 2008

                      Richard W. Wieking, Clerk
                      By: Tracy Sutton, Deputy Clerk

EXHIBIT # (2)

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CO**RIGINAL**
**FILED**

Name FILGORE        IVAN        D
        (Last)        (First)        (Initial)

OCT - 5 2007

Prisoner Number    V31306

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Institutional Address CALIFORNIA STATE PRISON SACRAMENTO

P.O. BOX 290066, REPRESA    CA 95671

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SI**

**IVAN KILGORE**
(Enter the full name of plaintiff in this action.)

**C 07 5124**

**(PR)**

        vs.

Case No. _____
(To be provided by the clerk of court)

**J. WALKER(ACTING WARDEN)**

PETITION FOR A WRIT
OF HABEAS CORPUS

EVIDENTIARY HEARING
REQUESTED

(Enter the full name of respondent(s) or jailor in this action)

---

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1 | Who to Name as Respondent

2       You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 | respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7 | but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 | custody you are now and the Attorney General of the state in which the judgment you seek to attack

9 | was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11       1. What sentence are you challenging in this petition?

12            (a)      Name and location of court that imposed sentence (for example; Alameda

13                  County Superior Court, Oakland):

14     ALAMEDA COUNT SUPERIOR COURT      OAKLAND

15             Court                          Location

16            (b)      Case number, if known ___141033___

17            (c)      Date and terms of sentence _4-9-06, life without parole_

18            (d)      Are you now in custody serving this term? (Custody means being in jail, on

19                  parole or probation, etc.)        Yes _X_    No _____

20                  Where?

21                  Name of Institution: _CSP-SACRAMENTO_

22                  Address: _P.O. BOX 290066, REPRESA CA   95671_

23       2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 | more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 | challenging more than one sentence, you should file a different petition for each sentence.)

26 | ONE COUNT OF FIRST DEGREE MURDER, PC187; SPECIAL CIRCUMSTANCE

27 | DISCHARGING A FIREARM FROM A MOTOR VEHICLE PC 190.2(a)(21)

28

3. Did you have any of the following?

    Arraignment:                               Yes _X_   No _____

    Preliminary Hearing:                  Yes _X_   No _____

    Motion to Suppress:                  Yes _X_   No _____

4. How did you plead?

    Guilty _____   Not Guilty _X_   Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _X_   Judge alone_____   Judge alone on a transcript _____

6. Did you testify at your trial?                 Yes _X_   No _____

7. Did you have an attorney at the following proceedings:

    (a)   Arraignment                  Yes _X_   No _____

    (b)   Preliminary hearing         Yes _X_   No _____

    (c)   Time of plea                  Yes _X_   No _____

    (d)   Trial                       Yes _X_   No _____

    (e)   Sentencing                 Yes _X_   No _____

    (f)   Appeal                     Yes _X_   No _____

    (g)   Other post-conviction proceeding   Yes _X_   No _____

8. Did you appeal your conviction?          Yes _X_   No _____

    (a)   If you did, to what court(s) did you appeal?

        Court of Appeal               Yes _X_   No _____

        Year: 2004    Result: DENIED

        Supreme Court of California   Yes _X_   No _____

        Year: 2006    Result: DENIED

        Any other court             Yes _____   No _X_

        Year: _____    Result: _____

    (b)   If you appealed, were the grounds the same as those that you are raising in this

petition?                                          Yes __X__    No_____

(c)    Was there an opinion?                       Yes __X__    No_____
       SEE EXHIBIT #5
(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                                   Yes _____   No__X__

       If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

this conviction in any court, state or federal?         Yes __x__    No_____

    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

challenged the same conviction you are challenging now and if that petition was denied or dismissed

with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

for an order authorizing the district court to consider this petition. You may not file a second or

subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following

       questions for each proceeding. Attach extra paper if you need more space.

       I.    Name of Court: CALIFORNIA SUPREME COURT

             Type of Proceeding: HABEAS CORPUS

             Grounds raised (Be brief but specific):

             a. IAC OF APPELLATE COUNSEL

             b. IAC OF TRIAL COONSEL: FAILURE TO OBJECT

             c. IAC OF TRIAL COUNSEL: FAILURE TO INVESTIGATE

             d. _____

             Result: DENIED _____ Date of Result: 9-10-07

       II.   Name of Court: _____

             Type of Proceeding: _____

             Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1   a._____

2   b._____

3   c._____

4   d._____

5   Result: _____ Date of Result:_____

6   III.   Name of Court: _____

7   Type of Proceeding: _____

8   Grounds raised (Be brief but specific):

9   a._____

10  b._____

11  c._____

12  d._____

13  Result: _____ Date of Result:_____

14  IV.   Name of Court: _____

15  Type of Proceeding: _____

16  Grounds raised (Be brief but specific):

17  a._____

18  b._____

19  c._____

20  d._____

21  Result: _____ Date of Result:_____

22  (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23  Yes _____   No_X_

24  Name and location of court: _____

25  **B. GROUNDS FOR RELIEF**

26  State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b): McCleskey v. Zant.

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN
5  Claim One: IT RULED THAT IF APPELLANT TESTIFIED THE PROSEC-
UTION COULD CROSS-EXAMINE APPELLANT ON HIS TESTIMONY IN
6  HIS OKLAHOMA(INVOLUNTARY) MANSLAUGHTER CASE.

SEE ATTACHED MEMORANDUM AND POINTS OF AUTHORITIES
7  Supporting Facts: FROM PETITION FOR REVIEW AT pp.5-10&10(A) ***NOTE:
THE UNDERLINED FACTS AT pp.6-7 ARE NOT CORRECT AND
8  SHOULD READ,"APPELLANT WAS INFORMED THAT AN ASSOCIATE
BRYANT JONES WAS IN POSSESSION OF ONE OF HIS STOLEN
9  GUNS(45 cal). APPELLANT APPROACHED JONES.

10

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL,
11  Claim Two: WHERE APPELLANT COUNSEL FAILED TO PRESENT THE STATE COURT
12  WITH THE FEDERAL QUESTION CONCERNING THE INSTRUCTIONAL
ERROR REGARDING THE TRIAL COURTS FAILURE TO INSTRUCT ON
13  PARTICULAR POINTS OF SECOND DEGREE DRIVE-BY MURDER.

14  SUPPORTING FACTS: SEE ATTACHED "SUPPLEMENT" MEMORANDUM

15  AND POINTS OF AUTHORITIES AT pp 18-20.

16
THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
17  Claim Three: WHEN IT FAILED TO INSTRUCT THE JURY ON THE
DOCTRINE OF TRANSFERRED INTENT APPLING WHEN ONE SHOOTS
18  IN SELF-DEFENSE.

19  Supporting Facts: SEE ATTACHED MEMORANDUM AND POINTS OF

20  AUTHORITIES FROM PETITION FOR REVIEW AT pp19-22

21

22

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 6 -

**CLAIM #4**  THE TRIAL COURT PREJUDICIALLY ERRORED IN BARRING
APPELLANT FROM INTRODUCING BAD CHARACTOR EVIDENCE
REGARDING WILLIAM ANDERSON AND T. DANDY: IT WAS
ADMISSIBLE TO REBUT PROSECUTIONS GOOD CHARACTOR
EVIDENCE.
**SUPPORTING FACTS:** SEE ATTACHED MEMORANDUM AND POINTS OF
AUTHORITIES FROM PETITION FOR REVIEW AT pp 25.

CLAIM #5: **INEFFECTIVE ASSISTANCE OF COUNSEL**

    **(A)** TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE MADE AN
        ERRONEOUS OFFER OF PROOF.
      **SUPPORTING FACTS:** SEE ATTACHED MEMORANDUM AND POINTS
        OF AUTHORITIES FROM PETITION FOR WRIT OF HABEAS
        CORPUS AT pp 8-12.

    **(B)** TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED
        TIMELY TO OBTAIN A RULING PRIOR TO TRIAL REGARDING
        THE ADMISSIBILITY OF THE OKLAHOMA TESTIMONY.
      **SUPPORTING FACTS:** SEE ATTACHED MEMORANDUM AND POINTS
        OF AUTHORITIES FROM PETITION FOR WRIT OF HABEAS
        CORPUS AT pp 12-18.

    **(C)** APPELLANT'S CONSTITUTIONAL RIGHT TO EFFECTIVE
        ASSISTANCE OF COUNSEL WAS VIOLATED AS A RESULT
        OF HER FAILURE TO OBJECT TO THE UNTIMELY INTRODUCTION
        OF THE OKLAHOMA TESTIMONY; RESULTING IN PETITIONER
        FOREGOING HIS RIGHT TO TESTIFY AND PRESENT THE
        MERITORIOUS DEFENSE OF SELF-DEFENSE.
      **SUPPORTING FACTS:** SEE ATTACHED "SUPPLEMENT" MEMORANDUM
        AND POINTS OF AUTHORITIES AT pp 1-12.

    **(D)** INEFFECTIVE ASSISTANCE OF COUNSEL; FAILURE TO
        INVESTIGATE AND PREPARE APPELLANT'S PRIOR OKLAHOMA
        TRIAL EVIDENCE BEFORE MAKING TACTICAL DECISIONS.
      **SUPPORTING FACTS:** SEE ATTACHED "SUPPLEMENT" MEMORANDUM
        AND POINTS OF AUTHORITIES AT pp 13-17.

    **(E)** TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE SWITCHED
        DEFENSE THEORIES MIDSTREAM FROM SELF-DEFENSE TO
        REASONABLE DOUBT(MISTAKEN IDENTITY); THUS MAKING
        A FARCE OF APPELLANT'S TRIAL BY DISCREDITING ANY
        MATTER OF FACT PRESENTED BY DEFENSE.
      **SUPPORTING FACTS:** SEE ATTACHED MEMORANDUM AND POINTS
        OF AUTHORITIES FROM PETITION FOR WRIT OF HABEAS
        CORPUS AT pp 19-25.

    **(F)** TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
        COUNSEL WHEN SHE ADVISED AND CAUSED APPELLANT
        NOT TO TESTIFY.**(NOTE: THIS CLAIM IS CONJOINED
        WITH[C])**
      **SUPPORTING FACTS:** SEE ATTACHED MEMORANDUM AND POINTS
        OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
        CORPUS AT pp 26-29.

(G) TRIAL COUNSEL NEGLIGENTLY OPENED THE DOOR TO BAD
CHARACTOR EVIDENCE THAT APPELLANT HAD BEEN CONVICTED
OF A FELONY; THEREBY DESTROYING HER OWN STRATEGY OF
NOT HAVING APPELLANT TESTIFY IN ORDER TO KEEP
THE OKLAHOMA CASE FROM THE JURY.
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 30-32.

(H) TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO
MOVE THAT THE TAPE RECORDED STATEMENT OF PROSECUTION
WITNESS MATTHEW BRYANT BE REDACTED TO ELIMINATE HIS
STATEMENT "HE THOUGHT APPELLANT WAS A DRUG DEALER."
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 33-34.

(I) TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO
CALL APPELLANTS SISTER AND GIRLFRIEND AS WITNESSES
TO ESTABLISH THE VIOLENT CHARACTOR OF WILLIAM
ANDERSON AND T. DANDY.
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 35.

(J) TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO
REQUEST AN INSTRUCTION THAT THE DOCTRINE OF
TRANFERRED INTENT APPLIED TO SHOOTING IN SELF-
DEFENSE.
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 36-38.

(K) TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO
OBJECT TO THE PROSECUTORS INACCURATE ARGUEMENT
REGARDING DRIVE-BY MURDER.
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 39.

(L) TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO
OBJECT TO BALLISTICS TESTIMONY BY THE PATHOLOGIST.
    SUPPORTING FACTS: SEE ATTACHED MEMORANDUM AND POINTS
    OF AUTHORITIES FROM THE PETITION FOR WRIT OF HABEAS
    CORPUS AT pp 40.


****NOTE: IN THE STATEMENT OF THE CASE AND OF THE FACTS,
         pp 4 OF THE MEMORANDUM AND POINTS AUTHORITIES
         FROM THE PETITION FOR REVIEW; THE UNDERLINE
         FACTS ARE NOT CORRECT AND SHOULD READ: "TERRY
         DANDY, FIRED ONE SHOT WITH A HANDGUN AT HIM..."

6(B)

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    _____

5    _____

6    _____

7    Do you have an attorney for this petition?                    Yes_____    No _X_____

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.
                                    EVIDENTIARY HEARING REQUESTED

12

13    Executed on  10 - 1 - 07                    _____

14                Date                                Signature of Petitioner

15

16

17

18

19

20    (Rev  6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

## MEMORANDUM AND POINTS OF AUTHORITIES

### FROM PETITION FOR REVIEW

## IN THE SUPREME COURT

## FOR THE STATE OF CALIFORNIA

|  |  |  |
|---|---|---|
| The People of the State of California, | ) ) ) | Case no. _____ |
|  | ) |  |
| Plaintiff and Respondent, | ) ) | (Court of Appeal |
| v. | ) | case no. A106142) |
|  | ) |  |
| IVAN KILGORE, | ) |  |
|  | ) |  |
| Defendant and Appellant | ) |  |
|  | ) |  |
|  | / |  |

Alameda County County Superior Court Case No. 141033
Kenneth Kingsbury, Judge

\* \* \*

## PETITION FOR REVIEW

STEPHEN B. BEDRICK
SBN 058787
Attorney at Law
1970 Broadway, Suite 1200
Oakland, CA 94612
(510) 452-1900

Attorney for Defendant and Appellant
IVAN KILGORE

(by appointment of the Court of Appeal under
the FDAP's independent case system)

## PETITION FOR REVIEW

Defendant and Appellant Ivan Kilgore (Appellant) respectfully petitions for review of the decision of the Court of Appeal, First District, Div. 5, which affirmed his conviction for murder. People v. Kilgore, case #A106142, opinion filed August 30, 2006. (Appendix A.)

Appellant has concurrently filed a habeas corpus petition, asserting ineffective assistance of counsel. Appellant requests and has formally moved that the Court consider the two petitions together.

## QUESTIONS PRESENTED

1. Does the so-called "doctrine of chances" (People v. Carpenter (1997) 15 Cal.4th 312, 379) authorize admission of evidence of a prior crime to prove intent, when the prior is found otherwise inadmissible to prove intent under Evid. Code §1101(b)?

2. Under Apprendi v. New Jersey (2000) 530 U. S. 436, is a trial court required to instruct on lesser-included enhancements, or lesser-included offenses-plus-enhancements?

In particular, is instruction required on second degree drive-by murder as a lesser-included offense, or lesser-included offense-plus-enhancement, of first degree drive-by murder?

3. In a self-defense case, is instruction on transferred intent required *sua sponte*, when the defendant shot at one person in self-defense, but missed, and, instead, struck a bystander?

4. Was the independence of the appellate process compromised, because the pro tem justice who wrote the Court of Appeal opinion sits in the same Superior Court as the trial judge whose decision he was reviewing?

5. After prosecution witnesses testify to the good character of the victim and his companion, may the defense be barred from presenting

evidence of bad character?

6. Did trial counsel render ineffective assistance by changing the defense in midstream from self-defense to identity, even though counsel conceded that defending on identity was impossible?

## GROUNDS FOR REVIEW

Review is warranted under Rule 28 to secure uniformity of decision and for the settlement of important questions of law.

(1) The trial court ruled that testimony from Appellant's prior Oklahoma case was inadmissible to prove intent under Evid. Code §1101(b), but nonetheless found that it was admissible under the so-called "doctrine of chances." (People v. Carpenter (1997) 15 Cal.4th 312, 379). The issue warranting review is whether evidence may be independently admitted under the "doctrine of chances," even though it is found inadmissible under the statutory limitations of Evid. Code §1101.

(2) Whether instruction is required on lesser-included enhancements, or lesser-included offenses-plus-enhancements, is an issue which needs resolution in light of Apprendi v. New Jersey (2000) 530 U. S. 436. Prior to Apprendi, instructions on lesser-included enhancements, or lesser-included offense-plus-enhancements, were not required, because they were merely enhancements to be considered by the judge. People v. Wolcott (1983) 34 Cal.3d 91, 101. In Apprendi the United States Supreme Court required that enhancements, other than recidivist ones, must be proven to the jury beyond a reasonable doubt in the same way as crimes. Wolcott is thus no longer good law. Accordingly, this Court needs to re-examine the question of when and how to instruct on lesser-included enhancements in light of Apprendi.

Related issues are pending before this Court as follows:

In People v. Izaguirre, no. S132980, one question is whether the firearm enhancement in Penal Code §12022.53(d) is necessarily included within the drive-by shooting special circumstance in Penal Code §190.2(a)(21).

In People v. Sloan, no. S132605 the question is: For purposes of the ban on conviction of necessarily included offenses, should enhancement allegations be considered in determining whether a lesser offense is necessarily included in a charged offense as pled in the information or indictment?

While these two pending cases do not involve jury instructions, they do involve the preliminary issue presented here of whether enhancements should be considered when identifying lesser-included offenses.

(3) On whether instruction on transferred intent is required *sua sponte*, review is warranted because of the conflict between a 27-year old Court of Appeal opinion which says "no," and a subsequent line of authority, including CALCRIM, which suggests "yes."

(4) The independence of appellate review is compromised when a Superior Court judge, sitting as a pro tem justice on the Court of Appeal, writes the opinion in a case which arose from his own superior court in his own county. This presents an issue of first impression. A Judicial Council study confirmed that the independence of judicial review would be improperly compromised in a similar situation.

## STATEMENT OF THE CASE AND OF THE FACTS

Appellant Ivan Kilgore was convicted of first degree "drive-by" murder, with the special circumstance of shooting from a vehicle. Four witnesses testified that Appellant's Cadillac pulled up to a curb in Oakland, near two men who had previously beaten Appellant, and that Appellant

fired one shot from a shotgun which killed William Anderson.

When trial began, the prosecution had pending a motion to admit under Evid. Code §1101(b) Appellant's testimony from an Oklahoma case where Appellant had been convicted a crime which was of the equivalent of involuntary manslaughter under the theory of imperfect self-defense. Trial defense counsel failed to move for a continuance, in order to know, before the trial started, whether that evidence would be admitted. Three quarters of the way through trial, the trial court held that evidence admissible if Appellant testified.

In opposing the prior, Appellant had submitted an offer of proof that he would testify that, as his car pulled up to the curb, Anderson's companion, Terry Dandy, fired one shot with a shotgun at him, which missed. Appellant then fired back in self-defense.

Throughout the first three quarters of the trial, the intended defense was self-defense. Appellant was planning to testify. After the ruling authorizing the admission of the Oklahoma testimony, trial counsel completely changed the defense from self-defense to identity, even though no investigation of an identity defense had been done. Trial counsel advised and caused Appellant not to testify. No alibi evidence was presented. Appellant was convicted.

At the motion for new trial hearing, alleging ineffective assistance of counsel Appellant testified that he wanted to testify at trial, and that he fired in self-defense. Trial defense counsel testified that an identity defense was impossible. Nonetheless, she presented it.

I.

## THE TRIAL COURT ERRED WHEN IT RULED THAT, IF APPELLANT TESTIFIED, THE PROSECUTION COULD CROSS-EXAMINE APPELLANT ON HIS TESTIMONY IN HIS OKLAHOMA (INVOLUNTARY)MANSLAUGHTER CASE

### A. Procedural Facts

Appellant was convicted in Oklahoma in 1997 of manslaughter. The prosecutor moved to impeach Appellant, if he testified, with his Oklahoma testimony.

The Oklahoma manslaughter statute punishes, inter alia, a homicide "perpetrated unnecessarily . . . while resisting an attempt by the person killed to commit a crime." The Oklahoma conviction was the equivalent of California involuntary manslaughter. (RT 43-47) See In re Christian S. (1994) 7 Cal.4th 768. Because involuntary manslaughter is not a crime of moral turpitude, People v. Solis (1985) 172 Cal.App.3d 877, 883, the trial court barred impeachment with the conviction. (RT 43-52)

The prosecutor urged admission of Appellant's Oklahoma testimony under Evid. Code §1101(b) to prove modus operandi, common plan, and absence of malice. (RT 55) Later, the prosecutor argued that the prior testimony was admissible under the so-called "doctrine of chances," which provides "that the more often one does something, the more likely something was intended." (RT 611)

Defense counsel argued the prior was too dissimilar to prove intent under People v. Ewoldt (1994) 7 Cal.4th 380. (RT 612-613) The trial court agreed. Several times it rejected the prosecutor's argument that the prior was similar enough to be introduced to prove intent, or modus operandi, or common scheme or plan. (RT 607-615, 621, 628-629, 634-635) The only similarity the court found was in the defendant's explanation as to the two events. (RT 621)

The trial court ultimately ruled, two-thirds of the way through trial, that, if Appellant testified, he could be cross-examined with his Oklahoma testimony. (RT 634-646) It deemed the prior admissible on three grounds: (i) to prove or disprove Appellant's "credibility concerning the presence or absence of the need for self-defense," (ii) to prove or disprove "any mistake of fact testified to by the defendant," and (iii) "as to the existence or non-existence of malice aforethought. (RT 615, 621, 635)

The trial court conceded that the decision to admit Appellant's Oklahoma testimony was a "close call." (RT 634)

Appellant did not testify at trial, on the advice of counsel, to avoid the introduction of the Oklahoma testimony. (RT 707, 1004-1005, 1018, 1029-1030)

At the motion for new trial hearing the trial court restated the grounds for its ruling. It would have allowed cross-examination on Appellant's Oklahoma testimony, (a) because such testimony was relevant to his credibility, and (b) because of the so-called "doctrine of chances." (RT 1073-1075)

The Court of Appeal affirmed on the theory that the trial court properly exercised its discretion in ruling that the Oklahoma prior was admissible to prove intent under Evid. Code §1101(b). (slip op. pp. 14-16) That conclusion misstated the record. The trial court never ruled that the prior was admissible under §1101(b) to prove intent. Accordingly, the Court of Appeal's opinion is defective, because it depends on a finding never made by the trial court.

**B.    Facts: Appellant's Testimony in the Oklahoma Case**

Appellant was helping raise two children and a younger sister in Oklahoma. He worked at Farris body and fender. Appellant had recently loaned his .45 handgun to a friend named Bryant Jones, because Jones'

brother had been shot. Appellant's apartment was burglarized and several of his guns were stolen.

Appellant was once friends with Conan Emery (the Oklahoma homicide victim). Emery had stayed in Appellant's apartment. Emery was a leader of the 83rd Crips gang. Emery was a professional boxer and a street fighter. Appellant knew that Emery hurt several people.

Appellant followed Jones to Stephanie's house, to retrieve his .45. As Appellant approached, Jones fled in a panic. He did not have Appellant's gun. (Exh. #14, p 19-20) Appellant entered and saw Emery. He was scared, because he did not expect to see Emery. Appellant asked about his missing guns. Emery stood and said, "Don't [ask] me about your guns, or I will let your ass have it." Emery reached into his waistband. Appellant thought Emery was reaching for a gun. Appellant fired first. (Exh. #14, pp. 20-22)

Appellant wrote to friends asking them to testify that Emery had a gun. Appellant testified that no one else was willing to testify in his favor, because it would be risky to testify against a member of the 83rd Crips.

## C.  Appellant's Testimony in the Oklahoma Case Should Not Have Been Ruled Admissible

The improper introduction of evidence of a prior crime, which introduces bad character evidence, violates the due process clause of the 5th Amendment. Old Chief v. United States (1997) 519 U. S. 172, 136 L.Ed.2d 574; McKinney v. Rees (9th Cir. 1993) 993 F.2d 1378, 1380.

Appellant's Oklahoma testimony should not have been ruled admissible because it constituted improper bad character evidence. Evid. Code §1101(a); People v. Sam (1969) 71 Cal.2d 194, 203. This testimony was not admissible under any Evid. Code §1101(b) exceptions.

1. **Intent**. The trial court ruled that the Oklahoma testimony was not admissible under Evid. Code §1101(b) to prove intent, because the two

cases were dissimilar. (RT 604-605, 621, 628-629, 634-635) That ruling was correct.

2. **Credibility**. The trial court found the Oklahoma testimony admissible as evidence of Appellant's credibility. (RT 635, 1073-1075) That ruling was erroneous. Appellant's Oklahoma testimony failed to establish anything adverse about his credibility. Appellant testified in the Oklahoma case that he shot Emery in self-defense, believing that Emery was reaching for a gun. The jury acquitted Appellant of murder, but convicted him of manslaughter on the theory of imperfect self-defense, namely, that Appellant honestly but unreasonably or, in the terms of the Oklahoma statute, "unnecessarily," believed he needed to shoot in self-defense. Thus, the Oklahoma jury implicitly found Appellant credible. See In re Christian S. (1994) 7 Cal.4th 768.

3. **Malice aforethought**. (i) Evid. Code §1101(b) does not authorize a prior to prove "malice aforethought." (ii) In any event, manslaughter under imperfect self-defense does not establish malice aforethought. Proof of imperfect self-defense negates malice aforethought.

4. **So-called "doctrine of chances."** The trial court relied upon the so-called "doctrine of chances." 2 Wigmore, Evidence (Chadbourn Rev. 1979) §302, at p. 241; People v. Carpenter (1997) 15 Cal.4th 312, 379:

> . . . similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. (RT 627-628)

This theory does not apply here for several reasons:

First, Wigmore makes clear that the "doctrine of chances" only applies when the same explanation, or "unusual and abnormal element"

reoccurs. That did not happen here. In Oklahoma, the defense, or "unusual and abnormal element," was a combination of self-defense and mistake. Here, there was no mistake. The defense was complete self-defense.

Second, when there are insufficient similarities to prove intent, as the trial judge found, the prior is not admissible under the "doctrine of chances."

However, assuming, arguendo, that the trial court could be deemed to have ruled that the Oklahoma prior was admissible to prove intent under Evid. Code § 1101(b), that ruling was erroneous, because there was insufficient similarity between the two crimes. The only similarity is that Appellant shot both victims. That is not enough. People v. Ewoldt, supra.

Improper reliance upon a prior to show criminal propensity violates the 5th and 14th Amendments' due process clause. Garceau v. Woodford (9th Cir. 2001) 275 F.3d 769, rev'd on other grounds (2003) 538 U. S. 202.

In Appellant's Oklahoma case, Appellant went alone to a private home looking for an acquaintance. The man fled. Appellant entered the house, encountered the victim, a gang leader, and asked for his missing guns. The victim stood, told Appellant that if he kept asking about his guns, he would "let [his] ass have it," and reached into his waistband. Appellant was scared. He believed Emery was reaching for a gun to shoot him. Appellant fired first.

Here, the situation was quite different. Appellant's car pulled to the curb so Appellant could speak with Dandy and William, who previously robbed him. Dandy fired one shot from a handgun at Appellant. Appellant then fired one shot from a shotgun in actual self-defense at Dandy, but missed and struck William instead. (RT 1046) Several witnesses heard multiple shots.

Because there are no significant facts in common between these two

cases, except that Appellant shot and killed someone, the trial court ruled correctly that there were insufficient similarities to prove intent. Accordingly, there were insufficient similarities to allow admission under the so-called "doctrine of chances," either. That doctrine is merely another way of admitting a prior under §1101(b) to prove intent.

In People v. Erving (1998) 63 Cal.App.4th 652, 662, the Court of Appeal effectively acknowledged that the "doctrine of chances" does not provide an independent basis for admitting priors, but merely illustrates methods of proving Evid. Code §1101(b) factors, such as motive, intent and identity. Erving supports Appellant's argument that, because the prior was not admissible to prove intent because it was too dissimilar, that it could not be admitted under the "doctrine of chances," either. Such theory merely functions as a proxy for proving intent. Because the prior was inadmissible to prove intent, it was inadmissible under the doctrine of chances, also.

5. **Mistake**: The prior was not admissible to prove mistake, because there was no mistake here. Appellant would have testified that Dandy fired at him, and that he fired back in self-defense. Mistake was not at issue.

### D.    Prejudice

The trial court's ruling was prejudicial. Appellant's self-defense case would have been indisputably stronger if he testified at trial, as he testified on the motion for new trial, that Dandy fired one shot at him, and that he fired in self-defense. Conversely, Appellant's self-defense case would have been damaged if the prosecution introduced the Oklahoma testimony that Appellant was a killer. Indeed, the prosecutor admitted at trial that "evidence of other crimes is inherently prejudicial." (RT 611)

1    In addition, the court's ruling to allow the Oklahoma prior
2 testimony for impeachment purposes had significant influence on
3 the direction of the defense. As noted in claim #5(C)(D)(E)(F)(G)
4 AND (I) of the ineffective assistance of counsel claims, trial
5 counsel advised and caused Appellant to forego his right to testify,
6 present witnesses on his behalf and present the meritorious defense
7 of self-defense. Moreover, the impact of trial counsel's decision
8 to shift defense strategies in mid-trial,because of this ruling,
9 from self-defense to the inconsistant defense of mistaken identity,
10 had the most devastating effect before the jury because it deminished
11 all credibility within any particular set of factors the defense
12 placed before them to consider Appellant's innocence or guilt on
13 the lesser-included offences given at the trial.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.

## THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE-PLUS-ENHANCEMENT OF SECOND DEGREE DRIVE-BY MURDER

### A.   Facts and Introduction

Murder by shooting a firearm from a motor vehicle, "drive-by murder," has two degrees.

First degree drive-by murder does not require premeditation and deliberation. Intent to kill is enough, when shooting from a vehicle. Penal Code §189. There also is a drive-by special circumstance, Penal Code §190.2(a)(21), with identical elements.

Second degree drive-by murder can be committed by shooting from a vehicle with intent to inflict great bodily injury (GBI). Penal Code §190(d). Second degree drive-by differs from other second degree murders because (a) it requires shooting from a vehicle, (b) it requires the intent to inflict GBI, and (c) it carries a five-year enhancement, such that the penalty is 20 - life, not 15 - life.

The trial court instructed on first degree murder under (a) premeditation and deliberation, pursuant to CALJIC 8.20 (CT 408), and (b) first degree drive-by murder, pursuant to CALJIC 8.25.1. (CT 409), and on the drive-by special circumstance, Penal Code §190.2(a)(21), under CALJIC 8.81.21. (CT 416)

The trial court instructed on second degree murder under alternate theories of express malice (CALJIC 8.30, CT 410), and implied malice. (CALJIC 8.31, CT 411)   It instructed that unanimity on theory was not required.

However, the trial court failed to instruct on the lesser-included offense-plus-enhancement of second degree drive-by murder, Penal Code

§190(d). It failed to give the second degree drive-by instruction, CALJIC 8.35.2. It failed to provide the verdict form under CALJIC 8.35.2, requiring a special finding on second degree drive-by murder.

## B. The Failure to Deliver the Second Degree Drive-by Instruction Was Error

There is a sua sponte duty to instruct on lesser-included offenses if there is substantial evidence that the defendant is guilty of the lesser offense or enhancement, but not guilty of the greater offense. People v. Breverman (1998) 19 Cal.4th 142, 177; People v. Flannel (1979) 25 Cal.3d 668, 684; People v. Barton (1995) 12 Cal.4th 186, 196.

The failure here correctly to instruct on all elements of a crime or enhancement violates the 5th Amendment's due process clause. Sandstrom v. Montana (1979) 442 U. S. 500, 520. Sandstrom error includes the failure correctly to instruct on lesser-included crimes. Middleton v. McNeil (2004) ___ U. S. ___, 124 S.Ct. 1830.

Second degree drive-by murder is a lesser-included offense-plus-enhancement of first degree drive-by murder. People v. Garcia (1998) 63 Cal.App.4th 820, 827. These two crimes vary in one particular, only. First degree drive-by requires an intent to kill. Second degree drive-by requires merely an intent to inflict GBI. One necessarily commits second degree drive-by (shooting with intent to inflict GBI) when one commits first degree drive-by (shooting with intent to kill). People v. Clark (1990) 50 Cal.3d 583, 636.

Although second degree drive-by is a lesser-included of first degree drive-by, the trial court failed to instruct on it. The failure to instruct on a lesser-included constituted error. The pro tem justice who wrote the opinion in this case misstated the law on lesser-includeds, when he wrote that there was no obligation to instruct on a lesser-included, as long as the jury is correctly instructed on all the elements of the greater crime. (slip op.

pp. 18-20) That is not the correct test. The failure to instruct on a lesser-included is prejudicial, even if instructions on the greater crime were accurate, as long as there is substantial evidence that only the lesser, but not the greater, crime was committed. People v. Blakeley (2000) 23 Cal.4th 82, 93; People v. Breverman, supra, 19 Cal.4th at 177-178, esp. fn. 25; People v. Anderson (2006) 141 Cal.App.4th 431, 442.

Here, Appellant only fired one shot at one man. If he had the intent to kill, he probably would have fired at both men. Thus, the circumstantial evidence was equally strong that he only fired with the intent to injure, not the intent to kill. Accordingly, the failure to instruct on the lesser was error.

## C.    The Court of Appeal Opinion Was Further Defective, Because it Relied on Pre-Apprendi Law

The Court of Appeal further rejected Appellant's lesser-included argument, on the theory that People v. Wolcott (1983) 34 Cal.3d 91, 101 and People v. Garcia (1998) 63 Cal.App.4th 820 found no *sua sponte* duty to instruct on lesser-included enhancements. (slip op. p. 19) However, Wolcott and Garcia are no longer good law in light of Apprendi v. New Jersey (2000) 530 U. S. 436, Blakely v. Washington (2004) 542 U. S. _____, 124 S.Ct. 2531, and Middleton v. McNeil, supra, 124 S.Ct. 1830.

Apprendi and Blakely provide that enhancements (except recidivist enhancements), just like crimes, must be proven to the jury beyond a reasonable doubt, pursuant to the 5th Amendment's due process clause and the 6th Amendment's jury trial clause. And see People v. Wims (1995) 10 Cal.4th 293, 298; People v. Clark (1997) 55 Cal.App.4th 709, 714 (trial court must properly instruct on all aspects and enhancements of a GBI enhancement).

Thus, instruction should be required on lesser-included enhancements, or lesser-included offenses-plus-enhancements, for the same reasons why instruction is required on lesser-included offenses, to wit:

Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function.

> -- People v. Barton, supra, 12 Cal.4th at 196.

This means that, post-Apprendi, the rules on *sua sponte* instruction on lesser-included offenses need to be revised to apply to lesser-included enhancements, too. Thus, review is warranted, so that this Court may update its rulings on lesser-included enhancements to conform with the Apprendi line of authority.

## D. The Failure to Instruct on Second Degree Drive-by Murder Was Rendered Prejudicial by the Prosecutor's Numerous Misstatements During Argument

After Apprendi, standard of prejudice for failure properly to instruct on an enhancement is the federal harmless beyond a reasonable doubt test under Chapman v. California (1967) 386 U. S. 18, 24. California's rule, before Apprendi and Blakely, was that the more forgiving Watson standard of prejudice (People v. Watson (1956) 46 Cal.2d 818) applied to errors regarding enhancements. See, e.g., Garcia, supra, 63 Cal.App.4th at 834. However, this prior rule is no longer valid, in light of Apprendi's requirement that such sentencing findings must be made by a jury beyond a reasonable doubt.

The failure to instruct on the lesser-included offense-plus-enhancement was prejudicial as follows:

(1) The jury was not told what crime occurred if Appellant fired from the car with the intent to inflict GBI, but not to kill. That crime, plus

enhancement, is second degree drive-by murder. Penal Code §190(d).

(2) In jury argument the prosecutor misstated several aspects of homicide law. First, he argued:

> . . . if you find that the defendant in this case intentionally discharged a firearm from a motor vehicle, you don't even have to consider premeditation or deliberation. The State of California has deemed this act to be so inherently offensive and so inherently dangerous that it's pretty much said strict liability, you shoot a firearm from out of a car intentionally, . . . that's first degree murder. (RT 786)

This argument was legally incorrect in several ways. (a) The argument that first degree drive-by murder is a "strict liability" crime is wrong. First degree drive-by is not a "strict liability" crime. It requires the intent to kill. (b) There is no first degree drive-by if the shooter merely intends to injure. (c) Similarly, there is no first degree murder if the shooter fires in conscious disregard of the risk, with no intent to hit anyone. (d) The argument that if "you shoot a firearm out of a car intentionally, and you cause the death" of someone, then you have committed first degree murder, was similarly wrong. Shooting from a vehicle with intent to injure, but not kill, is second degree drive-by murder.

(3) The problem of the omitted instruction and erroneous argument here was further aggravated when the trial court instructed that the jurors did not have to agree, as to second degree murder, whether malice was express or implied. (CT 413) This instruction was wrong. If some jurors relied upon implied malice, there was no intent to inflict the GBI necessary for second degree drive-by murder.

(4) The prosecutor repeated his inaccurate argument that shooting from a car would be first degree murder, regardless of the shooter's intent.

... you don't even have to agree amongst the twelve of you that it was premeditated and deliberate. Six of you could say premeditation and deliberation, and another six could say he fired from a vehicle.

Six of you could say implied malice. Six could say express malice. It doesn't matter. You could all come to the agreement that it's first degree murder. You don't have to be in agreement as to the theory behind it. (RT 801)

The argument was wrong. (a) "Fir[ing] from a vehicle" is insufficient to establish first degree murder. Express malice (intent to kill) is needed, too. (b) The argument in the second paragraph is also incorrect. A finding of "implied malice" is insufficient for first degree murder. Even under the drive-by theory, there must be express malice, or an intent to kill, for first degree drive-by murder.

## E.    The Trial Court's Failure to Instruct, as Exacerbated by the Prosecutor's Defective Argument, Was Prejudicial

The omission of second degree drive-by instructions was prejudicial. There was no direct evidence, only circumstantial evidence, of premeditation, or intent to kill, necessary for first degree drive-by murder. Even then, there was no more circumstantial evidence of intent to kill than there was of intent to injure.

Several witnesses heard multiple shots. Dandy heard two shots. Officer Green testified that witnesses reported hearing one or two shots. The 911 callers reported multiple shots. Mary Washington heard "several" shots.

Mary Loggins, saw someone running down that street, with his hands and arms close to his body as if he had something under his jacket. (RT 514, 523) This evidence suggested that Dandy, standing next to William, had a pistol, and fired it at Appellant, and then ran away.

There was no evidence that more than one shot was fired from the Cadillac and toward William and Dandy. That means that the additional shots heard by the witnesses were fired by someone else, and in another direction. Appellant offered to prove, and testified on the motion for new trial, that he only shot at Dandy after Dandy fired one shot at him.

The Court of Appeal discounted the evidence of a second shot, on the ground that there was no physical or forensic evidence of it. (slip op. pp. 21-23) That conclusion is unwarranted. There was no evidence that the police looked for bullets on the opposite side of San Pablo Avenue, where bullets would travel if fired from where William and Dandy stood. Thus, the absence of forensic or physical evidence of the second bullet does not prove it did not exist. It merely reflects that the police did not look for it.

Dandy fled to the Andersons' house. The police never found Dandy in time to search for a weapon or to conduct a gunshot residue test, because Bianca and Shanae intentionally concealed Dandy's identity from the police to protect him from being arrested for shooting at Appellant. They falsely identified Dandy as "Richard Davis," and falsely described "Davis" as standing 5'8," when, in fact, Dandy was 6'3."

If Dandy fired at Appellant, and if Appellant only fired after Dandy shot at him, there was no premeditation. Appellant may only have fired instinctively, to disarm Dandy. If Appellant aimed at Dandy, but struck William instead, who was next to Dandy and moving toward Appellant, to try to shield his girlfriend, then there was no intent to kill. Instead, there was merely a shooting with an intent to injure.

If the jury found those facts, then the correct verdict would have been second degree drive-by murder. Yet the jury received no instruction on these theories.

Cadillac driver Jones' testimony further helps establish prejudice. (i)

After Jones heard Appellant was robbed and beaten by William and Dandy, Jones gave Appellant a baseball bat for protection. Appellant never spoke about getting a gun. Instead, he installed barricades on his apartment door for protection. (ii) When Appellant asked Jones to drive him to encounter William and Dandy, Jones assumed Appellant was intending a fist fight. (iii) Jones did not see Appellant with a weapon. (iv) When Jones drove to the corner of 30th and San Pablo, he stopped and parked, because he thought that, at worst, Appellant would have a fist fight.

Jones' testimony tends to disprove that Appellant had any intent to kill, or to shoot first. If Appellant had planned in advance to kill, and/or if he shot first, he most likely would have fired at both men, not just at one. This provides further substantial evidence that Appellant only shot with intent to injure. However, the jury was never told to decide this question.

III.

## THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY THAT THE DOCTRINE OF TRANSFERRED INTENT MAY APPLY WHEN ONE SHOOTS IN SELF-DEFENSE

### A.    Transferred Intent Applies to Self-defense

Under the doctrine of transferred intent, if a defendant shoots at one person with a particular mental state, but misses, and hits a bystander, the defendant's mental state when shooting at the first person applies to the shooting of the bystander. People v. Scott (1996) 14 Cal.4th 544, 548; People v. Leavitt (1984) 156 Cal.App.3d 500, 507;

Transferred intent applies to a shooting in self-defense. People v. Matthews (1979) 91 Cal.App.3d 1018, 1023-1024; People v. Curtis (1994) 80 Cal.App.4th 1337, 1357.

William and Dandy were standing next to each other. If Dandy fired one shot at Appellant, and if Appellant fired back at Dandy in justifiable self-defense, and struck William because he aimed poorly, or because William was moving to shield his girlfriend, then Appellant's homicide of Dandy could be excused under the law of self-defense. The trial court erred when it failed so to instruct. People v. Scott, supra; People v. Matthews, supra.

### B.    Even If, Arguendo, Trial Counsel Withdrew Her Request for the Transferred Intent Instruction, the Trial Court Still Had a Sua Sponte Duty to Deliver It

A trial court has the sua sponte duty to give correct instructions on recognized defenses. People v. Saille (1991) 54 Cal.3d 1103, 1117. This includes correct instructions on self-defense. People v. Sedeno (1979) 10 Cal.3d 703, 721.

Defense counsel requested in writing CALJIC 8.65, transferred

Kilgore Petition for Review.wpd                19

intent. (CT 341) Later, trial counsel withdrew this request at the instruction conference. (RT 728) However, there was no valid tactical reason to withdraw the request.

Trial counsel argued to the jury that Dandy fired the first shot. (RT 805) If Dandy fired the first shot, and if Appellant fired back at Dandy, and struck William, instead, only the combination of transferred intent and self-defense would justify the shot that struck William. Accordingly, trial counsel should have stuck with her original request for CALJIC 8.65.

In People v. Matthews, supra, 91 Cal.App.3d at 1023, the leading case on transferred intent and self-defense, the Court of Appeal divided 2-1 on requiring sua sponte instruction. Justice Evans, writing for the majority, held it was not required. Justice Reynoso dissented. He would have found sua sponte instruction warranted. Appellant submits that the 27-year old majority opinion on this topic is outdated and should be re-considered.

The majority in Matthews found two reasons for declining to apply the sua sponte rule. First, the main defense was whether "rape trauma syndrome" could be relied upon as a basis for diminished capacity or self-defense. Thus, self-defense was not the central issue. Accordingly, reasoned the majority, transferred intent was "inconsequential to a proper resolution of defendant's guilt." Id., 91 Cal.App.3d at 1025.

That distinction does not apply here. This was a classic case of self-defense. If Dandy shot at Appellant, then Appellant had the right to fire back. Whether Appellant's shooting of William could be justified by transferred intent was a central question for the defense.

Second, the Matthews majority relied heavily upon another instruction in that case which stated "if the right of self-defense exists, it is a complete defense to any crime committed during the exercise of the right." Id., 91 Cal.App.3d at 1025 (emphasis added). Accordingly, held the

Matthews majority, that other instruction, former CALJIC 5.30, sufficiently presented the issue of whether self-defense justified shooting a bystander.

However, no such instruction was given in this case. Accordingly, unlike in Matthews, nothing here told the jury that an act against a bystander could be justified.

Justice Reynoso would have held in Matthews that instruction on transferred intent and self-defense is required sua sponte, when supported by the evidence. Otherwise, "absent the appropriate instruction, the jury could not evaluate self-defense as it applied to" the shooting of the person next to the aggressor. People v. Matthews, supra, 91 Cal.App.3d at 1029 (Reynoso, J., dissenting). Justice Reynoso's analysis should be applied here.

The relationship between transferred intent and self-defense, 25 years after Matthews, is now a basic principle of law. People v. Scott, supra, 14 Cal.4th at 550-551.

Similarly, the sua sponte doctrine is far better developed now than when Matthews was decided. For example, in 1991 in People v. Saille this Court referred to the "familiar rule" that "a trial court has a sua sponte duty to give instructions relating to a recognized defense to enhancements of a charged offense." Id., 54 Cal.3d at 1117. Saille relied in part upon the concurring opinion in People v. Whitler (1985) 171 Cal.App.3d 337, 342. Neither of these authorities was available when Matthews was decided in 1979.

CALCRIM 562, Benchnotes, provides that a transferred intent instruction should be given *sua sponte*, "if transferred intent is one of the general principles of law relevant to the issues raised by the evidence." Those Benchnotes similarly provide that "Any defenses that apply to the intended killing apply to the unintended killing as well." Accordingly CALCRIM supports the position that instruction on transferred intent as a

defense should be given *sua sponte*.

For all these reasons, *sua sponte* instruction should have been required. People v. Saille, supra.

The Court of Appeal rejected this argument on two grounds. (1) Defense counsel withdrew her initial request for transferred intent instructions. (slip op. p. 21) But that does not effect the trial court's *sua sponte* duty to instruct, especially because trial counsel did not withdraw her request for other self-defense instructions. (2) The Court of Appeal found insufficient evidence that Terry Dandy fired a shot at Appellant. (id.) However, Appellant disagrees for the reasons stated above at pp. 16-20.

C.      **Federal Constitutional Error and Prejudice**

The failure to instruct correctly on a necessary element of the crime of homicide, lack of justification, violated Appellant's 5th and 14th Amendment due process rights. Carella v. California (1989) 491 U.S. 263; Sandstrom v. Montana (1979) 442 U.S. 510.

The applicable standard of prejudice is the harmless beyond a reasonable doubt test. Chapman v. California (1966) 368 U.S. 18.      The error was prejudicial here, for the reasons stated at pp. 16-17 why the failure to instruct on second degree drive-by was prejudicial.

IV.

## APPELLANT WAS DENIED FAIR AND INDEPENDENT APPELLATE REVIEW BECAUSE THE PRO TEM JUSTICE WHO WROTE THE COURT OF APPEAL'S OPINION IS A SUPERIOR COURT JUDGE FROM THE SAME COUNTY AS THE TRIAL JUDGE WHOSE DECISION WAS BEING REVIEWED

This is an Alameda County case. The trial judge was Alameda County Judge Kingsbury. The Court of Appeal opinion was written by a pro tem justice, Judge Thomas Reardon, who is also an Alameda County Superior Court judge. Judges Kingsbury and Reardon regularly sit in the same Alameda County main courthouse at 1225 Fallon Street, Oakland. Their courtrooms are relatively close. There are approximately one dozen Alameda County Superior Court judges in that building.

Appellant's motion to recuse Judge Reardon on this basis was denied.

Judge/Justice pro tem Reardon should not have been allowed to rule on this appeal, let alone write the opinion, because it is inappropriate, and gives the appearance of bias and undue deference, for one Superior Court judge to review at the Court of Appeal the actions of another Superior Court judge from the same court in the same building. Such assignment fails to provide for sufficient independence between the trial court function and the appellate function.

In May 2001 an Ad Hoc Task Force established by the Judicial Council submitted a report called "Report to the Appellate Process Task Force on the Superior Court Appellate Divisions." (See www.courtinfo.ca.gov/reference/4_12courtssupct.htm)  That committee examined the problem "that the appearance of impartial appellate justice at the Superior Court level is seriously threatened in many counties because of (1) negative perceptions associated with "peer review" (i.e., judges on

the appellate division of the Superior Court reviewing decisions by their colleagues on the same Superior Court) . . ." The committee cited a Law Revision Commission report with the following warning: "The primary concern with appellate jurisdiction within the unified court is the problem of conflicts of interest arising in peer review. A judge should not be in the position of having to reverse a judge of equal rank. There may be a collegiality or deference on the court that will destroy the independent judgment necessary for a fair review."

Because Judge/Justice pro tem Reardon sits in the same court and same building as trial judge Kingsbury, this situation presented the identical problem identified by the Appellate Process Task Force, namely, "the problem of conflicts of interest arising in peer review. A judge should not be in the position of having to reverse a judge of equal rank. There may be a collegiality or deference on the court that will destroy the independent judgment necessary for a fair review."

California Code of Judicial Ethics, Canon 2, states "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." California Code of Judicial Ethics, Canon 3(E)(4)(c) provides that an appellate justice should disqualify himself if "the circumstances are such that a reasonable person aware of the facts would doubt the judge's ability to be impartial."

Decision by a biased judge violates the due process clause of the 5th and 14th Amendments. Tumey v. Ohio (1927) 273 U. S. 510.

Accordingly, review is warranted because the independence of appellate review was compromised here.

V.

## THE TRIAL COURT ERRED IN BARRING APPELLANT FROM INTRODUCING BAD CHARACTER EVIDENCE REGARDING WILLIAM ANDERSON AND DANDY; IT WAS ADMISSIBLE TO REBUT THE PROSECUTION'S GOOD CHARACTER EVIDENCE

The prosecutor elicited good character testimony from three witnesses about William and Dandy.

(1) Shanae Anderson never saw either her cousin William or her boyfriend Dandy involved in violent or illegal behavior. (RT 432)

(2) Bianca, William's girlfriend, said she had never seen either William or Dandy involved in violent behavior.

(3) Raymond Jones said he had never observed William or Dandy engage in violent behavior.

Defense counsel tried to cross-examine Shanae by asking "Are you aware William Anderson and Terry Dandy had twice assaulted and robbed Mr. Kilgore?" The prosecutor's objection to this question was sustained.

The trial court also barred defense counsel from directly examining Kevin Tomlinsonn, Appellant's landlord, to show he had seen William selling drugs. (RT 425)

This bad character evidence should have been admitted.

1. Proof that the victim engaged in violent behavior is admissible in a self-defense case where the defendant knows the victim's violent acts. Evid. Code §1103(a); People v. Cash (2002) 28 Cal.4th 703, 726; 1 Witkin, Calif. Evidence (4th ed.), Circumstantial Evidence, §57, p. 389.

2. Evidence that the victim's friend Dandy had engaged in violent behavior was similarly admissible. People v. Minifie (1996) 13 Cal.4th 1055, 1064.

3. Evidence that William sold drugs was admissible because it rebutted the good character testimony by Shanae and Bianca that they had

never seen William engage in illegal activity. Evid. Code §356; People v. Holloway (2004) 33 Cal.4th 96, 146.

4. Evidence that William was a drug dealer was admissible for another reason. It tended to show William was armed. As the trial judge acknowledged, drug dealers in Oakland are often armed. The fact that the victim is armed is admissible. That may cause the defendant to reasonably fear the victim.

Denial of this cross-examination violated Appellant's 6th Amendment confrontation rights. Davis v. Alaska (1974) 415 U. S. 308.

Denial of this direct examination violated Appellant's 6th Amendment right to present evidence on his own behalf. Washington v. Texas (1967) 388 U. S. 14.

The error in excluding bad character evidence was prejudicial. It would have supported Appellant's defense that he reasonably feared William and Dandy when he shot. Without this evidence, the jury was largely left with the saccharine impression -- given by their respective girlfriends -- that they were fine, upstanding members of the community.

This evidence also would have impeached Shanae's and Bianca's credibility, insofar as they claimed that William and Dandy were law-abiding and non-violent. If this additional hole had been punched in their credibility, there is a reasonable probability that the jury would have disbelieved them when they testified that Dandy was unarmed.

# VI.

## TRIAL DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's arguments on ineffective assistance of counsel (IAC) are abbreviated due to Rule 28.1(d)'s page/word limits. Thus, this section should be read together with Appellant's concurrently filed habeas corpus petition.

Each aspect of IAC stated here violated Appellant's 6th Amendment right to competent counsel. Strickland v. Washington (1984) 466 U.S. 668.

1. Trial counsel was ineffective when she made an erroneous offer of proof.

In moving to excluded the Oklahoma testimony, trial counsel Levy initially presented a written offer of proof that Appellant would testify that he saw Dandy "raise his shirt and pull out a weapon." (CT 290) That presented the defense of imperfect self-defense. In re Christian S. (1994) 7 Cal.4th 768.

Trial counsel later admitted that this offer of proof was inaccurate. Appellant told her that Dandy actually fired at him, and that Appellant fired back, in actual self-defense. (RT 629-633) If trial counsel had presented those facts in her initial offer of proof, that would have presented the defense of complete self-defense, and the motion to exclude the Oklahoma prior would have been more persuasive.

When Ms. Levy tried to correct this error, the trial court commented sarcastically: "Anybody have an additional plot they want to put on the record?" (RT 633) This comment is a strong indication that the trial court disbelieved the changed offer of proof, because it was changed. This IAC caused the trial court to discredit Appellant's motion, once it was correctly stated.

2. Trial counsel was ineffective when she switched defense theories

midstream from self-defense to reasonable doubt as to identity.

Defense counsel Levy defended on self-defense throughout the prosecution's case. Up until that point, stated Ms. Levy, "it was the defense wish to have Mr. Kilgore testify." (RT 707) Indeed, at the jury instruction conference Ms. Levy requested self-defense instructions. (RT 720-727)

However, things changed after the trial court ruled three-quarters of the way through trial that the Oklahoma testimony would be admissible. After that ruling, Ms. Levy decided that Appellant would not testify. (Id.) She largely abandoned the self-defense argument, and relied almost totally upon reasonable doubt as to identity, instead. Vartually all of Ms. Levy's March 19, 2003 jury argument focused on the contention that there was reasonable doubt whether Appellant was the shooter. She did contend that Dandy fired the first shot. (RT 805) However, at no point in her jury argument did she contend that Appellant fired in self-defense.

Defense counsel violated the classic aphorism against switching horses in midstream when she changed the defense three-quarters of the way through trial from self-defense to reasonable doubt as to identity. This last-minute change in strategy constituted IAC. Even without Appellant's testimony, self-defense still could have been argued. The eyewitness testimony as to the number of shots fired tended to support the defense of self-defense. Raymond Jones thought he was driving Appellant to a fist-fight, not a shooting.

The identity defense had substantial problems. There were three eyewitnesses and a confession witness. Shortly after the shooting, Appellant telephoned the police to report his car stolen, which Ms. Levy knew sounded suspicious. (RT 1027, 1031)

A claim that Appellant was not the shooter needed to be supported by an alibi defense. Yet no alibi defense was investigated or developed, let alone presented. (Id.)

Ms. Levy testified on the motion for new trial "I didn't think there was a defense of 'It wasn't me.' I didn't that that was possible." (RT 1027, 1031) Yet, that was the defense she argued. When trial counsel abandons an arguable self-defense case, and presents, instead, an identity defense which she concedes was not "possible," she renders IAC. People v. Pope (1979) 23 Cal.3d 412, 425, and n. 15.

The Court of Appeal discounted the IAC arguments because it disbelieved Appellant's testimony at the hearing on the motion for new trial that he fired in self-defense. (slip op. pp. 21-23, 27-29) Such resolution of credibility is not the province of the appellate court. This is the province of the jury.

3. Trial counsel's failure to move for a continuance, or otherwise to obtain a pre-trial ruling, rather than a mid-trial ruling, on the admissibility of the Oklahoma prior, constituted IAC.

No reasonably competent defense counsel would begin trial without knowing whether the defense was self-defense or identity. No reasonably competent attorney could simultaneously present both of those defenses to the jury, because the jury would invariably disbelieve both.

Trial counsel should have obtained a pre-trial ruling on whether the Oklahoma testimony was admissible. People v. Simon (1986) 184 Cal.App.3d 125, 131. She should have sought a pre-trial hearing, pursuant to Evid. Code §§402 and 403, as to exactly what happened in Oklahoma. She did none of that. And she never even considered doing that. (RT 1021)

By failing to obtain a pre-trial ruling, trial counsel was forced to litigate with one hand tied behind her back. Did she have a self-defense case or a reasonable-doubt-as-to-identity case? She did not know. Did she have a self-defense case with Appellant's testimony, or without Appellant's testimony? She did not know.

Thus, trial counsel rendered IAC by proceeding to trial without being

properly prepared, and without knowing what her case would be.

4. There were several other instances of IAC, which are discussed in greater detail in the companion habeas corpus petition.

(a) Trial counsel elicited good character evidence from Kevin Tomlinsonn that Appellant was reliable and trustworthy. (RT 403) That negligently opened the door to bad character evidence that Appellant had been convicted of a felony. That destroyed counsel's own strategy of not having Appellant testify in order to keep the Oklahoma case from the jury. That opened the door for the prosecutor to ask whether Tomlinsonn would have hired Appellant, if he knew Appellant "had a felony conviction in 1997" (RT 419-420); and to ask if he would have hired Appellant as the manager of a building where children lived, if he knew Appellant had a "felony conviction." (RT 420)

This IAC did substantial damage. Appellant declined to testify at trial, to the great disadvantage of his self-defense case, to avoid revealing to the jury the testimony from his Oklahoma manslaughter trial. Yet allowing the jury to learn of the 1997 felony undermined this strategy.

(b) Trial counsel was ineffective when she failed to move that the tape-recorded statement by Matthew Bryant be redacted to eliminate his statement that he thought appellant was a drug-dealer.

The prosecutor played a tape-recorded statement in which Bryant stated he believed Appellant was a drug-dealer. Trial counsel rendered ineffective assistance by failing to move the tape-recording be redacted to exclude this testimony.

(c) Trial counsel was ineffective when she failed to request an instruction that the doctrine of transferred intent applied to shooting in self-defense. (See pp. 18-21, *supra*)

(d) Trial counsel negligently failed to object to the prosecutor's inaccurate argument regarding drive-by murder. (See pp. 14-16, *supra*)

MEMORANDUM AND POINTS OF AUTHORITIES

FROM PETITION FOR WRIT OF HABEAS

CORPUS

# IN THE SUPREME COURT

## FOR THE STATE OF CALIFORNIA

In re IVAN KILGORE                    No. ___ Case no.

On Habeas Corpus.                     (Request for Review pending in
                                       People v. Kilgore, case no. ___)

                                       (Court of Appeal case no.
                                       A ___ [CAPITAL])

Alameda County Superior Court No. ___
Kenneth King, Superior Judge.

## PETITION FOR WRIT OF HABEAS CORPUS

STEPHEN B. BEDRICK
Attorney at Law
State Bar # 058873
1970 Broadway, Suite 1200
Oakland, CA 94612
(510) 452-1900

Attorney for Defendant, Appellant, and
Petitioner IVAN KILGORE

(by appointment of the Court of Appeal
under the FDAP independent case system)

## PETITION FOR WRIT OF HABEAS CORPUS

To the Chief Justice and Associate Justices of the California
Supreme Court:

Petitioner Ivan Kilgore hereby petitions for a writ of habeas corpus
and by this verified petition sets forth the following facts and causes for the
issuance of said writ:

I.

Defendant and Petitioner Ivan Kilgore (Petitioner) was convicted on
March 24, 2003 in Alameda County Superior Court, case #A141033, of one
count of murder 1°, Penal Code §187, with the special circumstance of
shooting from a motor vehicle with intent to kill, Penal Code §190.2(a)(21),
and was sentenced to life without parole. He is confined in Folsom Prison,
in custody of the director of the California Department of Corrections.

On August 30, 2006, the Court of Appeal affirmed Petitioner's
conviction on direct appeal, People v. Kilgore, case no. A106142. It also
denied by order without opinion his habeas corpus petition alleging
ineffective assistance of counsel. In re Kilgore, case no. A110317. The
Court of Appeal's opinion on direct appeal and order on habeas corpus are
appended to the Petition for Review which is filed concurrently with this
habeas corpus petition.

II.

Petitioner's imprisonment is illegal and contrary to the 5th, 6th, and
14th Amendments of the United States Constitution, and by Art. I, §§15, 16
of the California Constitution, in that Petitioner was denied the due process
of law, the right to present evidence on his own behalf, the right to confront
and cross-examine witnesses, and the right to be defended by competent
counsel, in the following manner:

III.

Petitioner was convicted of shooting from a Cadillac automobile and killing William Anderson (William), while William was standing on the corner, next to Terry (or "T") Dandy.

### IV.

William, Dandy, and Petitioner knew each other. William and Dandy were friends. They had beaten and robbed Petitioner more than once.

### V.

Raymond Jones was driving Petitioner's Cadillac. Petitioner was a passenger in the back seat. The car pulled up at 30th and San Pablo in Oakland. Jones thought Petitioner was going there to have a fistfight with Dandy or William.

### VI.

Petitioner called out a greeting from the car to William and Dandy.

### VII.

Dandy responded by pulling a handgun and firing one shot at Petitioner. That shot missed both Petitioner and the car.

### VIII.

Petitioner fired back in self-defense at Dandy. Petitioner fired one shot with a shotgun. The shot missed Dandy, but struck and killed William.

### IX.

Petitioner's homicide of William was justified by the combination of the doctrine of self-defense and doctrine of transferred intent

### X.

Petitioner was represented at trial by court-appointed counsel, attorney Deborah Levy of Oakland. Trial defense counsel Levy rendered ineffective assistance of counsel (IAC) within the meaning of People v. Pope (1979) 23 Cal.3d 412 and Strickland v. Washington (1984) 466 U.S. 668 in the following ways:

XI.

One of the major issues in this case was whether Petitioner's testimony in a 1997 Oklahoma homicide was admissible to impeach him if he testified. Petitioner was convicted of the crime of manslaughter in Oklahoma in 1997. The trial court here found that crime was the equivalent of involuntary manslaughter in California (in 1997) under the theory of imperfect self-defense. The trial court excluded evidence of that conviction, because it was not a crime of moral turpitude. The trial court ruled, however, that Petitioner's testimony from that case could be admitted here for impeachment if Petitioner testified at trial.

XII.

Trial counsel was ineffective when, in her motion to exclude Petitioner's testimony in the Oklahoma manslaughter case, she made an erroneous offer of proof that Petitioner would testify here that Dandy was reaching for a gun. Instead, the offer of proof should have been that Petitioner would testify that Dandy actually shot at him. Petitioner had previously told Ms. Levy that Dandy had actually fired a gun at him.

XIII.

That inaccurate offer of proof caused the trial court to disbelieve the corrected offer of proof that Petitioner would testify that Dandy actually fired one shot at him.

XIV.

That inaccurate offer of proof caused the trial court to think that the Oklahoma case was similar to the instant case.

XV.

That inaccurate offer of proof caused the trial court to rule, incorrectly, that Petitioner's testimony in the Oklahoma case would be admissible as impeachment in this trial under Evid. Code §1101(b) if

Petitioner testified.

## XVI.

Trial counsel was ineffective when she failed timely to obtain a ruling prior to trial regarding the admissibility of Petitioner's testimony from the Oklahoma case, and/or when she failed to move for a continuance to obtain such a ruling pre-trial. Instead, that ruling did not come until three-quarters of the way through trial.

## XVII.

Trial counsel was ineffective when she switched defense theories midstream from self-defense to reasonable doubt as to identity.

## XVIII.

Trial counsel rendered ineffective assistance when she advised and caused Petitioner not to testify in this trial.

## XIX.

Trial counsel ineffectively opened the door to admission of bad character evidence that Petitioner had been convicted of a felony, and thereby destroyed her own strategy of not having Petitioner testify in order to keep the Oklahoma case from the jury.

## XX.

Trial counsel was ineffective when she failed to move that the tape-recorded statement by Matthew Bryant be redacted to eliminate his statement that he thought Petitioner was a drug-dealer.

## XXI.

Trial counsel was ineffective when she failed to call Petitioner's sister Halevchia Osborne and Petitioner's girlfriend as witnesses to show that William Anderson and his friend "T." Dandy were violent.

## XXII.

Trial counsel was ineffective when she failed to request an

instruction that the doctrine of transferred intent applied to a shooting in self-defense.

## XXIII.

Trial counsel was ineffective when she failed to object to the prosecutor's inaccurate argument that first degree drive-by murder was a strict liability crime.

## XXIV.

There is a reasonable probability that the result of this trial would have been more favorable to Petitioner if trial defense counsel had acted competently in one or more of the instances described above.

## XXV.

Petitioner has no other plain, speedy, or adequate remedy at law, in that the present petition is based, in part, upon information contained in this verified petition and upon the declarations of Petitioner Ivan Kilgore, Halevchia Osborne (Petitioner's sister), Betsy Varela (Petitioner's girlfriend), and attorney Harold Rosenthal, which were not before the trial court, and upon other information not timely presented to the trial court. Consequently, the issues presented here are only fully reviewable by consideration of the facts presented in this pleading and the attached declaration.

## XXVI.

Although in the typical habeas corpus case alleging IAC a petitioner would supply a declaration from trial counsel, explaining the presence or absence of any strategic reasons for the challenged acts or omissions, no such declaration is supplied or needed here. Trial counsel Deborah Levy testified on two separate days before the trial court on the motion for new trial. (RT 937-955, 975-1033) That testimony sets forth her reasons for her acts and omissions. Thus, her reasons do not need to be explicated any

kilgore supreme court habeas.wpd                    5

further by declaration.

## XXVII.

No other applications, petitions, or motions have been filed in regard to the matters complained of, except as stated herein. This petition is addressed to this Court's original habeas corpus jurisdiction because Petitioner has no other remedy at the trial court or at this Court.

## XXVIII.

This petition is timely filed, insofar as it is filed concurrently with the Petition for Review.

## XXIX.

Petitioner incorporates in this petition the declarations of Petitioner Ivan Kilgore as exhibit 1, Halevchia Osborne as exhibit 2, Betsy Varela as exhibit 3, and attorney Harold Rosenthal as exhibit 4, the originals of which were filed at the Court of Appeal in case no. A110317.


## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Consolidate this habeas corpus proceeding with the Petition for Review pending before this Court, People v. Kilgore, case _____ , or consider it concurrently;

2. Take judicial notice of the record and briefs in the direct appeal in People v. Kilgore, Court of Appeal case A106142, and in the habeas corpus petition at the Court of Appeal in case no. A110317, which records are referred to herein to clarify and amplify various allegations;

3. Incorporate by reference the entirety of Appellant's Opening Brief and Appellant's Reply Brief in case A106142 and the habeas corpus petition, case no. A110317;

4. Issue a writ of habeas corpus, or order to show cause, to the

Director of the Department of Corrections to inquire into the legality of
Petitioner's incarceration; and

    5. After hearing, issue an order granting Petitioner a new trial and/or
such further relief as is appropriate in the interests of justice.

DATED: September 20, 2006

<div align="right">

Respectfully submitted,

STEPHEN B. BEDRICK
Attorney for Appellant and Petitioner

</div>

## VERIFICATION

STEPHEN B. BEDRICK declares and states:

    I am the court-appointed attorney for Petitioner in this matter and in
his direct appeal. I am authorized to bring this petition. I make this
verification on Petitioner's behalf, because Petitioner is unable to make this
verification because he is incarcerated in state prison, in a county other than
that where I maintain my office; because I have more particular knowledge
than he concerning most of the factual and legal matters set forth herein;
and because the allegations herein all relate to the conduct of the prosecutor
and/or Petitioner's trial counsel, as to which I am qualified to state an
opinion as an attorney, while Petitioner, as a layperson, is not so qualified.

    I have read the foregoing petition for writ of habeas corpus and
verify that all the factual allegations contained therein are supported by the
record on appeal in case no. A106142 and case no. A110317, and by the
attached exhibits.

    I declare under penalty of perjury that the foregoing is true and
correct, except as to allegations stated on information and belief, and as to
those allegations, I believe them to be true.

    Executed this 20th day of September, 2006 at Oakland, California.

<div align="right">

STEPHEN B. BEDRICK
Attorney for Petitioner

</div>

I.

## TRIAL DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL

Each and every aspect of ineffective assistance of counsel (IAC) alleged herein violated Petitioner's 6th and 14th Amendment rights to competent counsel. Strickland v. Washington (1984) 466 U.S. 668.

**A. Trial Counsel Was Ineffective When She Made an Erroneous Offer of Proof that Petitioner Would Testify that Dandy Was Reaching for a Gun; Instead the Offer of Proof Should Have Been that Petitioner Would Testify that Dandy Actually Shot at Him**

### 1. The trial court's ruling on the motion for new trial does not limit this Court's review of this habeas corpus petition

Although the trial court reviewed allegations of IAC when it denied the motion for new trial, that ruling does not restrict this petition for several reasons: (1) The trial court did not make any factual findings warranting any deference, when it ruled on the motion for new trial. (2) The issue of whether trial counsel rendered prejudicial IAC, warranting a new trial, is a question of law, which an appellate court reviews *de novo.* People v. Taylor (1984) 162 Cal.App.3d 720, 724. Respondent appears to agree. (See Respondent's Brief (RB) 36.) (3) Many aspects of this petition depend on the declarations of Appellant Ivan Kilgore, his sister, and his girlfriend, which were not before the trial court. (4) Many of these allegations of IAC depend on the appended declaration of expert counsel Harold Rosenthal, which was not before the trial court. (5) Several of the issues raised herein were not presented to the trial court at all. (6) Because this petition argues cumulative IAC and cumulative prejudice, all such allegations need to be reviewed *de novo* because of this additional evidence and argument.

## 2.   The inaccurate offer of proof

In her initial written motion to exclude evidence of the Oklahoma case, trial counsel Levy presented a written offer of proof, prior to trial, that Petitioner would testify that he saw Dandy "raise his shirt and pull out a weapon." (CT 290) That offer of proof presented the defense of imperfect self-defense. In re Christian S. (1994) 7 Cal.4th 768.

Trial counsel later admitted that this offer of proof was inaccurate, because Petitioner told her that Dandy actually fired at him, and that Petitioner fired back, in actual self-defense. (RT 629-633) Trial counsel thus admitted that she made a mistake, without any strategic basis. (RT 629-633) If trial counsel had presented the correct facts in her initial offer of proof as Petitioner had described to her, that would have presented a different defense, namely, complete self-defense.

The presentation of an inaccurate offer of proof constitutes ineffective assistance of counsel (IAC). People v. Ledesma (1987) 43 Cal.3d 171, 207 (IAC for failure to investigate facts and for failure to present proper defense).

This instance of IAC was prejudicial as follows: If Petitioner had testified here, as counsel stated in the initial, inaccurate offer of proof, that he thought that Dandy was merely reaching for a gun, that would have been similar to his testimony in his Oklahoma case that he thought that victim Conan Emery was reaching for a gun. This degree of alleged similarity between two scenarios of imperfect self-defense would probably have rendered the Oklahoma testimony admissible under Evid. Code §1101(b), because imperfect self-defense involves a mistake of fact, which is a factor authorizing admission of priors under §1101(b).

Ms. Levy later tried to correct the erroneous offer of proof to

kilgore supreme court habeas.wpd          9

accurately state Petitioner's proposed testimony, namely, that Dandy actually fired a shot at Petitioner.[1] (RT 629-633) That would have substantially changed the §1101(b) analysis performed by the trial judge here, for two reasons. First, complete self-defense presented a different defense than that which Petitioner raised in the Oklahoma case. Second, complete self-defense does not involve mistake, or any other §1101(b) factor. Accordingly, nothing in an imperfect self-defense case was relevant to §1101(b) factors in a self-defense case.

However, the trial court discounted the restated offer of proof, and ruled against the defense argument based upon it, because it was highly suspicious of trial counsel's change in story.

> THE COURT: what I'm suggesting is that the defendant's explanation of these is similar enough, and, as <u>Wigmore</u> apparently stated, the occurrences are unusual enough with their repetition, they become less believable.

> MS. LEVY [trial defense counsel]: What I'm saying, the only repetition is somebody died. That's it.

> THE COURT: No, it's not. The other similarity is that following the death, the defendant apparently said, "I thought he was going for a gun." (RT 629:4-13)

> <div align="center">* * *</div>

> THE COURT: I guess part of the concern is – and I haven't read your papers again lately -- this is a little different from what you told me before.

> MS. LEVY: It is. In my papers, there is a word missing on my -- I didn't number my pages. It's the last page, the top line, I left out "and shot" after "pulled out the weapon." And that is my mistake, and, frankly, until I was talking to Mr. Kilgore closely this morning, I had not noticed that. (RT 629:6-630:6)

---

[1]Petitioner ultimately testified on the motion for new trial that Dandy shot at him first. (RT 1046)

* * *

And I'm sorry, your Honor. That is very unclear there, and it sounds like unreasonable self-defense in the moving papers. . . .

THE COURT: Yes. The problem is, it keeps fluctuating here, and I've been looking and literally doing hours of research based on one theory, and now at 12:25 [p.m.] I am hearing a different theory. (RT 630:27-631:6)

* * *

MS. LEVY: Your Honor, if I might, Mr. Kilgore is insistent that I inform the Court that he had told me his defense, and when I wrote this motion, when he read it, he had told me to correct it, and it was the defense attempt perhaps to go either way that it came out the way it was written. But Mr. Kilgore wanted me to tell you that.

THE COURT: Anybody have an additional plot they want to put on the record? (RT 632:26-633:6)

The trial court's final sarcastic comment on this issue "Anybody have an additional plot they want to put on the record?" is a strong indication that the trial court refused to honor the changed offer of proof simply because it was changed. This sarcastic comment reinforces Petitioner's argument that trial counsel's negligent failure to state the offer of proof correctly, from the outset, severely prejudiced Petitioner's position on this point.

If trial counsel had correctly stated the offer of proof from the outset, that clearly would have made a difference, because the trial court conceded the issue regarding the Oklahoma case was "a close call." (RT 634) If that were done correctly, there is a reasonable probability that the trial court would have ruled that the Oklahoma imperfect self-defense testimony was not admissible under §1101, because it was so different than the actual self-defense testimony which Petitioner intended to give here. Under such circumstances, the Oklahoma testimony would have been excluded, and Petitioner would have been able to testify without the jury learning of the

facts of the Oklahoma case. As shown above, Petitioner's self-defense case would have been much stronger if he testified. Accordingly, the IAC in failing to state the offer of proof correctly at the outset was prejudicial.

## B. Trial Counsel Was Ineffective When She Failed Timely to Obtain a Ruling Prior to Trial Regarding the Admissibility of the Oklahoma Testimony

### 1. Because there was no pre-trial ruling, defense counsel was not able to prepare her case properly

Trial defense counsel failed to obtain a ruling prior to trial as to whether the Oklahoma case would be admissible. Instead, the trial court did not rule, until three-quarters of the way through trial, that the Oklahoma testimony would be admissible if Petitioner testified.

A defendant has a right to a pre-trial ruling on an issue as important as whether he can be cross-examined on his testimony in a prior homicide. Evid. Code §402(b); People v. Simon (1986) 184 Cal.App.3d 125, 131. Competent counsel does not begin a trial without investigating and knowing what prior testimony the prosecutor can use to cross-examine the defendant.

The failure to seek such a ruling prior to trial, rather than mid-trial, was IAC, because no reasonably competent defense counsel would begin a case without knowing whether the defense was self-defense or identity. Although in some cases multiple defense theories could be developed or presented in the alternative, that was not the situation here. The defense that "I shot in self-defense" and the defense that "I wasn't there" are totally self-contradictory. No reasonably competent attorney could simultaneously present both of those defenses to the jury, because the jury would invariably disbelieve both.

The facts underlying trial counsel's failure timely to obtain a pre-trial ruling on this point are as follows: On February 24, 2003 the case was

called for trial.[2] At that time Petitioner presented his initial written motion to exclude the Oklahoma conviction. (CT 288)

The parties then believed that the Oklahoma conviction resulted from a plea. The parties began to litigate the sole question of whether the conviction was admissible. (CT 290)

The next day prosecutor Stallworth stated that he just learned from the Oklahoma prosecutor that there was a jury trial in that case, not just a plea, and that the jury found first degree manslaughter. He was requesting the transcript of Petitioner's Oklahoma testimony. (RT 19) That ultimately allowed the prosecutor to argue, in the alternative, even if the conviction were not admissible, that the testimony was admissible.

Trial defense counsel failed to move to continue the trial date in order to allow time to obtain, prior to trial, the transcript of Petitioner's Oklahoma testimony. That failure constituted IAC. Competent defense counsel would not begin a trial without possessing a defendant's prior testimony with which he could be impeached.

Penal Code §1054.1(b) requires the prosecutor, as part of pre-trial discovery, to disclose "statements of all defendants." That was not done here. When, as here, the prosecutor fails to disclose the defendant's statement by the date set for trial, competent defense counsel must move to continue the trial. Ms. Levy failed to do so.

It took close to two weeks to obtain the Oklahoma trial transcript. It was not obtained until sometime after Thursday, March 6, 2003 (RT 40, 51, 53, 58) and after jury selection had been completed. However, on March 6 the prosecutor conceded, and the trial court ruled, that the conviction itself

---

[2]Petitioner withdrew his time waiver on January 13, 2003. The 60-day period for trial remained open until March 14, 2003, some three weeks thence. (CT 283) The Oklahoma transcript was made available by then. In any event, the time waiver could have been reinstated.

was not admissible. The trial court had not yet ruled whether the testimony was admissible, because the transcript of Petitioner's Oklahoma testimony had not yet arrived. (RT 50, 53)

The prosecution presented its case-in-chief from March 10 to March 13, 2003.

The trial court did not rule until Friday, March 14, 2004 that Petitioner's Oklahoma testimony was admissible. That was three-quarters of the way through trial, and after the prosecution's case was virtually completed. (RT 634) This ruling cut the legs out from under Petitioner's self-defense case, because trial defense counsel then advised and caused Petitioner not to testify.

Worse, trial defense counsel then decided, over the weekend, to change her entire defense strategy, from self-defense to reasonable doubt as to identity. (RT 1004-1005, 1018)[3]   As shown above, this eleventh-hour change in strategy severely damaged the defense.

Trial counsel should have obtained a ruling prior to trial as to whether the Oklahoma testimony was admissible. People v. Simon, supra. She should have had a pre-trial hearing, pursuant to Evid. Code §§402 and 403, as to exactly what happened in Oklahoma. She should have then presented an accurate offer of proof as to Petitioner's proposed testimony if

---

[3]As noted, trial counsel testified on Petitioner's motion for new trial, based on IAC, and explained all of this. (RT 937-955, 975-1033)

Although in the typical habeas corpus case alleging IAC a petitioner would supply a declaration from trial counsel, explaining the presence or absence of any strategic reasons for the challenged acts or omissions, no such declaration is supplied or needed here. Trial counsel Deborah Levy testified on two separate days before the trial court on the motion for new trial. (RT 937-955, 975-1033) All her reasons for her acts and omissions were adequately explained in that testimony.

the Oklahoma case were excluded. See People v. Simon, supra. She did none of that. And she never even considered doing that. (RT 1021)

By failing to obtain such a pre-trial ruling, trial counsel was forced to litigate with one hand tied behind her back. Did she have a self-defense case or a reasonable-doubt-as-to-identity case? She did not know. Did she have a self-defense case with Petitioner's testimony, or without Petitioner's testimony? She did not know.

Because trial defense counsel did not obtain a timely pre-trial ruling on this crucial point, she was not prepared to go to trial. She should have moved for a continuance until she knew whether the Oklahoma testimony would be admissible, but she failed to move for any such continuance. Accordingly, she rendered IAC by proceeding to trial without being properly prepared, and without knowing what her case would be.[4] People v. Pope, supra, 23 Cal.3d at 427 (IAC for failure to make pre-trial motions).

According to the opinion of Appellant's Strickland expert, attorney Harold Rosenthal of San Francisco, trial defense counsel rendered ineffective assistance by such failure. (See declaration of Harold Rosenthal, Esq., exh. #4)

## 2.    Trial Counsel Was Ineffective When She Failed to Move to Redact Improper Prejudicial Matter from the Oklahoma Transcript

Several of the arguments in this habeas corpus petition contain similar presentation of arguments made in the AOB. However, other

---

[4]If part of the problem was the withdrawal of the time waiver, then trial counsel rendered IAC when she failed to reinstate the time waiver so that she could obtain a ruling regarding the Oklahoma testimony before trial began. Strickland v. Washington, supra. Trial counsel never asserted in her two days of testimony on the motion for new trial that reinstating the time waiver would have been a problem.

arguments, including I(B)(2) (this one), I(B)(3), and I(D) are new, because they heavily depend upon Petitioner's declaration, attached as Exh. 1.

As shown in Petitioner's declaration, trial counsel urged and advised Petitioner not to testify. Trial counsel Levy told Petitioner that, if he were to testify, all of his testimony in his Oklahoma manslaughter trial would supposedly be admitted. That included not only the story of Petitioner shooting Emory in imperfect self-defense, but also a large quantity of prejudicial material which should not have been admissible in this case under Evid. Code §1101(b), even if the evidence of the actual shooting were admissible. That excludable material included: (i) evidence that Petitioner owned several semi-automatic handguns in Oklahoma; (ii) evidence that in Oklahoma Petitioner traded guns for items such as motorcycles and jewelry; (iii) evidence that Petitioner associated in Oklahoma with people in gangs; (iv) evidence that Petitioner allegedly had personal involvement in a gang in Oklahoma; this was damaging for several reasons, including that there was no evidence whatsoever that Petitioner had any gang involvement of any kind in Oakland; (v) further, the Oklahoma prosecutor accused Petitioner in cross-examination of possessing a "machine gun," and directly accused Petitioner of being a member of an Oklahoma gang called the "Eight Trey Crip." Petitioner denied these allegations, but the sting of those accusations was still present.

Petitioner explains in his declaration (Exh. 1) that he wanted to testify, but that he accepted trial counsel's advice that he not testify. Petitioner explains that a major factor in his decision not to testify was trial counsel's opinion that all this extraneous material would be admitted. That extraneous material would have been unduly prejudicial, over and above any damage which would have arisen from the jury hearing of the Oklahoma homicide.

Trial counsel rendered ineffective assistance when she failed to make a motion under Evid. Code §352 to redact the Oklahoma testimony to exclude this extraneous and prejudicial material. People v. Fosselman (1983) 33 Cal.3d 572; Strickland v. Washington, supra. People v. Ledesma, supra. There could not have been any valid tactical reason not to try to exclude it. The failure to make such a motion may have resulted from counsel's failure to obtain a timely ruling on the Oklahoma testimony until one court day before the defense was to begin its case. However, while the timing may be an explanation, it is not an excuse.[5]

In People v. Hines (1964) 61 Cal.2d 164, 174-175 (disapproved on another point in People v. Murtishaw (1981) 29 Cal.3d 733, 774-775, n. 40) the Supreme Court found error when the trial court allowed the jury to hear a taped statement, without deleting portions which referred to unrelated criminal transactions. As the court held in People v. Guizar (1986) 180 Cal.App.3d 487, 492, "It is inconceivable to us that defense counsel did not object to the introduction of this portion of the tape and transcript on the ground that it was more prejudicial than probative." In the same way it is inconceivable that trial counsel did not move to redact all the inadmissible material from the Oklahoma transcript.

Under such circumstances, a motion to exclude this extraneous and damaging evidence would have succeeded. People v. Hines, supra.

This aspect of IAC was prejudicial here. It rendered Petitioner's waiver of his right to testify unknowing, because, as shown below, when he made that decision, counsel caused him to believe that all those extraneous portions of the Oklahoma testimony would be admitted, if he testified.

_____

[5]See sec. I(B)(1) where Petitioner contends that trial counsel rendered IAC by not continuing the trial until she had such a ruling.

### 3. Because there was no pre-trial ruling regarding the Oklahoma testimony, Petitioner's waiver of his right to testify was unknowing, and thus, invalid

As shown in Petitioner's declaration (Exh. 1) Petitioner wanted to testify on his own behalf, but he waived that right based on advice of counsel. Petitioner asserts here that any waiver was void, because that advice was ineffective.

A defendant has 5th, 6th, and 14th Amendment rights to testify on his own behalf, even when trial counsel does not want him to testify. Rock v. Arkansas (1987) 483 U. S. 44, 49; 97 L.Ed.2d 37; People v. Robles (1970) 2 Cal.3d 205, 214.

Trial defense counsel has the obligation to give competent advice before a defendant waives a trial right, such as the right to testify. See, e.g., In re Alvernaz (1992) 2 Cal.4th 924, 934.

Trial counsel's failure to obtain a ruling regarding the Oklahoma testimony until one court day before the start of the defense case prevented her from giving competent advice on, and prevented Petitioner from making a knowing, and intelligent decision on, whether or not to waive his right to testify. That failure constituted IAC. People v. Pope, supra; In re Alvernaz, supra.

A waiver is not valid unless it is knowing and intelligent (as well as voluntary). Johnson v. Zerbst (1938) 304 U. S. 458, 464. Petitioner's waiver of his right to testify was not knowing and intelligent for multiple reasons.

First, because the ruling on the Oklahoma testimony came so late in the trial, defense counsel failed, probably because of lack of time, to file a motion to redact irrelevant and unduly prejudicial evidence from the Oklahoma testimony. For example, there was testimony as to alleged gang membership and as to multiple gun usage, which testimony should not have

been admissible here under any circumstances. That testimony should have been redacted on prior motion, but was not. (Petitioner addresses this issue above. See sec. I(B)(2).)

This failure made Petitioner's waiver of his right to testify unknowing and unintelligent. It was unknowing and unintelligent because, when Petitioner decided not to testify, he did not know what portions of the Oklahoma testimony would be admitted, and which portions would not. Thus, he was unable to know the full weight of the disadvantage stemming from the Oklahoma testimony. Therefore, he was unable fairly to weigh or compare the advantages of testifying against these unknown disadvantages.

Second, because the ruling regarding the Oklahoma case came so late in the trial, Petitioner and trial counsel lacked adequate time to do additional legal research, or to do additional factual investigation, on how to develop or present the defense, once the trial court ruled that the Oklahoma testimony would be admitted if Petitioner testified. (See Petitioner's declaration, exhibit 1.) Because they lacked such time, Petitioner's waiver was not knowing and intelligent. Because the waiver was not knowing and intelligent, Petitioner was deprived by this IAC of his 5th Amendment, 6th Amendment, and 14th Amendment rights to testify in his own behalf. Johnson v. Zerbst, supra. In In re Alvernez, supra.

## C. Trial Counsel Was Ineffective When She Switched Defense Theories Midstream from Self-defense to Reasonable Doubt as to Identity

### 1. Facts

Trial counsel Levy began this case as a self-defense case, and she continued to present it as self-defense case throughout the prosecution's

case, as follows: (1) In her first motion to exclude the Oklahoma prior, filed February 24, 2003, she presented a written offer of proof that, if the prior were excluded, Petitioner "would testify that . . . he saw . . . Dandy raise his shirt and pull out a weapon. He only shot in self-defense . . . ." (CT 290) (2) In her February 25, 2003 "Proposed Jury Questionnaire Questions" she requested that the jury be asked "Have you ever been in fear of being assaulted or killed?" (CT 301) (3) In her March 10, 2003 cross-examination of officer Festag, she asked if he or anyone else found a weapon on William Anderson. (RT 129-130) (4) In her March 10, 2003 cross-examination of officer Vigilienzone, she asked whether he checked for evidence that William had fired a weapon. (RT 147-148) (5) In arguing on March 11, 2003 to introduce evidence of William's drug-dealing, she stated that she was presenting the defense of reasonable self-defense. (RT 424-425) (6) In her March 14, 2003 argument in opposition to the introduction of the Oklahoma testimony, she repeatedly stated that, if the Oklahoma prior were excluded, Petitioner would testify that Dandy shot at him, that Petitioner fired back, and that the defense here was actual self-defense. (RT 620, 622, 629-630) (7) In her March 17, 2003 "Defendant's Proposed Jury Instructions," she asked that the jury receive the following self-defense instructions: "CALJIC 5.12, 5.13, 5.15, 5.16, 5.17, 5.50, 5.51." (CT 341) (8) At the jury instruction conference on March 18, 2003 Ms. Levy argued for instructions to be given on self-defense. (RT 720-727)

However, things changed after the trial court ruled on March 14, 2003, three-quarters of the way through trial, and virtually at the end of the prosecution's case, that the Oklahoma testimony would be admissible. Up until that point, stated Ms. Levy, "it was the defense wish to have Mr. Kilgore testify." (RT 707) However, after that ruling, Ms. Levy decided that Petitioner would not testify. (Id., RT 1004) She largely abandoned the

self-defense argument, and relied almost totally upon reasonable doubt as to identity, instead.

Ms. Levy testified as a witness on Petitioner's motion for new trial, which was based on allegations of IAC. She stated that she decided not to have Petitioner testify at all, and advised and caused him not to testify, once the trial court ruled the Oklahoma testimony admissible for impeachment, because she thought the Oklahoma testimony was too damaging. She thought it was damaging because it informed the jury that Petitioner had shot and killed someone. She also thought it was damaging because she believed the testimony reflected poorly on Petitioner's credibility. However, she also believed that she could not present a self-defense case without Petitioner's testimony. Thus, when she decided not to have Petitioner testify, she also decided to abandon self-defense, and to rely exclusively upon reasonable-doubt-as-to-identity defense.[6] (RT 1004-1005, 1018, 1029-1030)

In Ms. Levy's one-page opening statement, which she had reserved, until the beginning of the defense case, and which she gave on Monday, March 17, 2003, she said nothing about self-defense. She merely said "the evidence . . . is of a nature that you necessarily must have a doubt." (RT 658)

Ms. Levy presented four defense witnesses for a total of 45 transcript pages of defense testimony. (RT 659-703) Petitioner did not testify. Ms. Levy told the trial court that Petitioner wanted to testify, but

in view of the Court's ruling, counsel and Mr. Kilgore met over the weekend, and he will not be testifying. And I just would indicate

---

[6]When Ms. Levy testified as a witness on the motion for new trial (RT 937-956, 975-1042), she explained the strategic bases for these acts and decisions.

for the record it is based solely on the issue of the Oklahoma prior coming in. (RT 707)

In Ms. Levy's March 19, 2003 jury argument, more than 95% of her argument was that there was reasonable doubt whether Petitioner was the shooter. She did contend that Terry Dandy fired the first shot. (RT 805) However, at no point in her jury argument did she contend that Petitioner fired in self-defense. Indeed, the word "self-defense" does not appear once in her 27-page jury argument, even though the jury received several standard instructions on self-defense. (CT 400-403)

In Ms. Levy's jury argument she first argued "Mr. Stallworth [the prosecutor] in his opening said this is not a who-done-it. You bet it is. . . . We don't know who fired out of the Cadillac." (RT 802) Then she challenged Shanae's identification of Petitioner as the shooter in the back seat of the Cadillac. (RT 804-805) She criticized officer Green for not conducting a gunshot residue test on the rear seat of Petitioner's Cadillac. She argued that the fatal shot was not fired from the Cadillac. (RT 808) She denied that Petitioner was the shooter. (RT 809) She argued that Raymond Jones lied when he testified that Petitioner was the shooter. (RT 812) She challenged Bianca Moore's identification of Petitioner as the shooter. (RT 814) She argued difficulties with eyewitness testimony. (RT 820) The she argued that prosecutor "Stallworth cannot put [Petitioner] Ivan Kilgore in that car." (RT 826) She argued in conclusion that "it has not been proven beyond a reasonable doubt that Ivan Kilgore was the person with the weapon in the back seat of that Cadillac." (RT 817, 827)

## 2. Trial counsel rendered IAC when she switched defenses in mid stream

Trial defense counsel violated the classic aphorism against switching horses in midstream when she changed the defense two-thirds of the way through trial from self-defense to reasonable doubt as to identity.

On the record here, no competent counsel would advise a defendant that he would have any reasonable chance of succeeding with an identity defense. On this record, there was not even the proverbial "snowball's chance" of an identity defense succeeding. Accordingly, trial counsel rendered IAC when she switched strategies in mid-stream.

If, on the other hand, trial counsel had advised or allowed Petitioner to testify, he would have told the jury, as he told the trial judge, under oath, on his motion for new trial, that Dandy fired one shot at him, and that Petitioner fired back in self-defense, but struck William instead. Thus, there was a reasonable probability of a better result within the meaning of Strickland, if Petitioner had testified to shooting in self-defense.

As shown in Petitioner's declaration (exhibit 1 to PHC), Petitioner had a solid self-defense case if he testified at trial, as he testified at the post-trial hearing, that he fired only after Dandy fired and shot at him. That self-defense case was supported by independent evidence, including (i) Dandy's flight from the scene; (ii) Bianca's and Shanae's deliberate concealment of Dandy's physical description and identity from the police; (iii) Mary Loggins' testimony that she saw a man running away with his hands and arms close to his body, as if he had something under his jacket; this testimony is consistent with Dandy fleeing with a concealed gun; (iv) the statements from the multiple eyewitnesses -- both Mary Washington and other persons who telephoned to the police and to officer Greene -- that they heard more than one shot; (v) the absence of any evidence that Petitioner fired a second shot; and (vi) Bianca's testimony at the PX, she probably would not tell anyone if Dandy did fire a shot at Petitioner.

Petitioner's self-defense case would have been much stronger if he testified, than if he did not testify. Thus, trial counsel rendered IAC when she failed to present a self-defense case and when she advised Petitioner not

to testify. Without his testimony, there was not much of a self-defense case. Without self-defense, there was no viable defense at all.

Respondent claimed at the Court of Appeal that Petitioner's proposed testimony that "Dandy fired a shot at him from point blank range, but was unable even to hit his car, an older model Cadillac no less, is simply absurd." (Opp. Br. 21) Respondent's sarcasm and hyperbole is poorly taken. Petitioner was sitting in the back seat of the Cadillac, which was moving while preparing to park. The rear window was open 8." Only Petitioner's head was visible. If Dandy shot at Petitioner's head in the moving car and missed because the shot was high merely by 8" - 10," then the bullet would have passed over the roof of the Cadillac and missed everything.[8]

There was no forensic evidence disputing this proposed testimony. There was no evidence that the police searched for a bullet across San Pablo Avenue, where it would have gone, if it were fired over the Cadillac.

Although there was some evidence adverse to self-defense, it was not very strong. For example, although William's and Dandy's girlfriends testified that neither man had a weapon, their testimony is suspect, given the fact that the two women lied to the police in concealing Dandy's identity, so he could escape. Further, at the preliminary examination, at page 33 of the cross-examination, William's girlfriend Bianca Moore was asked: "If Terry Dandy had in fact fired a shot at Mr. Kilgore's car, you," meaning Bianca Moore, "probably wouldn't tell us that, would you?" Bianca replied that she was "not sure." (See RT 999)

Nor would admission of the Oklahoma testimony have destroyed Petitioner's self-defense case. Although it would have presented bad character evidence that Petitioner shot Emory, nonetheless, defense counsel

<hr>

[8]The recoil of a handgun, in the hand of an inexperienced marksman, will often cause the shooter's hand to jerk upward, which will cause the shot to be high. (See ARB 34)

kilgore supreme court haheas.wpd          29

could have told the Alameda jury that the Oklahoma jury found Petitioner credible. It found him credible when it returned a manslaughter verdict, because that was the equivalent (in 1997) of involuntary manslaughter (under imperfect self-defense) in California, namely, a killing the honest but unreasonable belief in the need for self-defense.

Because of all these factors, no reasonable jury could have ruled in Petitioner's favor on an identity defense. However, a reasonable jury could have ruled in Petitioner's favor on actual self-defense. Thus, trial counsel's ineffectiveness was prejudicial, when she caused Petitioner not to testify, and not to tell the jury that he shot at Dandy in self-defense, but missed and struck William instead. Daniels v. Woodford, supra.

According to the opinion of Appellant's Strickland expert, attorney Harold Rosenthal of San Francisco, trial defense counsel rendered IAC by such failure. (See declaration of Harold Rosenthal, Esq., exh. #4)

**E. Trial Counsel Negligently Opened the Door to Bad Character Evidence that Petitioner Had Been Convicted of a Felony, and Thereby Destroyed Her Own Strategy of Not Having Petitioner Testify in Order to Keep the Oklahoma Case from the Jury**

Ms. Levy called as a witness Kevin Tomlinsonn, the owner of the apartment building where Petitioner lived. Petitioner originally worked for the contractor who was rehabilitating this building. Petitioner subsequently became a tenant. Petitioner performed maintenance work and managerial tasks at the building. Petitioner told Tomlinsonn that he had been robbed and assaulted. He saw Petitioner with cuts and bruises on his face, and with a black eye. Petitioner reinforced the front door of his apartment to protect himself from assaults.

///

///

///

Trial counsel elicited good character evidence from Tomlinsonn that Petitioner was reliable and trustworthy. (RT 403) Trial counsel elicited testimony that Petitioner had always been truthful with him. (RT 409)

Because trial counsel elicited this good character evidence, the prosecutor was allowed to elicit otherwise inadmissible bad character evidence, pursuant to Evid. Code §1102(b). The prosecutor was allowed to ask Tomlinsonn if he knew that Petitioner had a criminal history. (RT 419-420) The prosecutor was allowed to ask whether he would have hired Petitioner if he knew Petitioner "had a felony conviction in 1997." (RT 419-420) He was allowed to ask if he would have hired Petitioner as the manager of a building where children lived, if he knew that Petitioner had a "felony conviction." (RT 420) These questions clearly informed the jury that Petitioner had a felony conviction in 1997.

Trial counsel rendered ineffective assistance when she asked Tomlinsonn about Petitioner's reliability and credibility, because that opened the door, under Evid. Code §1102(b), for the prosecutor to ask him about Petitioner's 1997 felony conviction. People v. Pope, supra.

This IAC did substantial damage. Petitioner declined to testify at trial, to the great disadvantage of his self-defense case. Petitioner declined to testify for the sole purpose of keeping the jury from knowing of his Oklahoma manslaughter case. Yet this IAC, which allowed the jury to learn of the 1997 felony, largely undermined this strategy.

At the hearing on the motion for new trial, Ms. Levy acknowledged that her questions to Tomlinsonn "opened the door" for admission of Petitioner's felony conviction. (RT 985) She purported to explain why she took the risk of opening the door:

> While the damage was about Mr. Kilgore's prior felony, and when I had spoken to Tomlinsonn prior to his testifying, he indicated that he was aware that there had been something. He didn't know what

In People v. Hines (1964) 61 Cal.2d 164, 174-175 (disapproved on another point in People v. Murtishaw (1981) 29 Cal.3d 733, 774-775, n. 40) the Supreme Court found error when the trial court allowed the jury to hear a taped statement, without deleting portions which referred to unrelated drug transactions. As the court held in People v. Guizar (1986) 180 Cal.App.3d 487, 492, "It is inconceivable to us that defense counsel did not object to the introduction of this portion of the tape and transcript on the ground that it was more prejudicial than probative."

This aspect of IAC was prejudicial here. Evidence that Petitioner was a drug-dealer was damaging to his character. This damaging evidence tended to support the prosecution's theory that Petitioner, because he was a man of bad character, fired first, and without provocation. As in Guizar, "It is inconceivable . . . that defense counsel did not object to the introduction of this portion of the tape and transcript on the ground that it was more prejudicial than probative."

## G. Trial Counsel Was Ineffective When She Failed to Call Appellant's Sister and Appellant's Girlfriend as Witnesses to Establish the Violent Character of William Anderson and "T" Dandy

Appellant asked Ms. Levy to call as witnesses his sister, Halevchia Osborne (Halevchia) and his girlfriend, Betsy Varela (Betsy). Both Halevchia and Betsy would have testified that, during the week prior to this homicide, William Anderson, "T." Dandy, and two of their friends twice attacked Appellant, and robbed and pistol-whipped Appellant. Halevchia and Betsy would have testified that the beatings and robbery put Appellant and them in a state of great fear. (See Kilgore declaration, exh. 1, declaration by Halevchia, exh. 2, and declaration by Betsy, exh. 3.)

Their testimony would have assisted Appellant's defense of self-defense in many ways.

(1) It would have shown that Anderson and Dandy were violent, disliked Appellant, and possessed a handgun.

(2) The evidence that these men used a handgun when they pistol-whipped Appellant would have supported Appellant's credibility if he had taken the stand and testified that Dandy shot at him with a handgun.

(3) The testimony that these men were violent would have weakened and undercut the credibility of Bianca Moore and Shanae Anderson when they testified that they had never seen Dandy or William engage in violent or illegal activities.

(4) Undercutting these women's credibility was important, because they were the only witnesses who claimed that Dandy did not shoot at Appellant in the moments before Appellant fired back.

Ms. Levy decided not to call Halevchia and Betsy as witnesses when she advised and caused the defense to be changed from self-defense to identity.

Trial counsel rendered IAC when she failed to call Halevchia and Betsy to introduce this testimony in support of self-defense. Strickland v. Washington, supra.

According to the opinion of Appellant's Strickland expert, attorney Harold Rosenthal of San Francisco, trial defense counsel rendered ineffective assistance by such failure. (See declaration of Harold Rosenthal, Esq., exh. #4)

## H. Trial Counsel Was Ineffective When She Failed to Request an Instruction That the Doctrine of Transferred Intent Applied to Shooting in Self-defense

The doctrine of transferred intent applies to self-defense. If a defendant shoots at one man in valid self-defense, and aims poorly, and hits the man next to him instead, then self-defense applies as to the shooting of that victim, too. People v. Matthews (1979) 91 Cal.App.3d 1018, 1023.

evidence suggests that Dandy, standing next to William, had a pistol, and fired it at Petitioner, and then ran away.

Dandy fled to the Anderson family house. The police never found Dandy in time to search for a weapon or to conduct a gunshot residue test.

Bianca and Shanae intentionally concealed Dandy's identity from the police. Bianca and Shanae falsely identified Dandy as "Richard Davis," and falsely described "Davis" as standing 5'8" tall, when, in fact, Dandy was 6'3" tall. One reasonable inference as to why Bianca and Shanae, who was Dandy's girlfriend, concealed Dandy's identity, was to protect him from being arrested for shooting at Petitioner.

Dandy and William had previously assaulted, robbed, and beaten Petitioner on more than one occasion. One reasonable inference is that, on this day, Dandy upped the ante and fired a shot at Petitioner, which shot missed the Cadillac and flew over it.

If Dandy fired the additional shot at Petitioner, as this evidence suggested, and if Petitioner only fired after Dandy fired, then Petitioner was entitled to fire at Dandy in self-defense. If Petitioner fired at Dandy, and missed, but hit William, who was standing next to Dandy, then Petitioner's shooting of William would be unfortunate, but it would be excused under the doctrine of transferred intent.

Raymond Jones' testimony helps establish prejudice. (i) After Jones heard that Petitioner was robbed and beaten by William and his friends, Jones gave Petitioner a baseball bat for protection. But even then, according to Jones, Petitioner never said anything about getting a gun, or doing anything violent to William or Dandy. All Petitioner did was barricade the door of his apartment for protection. (ii) When Petitioner asked Jones to drive him to the corner where Petitioner saw William and Dandy, Jones assumed, from what Petitioner told him, that, at worst,

Petitioner was intending to have a fist fight with them. (iii) Jones did not see Petitioner bring any weapon into the car, nor did Jones hear any discussion about a weapon. (iv) When Jones, driving the Cadillac, arrived at the corner of 30th and San Pablo, he pulled up as if to stop and park, because he thought that, at worst, Petitioner would have a fist fight. (v) The day after this shooting, Jones obtained a gun to protect himself from Dandy. (RT 297) This supported the contention that Jones knew that Dandy was armed.

Jones' testimony tends to disprove that Petitioner had any intent to shoot first. Further, if Petitioner had planned in advance to shoot, he most likely would have fired at both men, not just at one. If Petitioner did not fire first, then, at worst, he shot in self-defense.

However, nothing told the jury that the shooting of William, who was not armed, could be excused, if Petitioner justifiably shot at Dandy in self-defense, but had bad aim and struck William. Nothing told the jury that this was a valid defense. Yet, that was Petitioner's best defense. Accordingly, the IAC in withdrawing the request for the instruction on transferred intent was prejudicial.

**I.    Trial Counsel Negligently Failed to Object to the Prosecutor's Inaccurate Argument Regarding Drive-by Murder**

As noted at Petition for Review, sec. II, the prosecutor's jury argument on the law of homicide was riddled with legal misstatements. For example, he incorrectly told the jury that first degree drive-by murder was a "strict liability" crime. He incorrectly argued, in effect, that neither premeditation nor intent to kill were needed for first degree drive-by murder.

Trial counsel did not object to any of these misstatements. This failure to object constituted ineffective assistance of counsel (IAC). People v. Fosselman, supra, 33 Cal.3d at 582.

The failure to object to the prosecutor's repeated misstatements of law was prejudicial for the reasons stated at AOB pp. 36-42 why the misstatements themselves were prejudicial.

The fact that the text of the homicide instructions may have been accurate did not cure the prejudice. There is, of course, the general rule that misstatements of law in argument may be deemed harmless, if the instructions are accurate, on the theory that the jury is told and presumed to follow the instructions, if there is any conflict between instructions and argument. (See CALJIC 1.00) That general rule should not be followed, because to apply it here would be to adopt an inaccurate legal fiction.

When instructions are as abstruse as are those on premeditation, specific intent, and implied malice, a jury of laypersons could not possibly understand them without help. Thus, a normal jury will invariably follow the prosecutor's explanation of those pertinent principles, and not the unadorned text of the instructions, when, as here, that explanation is unchallenged.[10]

Accordingly, trial counsel rendered prejudicial IAC when she allowed the prosecutor to misargue and distort these instructions.

### J. Trial Counsel's Failure to Object to Ballistics Testimony by the Pathologist

After pathologist Dr. Hermann testified that William was killed by a single shotgun blast, he testified that it was his opinion, based upon the pattern and distribution of shotgun pellets in the victim's body, that the

---

[10] Perhaps that may not be the case once the project to rewrite the CALJIC instructions in "plain English" is completed.

shotgun was fired from a distance from 8 to 12 feet away. Trial defense
counsel did not object to that opinion. The failure so to object was IAC.
Strickland v. Washington, supra. The pathologist was not qualified to give
such opinion, and the opinion lacked foundation, for the following reasons:
(i) Dr. Hermann was not a firearms or ballistics expert. (ii) The opinion did
not take into account whether or not the shotgun had a full barrel, or if it
was sawed-off, or whether any shortening or sawing off would have
affected the pellet pattern. (iii) No test firing was done with shotguns, both
sawed-off and not sawed-off, in order to show what shot pattern would be
established from what distance.

For all these reasons, Dr. Hermann's opinion on the matter was
speculation without adequate foundation. Trial counsel was ineffective for
failure to object thereto.

## K.    Expert Counsel States His Opinion that Trial Counsel Rendered Ineffective Assistance in Many Ways

Petitioner attaches as Exhibit 4, the declaration of Harold Rosenthal,
Esq. of San Francisco. Mr. Rosenthal is an experienced criminal trial
lawyer. He has tried many homicide cases. He taught the criminal trial
practice course at Boalt Hall for 15 years. He was named by California
Lawyer in 2001 as one of the top ten criminal trial lawyers in the state.

Mr. Rosenthal has reviewed the materials in this case, and it is his
opinion that trial defense counsel rendered ineffective assistance of counsel
in at least the following ways:[11]   (1) She rendered ineffective assistance
when she failed to seek a continuance of trial until she obtained all
statements of Mr. Kilgore that could be used against him during his trial,

---

[11]Because of the limited compensation allotted by this Court for expert
testimony in court-appointed cases, Mr. Rosenthal has only addressed some,
but not all, of the instances of ineffective assistance of counsel alleged
herein.

especially the Oklahoma trial testimony. (2) She rendered ineffective assistance when she failed to investigate the facts underlying the Oklahoma prior. (3) She rendered ineffective assistance when she failed to seek a continuance of trial until she obtained a ruling on the question of whether the Oklahoma testimony would be admissible. (4) She rendered ineffective assistance of counsel when she abandoned the defense of self-defense, and, instead, pursued a defense of identity, which was unreasonable, because the prosecution's evidence of identity was so strong. (5) She rendered ineffective assistance when she advised and caused Petitioner not to testify. (6) She rendered ineffective assistance when she failed to call Petitioner's sister and girlfriend to testify to support the defense of self-defense.

Mr. Rosenthal explains, inter alia, as follows:

In order to effectively try a case to a jury, it is critical that defense counsel have settled upon a theory of defense prior to the commencement of trial. To do so intelligently the defense must know what the prosecution case will be. While in rare instances this may not be possible, in most cases it is, in part because of California's discovery scheme. It is important to settle upon a defense because counsel will have no credibility before a jury if the jury cannot discern from the beginning of the trial that the defense has an interpretation of the facts to which counsel will adhere throughout the trial. If the jury detects uncertainty as to the defense version of the events which underlie the trial, they will conclude that the defense presented is related to maximizing chances of prevailing rather than conveying the truth as defendant knows it to be. . . .

The defense chosen likewise impacts upon opening statement. Opening statement is an extremely important part of a criminal trial, perhaps even more important than final argument. Psychological studies demonstrate that notwithstanding instructions that jurors keep an open mind, people generally reach an initial decision early in a trial, and will usually adhere to that decision as the trial progresses. The cognitive principles of primacy and recency indicate that individuals generally retain what they hear first and last, and the opening statements are among the first things heard in a trial. . . . this likewise underscores the importance of

knowing to the greatest extent possible what the prosecution case
will be before beginning the trial. . . .

## L.   Conclusion

Each of the above instances of IAC violated Petitioner's 6th
Amendment right to representation by competent counsel. <u>Strickland v.
Washington, supra.</u>  Each of these instances of IAC was individually and
cumulatively prejudicial for the reasons stated herein. <u>People v. Hill</u> (1988)
17 Cal.4th 800, 844.

What this all comes down to is that a reasonable jury could go either
way on Petitioner's proffered defense of self-defense.  If that is the case,
then Petitioner is entitled to a new trial to let a jury, not a judge, decide, for
the first time, whether his self-defense testimony is credible, and whether
there was a reasonable doubt that he fired in self-defense after Terry Dandy
fired one shot at him.

WHEREFORE, for all these reasons, Petitioner prays for the
issuance of the writ, and/or for the issuance of an order to show cause.

DATE: September 25, 2006

Respectfully submitted,

STEPHEN B. BEDRICK
Attorney for Appellant and Petitioner

REARDON, J.*

We concur.

_____

JONES, P. J.

_____

GEMELLO, J.

(A106142)

_____

\*      Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

33



COURT OF APPEAL. FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5

IN RE IVAN KILGORE ON HABEAS CORPUS.

A110317
Alameda County No. 14103

**FILED**
Court of Appeal-First App. Dist.

AUG 3 0 2006

DIANA HERBERT

BY _____
                              DEPUTY

BY THE COURT:

        The petition for writ of habeas corpus is denied.

Date:  **AUG 3 0 2006**              **JONES, P.J.**        P.J.

__✓Jones, P.J. ___Simons, J. __✓Gemello, J. __✓Reardon, J. (Judge of the Alameda
County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the
California Constitution.)[

orcc

## "SUPPLEMENT" MEMORANDUM AND

## POINTS OF AUTHORITIES

## SUPPORTING FACTS FOR CLAIM #5(C)

On February 24, 2003 the case was called for trial. At the time Petitioner presented his initial written motion to exclude the Oklahoma conviction. (CT 288)

The parties then believed that the Oklahoma conviction resulted from a plea. The parties began to litigate the sole question of whether the conviction was admissible.(CT 290)

The next day prosecutor Stallworth stated that he just learned from the Oklahoma prosecuter that there was a jury trial in that case, not just a plea, and that a jury found first degree manslaughter. He was requesting the transcript of Petitioner's Oklahoma testimony.(RT 19) That ultimately allowed the prosecutor to argue, in the alternative, even if the conviction were not admissible, that the testimony was admissible.(RT 604-634)

The prosecutor explained reason for the untimely introduction of the Oklahoma testimony.(RT 19).The court rejected the explaination:

THE COURT: ONE OF THE THINGS--I CAN APPRECIATE YOUR FRUSTRATION ABOUT THAT AND ALSO MS. LEVY'S FRUSTRATION ABOUT NOT SEEING IT IN ADVANCE, MUCH IN ADVANCE OF WHAT IS GOING ON HERE. OBVIOUSLY. SINCE THIS CASE HAS BEEN AROUND SINCE 2000, WHEN SOMEBODY SEES A OUT-OF-STATE PRIOR-- AND I REALIZE YOU HAVE'NT HAD THE CASE THAT LONG, BUT THAT's REALLY IRRELEVANT SINCE YOUR OFFICE HAS HAD THE CASE SINCE 2000-- SOMEONE NEEDS TO DIG INTO THOSE EARLIER ON TO CLARIFY WHAT THE ISSUES ARE.(RT 58)

Trial counsel, Deborah Levy, failed to object to the introduction of the Oklahoma testimony on the ground that the prosec-

(1)

utor violated discovery rules, thus not allowing the defense pre-
paration and investigation to introduce other evidence regarding
the Oklahoma homicide which supported the Petitioner's success-
fully asserted defense in that case. **See:Brady v. Maryland(1963) 373 U.S. 83**

Failure to object resulted in trial counsel making an un-
informed tactical decision to advise and cause Petitioner not to
testify.

Ms. Levy testified as a witness on Petitioner's motion for
new trial, which was based on allegations of IAC. She stated that
she decided not have Petitioner testify at all, and advised him
not to testify, once the trial court ruled the Oklahoma testimony
admissible for impeachment, because she thought the Oklahoma
testimony was too damaging. She thought it was damaging because
it informed the jury that Petitioner had shot and killed someone.
She also believed the testimony reflected poorly on the Petition-
er's credibility. However, she also believed that she could not
present a self-defense case without Petitioner's testimony, Thus,
when she decided not to have Petitioner testify, she also decided
to abandon self-defense, and to rely exclusively upon an undeve-
loped defense of mistaken identity which was inconsistant to the
foundation already presented to the jury and witness in respect
to the self-defense defense. In addition she did no investigation
for the Identity defense.(RT 1004-1005) Counsel's uninformed
tactical decision to switch defense theorys in the middle of the
trial destroyed all credibility with the jury for neither the
defense of self-defense or the defense of mistaken identity could
be persued simultaneously and allow the jury to entertain the
facts of the case as presented by the defense. Thus making a

(2)