170-401 (REV. 6/01)

# RENE DAVIDSON COURTHOUSE

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

000466

### CLERKS DOCKET AND MINUTES

KILGORE, IVAN _____ DEPT. **006**  CRT. DATE/TIME  **7/21/03   09:00**

EVENT NAME  **KILGORE, IVAN DAWNELL** _____ RPT. NO. **00-64017** ___ DOCK NO. **141033**

PROC. **APCSL** _____ CEN. **0373689**  PFN **BBV550** A DAY **11/01/00**  SJ DATE **1/27/04**

COUNTS                                    PIC **00500**   AAG-OPD   ACITY  OA

CHARGES  1)F187 SC&USE PC 1 PR CONVICTED-J _____

---

STAT  SET  BAIL      $0.00      TOTAL DAYS IN CUSTODY:   989

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB **05/05/75**

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO.**NORTH 1**  TIME WAIVED  **TWS**

### PROCEEDING

DCCO:

JUDGE  **KENNETH KINGSBURY** _____ DEP. D.A. DARRYL STALLWORTH

DEP. CLERK **WANDA BOYNS** _____ DEF. ATTY. DEBORAH LEVY

REPORTER **GERALD DOHRMANN** _____ OTHERS ATTY WALTER PYLE   ☐ Not Present

---

**Defendant:**  ☒ Present   ☐ Not Present   ☐ Excused   ☒ In Custody   ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed
☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s)_____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to:  lesser included / reasonably related  offense of count(s)_____ to charge(s)_____
  Time waived for: ☐ Preliminary Examination _____days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ **Clauses:** ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only
☐ **Priors:** ☐ Stricken _____ ☐ Admitted _____ ☐ Denied
☐ **Probation:** ☐ **Conditional Sentence:** ☐ Granted for_____years/months ☐ See attached conditions
   ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☐ Petition/Motion _____ ☐ Granted ☐ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____
**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

       2X   CERT-CRT: WWM

ATTY WALTER PYLE IS APPOINTED TO REPRESENT THE DEFT FOR
THE PURPOSE OF FILING A MTN FOR NEW TRIAL.
ALL RECORDS OF PRIOR ATTY ARE RELEASED TO MR. PYLE

---

ont. Date: **8-15-03**  Time: **0900** Dept. **D6**  Proc.: **MTN NT**   Date: _____ Time: _____ Dept. _____ Proc.: _____

C  S Codes: _____

DOCKET NAME  **KILGORE, IVAN DAWNELL** _____ CT. DATE **7/21/03**  DOCK NO. **141033**



C00467

## Superior Court
### State of California

CHAMBERS OF
KENNETH R. KINGSBURY
JUDGE

COUNTY OF ALAMEDA

1225 FALLON STREET
OAKLAND CALIFORNIA 94612
(510) 272-6082
FAX (810) 271-5130

## MEMORANDUM

F I L E D
ALAMEDA COUNTY

**DATE:**    **July 21, 2003**

JUL 21 2003

CLERK OF THE SUPERIOR COURT
By _Wanda  W. Limon_
DEPUTY

**TO:**    **Gerald Dohrmann**
          **Court Reporter, Department 6**

**FROM:**    **Kenneth R. Kingsbury, Judge - Department 6**

**SUBJECT:**    **Trial Transcript: People v. Kilgore No. 141033**

As you are aware, the Court, following the necessary showing, recently granted the defendants' motion for separate appointed counsel to prepare and argue his motion for a new trial based on the allegation of ineffective assistance of this trial counsel during his earlier jury trial in this department. Although there was some difficulty in finding and attorney willing/able to accept the case, on July 21, 2003, Walter Pyle accepted appointment. The matter was then continued until August 15, 2003. Mr. Pyle indicated that he would require a trial transcript to review prior to the filing of the motion. He informed the Court that "Court Appointed" informed him that, based on a lack of funds and anticipated investigation costs, they would not be able to provide funds for the transcript – estimated to be approximately $1500.

As a transcript will be necessary for proper preparation of the motion, this memorandum will serve to order preparation of the trial transcript in this matter with payment therefore to be made from the County Treasury pursuant to the provisions of Section 69952 (a)(1) of the Penal Code.

170-401 (REV. 6/01)

RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

C00468

**CLERKS DOCKET AND MINUTES**

1. **"ET** KILGORE, IVAN _____ DEPT. __006__ CRT. DATE/TIME __8/15/03__ __09:00__

2. **NAME** KILGORE, IVAN DAWNELL _____ RPT. NO. __00-64017__ DOCK NO. __141033__

3. PROC. __MNT__ _____ CEN. __0373689__ PFN. __BBV550__ A DAY __11/01/00__ SJ DATE __2/23/04__
   COUNTS                                         PIC 00S00  AAG-OPD  ACITY OA

4. CHARGES __1)F187 SC&USE PC 1 PR CONVICTED-J__ _____

STAT  SET  BAIL    $0.00    TOTAL DAYS IN CUSTODY: 1016

5. BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB __05/05/75__

   BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

6. FINE/REST. _____ DATE PAID _____ REC. NO. __NORTH 1__ TIME WAIVED __TWS__

**PROCEEDING**

DCCD:

7. JUDGE __KENNETH KINGSBURY__ _____ DEP. D.A. __DARRYL STALLWORTH__

8. DEP. CLERK __WANDA BOYNS__ _____ DEF. ATTY. ~~DEBORAH LEVY~~ WALTER PYLE ☐ Not Present

9. REPORTER __GERALD DOHRMANN__ _____ OTHERS _____

Defendant:  ☒ Present   ☐ Not Present   ☐ Excused   ☒ In Custody   ☐ Pro Per

☐ Interpreter _____ is present. Language spoken: _____

☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed

☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)

☐ Referred to Public Defender ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed

☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s) _____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty

☐ Stipulates to: lesser included / reasonably related offense of count(s) _____ to charge(s) _____

☐ Time waived for: ☐ Preliminary Examination _____ days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn

☐ **Clauses:** ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only

☐ **Priors:** ☐ Stricken _____ ☐ Admitted _____ ☐ Denied

☐ **Probation:** ☐ **Conditional Sentence:** ☐ Granted for _____ years/months ☐ See attached conditions

    ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated

☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation

☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____

☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away

☐ Additional order(s): _____

☐ Petition/Motion _____ ☐ Granted ☐ Denied ☐ Withdrawn

☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____

**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified

☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered

☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $ _____ ☐ No Cite Release ☐ Night Service

2X    CERT-CRT:WWM

Cont. Date: __9-19-03__ Time: __0900__ Dept. __0/0__ Proc.: __MNT__ Date: _____ Time: _____ Dept. _____ Proc.: _____

☐ JS Codes: _____

1

2   Walter K. Pyle
    (State Bar No. 98213)
3   2039 Shattuck Avenue, Suite 202
    Berkeley, CA 94704
4   (510) 849-4424

5   *Attorney for Defendant Ivan Kilgore*

000469
F I L E D
ALAMEDA COUNTY

NOV 1 4 2003

CLERK OF THE SUPERIOR COURT
By _____
                        DEPUTY

6                              IN THE

7        SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA

8   RENE C. DAVIDSON ALAMEDA COUNTY COURTHOUSE (NORTHERN DIVISION)

9   PEOPLE OF THE STATE
    OF CALIFORNIA,                    No. 141033
10
                          *Plaintiff,*   ORDER FOR COPY OF REPORTER'S
11                                       TRANSCRIPT OF TRIAL
                    v.
12
    IVAN KILGORE,
13
                          *Defendant.*
14

15  TO COURT REPORTER, GERALD DOHRMAN:

16       IT IS HEREBY ORDERED that the court reporter prepare a copy of the

17  following transcripts in the trial of Ivan Kilgore, to be paid by the County of

18  Alameda, and to deliver it to Walter K. Pyle, attorney for Mr. Kilgore:

19       1. The ruling on defendant's motion to exclude priors convictions for

20  impeachment purposes on March 14, 2003;

21       2. The discussions about jury instructions on March 17, 2003;

22       3. The discussions about jury instructions on March 18, 2003;

23       4. The closing arguments and final jury instructions on March 19, 2003.

    Dated: 11/19/03
24

25

26                              _____
                                Judge of the Superior Court
27

28

I70-401 (REV. 8/01)

RENE DAVIDSON COURTHOUSE

C00470

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### CLERKS DOCKET AND MINUTES

| | | | |
|---|---|---|---|
| DEFENDANT | KILGORE, IVAN | DEPT. **006** CRT. DATE/TIME **9/19/03**  **09:00** |

| EVENT NAME | KILGORE, IVAN DAWNELL | RPT. NO. **00-64017** DOCK NO. **141033** |

PROC. **MNT COUNTS** CEN. **0373689** PFN. **BBV550** A DAY  **11/01/00** SJ DATE **3/29/04**
PIC 00S00    AAG-CPD    ACITY   OA

CHARGES  **1)F187 SC&USE PC 1 PR CONVICTED-J**

---

STAT  SET  BAIL  **$0.00**  TOTAL DAYS IN CUSTODY:  **1051**

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB **05/05/75**
BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____
FINE/REST. _____ DATE PAID _____ REC. NO. **NORTH 1** TIME WAIVED **TWS**

### PROCEEDING   DCCO:

JUDGE **KENNETH KINGSBURY**    DEP. D.A. DARRYL  STALLWORTH
DEP. CLERK **WANDA BOYNS**    DEF. ATTY. DEBORAH LEVY
REPORTER ~~GERALD DOHRMANN~~ ADRIENNE PERETTI   OTHERS    ☐ Not Present

---

**Defendant:**  ☒ Present  ☐ Not Present  ☐ Excused  ☒ In Custody  ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed
☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s)_____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to: lesser included / reasonably related offense of count(s)_____ to charge(s)_____
☐ Time waived for: ☐ Preliminary Examination _____days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ Clauses: ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only
☐ Priors: ☐ Stricken _____ ☐ Admitted _____ ☐ Denied
☐ Probation: ☐ Conditional Sentence: ☐ Granted for_____ years/months ☐ See attached conditions
  ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☐ Petition/Motion    ☐ Granted ☐ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____
**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

2X  CERT-CRT:WHM  PAPERS TO BE FILED BY 11/7/03 BY CSL

FOR DEFT, IN WRITING.

---

ont. Date: 11-21-03  Time: 0900 Dept. 06  Proc.: HRG, DNTE  GET

Date:_____ Time:_____ Dept._____ Proc.:_____
MNT

3 Codes: _____

---

| DOCKET NAME | KILGORE, IVAN DAWNELL | CT. DATE **9/19/03** DOCK NO. **141033** |

I70-401 (REV. 5/01)

RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

**CLERKS DOCKET AND MINUTES**

C00471

DEFT. **KILGORE,IVAN**   DEPT. **006**   CRT. DATE/TIME **11/21/03   09:00**

Event NAME **KILGORE,IVAN DAWNELL**   RPT. NO. **00-64017**   DOCK NO. **141033**

PROC. **MNT**   CEN. **0373689**   PFN. **BBV550** A DAY **11/01/00** SJ DATE **6/01/04**
COUNTS   PIC 00S00   AAG-OPD   ACITY OA

CHARGES **1)F187 SC&USE PC 1 PR CONVICTED-J**

| STAT | SET | BAIL | $0.00 | TOTAL DAYS IN CUSTODY: | 1114 |

BAIL ___ STAT. ___ BOND DT. ___ BOND CO. ___ DOB **05/05/75**
BAIL ___ STAT. ___ BOND DT. ___ BOND CO. ___ BAC ___
FINE/REST. ___ DATE PAID ___ REC. NO. **NORTH 1**   TIME WAIVED **TWS**

**PROCEEDING**   DCCO:

JUDGE **KENNETH KINGSBURY**   DEP. D.A. ___
DEP. CLERK **WANDA BOYNS**   DEF. ATTY. ~~DEBORAH LEVY~~
REPORTER **GERALD DOHRMANN**   OTHERS ___   ☒ Not Present

**Defendant:**   ☒ Present   ☐ Not Present   ☐ Excused   ☒ In Custody   ☐ Pro Per
☐ Interpreter ___ is present. Language spoken: ___
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed
☐ Defendant served: ☐ ___ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s) ___ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to: lesser included / reasonably related offense of count(s) ___ to charge(s) ___
☐ Time waived for: ☐ Preliminary Examination ___ days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ Clauses: ☐ Stricken ___ ☐ Admitted ___ ☐ Sentencing Purposes Only
☐ Priors: ☐ Stricken ___ ☐ Admitted ___ ☐ Denied
☐ **Probation:** ☐ **Conditional Sentence:** ☐ Granted for ___ years/months ☐ See attached conditions
☐ Revoked ☐ Restored ☐ Modified ☐ Extended to ___ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control ___
☐ No contact with / not to annoy ___, directly or indirectly: stay at least ___ away
☐ Additional order(s): ___
☐ Petition/Motion ___   ☐ Granted ☐ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ ___
**Restitution:** ☐ Referred to ___ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $ ___ ☐ No Cite Release ☐ Night Service

**2X    CERT-CRT:WWM**

ont. Date: **12-5-03**   Time: **0900** Dept. **06** Proc.: **MNT** Date: ___ Time: ___ Dept. ___ Proc.: ___
☐   Codes: ___

DOCKET NAME **KILGORE,IVAN DAWNELL**   CT. DATE **11/21/03** DOCK NO. **141033**

C00472

1

2  WALTER K. PYLE
   SBN 98213
3  2039 Shattuck Avenue, Suite 202    F I L E D
   Berkeley, CA 94704-1116    ALAMEDA COUNTY
4  (510) 849-4424
                                     NOV 2 4 2003
5  *Attorney for Defendant Ivan Kilgore*
                                     CLERK OF THE SUPERIOR COURT
6                          By_____
                                          IN THE        Deputy

7      SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA

8
   PEOPLE OF THE STATE OF CALIFORNIA,
9
                                     *Plaintiff,*
10                                              No. **141033**
                       v.
11
   IVAN KILGORE,                               MOTION FOR NEW TRIAL
12                                             Dec. 5, 2003
                                     *Defendant.*   9 a.m.
13  _____         Dept. 6

14

15      Defendant IVAN KILGORE moves for a new trial in this case, on the

16  grounds that he received ineffective assistance of counsel in his first trial.

17      This motion is based on this notice, the attached memorandum of points

18  and authorities, the records and files in the case, and such further evidence and

19  argument as may be presented at the hearing.

20      Defendant asks that he be allowed to call Attorney Levy to testify at a

21  hearing on the motion, and that he be given the opportunity to testify in his own

22  behalf.

23

24  _____

25          Walter K. Pyle
            *Attorney for Defendant*
26

27

28

                          *Motion for New Trial*

1                                                    C00473

POINTS & AUTHORITIES

2

TABLE OF CONTENTS

3

4
    I. COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO PLAYING THE
5      COMPLETE TAPE OF THE MATTHEW BRYANT INTERVIEW............................1

6   II. COUNSEL WAS INEFFECTIVE  FOR NOT ASKING FOR A "403
       HEARING" TO PRESENT THE PRECISE TESTIMONY TO BE OFFERED
7      BY DEFENDANT AT TRIAL, SO THE COURT COULD MAKE AN
       INFORMED DETERMINATION OF THE ACTUAL SIMILARITY OF THE
8      OKLAHOMA EVIDENCE WITH THE CASE AT BAR.  COUNSEL
       SHOULD ALSO HAVE ASKED THE COURT TO WEIGH THE
9      PROBATIVE VALUE OF THE OKLAHOMA EVIDENCE AGAINST ITS
       PREJUDICIAL EFFECT. .............................................................................................3
10
    III. COUNSEL WAS INEFFECTIVE IN HER CROSS-EXAMINATION OF THE
11       PROSECUTION WITNESSES.................................................................... .............7

12       A. Testimony of Raymond Jones.................................................................7

13       B. The Testimony of Jones at the "402 Hearing."......................................8

14       C. The Testimony of Bianca Moore .........................................................10

15
    IV. TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE WHEN SHE DID
16      NOT OBJECT TO, AND ASK TO STRIKE, THE TESTIMONY, OF DR.
        HERRMANN'S BALLISTICS OPINION......................................................10
17
    V. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE UNDER THE
18     SIXTH AMENDMENT....................................................................................12

19

20  CONCLUSION ..........................................................................................................13

21

22

23

24

25

26

27

28
                                    i

C00474

1

## TABLE OF AUTHORITIES

2

### CASES

3

In re Hall (1981) 30 Cal.3d 408.............................................................................2

Kimmelman v. Morrison (1986) 477 U.S. 365..............................................12, 13

McKinney v. Rees (9th Cir. 1993) 993 F. 2d 1378.................................................5

People v. Fierro (1991) 1 Cal.4th 173...................................................................11

People v. Guizar (1986) 180 Cal. App. 3d 487.......................................................2

People v. Marshall (1996) 13 Cal.4th 799..............................................................5

People v. Pope (1979) 23 Cal. 3d 412...................................................................12

People v. Simon (1986) 184 Cal.App.3d 125...........................................................4

People v. Stratton (1988) 205 Cal. App. 3d 87.....................................................12

People v. Sam (1969) 71 Cal.2d 194.......................................................................2

Strickland v. Washington (1984) 466 U.S. 668...............................................11, 13

United States v. Masters (9th Cir. 1971) 450 F.2d 866..........................................5

United States v. Mehrmanesh (9th Cir. 1982) 689 F.2d 822.................................5

United States v. Webb (9th Cir. 1972) 406 F.2d 1353............................................5

### STATUTES

California Evidence Code

§ 352.........................................................................................................................4

§ 403.........................................................................................................................4

§ 720.......................................................................................................................11

§ 791.........................................................................................................................2

§ 1235......................................................................................................................2

§ 1236......................................................................................................................2

ii

C00475

1

## UNITED STATES CONSTITUTION

2

Sixth Amendment ..........................................................................................................6, 12

Fourteenth Amendment....................................................................................................5, 6, 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Motion for New Trial*

000476

1

2

## POINTS & AUTHORITIES

3

4

### I.
### COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO PLAYING THE COMPLETE TAPE OF THE MATTHEW BRYANT INTERVIEW.

5

6   Matthew Bryant was called as a State's witness. (RT 229.) Bryant testified that

7   he had been arrested and Sgt. Green told him he would let him (Bryant) go if he

8   would help him out. (RT 234.) Bryant testified he gave Green information he had

9   heard on the street about the shooting. (RT 234.)

10  In response to questions by the prosecutor, Bryant said he did not remember

11  telling Sgt. Green that the defendant offered him $500 to retrieve a shotgun on the

    balcony of the apartment (RT 236), did not remember telling Green that defendant

12  said he was going to "smoke these dudes" who robbed him (RT 237), and did not

13  remember defendant trying to get him to help make it look like his Cadillac had been

14  broken into. (RT 237.) The prosecutor stated that those were the "gist" of the

15  prosecutor's questions regarding the tape. (RT 237.)

16  The prosecutor then asked to play to the jury a tape recording of the interview

17  with Sgt. Green. (RT 236, 237.) Counsel did not object.

18  The tape was hearsay, and there was no applicable hearsay exception making it

19  admissible. It contained much prejudicial and incriminating material. (RT 259-274.)

20  For example, on the tape Bryant said that defendant sold drugs. (RT 263.) Even more

21  prejudicial, the tape related second-hand hearsay of what Jones had told Bryant about

22  how defendant had said let's ride around, and he had taken a gun, and defendant shot

23  someone. (RT 265.-266.)

24  There was no reason not to object to such evidence. Nor did counsel object

25  when the prosecutor later asked Bryant *again* about Jones telling him that defendant

26  shot someone from the back seat of the Cadillac. (RT 276.)

27

28

1

*Motion for New Trial*

1

2    The tape was not admissible as a prior inconsistent statement (Evid. Code

3    § 1235), because all Bryant had said at that point was that he did not remember

4    making the statements to Green. Lack of recollection is not "inconsistent" with

5    another statement. (People v Sam (1969) 71 Cal.2d 194, 210.) Indeed, Bryant, after

6    hearing the tape outside the presence of the jury, readily conceded he told Green—

7    untruthfully—that the defendant told him he had shot someone. The tape was

8    *consistent* (RT 269) with this specific testimony. Bryant was never asked about the

9    "gist" of the other questions the prosecutor had in mind, so all that was left in the

10   record as to those questions was a failure of recollection, which is not inconsistent

     with any statement.

11   Nor did the tape qualify as a prior *consistent* statement (Evid. Code §1236)

12   because Bryant had not made an inconsistent statement and the defendant had not

13   attacked Bryant's credibility. (See Evid. Code § 791.)

14   There is no reasonable reason for counsel not to object. In People v. Guizar

15   (1986) 180 Cal. App. 3d 487, trial counsel failed to take action to edit a statement

16   admitting in evidence against defendant so as to delete references to unproved

17   serious offenses that had little to do with the issues on trial. The court found it

18   inconceivable that counsel's failure to seek exclusion of the objectionable evidence was

19   a tactical decision, and reversed and remanded the case. (Id., at 492.)

20   Indeed, there were suggestions in Bryant's testimony that Sgt. Green had

21   coerced the statements on the tape. (RT 234.) Counsel should have sought a hearing

22   to disqualify the statements made to Green on due process grounds as well.

23   Counsel should also have interviewed Matthew Bryant before trial so she could

24   adequately prepare for cross-examination. The failure to interview witnesses cannot

25   be excused at trial strategy. (In re Hall (1981) 30 Cal.3d 408, 426 [relying on results of

26   police investigation was inexcusable delegation of attorney's duty].)

27

28

2

*Motion for New Trial*

1

2     Thus there was no basis for not objecting to admission of the tape recording.

3     The evidence was highly prejudicial, and sufficient to have affected the outcome of the

4     trial, requiring the court to grant a new trial.

5                                         II.

**COUNSEL WAS INEFFECTIVE FOR NOT ASKING FOR A "403 HEARING" TO
6     PRESENT THE PRECISE TESTIMONY TO BE OFFERED BY DEFENDANT AT
TRIAL, SO THE COURT COULD MAKE AN INFORMED DETERMINATION OF
7     THE ACTUAL SIMILARITY OF THE OKLAHOMA EVIDENCE WITH THE CASE
AT BAR. COUNSEL SHOULD ALSO HAVE ASKED THE COURT TO WEIGH
8     THE PROBATIVE VALUE OF THE OKLAHOMA EVIDENCE AGAINST ITS
PREJUDICIAL EFFECT.**

9

10    The prosecution sought to use evidence of a prior event in Oklahoma which

11    resulted in a conviction of an offense which is the Oklahoma equivalent to the crime

12    of involuntary manslaughter in California. The prosecutor had a transcript of

13    defendant's testimony in the Oklahoma case.

14    The court asked the prosecutor to describe the purpose for which he sought to

introduce the evidence. (RT 3-14.-03, p. 5.) The prosecutor stated that he suspected
15
the defendant's explanation would be very "similar" in this case to the Oklahoma
16
explanation. (RT 3-14.-03, p. 8.) The prosecutor thought there might be testimony by
17
the defendant that the shooting in the case at bar was "spontaneous or was an
18
accident or was the heat of impulse." (RT 3-14.-03, p. 9.)

19    The proposed testimony of the defendant was discussed in general terms, but it

20    was not described in sufficient detail to allow the court to make an informed

21    determination whether the two incidents were as "similar" as the district attorney

22    thought they would be. Indeed, the district attorney noted that defense counsel's

23    moving papers said the defendant would say he thought Terry "would shoot," not

24    "Terry had shot,"[1] as defense counsel stated at the argument. (RT 3-14.-03, p. 28.)

25

26    _____

[1] Defendant contends that he had told defense counsel (as well as Mr. Traback,
his previous attorney) exactly, and in detail, what his testimony would be, but that his
27    counsel did not correctly set forth that information in her moving papers.

28

3

*Motion for New Trial*

000479

1

2  The court itself expressed some irritation that the defendant's proffered testimony

3  kept fluctuating. (RT 3-14.-03, p. 29.)

4       In making a comparison of the similarity of the two events, it was important to

5  a proper ruling for the court to be advised of the exact nature of both the Oklahoma

6  testimony and the proposed testimony of defendant here.

7       Although the Oklahoma testimony was available, the court was told only in

general terms what defendant's testimony here would be. Defendant asserts that

8  defense counsel was ineffective, and should have requested a hearing pursuant to

9  Evidence Code section 403 [determination of preliminary fact] to allow defendant to

10 testify specifically as to what happened at 30th and San Pablo on the date of the

11 incident.

12      Counsel was also ineffective for not asking the court to weigh the probative

13 value of the evidence against its prejudicial effect once the court did not proceed to

14 engage in such a process. (Evid. Code §352.)

15      In People v. Simon (1986) 184 Cal.App.3d 125 the prosecution presented

16 evidence of a prior assault to negate the defendant's claim of self-defense. The Court

17 of Appeal explained that it was important to determine whether factually the two

18 incidents were *sufficiently similar* to negate the self-defense claim. (Id. at p. 130.) A

19 trial court must also weigh whether the probative value of the evidence outweighed

20 its prejudicial effect. (Id., at p. 129.) This determination likewise requires that the

21 court carefully scrutinize the testimony that the defendant proposes to give so the

22 State's proffered impeachment evidence can be weighed against it.

23      If the court, after hearing the proffered testimony (out of the presence of the

24 jury) determined that the evidence of the Oklahoma incident was sufficiently similar

25 that it was admissible, then the jury should also be given the opportunity to itself

26 factually evaluate the Oklahoma evidence. The jury should be instructed that unless it

27 determines, by a preponderance standard, that defendant's claim of self-defense in the

28

4

*Motion for New Trial*

C00450

1

2    Oklahoma case was bogus, it should disregard the evidence of the Oklahoma incident.

3    (See People v. Simon, supra 184 Cal.App.3d at 134; People v. Marshall (1996) 13

4    Cal.4th 799, 832.) However, the precise nature of defendant's proposed testimony

5    should be heard by the court so it can determine whether there is even sufficient

     evidence to allow the other evidence to the jury.

6
        Defendant's Fourteenth Amendment right to due process of law is also
7
     implicated here. The use of "other acts" character evidence is contrary to firmly
8
     established principles of Anglo-American jurisprudence, and has been since at
9
     least 1684. (McKinney v. Rees (9th Cir. 1993) 993 F. 2d 1378, 1380.) Proof of an
10
     act in the past often does prove motive, but instead may only prove a propensity
11
     to commit crimes.

12      Proof of prior "bad acts" can be highly prejudicial, and the distinction

13   between proof of bad character (the type of a person who would commit this

14   crime) and proof of intent or motive is sometimes lost in the heat of trial, or even

15   simply overlooked. Past criminal activity very often proves no more than bad

16   character. (United States v. Masters (9th Cir. 1971) 450 F.2d 866, 867 [No

17   relationship between smoking marijuana and willingness to smuggle marijuana];

18   United States v. Mehrmanesh (9th Cir. 1982) 689 F.2d 822, 832 [same; prior drug

19   use not logical proof of drug importation, other than showing defendant's

20   general criminal propensity]; see also United States v. Webb (9th Cir. 1972) 406

21   F.2d 1353, 1353 [robbery prosecution; proof of prior robbery merely shows "that

22   Webb is a bad character, disposed to commit robbery."]; McKinney v. Rees,

23   supra 993 F.2d 1378, 1383, 1385 [proof of knife ownership proved only defendant

24   was the type of person who would own knife, an impermissive propensity

25   inference, hence no "permissible" inferences to be drawn, hence violation of due

26   process of law under Federal Constitution].)

27

28

*Motion for New Trial*

C00481

1

2      Once the court had indicated it intended to allow the Oklahoma evidence,

3   the court should have also weighed that prejudicial evidence to determine its

4   relative probative value.  There does not appear to be any explanation for

5   counsel not asking the court to do so.

6      In the context of the evidence available to the court when it ruled that the

7   district attorney could use the Oklahoma evidence for impeachment, the

    similarity of the two incidents was insufficient, and there were no permissible

8   inferences which the jury could have drawn from the Oklahoma evidence.

9   Counsel's failure to ask for a "403 hearing" and a "352 determination" violated

10  defendant's Sixth Amendment right to counsel and the Due Process Clause of the

11  Fourteenth Amendment.

12

13                                   II.
              **COUNSEL WAS INEFFECTIVE IN HER CROSS-EXAMINATION OF THE**
14                        **PROSECUTION WITNESSES.**

15                                   A.
                        **Testimony of Raymond Jones**

16     Defense counsel was ineffective in cross-examining Raymond Jones,

17  particularly in view of the fact that Jones had given many statements when

18  testifying at the preliminary hearing which could have been useful at trial.

19     For example, Jones had testified at the preliminary examination that he had

20  smoked some marijuana and that he was "pretty drunk" (RT 6-5-01, p. 1) at the time

21  of the shooting, and that his senses could have been dulled.  (RT 6-5-01, p. 1.)  At trial

22  he testified that he smoked marijuana (RT 205), had some beer (RT 206) and had

23  possibly snorted some heroin (RT 207, 209), but he nevertheless he did not consider

24  himself high by the time of the shooting (RT 215) and instead was "sober at that

25  point." (RT 216.)  Counsel did not vigorously cross-examine Jones using his

26  contradictory testimony at the preliminary examination.

27

28
                                    6
                            *Motion for New Trial*

C00482

1

2  At the preliminary examination Jones said that he and defendant had talked

3  about how to get the guys that robbed defendant off defendant's back, and they

4  talked about a confrontation and a "fair fight," but there had never been any talk of

5  shooting, and when they were leaving in the Cadillac that day the defendant had only
said "there was going to be a fight." (RT 6-5-01, p. 15.) At trial Jones only testified as

6  to *his* state of mind that Jones guessed defendant was going to go over and fight

7  those guys. (RT 157-158.) Counsel did not bring out that that was defendant's state of

8  mind, too.[2] In addition, Jones had testified at the preliminary examination that he did

9  not see a shotgun go into the car in his presence, and that "most likely the shotgun

10  was already in the car," i.e., the shotgun was in the car because defendant customarily

11  carried it there, not because he brought it with him that day for a drive-by shooting.

12  (RT 6-5-01, p. 13.) Counsel did not bring this out at trial, either.

13  Also, at the preliminary examination Jones acknowledged that initially when

14  the police asked, Jones told them defendant didn't say anything before the shooting.

15  (RT 6-5-01, p. 16.) At the trial when Jones said defendant said "What's up punk?" just

16  before the shooting, counsel did not bring out Jones prior contradictory statement to

17  the police. (RT 199.) Counsel should also have emphasized that Jones (according to

18  his preliminary examination testimony) told defendant not to do anything stupid like

19  shoot someone, and defendant agreed with that (RT 6-5-01, p. 16), while at trial she

20  only brought out that Jones told him not to do something stupid. (RT 224.)

21  Jones told Sgt. Green he didn't know who decided to have him drive the

22  defendant's car (Taped Statement to Sgt. Green, p. 7), but at trial he said the defendant

23  asked him to drive. (RT 159.)

24  These discrepancies in Jones' testimony suggested that Jones may have been

25  willing to slant his testimony in favor of the prosecution's case, but counsel did not

26  bring out the contrary evidence so the jury could evaluate it.

27  [2] Indeed, counsel objected to Jones' testimony on the point. (RT 158.)

28

7

*Motion for New Trial*

000483

1

2    Counsel also did not bring out that at the preliminary examination Jones

3    had, on Exhibit E, drawn a line showing an illegal turn going south on San Pablo,

4    but at trial he drew a legal turn going north on San Pablo, which conflict would

     have reduced the perceived reliability of Jones' testimony.
5

6    Counsel should also have pointed out to the jury the lack of logic of Jones'

7    testimony that he was afraid of Terrance Dandy and bought a gun to protect

     himself, but he only gave defendant a baseball bat to protect himself from the
8
     same danger. Counsel should have also questioned how Jones could have seen
9
     defendant drive away to the Home Depot, as he claimed, when he continued to
10
     work inside the store, where a view was not possible. (RT 156.)

11   Counsel also did not examine Jones to bring out that (as he testified at the

12   preliminary examination) he was 15 feet away from the people on the sidewalk

13   when he made his U-turn. (RT 6-5-01, p. 5.) This would have contradicted

14   testimony by Shanea Anderson that the car pulled up to the curb (RT 69) and the

15   testimony by Bianca Moore that the car turned and pulled up "in front" of her.

16   (RT 333) where she was allegedly able to see defendant. (RT 334.)

17   Counsel should also have pointed out at trial that because Jones' case had

18   been continued to shortly after he was to testify at the preliminary examination

19   (RT 130), his testimony was "locked in" at that point and he could not thereafter

20   change his testimony without being charged with perjury.

21

22                                    **B.**
                  **The Testimony of Jones at the "402 Hearing."**

23   An informant had told police that Raymond Jones was driving the vehicle

24   involved in the shooting. (RT 110.) Police arrested him for the murder (RT 110), with

25   no probable cause (RT 135) , and questioned him for several hours. (RT 119.) Initially

26   Jones denied any knowledge of the incident (RT 126), but when they told him he

27   could either be a defendant in a murder case or a witness, he thought maybe he ought

28

                                       8

C00484

1

2   to tell the police "something they want to hear" (RT 6-4-01, P. 101), and he gave a

3   statement exculpatory to him and inculpatory to defendant.

4        That statement, we submit, was clearly a coerced one. Coercion is not limited

5   to physical battery.

6        Jones was released from custody after he implicated defendant in his

7   statement. But about four months later he was re-arrested on a charge of being an
    accessory after the fact.

8        Counsel should have countered Jones' testimony at the "402 hearing" with

9   inconsistencies in the preliminary examination transcript of his testimony.

10  Inconsistencies would tend to suggest that Jones was amenable to slant his testimony

11  to gain favor with the prosecution, that is, it was evidence of coercion.

12       The re-arrest of Jones only served to emphasize the power the police had over

13  Jones. The message was not lost on Jones. From feeling relieved when he had been

14  released the first time, Jones went to feeling betrayed when he was re-arrested. (RT

15  6-5-01, p. 17.) When he was released a few days later, he said at the preliminary

16  examination that he was in a pretty good mood to cooperate with the authorities so

17  he wouldn't get arrested a third time. (RT 6-5-01, p. 18.) His agreement with the

18  prosecutor (Exhibit 10) required him to testify at trial. All this was evidence of

19  coercion.

20       Defendant asserts that had counsel brought out Jones' statements as Jones had

21  testified at the preliminary examination, and emphasized to the court the that it is the

22  unreliable nature of coerced testimony that prevents its admission, Jones would not

23  have been allowed to testify at trial as to the matters he told the police. When Jones

24  was allowed to testify it violated defendant's Fourteenth Amendment right to due

25  process of law.

26       Counsel also did not request a jury instruction detailing the factors that when a

27  prosecution witness such as Jones, who had been arrested but had charges dropped

28

9

*Motion for New Trial*

C00485

1   and reduced with the understanding that he would cooperate as a witness, his

2

3   testimony should be viewed with caution because the arrangement provides a motive

4   to give false testimony.

5                                      C.
                          The Bianca Moore Testimony
6

7        Bianca Moore admitted that she had given a false identity of Terry Dandy to the

8   police, so her credibility started out with at least some taint. Defense counsel, however,

9   was ineffective for not vigorously cross-examining Ms. Moore to bring out further

    impeachment evidence.
10

11       Bianca Moore testified she saw the man with the gun. (RT 334.) Counsel started

12  to impeach Moore with her statement to the police that she only "thought it was Ivan

    or one of his friends." (RT 355.) Moore said she did not recall that. (RT 335.) When
13
    counsel showed the witness a statement signed by her, Moore said it was her signature
14
    but she could not read the writing. (RT 336.) However, counsel did not pursue the
15
    matter or call Officer Olivas, who took her statement, in order to complete the
16
    impeachment. (See Olivas notes, bottom of p. 2.)
17

18                                     IV.
          TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE WHEN SHE DID NOT
19       OBJECT TO, AND ASK TO STRIKE, THE TESTIMONY, OF DR. HERRMANN'S
                              BALLISTICS OPINION.

20       Dr. Herrmann, a forensic pathologist, was called as a witness for the prosecution.

21  The court found him to be "well-qualified to give an opinion about the cause of death."

22  (RT 41.)

23       Dr. Herrmann performed an autopsy on the deceased, William Anderson. (RT

24  42.) He found 11 penetrating shotgun pellet wounds and two exit wounds. (RT 42-43.)

25  The 11 penetrating wounds were in a fairly tight group, approximately two-and-a-half

26  inches in diameter. (RT 47, 51.) There was no evidence that any powder was

27

28
                                      10

C00486

1

2   embedded in the skin. (RT 47.) The significance of these findings is "quite variable,"

3   however, in the case of a shotgun. (RT 52.)

4       After answering the prosecutor's question what he noted about the pattern of

5   the 11 entry wounds, the doctor went on to state that he estimated that the weapon

6   was fired from between 5 and 12 feet away. On cross-examination Dr. Herrmann

7   stated that he has seen enough shotgun wounds to say that the distance from which the

8   weapon was fired was within his expertise. (RT 50.) The spread of the pellets also

9   depends on the choke of the gun, but there was no way Dr. Hermann could tell

    whether a choke was "used" or not. (RT 52-53.)

10      Defendant asserts that his counsel should have objected to the opinion as one

11  that Dr. Herrmann had not been qualified to give, and asked that the testimony be

12  stricken.

13      First, Dr. Hermann demonstrated no training or expertise that would allow him

14  to testify about how much shotgun pellets "spread" in a given situation, particularly

15  when there was no information available about the shotgun that was involved.

16  Although he had been qualified to determine the cause of the death, there was no

17  showing that he had special knowledge, training or experience to qualify him as an

18  expert on ballistics or shotgun pellet patterns, let alone express an opinion relating to a

19  shotgun of unknown characteristics. (See Evid. Code § 720.)

20      The fact that Dr. Herrmann testified he had seen other shotgun wounds was

21  insufficient to establish his qualifications. (See People v. Fierro (1991) 1 Cal.4th 173, 224.)

22  [retired deputy could testify about ballistics, but not as to effect of autopsy procedures

23  on evidence of the bullets' trajectory.] Even if Dr. Hermann had seen many, many

24  gunshot wounds, that fact would not have qualified him to express an opinion as to

25  how far away a gun was when it was fired, unless he had witnessed the shootings or

26  other ballistic tests themselves.[3]

    _____

27      [3] This is not a case where burns, smoke or powder on the skin were present.

28

*Motion for New Trial*

C00487

1

2

## V.
## DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE UNDER THE SIXTH
## AMENDMENT.

3

4    A criminal defendant has a constitutional right to *effective* assistance of counsel.

5    (People v. Ledesma (1987) 43 Cal. 3d 171 215.)  To prevail on a claim of ineffective

6    counsel, a defendant must show first, that counsel's representation fell below an

7    objective standard of reasonableness (Strickland v. Washington (1984) 466 U.S. 668,

8    688), and second, that there exists a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different.  (Id. at

694.)

10    Both prongs of the Strickland test have been met in this case.

11    It is trial counsel's duty to investigate all defenses of fact and law which may be

12    available. (People v. Mattson (1959) 51 Cal. 2d 777, 791; People v. Pope (1979) 23 Cal. 3d

13    at 425.)  Counsel should advise his client of his rights and take all necessary actions to

14    protect them.  If counsel's failure to perform these obligations results in the withdrawal

15    of a crucial defense, then defendant has not had the assistance to which he is entitled

16    under the Sixth Amendment.  (People v. Pope, supra 23 Cal. 3d 412, 425.)

17    The actions of counsel in the case at bar did not give the defendant the standard

18    of performance to which he was entitled.

19    When trial counsel has a tactical consideration in mind which explains the failure

20    to raise a crucial defense, his tactics, even if unsuccessful, will usually not be considered

21    incompetence.  (People v. Pope, supra 23 Cal. 3d at 425.)  However, the record itself

22    may dispel the notion that counsel's shortcoming was the result of a tactical decision.

23    For example, in People v. Stratton (1988) 205 Cal. App. 3d 87, the court held that the

24    face of the record established that it was unreasonable to suggest that "tactics" could

25    explain or justify counsel's failure to object to the potentially prejudicial circumstances

26    surrounding appellant's arrest (holding a dummy hand grenade) which had nothing to

27    do with the robbery with which he was charged.  (Id. at p. 93, 94.)

28

12

*Motion for New Trial*

1

2     Except for the errors of counsel in this case, taken cumulatively, there was a

3  substantial probability that the result of the proceeding would have been different.

4  (Strickland v. Washington, supra 466 U.S. at 694 ; Kimmelman v. Morrison (1986) 477

5  U.S. 365, 375.)

6                              **CONCLUSION**

7     Mary Washington testified at trial to hearing several shots as they passed the

8  intersection (RT 531, 535.) Mary Loggins testified that after the shooting she saw

9  someone running down San Pablo, and his hands and arms were close to his body

10  like he may have had something under his jacket. (RT 514, 423.) This evidence was

11  consistent with the theory that Terry Dandy had a pistol and had fired it at defendant,

12  which would have supported a theory of self defense.

13     The record shows that defense counsel gave ineffective assistance by not

14  adequately investigating or preparing for a defense based on reasonable doubt. It is

15  clear from the nature of trial counsel's questions up until the court ruled at the end of

16  the State's case that defendant's prior testimony in his Oklahoma case could be

17  introduced to impeach him, that the defense theory was one of self-defense. (See, e.g.,

18  RT 194.) The record shows that counsel's ineffective assistance made a reasonable

19  doubt defense untenable under the circumstances. The decision to shift the defense to

20  that of reasonable doubt therefore could not have been an informed decision by

21  counsel.

22     Defendant asserts that counsel did not give him effective assistance, and there

       is a substantial probability that affected the outcome of the case.

23     Defendant asks that this court grant him an opportunity to give testimony as

24  to the information he provided to counsel, and to examine counsel on similar matters.

25     At the close of the hearing the court should grant defendant's motion for a new

26  trial.

27

28  _____

       Walter K. Pyle                        13
       *Attorney for Defendant*

                              *Motion for New Trial*

70-401 (REV. 6/01)

RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA          C00489

**CLERKS DOCKET AND MINUTES**

COURT    **KILGORE, IVAN**                                          DEPT. __006__ CRT. DATE/TIME __12/05/03__ __09:00__

EVENT NAME    **KILGORE, IVAN DAWNELL**                            RPT. NO. __00-64017__    DOCK NO. __141033__

PROC. __MNT__                          CEN. __0373689__ PFN. __BBV550__ A DAY __11/01/00__ SJ DATE ____ __6/14/04__

COUNTS                                                   PIC 00S00   AAG-OPD   ACITY DA

CHARGES __1)F187 SC&USE PC 1 PR CONVICTED-J__

**STAT    SET    BAIL       $0.00       TOTAL DAYS IN CUSTODY:    1128**

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB __05/05/75__

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO. __NORTH 1__   TIME WAIVED __TWS__ _____

**PROCEEDING**

DCCO:

JUDGE __KENNETH KINGSBURY__ _____    DEP. D.A. DARYL STALLWORTH

DEP. CLERK __WANDA BOYNS__ _____    DEF. ATTY. ~~DEBORAH LEVY~~ WALTER PYLE

REPORTER __GERALD DOHRMANN__ _____    OTHERS _____     ☐ Not Present

**Defendant:**   ☒ Present    ☐ Not Present    ☐ Excused    ☒ In Custody    ☐ Pro Per

☐ Interpreter _____ is present. Language spoken: _____

☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed

☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)

☐ Referred to Public Defender ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed

☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s) _____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty

☐ Stipulates to: lesser included / reasonably related offense of count(s) _____ to charge(s) _____

Time waived for: ☐ Preliminary Examination ____days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn

Clauses: ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only

☐ Priors: ☐ Stricken _____ ☐ Admitted _____ ☐ Denied

☐ Probation: ☐ Conditional Sentence: ☐ Granted for _____ years/months ☐ See attached conditions

    ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated

☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation

☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____

☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away

☐ Additional order(s): _____

☐ Petition/Motion _____    ☐ Granted ☐ Denied ☐ Withdrawn

☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____

**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified

☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered

☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $ _____ ☐ No Cite Release ☐ Night Service

2X     CERT-CRT:WWM

PAPERS TO BE FILED BY THE PROSECUTION BY 12/22/03.

ont: Date: __1-9-04__ Time: __0900__ Dept. __06__ Proc.: __MNT__ Date: _____ Time: _____ Dept. _____ Proc.: _____

C    ; Codes: _____

DOCKET NAME __KILGORE, IVAN DAWNELL__ _____ CT. DATE __12/05/03__ DOCK NO. _____ __141033__

C00430

1   THOMAS J. ORLOFF                           Hearing Date: January 9, 2004
    District Attorney
2   County of Alameda
3   900 Courthouse                                    F I L E D
    1225 Fallon Street                            ALAMEDA COUNTY
4   Oakland, CA 94612
5   (510) 272-6222                                   JAN 5 - 2004

6   Darryl Stallworth (# 163719)             CLERK OF THE SUPERIOR COURT
                                             By Wandt  C. Kolms
7   Deputy District Attorney                                      DEPUTY

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA
                     COUNTY OF ALAMEDA
9

10  THE PEOPLE OF THE STATE OF CALIFORNIA,      )
                                                )
11                                              )       No. 141003
    v.                                          )
12                                              )       Department 6
13  IVAN KILGORE,                               )
                                    Defendant.  )
14  _____    )

15       MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE
16            TO DEFENDANT'S MOTION FOR A NEW TRIAL

17                                   I.
18                             Introduction

19          Defendant's Memorandum of Points and Authorities in Support of A Motion

20  for a New Trial on grounds that he received ineffective assistance of counsel identifies

21  four grounds as the basis for the motion.  First, he alleges his counsel was ineffective
22
23  for not objecting to the playing of Matthew Bryant's taped interview.  Second, he alleges

24  his counsel was ineffective for not tactically requesting a "403 hearing" regarding the

25  use or non use of defendant's Oklahoma prior.  Third, he alleges his counsel was
26
27  ineffective because she did not vigorously cross examine Raymond Jones and Bianca

28  Moore.   Fourth, he alleges his counsel was ineffective for not objecting to Dr.

                                       1

Herrmann's opinion testimony regarding how far the shooter may have been from the victim.

The burden of proving a claim of ineffective assistance of counsel is on the defendant.  Defendant must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". (*Strickland v. Washington* (1984) 466 U.S. 668,689; *People v. Makaba* (1993) 14 Cal.App.4th 847, 853; *People v. Humphries* (1986) 185 Cal.App.3d 1315, 1341.)  In addition, defendant must demonstrate that it is reasonably probable a more favorable result would have been obtained in the absence of counsel's failings. ( *People v. Duncan* (1991) 53 Cal.3d 955, 966; *People v. Cox* (1991) 53 Cal.3d 618, 656.)

1.    Matthew Bryant's Taped Statement

Trial counsel was not ineffective for failing to object to the playing of Bryant's taped statement. Evidence Code 1235 provides in effect that a prior inconsistent statement of a witness is admissible not only to impeach his credibility but also to prove the truth of the matters asserted. *People v. Green* (1971) 3 C.3d 981

At trial Bryant admitted that he did speak with Sgt. Green regarding defendant's role in the murder that took place on July 16, 2001. In Bryant's taped statement he admits to speaking with both Raymond Jones and defendant regarding the shooting. Bryant also admits on tape, that he personally met with defendant after the shooting in an attempt to retrieve the murder weapon and make the Cadillac, that was used in the murder, appear to have been stolen. However, at trial Bryant insisted that he neither

1   spoke to or met with defendant regarding the murder (RT Page 234, Lines 7-19). At

2   trial Bryant also insisted that he did not remember telling Sgt. Green in his taped

3
4   statement that he had spoke to or met with defendant (RT Page 236, Lines 17-28 Page

5   237, Lines 1-22). Bryant was then allowed to listen to his 15 minute taped statement

6   outside the presence of the jury.

7        After listening to his statement Bryant acknowledged that he did in fact make

8
9   statements to Sgt. Green regarding both speaking to and meeting with defendant.

10  Bryant however, added that those statements were untrue and the result of coercion and

11  threats by Sgt. Green (RT All of Pages 254 & 255). The people then proceeded to

12  properly impeach Bryant with his taped statement, but only after trial counsel properly

13
14  requested the court first admonish the jury. (RT Pages 257 & 258). The playing of the

15  taped made it clear that there was nothing on the tape that suggested in the slightest

16  that Bryant's statements to Sgt. Green were the result of force or threats. Bryant's trial

17  testimony concluded with him repeatedly stating that he did not remember much of what

18  he told Sgt. Green( RT Pages 274 through 286).

19

20       A more favorable result would not have been obtained had trial counsel objected

21  to the playing of Bryant's taped statement.  Bryant's taped statement was clearly

22  admissible as a prior inconsistent statement.  All of the proper foundations were met.

23  Bryant was given an opportunity to explain or deny his prior statements or lack of

24
25  recollection. Prior statements may be either inconsistent with some express testimony

26  or inconsistent with some implied testimony. Inconsistency in effect, rather than

27  contradiction in express terms, is the test for admitting a witness' prior statement

28

3

000493

1   (*Firbreboard Paper Products Corp. v. East bay Union of Machinists* (1964) 227

2   Cal.App2d 675, 699[39 Cal.Rptr. 64]), and the same principle governs the case of the

3

4   forgetful witness. It was clear at trial that Bryant was not suffering from amnesia, but

5   rather was being purposely evasive.  An objection by counsel would have been futile.

6   Trial counsel's choice to request that the court admonish the jury under Evidence Code

7   355 before playing the tape was more than adequate.

8

9        Defendant's argument that Bryant's references in his taped statement to what

10  Raymond Jones told him amounting to second-hand hearsay is without merit. Raymond

11  Jones testified before Bryant.  What Jones told Bryant comes in as a prior consistent

12  statement of Jones.  As to Bryant's reference that defendant sold drugs, this fact was

13

14  alluded to by numerous witnesses before and after Bryant testified, thus there was no

15  prejudice to defendant.

16

17  2.    403 Hearing

18

19        Trial Counsel was not ineffective for failing to ask for a "403 hearing" in order to

20  reveal defendant's proposed testimony. On the contrary, it would have been both

21  negligent and foolish to expose her clients defense in such a manner.  What is most

22  important to make note of on this issue is that the Oklahoma prior was not used in the

23  People's case in chief. The people conceded that we would not have sought to

24

25  impeach the defendant with the prior in the form of a felony conviction. Our sole

26  purpose for seeking any reference to the Oklahoma case would have been as a result

27  of defendant having testified to behavior or thoughts which would make Evidence Code

28

4

C00494

1   1101(b) applicable (RT 3-14-3 1-30). The people took great lengths to assure the court

2   that references to the Oklahoma cases would take place only after having laid the

3
    proper foundations and giving the court an opportunity to rule beforehand.
4

5       Essentially what defendant is suggesting is that trial counsel should have given

6   the court a different, or more detailed description of what defendant might have testified

7   to at trial.  A more favorable result would not have been obtained if this were done.

8
    Even if defendant were himself allowed to describe his potential testimony in a "403
9

10  hearing" the court would not and could be prevented from reviewing the issue again

11  after having heard defendant's testimony in front of  the jury.

12      The same rational exists regarding the court making a ruling under an Evidence

13
    Code 352 analysis.  Defendant's testimony in a "403 hearing" would only give the court
14

15  an idea of what he might say. It would have been impossible for the court to know

16  whether or not defendant's version of what happen would have held up on cross

17  examination.

18
    An informed tactical judgment which results in the withdrawal of a potentially
19

20  meritorious defense does not constitute incompetence. (In re Ibarra (1983) 34 Cal.3d

21  277, 284.) That defendant might have desired some different action by his counsel is

22  irrelevant.  "There is no constitutional right to an attorney who will conduct the defense

23
    of the case in accordance with an indigent defendant's whims.'" (People v. Jones
24

25  (1971) 16 Cal.App.3d 837, 844.) Trial Counsel has over 20 years worth of trial

26  experience. Her tactical decisions regarding these issues were both appropriate and

27  reasonable.

28

C00495

3.    Cross Examination of Prosecution Witnesses

Defendant suggests that in some areas Raymond Jones and Bianca Moore's trial testimony differed from that of their preliminary hearing testimony and or prior statements. Defendant then concludes that trial counsel was ineffective for not having more vigorously cross examined these two witnesses. For example, defendant points out that Raymond Jones described himself as being pretty drunk before the shooting at the preliminary hearing, while at trial Jones states he did not consider himself high. At trial, counsel cross examined Jones over and over in this area (RT Pages 206-209). Defendant goes on to point out similar inconsistencies in the rest of Jones trial testimony, which are also more than adequately covered by his attorney.

Cross examination is by far the most challenging trial task to perform and also the most difficult to critique. It is not sufficient to allege merely that the attorney's tactics were poor or that the case might have been handled more effectively. (*People v. Lanphear* (1980) 26 Cal.3d 814, 828.) "Even the most competent counsel may from time-to-time make decisions or conduct himself in a manner which might be criticized by other equally competent counsel but that is not the measure of competency of counsel on review by an appellate court." (*People v. Wallin* (1981) 124 Cal.App.3d 479, 485.)

The court, contrary to defendants moving papers, did in fact give the jury a number of concluding instructions regarding Jones' testimony.(See CALJIC 2.23, 3.10, 3.11, 3.12, 3.14, and 3.18) A more favorable result would not have been obtained had

6

trial counsel cross examined Bianca Moore and Raymond Jones more vigoursly. For all we know, additional cross examination could have been more detrimental to defendant.

## 4.    Dr. Herrmann's Ballistic Opinion

There is absolutely no merit to defendant's claim that trial counsel was ineffective for failing to object to Dr. Herrmann giving his opinion on how far the shooter may have been from the victim.  Dr. Herrmann has been a Forensic Pathologist for over 25 years. He has examined thousands of people who have suffered from shotgun wounds.  Trial counsel is an experience attorney. She knows that Pathologists such as Dr. Herrmann have routinely been qualified to give opinions regarding distance as it relates to the spread shotgun pellets.  An objection by trial would have been useless.  Had an objection been made it would have been overruled.    This is not on original (see)

Even if the court had sustained an objection by trial counsel a more favorable result could not have been obtained because Shanae Anderson, Raymond Jones, and Bianca Moore all testified in effect that defendant was somewhere between 5 to 12 feet away from the victim when he fired the shotgun.

In conclusion, reviewing courts should avoid second-guessing counsel's informed choice among tactical alternatives. (*People v. Pope, supra*, 23 Cal.3d at p. 424; *People v. Lanphear, supra,* 26 Cal.3d at p.828.) "In evaluating defendant's showing we accord great deference to the tactical decisions of trial counsel in order to avoid 'second-guessing counsel's tactics and chilling vigorous advocacy by tempting counsel "to defend himself against a claim of ineffective assistance after trial rather than to defend

his client against criminal charges at trial." ' " (*In re Fields* (1990) 51 Cal.3d 1063,

1069-170.)

For all the reasons mentioned above, defendant's motion for a new trial should

be denied.

Dated: January 5, 2004

Respectfully submitted,

THOMAS J. ORLOFF
District Attorney

By:

Darryl Stallworth
Deputy District Attorney

1

2  WALTER K. PYLE
   SBN 98213

**ENDORSED**
**FILED**
ALAMEDA COUNTY

3  2039 Shattuck Avenue, Suite 202
   Berkeley, CA  94704-1116

4  (510) 849-4424

NOV 2 4 2003

5  *Attorney for Defendant Ivan Kilgore*

CLERK OF THE SUPERIOR COURT
By Yolanda Phuong, Deputy

6                                IN THE

7      SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA

8  PEOPLE OF THE STATE OF CALIFORNIA,

9                               *Plaintiff,*

10                                              No. **141033**

                  v.

11
   IVAN KILGORE,                              MOTION FOR NEW TRIAL
12                                            Dec. 5, 2003
                               *Defendant.*    9 a.m.
13                                            Dept. 6

14

15      Defendant IVAN KILGORE moves for a new trial in this case, on the

16  grounds that he received ineffective assistance of counsel in his first trial.

17      This motion is based on this notice, the attached memorandum of points

18  and authorities, the records and files in the case, and such further evidence and

19  argument as may be presented at the hearing.

20      Defendant asks that he be allowed to call Attorney Levy to testify at a

21  hearing on the motion, and that he be given the opportunity to testify in his own

22  behalf.

23                                    Ⓐ Ⓕ to object to
                                   changing of pleadings and Ⓕ to
24
                                   request M2 instruction for
25  _____        drive-by. ⒶⒻ ✗ to highlight
         Walter K. Pyle
26     *Attorney for Defendant*     the D.A. must prove A

27                                  meant to Kill vs GBI:
                                   Ⓐ refused to agree two objects
28
                                        of retaliation.

                      *Motion for New Trial*

POINTS & AUTHORITIES

TABLE OF CONTENTS

I. COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO PLAYING THE
COMPLETE TAPE OF THE MATTHEW BRYANT INTERVIEW............................1

II. COUNSEL WAS INEFFECTIVE FOR NOT ASKING FOR A "403
HEARING" TO PRESENT THE PRECISE TESTIMONY TO BE OFFERED
BY DEFENDANT AT TRIAL, SO THE COURT COULD MAKE AN
INFORMED DETERMINATION OF THE ACTUAL SIMILARITY OF THE
OKLAHOMA EVIDENCE WITH THE CASE AT BAR. COUNSEL
SHOULD ALSO HAVE ASKED THE COURT TO WEIGH THE
PROBATIVE VALUE OF THE OKLAHOMA EVIDENCE AGAINST ITS
PREJUDICIAL EFFECT. ............................................................................................3

III. COUNSEL WAS INEFFECTIVE IN HER CROSS-EXAMINATION OF THE
PROSECUTION WITNESSES.................................................................................7

   A. Testimony of Raymond Jones........................................................................7

   B. The Testimony of Jones at the "402 Hearing."..........................................8

   C. The Testimony of Bianca Moore ..................................................................10

IV. TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE WHEN SHE DID
NOT OBJECT TO, AND ASK TO STRIKE, THE TESTIMONY, OF DR.
HERRMANN'S BALLISTICS OPINION...............................................................10

V. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE UNDER THE
SIXTH AMENDMENT............................................................................................12

CONCLUSION .................................................................................................................13

(A) entered into evid pictures of car that where
altered due to the changing of tint. (A) (E) to
investigate into this issue, and presented evid
that enhanced the jurors ability to come
to a conclusion that the tint was light
enough to see through or would not
obstruct a wit(s) ability to percieve.

*Motion for New Trial*

# TABLE OF AUTHORITIES

## CASES

In re Hall (1981) 30 Cal.3d 408 ..................................................................2

Kimmelman v. Morrison (1986) 477 U.S. 365 ..........................................12, 13

McKinney v. Rees (9th Cir. 1993) 993 F. 2d 1378 ......................................5

People v. Fierro (1991) 1 Cal.4th 173 ..........................................................11

People v. Guizar (1986) 180 Cal. App. 3d 487 ..............................................2

People v. Marshall (1996) 13 Cal.4th 799 ....................................................5

People v. Pope (1979) 23 Cal. 3d 412 ..........................................................12

People v. Simon (1986) 184 Cal.App.3d 125 ................................................4

People v. Stratton (1988) 205 Cal. App. 3d 87 ..............................................12

People v. Sam (1969) 71 Cal.2d 194 ............................................................2

Strickland v. Washington (1984) 466 U.S. 668 ........................................11, 13

United States v. Masters (9th Cir. 1971) 450 F.2d 866 ................................5

United States v. Mehrmanesh (9th Cir. 1982) 689 F.2d 822 ......................5

United States v. Webb (9th Cir. 1972) 406 F.2d 1353 ..................................5

## STATUTES

California Evidence Code

§ 352 ..............................................................................................................4

§ 403 ..............................................................................................................4

§ 720 ............................................................................................................11

§ 791 ..............................................................................................................2

§ 1235 ............................................................................................................2

§ 1236 ............................................................................................................2

(A) ppened door to 1 feloney status in direct - exam of KT.

ii

*Motion for New Trial*

Sixth Amendment .......................................................................................................6, 12

Fourteenth Amendment ...........................................................................................5, 6, 9

iii

*Motion for New Trial*

1

2 ## POINTS & AUTHORITIES

3

4 ### I.
### COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO PLAYING THE
5 ### COMPLETE TAPE OF THE MATTHEW BRYANT INTERVIEW.

6    Matthew Bryant was called as a State's witness. (RT 229.) Bryant testified that

7 he had been arrested and Sgt. Green told him he would let him (Bryant) go if he

8 would help him out. (RT 234.) Bryant testified he gave Green information he had

9 heard on the street about the shooting. (RT 234.)

10    In response to questions by the prosecutor, Bryant said he did not remember

11 telling Sgt. Green that the defendant offered him $500 to retrieve a shotgun on the

12 balcony of the apartment (RT 236), did not remember telling Green that defendant

13 said he was going to "smoke these dudes" who robbed him (RT 237), and did not

remember defendant trying to get him to help make it look like his Cadillac had been
14
broken into. (RT 237.) The prosecutor stated that those were the "gist" of the
15
prosecutor's questions regarding the tape. (RT 237.)

16    The prosecutor then asked to play to the jury a tape recording of the interview

17 with Sgt. Green. (RT 236, 237.) Counsel did not object.

18    The tape was hearsay, and there was no applicable hearsay exception making it

19 admissible. It contained much prejudicial and incriminating material. (RT 259-274.)
*+ was robbed of drugs*
20 For example, on the tape Bryant said that defendant sold drugs. (RT 263.) Even more

21 prejudicial, the tape related second-hand hearsay of what Jones had told Bryant about

22 how defendant had said let's ride around, and he had taken a gun, and defendant shot

23 someone. (RT 265.-266.) *Also it presented to the jury that ∆ had wks before*
*shooting expressed a desire to kill ⓓ, this evid. was*
24    There was no reason not to object to such evidence. Nor did counsel object

25 when the prosecutor later asked Bryant *again* about Jones telling him that defendant

26 shot someone from the back seat of the Cadillac. (RT 276.)

27    *not presented in any of*
*the other prosecutions*
28    *wits or evid.*

1

1

2     The tape was not admissible as a prior inconsistent statement (Evid. Code

3   § 1235), because all Bryant had said at that point was that he did not remember

4   making the statements to Green. Lack of recollection is not "inconsistent" with

    another statement. (People v Sam (1969) 71 Cal.2d 194, 210.) Indeed, Bryant, after

5   hearing the tape outside the presence of the jury, readily conceded he told Green—

6   untruthfully—that the defendant told him he had shot someone. The tape was

7   consistent (RT 269) with this specific testimony. Bryant was never asked about the

8   "gist" of the other questions the prosecutor had in mind, so all that was left in the

9   record as to those questions was a failure of recollection, which is not inconsistent

10  with any statement.

11     Nor did the tape qualify as a prior consistent statement (Evid. Code §1236)

12  because Bryant had not made an inconsistent statement and the defendant had not

13  attacked Bryant's credibility. (See Evid. Code § 791.)

14     There is no reasonable reason for counsel not to object. In People v. Guizar

15  (1986) 180 Cal. App. 3d 487, trial counsel failed to take action to edit a statement

16  admitting in evidence against defendant so as to delete references to unproved

17  serious offenses that had little to do with the issues on trial. The court found it

18  inconceivable that counsel's failure to seek exclusion of the objectionable evidence was

19  a tactical decision, and reversed and remanded the case. (Id., at 492.)

20     Indeed, there were suggestions in Bryant's testimony that Sgt. Green had

21  coerced the statements on the tape. (RT 234.) Counsel should have sought a hearing

22  to disqualify the statements made to Green on due process grounds as well.

23     Counsel should also have interviewed Matthew Bryant before trial so she could

24  adequately prepare for cross-examination. The failure to interview witnesses cannot

25  be excused at trial strategy. (In re Hall (1981) 30 Cal.3d 408, 426 [relying on results of

26  police investigation was inexcusable delegation of attorney's duty].)

27

28

                                    2

1

2        Thus there was no basis for not objecting to admission of the tape recording.

3  The evidence was highly prejudicial, and sufficient to have affected the outcome of the

trial, requiring the court to grant a new trial.

4

5                                   II.

**COUNSEL WAS INEFFECTIVE FOR NOT ASKING FOR A "403 HEARING" TO**

6  **PRESENT THE PRECISE TESTIMONY TO BE OFFERED BY DEFENDANT AT**
**TRIAL, SO THE COURT COULD MAKE AN INFORMED DETERMINATION OF**

7  **THE ACTUAL SIMILARITY OF THE OKLAHOMA EVIDENCE WITH THE CASE**
**AT BAR. COUNSEL SHOULD ALSO HAVE ASKED THE COURT TO WEIGH**

8  **THE PROBATIVE VALUE OF THE OKLAHOMA EVIDENCE AGAINST ITS**
**PREJUDICIAL EFFECT.**

9

10        The prosecution sought to use evidence of a prior event in Oklahoma which

11  resulted in a conviction of an offense which is the Oklahoma equivalent to the crime

of involuntary manslaughter in California. The prosecutor had a transcript of

12  defendant's testimony in the Oklahoma case.

13

14        The court asked the prosecutor to describe the purpose for which he sought to

introduce the evidence. (RT 3-14.-03, p. 5.) The prosecutor stated that he suspected

15  the defendant's explanation would be very "similar" in this case to the Oklahoma

16  explanation. (RT 3-14.-03, p. 8.) The prosecutor thought there might be testimony by

17  the defendant that the shooting in the case at bar was "spontaneous or was an

18  accident or was the heat of impulse." (RT 3-14.-03, p. 9.)

19        The proposed testimony of the defendant was discussed in general terms, but it

20  was not described in sufficient detail to allow the court to make an informed

21  determination whether the two incidents were as "similar" as the district attorney

22  thought they would be. Indeed, the district attorney noted that defense counsel's

23  moving papers said the defendant would say he thought Terry "would shoot," not

24  "Terry had shot,"[1] as defense counsel stated at the argument. (RT 3-14.-03, p. 28.)

25

26        [1] Defendant contends that he had told defense counsel (as well as Mr. Traback,
his previous attorney) exactly, and in detail, what his testimony would be, but that his

27  counsel did not correctly set forth that information in her moving papers.

28

*Motion for New Trial*

1

2   The court itself expressed some irritation that the defendant's proffered testimony

3   kept fluctuating.  (RT 3-14.-03, p. 29.)

4           In making a comparison of the similarity of the two events, it was important to

5   a proper ruling for the court to be advised of the exact nature of both the Oklahoma

6   testimony and the proposed testimony of defendant here.

7           Although the Oklahoma testimony was available, the court was told only in

8   general terms what defendant's testimony here would be.  Defendant asserts that

    defense counsel was ineffective, and should have requested a hearing pursuant to

9   Evidence Code section 403 [determination of preliminary fact] to allow defendant to

10  testify specifically as to what happened at 30th and San Pablo on the date of the

11  incident.

12          Counsel was also ineffective for not asking the court to weigh the probative

13  value of the evidence against its prejudicial effect once the court did not proceed to

14  engage in such a process.  (Evid. Code §352.)

15          In People v. Simon (1986) 184 Cal.App.3d 125 the prosecution presented

16  evidence of a prior assault to negate the defendant's claim of self-defense.  The Court

17  of Appeal explained that it was important to determine whether factually the two

18  incidents were *sufficiently similar* to negate the self-defense claim.  (Id. at p. 130.)  A

19  trial court must also weigh whether the probative value of the evidence outweighed

20  its prejudicial effect.  (Id., at p. 129.)  This determination likewise requires that the

21  court carefully scrutinize the testimony that the defendant proposes to give so the

22  State's proffered impeachment evidence can be weighed against it.

23          If the court, after hearing the proffered testimony (out of the presence of the

24  jury) determined that the evidence of the Oklahoma incident was sufficiently similar

25  that it was admissible, then the jury should also be given the opportunity to itself

26  factually evaluate the Oklahoma evidence.  The jury should be instructed that unless it

27  determines, by a preponderance standard, that defendant's claim of self-defense in the

28

4

*Motion for New Trial*

2   Oklahoma case was bogus, it should disregard the evidence of the Oklahoma incident.

3   (See People v. Simon, supra 184 Cal.App.3d at 134; People v. Marshall (1996) 13

4   Cal.4th 799, 832.)  However, the precise nature of defendant's proposed testimony

5   should be heard by the court so it can determine whether there is even sufficient
    evidence to allow the other evidence to the jury.

6
        Defendant's Fourteenth Amendment right to due process of law is also
7   implicated here.  The use of "other acts" character evidence is contrary to firmly

8   established principles of Anglo-American jurisprudence, and has been since at

9   least 1684.  (McKinney v. Rees (9th Cir. 1993) 993 F. 2d 1378, 1380.)  Proof of an

10  act in the past often does prove motive, but instead may only prove a propensity

11  to commit crimes.

12      Proof of prior "bad acts" can be highly prejudicial, and the distinction

13  between proof of bad character (the type of a person who would commit this

14  crime) and proof of intent or motive is sometimes lost in the heat of trial, or even

15  simply overlooked.  Past criminal activity very often proves no more than bad

16  character.  (United States v. Masters (9th Cir. 1971) 450 F.2d 866, 867 [No

17  relationship between smoking marijuana and willingness to smuggle marijuana];

18  United States v. Mehrmanesh (9th Cir. 1982) 689 F.2d 822, 832 [same; prior drug

19  use not logical proof of drug importation, other than showing defendant's

20  general criminal propensity]; see also United States v. Webb (9th Cir. 1972) 406

21  F.2d 1353, 1353 [robbery prosecution; proof of prior robbery merely shows "that

22  Webb is a bad character, disposed to commit robbery."]; McKinney v. Rees,

23  supra 993 F.2d 1378, 1383, 1385 [proof of knife ownership proved only defendant

24  was the type of person who would own knife, an impermissive propensity

25  inference, hence no "permissible" inferences to be drawn, hence violation of due

26  process of law under Federal Constitution].)

27

28

5

*Motion for New Trial*

Once the court had indicated it intended to allow the Oklahoma evidence, the court should have also weighed that prejudicial evidence to determine its relative probative value. There does not appear to be any explanation for counsel not asking the court to do so.

In the context of the evidence available to the court when it ruled that the district attorney could use the Oklahoma evidence for impeachment, the similarity of the two incidents was insufficient, and there were no permissible inferences which the jury could have drawn from the Oklahoma evidence. Counsel's failure to ask for a "403 hearing" and a "352 determination" violated defendant's Sixth Amendment right to counsel and the Due Process Clause of the Fourteenth Amendment.

## II.
## COUNSEL WAS INEFFECTIVE IN HER CROSS-EXAMINATION OF THE PROSECUTION WITNESSES.

### A.
### Testimony of Raymond Jones

Defense counsel was ineffective in cross-examining Raymond Jones, particularly in view of the fact that Jones had given many statements when testifying at the preliminary hearing which could have been useful at trial.

For example, Jones had testified at the preliminary examination that he had smoked some marijuana and that he was "pretty drunk" (RT 6-5-01, p. 1) at the time of the shooting, and that his senses could have been dulled. (RT 6-5-01, p. 1.) At trial he testified that he smoked marijuana (RT 205), had some beer (RT 206) and had possibly snorted some heroin (RT 207, 209), but he nevertheless he did not consider himself high by the time of the shooting (RT 215) and instead was "sober at that point." (RT 216.) Counsel did not vigorously cross-examine Jones using his contradictory testimony at the preliminary examination.

6

*Motion for New Trial*

(A) (E)  to  request  instructions  or  elict or present  testimony
dope  femd  of / from  expert  pertaining  to  the  relience  on  the
effect  of  drugs  on  a  witnesses  ablity  to  perceive  and  →

2       At the preliminary examination Jones said that he and defendant had talked

3   about how to get the guys that robbed defendant off defendant's back, and they

4   talked about a confrontation and a "fair fight," but there had never been any talk of

5   shooting, and when they were leaving in the Cadillac that day the defendant had only

6   said "there was going to be a fight." (RT 6-5-01, p. 15.) At trial Jones only testified as

7   to *his* state of mind that Jones guessed defendant was going to go over and fight

8   those guys. (RT 157-158.) Counsel did not bring out that that was defendant's state of

9   mind, too.[2] In addition, Jones had testified at the preliminary examination that he did

10   not see a shotgun go into the car in his presence, and that "most likely the shotgun

11   was already in the car," i.e., the shotgun was in the car because defendant customarily

12   carried it there, not because he brought it with him that day for a drive-by shooting.
(RT 6-5-01, p. 13.) Counsel did not bring this out at trial, either.

13       Also, at the preliminary examination Jones acknowledged that initially when

14   the police asked, Jones told them defendant didn't say anything before the shooting.

15   (RT 6-5-01, p. 16.) At the trial when Jones said defendant said "What's up punk?" just

16   before the shooting, counsel did not bring out Jones prior contradictory statement to

17   the police. (RT 199.) Counsel should also have emphasized that Jones (according to

18   his preliminary examination testimony) told defendant not to do anything stupid like

19   shoot someone, and defendant agreed with that (RT 6-5-01, p. 16), while at trial she

20   only brought out that Jones told him not to do something stupid. (RT 224.)

21       Jones told Sgt. Green he didn't know who decided to have him drive the

22   defendant's car (Taped Statement to Sgt. Green, p. 7), but at trial he said the defendant

23   asked him to drive. (RT 159.)

24       These discrepancies in Jones' testimony suggested that Jones may have been

25   willing to slant his testimony in favor of the prosecution's case, but counsel did not

26   bring out the contrary evidence so the jury could evaluate it.

27       [2] Indeed, counsel objected to Jones' testimony on the point. (RT 158.)

28

2   Counsel also did not bring out that at the preliminary examination Jones

3   had, on Exhibit E, drawn a line showing an illegal turn going south on San Pablo,

4   but at trial he drew a legal turn going north on San Pablo, which conflict would

5   have reduced the perceived reliability of Jones' testimony.

6   Counsel should also have pointed out to the jury the lack of logic of Jones'

7   testimony that he was afraid of Terrance Dandy and bought a gun to protect

8   himself, but he only gave defendant a baseball bat to protect himself from the

9   same danger. Counsel should have also questioned how Jones could have seen

10  defendant drive away to the Home Depot, as he claimed, when he continued to

11  work inside the store, where a view was not possible. (RT 156.)

12  Counsel also did not examine Jones to bring out that (as he testified at the

13  preliminary examination) he was 15 feet away from the people on the sidewalk

    *30 or more*

13  when he made his U-turn. (RT 6-5-01, p. 5.) This would have contradicted

14  testimony by Shanea Anderson that the car pulled up to the curb (RT 69) and the

15  testimony by Bianca Moore that the car turned and pulled up "in front" of her.

16  (RT 333) where she was allegedly able to see defendant. (RT 334.)

17  Counsel should also have pointed out at trial that because Jones' case had

18  been continued to shortly after he was to testify at the preliminary examination

19  (RT 130), his testimony was "locked in" at that point and he could not thereafter

20  change his testimony without being charged with perjury.

21

22  **B.**
    **The Testimony of Jones at the "402 Hearing."**

23  An informant had told police that Raymond Jones was driving the vehicle

24  involved in the shooting. (RT 110.) Police arrested him for the murder (RT 110), with

25  no probable cause (RT 135) , and questioned him for several hours. (RT 119.) Initially

26  Jones denied any knowledge of the incident (RT 126), but when they told him he

27  could either be a defendant in a murder case or a witness, he thought maybe he ought

28

8

*Motion for New Trial*

*[handwritten margin note, left side, rotated:]* (A)(E) 4 CCJ, Mary W., B/M Loggia or McGuire or them about this. Subpoena Dorthy Irvin. or McGuire or them about this.

to tell the police "something they want to hear" (RT 6-4-01, P. 101), and he gave a statement exculpatory to him and inculpatory to defendant.

That statement, we submit, was clearly a coerced one. Coercion is not limited to physical battery.

Jones was released from custody after he implicated defendant in his statement. But about four months later he was re-arrested on a charge of being an accessory after the fact.

Counsel should have countered Jones' testimony at the "402 hearing" with inconsistencies in the preliminary examination transcript of his testimony. Inconsistencies would tend to suggest that Jones was amenable to slant his testimony to gain favor with the prosecution, that is, it was evidence of coercion.

The re-arrest of Jones only served to emphasize the power the police had over Jones. The message was not lost on Jones. From feeling relieved when he had been released the first time, Jones went to feeling betrayed when he was re-arrested. (RT 6-5-01, p. 17.) When he was released a few days later, he said at the preliminary examination that he was in a pretty good mood to cooperate with the authorities so he wouldn't get arrested a third time. (RT 6-5-01, p. 18.) His agreement with the prosecutor (Exhibit 10) required him to testify at trial. All this was evidence of coercion. *And/ RJ testimony at PX"were he said he wanted his testimony to be something the DA would be satisfied w/ so He wouldn't have to do any more time.*

Defendant asserts that had counsel brought out Jones' statements as Jones had testified at the preliminary examination, and emphasized to the court the that it is the unreliable nature of coerced testimony that prevents its admission, Jones would not have been allowed to testify at trial as to the matters he told the police. When Jones was allowed to testify it violated defendant's Fourteenth Amendment right to due process of law.

Counsel also did not request a jury instruction detailing the factors that when a prosecution witness such as Jones, who had been arrested but had charges dropped

*In support of △ argument that ④Ⓔ to elicit relevant issues pertaining to RJ's vol-g untariness and free will in making the decision to Motion for New Trial cooperate attenuated from the initial coercion of illegal arrest, ④ Ⓕ to impeach or elicit PX testimony (pg 101) whereas PJ expressed that →*

to [margin, rotated] be compelled to be a witness against A at PX. If expressed his dislike in having to testify against his better circumstances

testimony should be viewed with caution because the arrangement provides a motive to give false testimony.

## C.
## The Bianca Moore Testimony

Bianca Moore admitted that she had given a false identity of Terry Dandy to the police, so her credibility started out with at least some taint. Defense counsel, however, was ineffective for not vigorously cross-examining Ms. Moore to bring out further impeachment evidence.

Bianca Moore testified she saw the man with the gun. (RT 334.) Counsel started to impeach Moore with her statement to the police that she only "thought it was Ivan or one of his friends." (RT 355.) Moore said she did not recall that. (RT 335.) When counsel showed the witness a statement signed by her, Moore said it was her signature but she could not read the writing. (RT 336.) However, counsel did not pursue the matter or call ~~Officer~~Olivas, who took her statement, in order to complete the impeachment. (See Olivas notes, bottom of p. 2.)

*Handwritten left margin annotation:*
$) See #19
f BM Notes
Also PX pg 35-36
= CE (fear lie),
Also pg 33-34
bout where she
comes from ...
Tell police all
about it
wit nothing about
" or (1) theory.

*Handwritten annotation (center, above Olivas):* Ofc. Grivado

*Handwritten annotation (right):* The issue w/ Olivas is in his notes the statements BM gave about what her belief was based on a similar car, this was additional impeach evid.

## IV.
## TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE WHEN SHE DID NOT OBJECT TO, AND ASK TO STRIKE, THE TESTIMONY, OF DR. HERRMANN'S BALLISTICS OPINION.

Dr. Herrmann, a forensic pathologist, was called as a witness for the prosecution. The court found him to be "well-qualified to give an opinion about the cause of death." (RT 41.)

Dr. Herrmann performed an autopsy on the deceased, William Anderson. (RT 42.) He found 11 penetrating shotgun pellet wounds and two exit wounds. (RT 42-43.) The 11 penetrating wounds were in a fairly tight group, approximately two-and-a-half inches in diameter. (RT 47, 51.) There was no evidence that any powder was

*Handwritten bottom annotations:*
* This is to the contrary of (A) (E) to object to Dr. Herrmann's ballistic opinion; (A)(E) to elicit PX testimony by P.H. were's the testified to the spread pattern be $\frac{1}{10}$ ins inconsistant to the markings of a saw-off & shot-gun. (BM testimony).

*Center:* Motion for New Trial

* (A)(E) to C.E. Dr. P.H. concerning the effects of drugs (herion, marijauna and achochol) on a witnesses ability to percieve. (RJ)

We need to elaborate on the prejudice. *Rev. v. Forensic.*

1

2  embedded in the skin. (RT 47.) The significance of these findings is "quite variable,"

3  however, in the case of a shotgun. (RT 52.)

4      After answering the prosecutor's question what he noted about the pattern of

5  the 11 entry wounds, the doctor went on to state that he estimated that the weapon

6  was fired from between 5 and 12 feet away. On cross-examination Dr. Herrmann

7  stated that he has seen enough shotgun wounds to say that the distance from which the

   weapon was fired was within his expertise. (RT 50.) The spread of the pellets also

8  depends on the choke of the gun, but there was no way Dr. Hermann could tell

9  whether a choke was "used" or not. (RT 52-53.)

10     Defendant asserts that his counsel should have objected to the opinion as one

11  that Dr. Herrmann had not been qualified to give, and asked that the testimony be

12  stricken.

13     First, Dr. Hermann demonstrated no training or expertise that would allow him

14  to testify about how much shotgun pellets "spread" in a given situation, particularly

15  when there was no information available about the shotgun that was involved.

16  Although he had been qualified to determine the cause of the death, there was no

17  showing that he had special knowledge, training or experience to qualify him as an

18  expert on ballistics or shotgun pellet patterns, let alone express an opinion relating to a

19  shotgun of unknown characteristics. (See Evid. Code § 720.)

20     The fact that Dr. Herrmann testified he had seen other shotgun wounds was

21  insufficient to establish his qualifications. (See People v. Fierro (1991) 1 Cal.4th 173, 224.)

22  [retired deputy could testify about ballistics, but not as to effect of autopsy procedures

23  on evidence of the bullets' trajectory.] Even if Dr. Hermann had seen many, many

24  gunshot wounds, that fact would not have qualified him to express an opinion as to

25  how far away a gun was when it was fired, unless he had witnessed the shootings or

26  other ballistic tests themselves.[3]

27     [3] This is not a case where burns, smoke or powder on the skin were present.

28

11

*Motion for New Trial*

## V.
## DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE UNDER THE SIXTH AMENDMENT.

A criminal defendant has a constitutional right to *effective* assistance of counsel. (People v. Ledesma (1987) 43 Cal. 3d 171 215.) To prevail on a claim of ineffective counsel, a defendant must show first, that counsel's representation fell below an objective standard of reasonableness (Strickland v. Washington (1984) 466 U.S. 668, 688), and second, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (Id. at 694.)

Both prongs of the Strickland test have been met in this case.

It is trial counsel's duty to investigate all defenses of fact and law which may be available. (People v. Mattson (1959) 51 Cal. 2d 777, 791; People v. Pope (1979) 23 Cal. 3d at 425.) Counsel should advise his client of his rights and take all necessary actions to protect them. If counsel's failure to perform these obligations results in the withdrawal of a crucial defense, then defendant has not had the assistance to which he is entitled under the Sixth Amendment. (People v. Pope, supra 23 Cal. 3d 412, 425.)

The actions of counsel in the case at bar did not give the defendant the standard of performance to which he was entitled.

When trial counsel has a tactical consideration in mind which explains the failure to raise a crucial defense, his tactics, even if unsuccessful, will usually not be considered incompetence. (People v. Pope, supra 23 Cal. 3d at 425.) However, the record itself may dispel the notion that counsel's shortcoming was the result of a tactical decision. For example, in People v. Stratton (1988) 205 Cal. App. 3d 87, the court held that the face of the record established that it was unreasonable to suggest that "tactics" could explain or justify counsel's failure to object to the potentially prejudicial circumstances surrounding appellant's arrest (holding a dummy hand grenade) which had nothing to do with the robbery with which he was charged. (Id. at p. 93, 94.)

12

*Motion for New Trial*

1

2      Except for the errors of counsel in this case, taken cumulatively, there was a

3  substantial probability that the result of the proceeding would have been different.

4  (Strickland v. Washington, supra 466 U.S. at 694 ; Kimmelman v. Morrison (1986) 477

5  U.S. 365, 375.)

6                              **CONCLUSION**

7      Mary Washington testified at trial to hearing several shots as they passed the

8  intersection (RT 531, 535.)  Mary Loggins testified that after the shooting she saw

9  someone running down San Pablo, and his hands and arms were close to his body

10 like he may have had something under his jacket. (RT 514, 423.)  This evidence was

11 consistent with the theory that Terry Dandy had a pistol and had fired it at defendant,

12 which would have supported a theory of self defense.

13      The record shows that defense counsel gave ineffective assistance by not

14 adequately investigating or preparing for a defense based on reasonable doubt.  It is

15 clear from the nature of trial counsel's questions up until the court ruled at the end of

16 the State's case that defendant's prior testimony in his Oklahoma case could be

17 introduced to impeach him, that the defense theory was one of self-defense. (See, e.g.,

18 RT 194.)  The record shows that counsel's ineffective assistance made a reasonable

19 doubt defense untenable under the circumstances. The decision to shift the defense to

20 that of reasonable doubt therefore could not have been an informed decision by

21 counsel.

22      Defendant asserts that counsel did not give him effective assistance, and there

23 is a substantial probability that affected the outcome of the case.

24      Defendant asks that this court grant him an opportunity to give testimony as

25 to the information he provided to counsel, and to examine counsel on similar matters.

26      At the close of the hearing the court should grant defendant's motion for a new

27 trial.

28 _____
      Walter K. Pyle          13
      *Attorney for Defendant*

                              *Motion for New Trial*

170-401 (REV. 8/01)

**RENE DAVIDSON COURTHOUSE**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

**CLERKS DOCKET AND MINUTES**

C00498

ᴱˢᵀ  **KILGORE, IVAN** _____ DEPT. **006** ____ CRT. DATE/TIME **1/09/04** ┊ **09:00**

EᵛᵉⁿT NAME  **KILGORE, IVAN DAWNELL** _____ RPT. NO. **00-64017** _____ DOCK NO. **141033**

ᶦ. PROC. **MNT** _____ CEN. **0373689**  PFN. **BBV550** A DAY **11/01/00** SJ DATE **7/19/04**

   **COUNTS** ˙                                         **PIC 00S00   AAG-OPD   ACITY OA**

. CHARGES **1)F187 SC&USE PC 1 PR CONVICTED-J** _____

**STAT   SET   BAIL         $0.00     TOTAL DAYS IN CUSTODY:  1163**

. BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB **05/05/75**

. BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

. FINE/REST. _____ DATE PAID _____ REC. NO**NORTH 1** _____ TIME WAIVED **TWS** _____

**PROCEEDING**

DCCO:

. JUDGE **KENNETH KINGSBURY** _____ DEP. D.A. **DARRYL STALLWORTH**

. DEP. CLERK **WANDA BOYNS** _____ DEF. ATTY. **DEBORAH LEVY, WALTER PYLE** ☐ Not Present

. REPORTER **GERALD DOHRMANN** _____ OTHERS _____

**Defendant:**  ☒ Present   ☐ Not Present   ☐ Excused   ☒ In Custody   ☐ Pro Per

☐ Interpreter _____ is present. Language spoken: _____

☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed

☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)

☐ Referred to Public Defender   ☐ Public Defender files conflict   ☐ Financially ineligible   ☐ Private counsel appointed

☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s)_____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty

☐ Stipulates to: lesser included / reasonably related offense of count(s)_____ to charge(s)_____

☐ Time waived for: ☐ Preliminary Examination _____days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn

.. **Clauses:** ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only

☐ **Priors:** ☐ Stricken _____ ☐ Admitted _____ ☐ Denied

☐ **Probation:** ☐ **Conditional Sentence:** ☐ Granted for_____years/months ☐ See attached conditions

    ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated

☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation

☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____

☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away

☐ Additional order(s): _____

☐ Petition/Motion˙ _____ ☐ Granted ☐ Denied ☐ Withdrawn

☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____

**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified

☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered

☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

      **2X   CERT-CRT:WWM SW/EX: DEBORAH LEVY,**

ont· Date: **2-17-04** ___ Time: **0900** Dept. **06** Proc.: **MNT** Date:_____Time:_____ Dept._____Proc.:_____

〔 S Codes: _____

DOCKET NAME  **KILGORE, IVAN DAWNELL** _____ CT. DATE **1/09/04** DOCK NO. **141033**

70-401 (REV. 6/01)

RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA    C00499

**CLERKS DOCKET AND MINUTES**

DEFT. KILGORE,IVAN    DEPT. 006    CRT. DATE/TIME 2/17/04    09:00

EVENT NAME KILGORE,IVAN DAWNELL    RPT. NO. 00-64017    DOCK NO. 141033

PROC. MNT    CEN. 0373689    PFN BBV550    A DAY 11/01/00    SJ DATE 8/25/04

COUNTS    PIC 00S00    AAG-OPD    ACITY OA

CHARGES 1)F187 SC&USE PC 1 PR CONVICTED-J

---

STAT SET BAIL    $0.00    TOTAL DAYS IN CUSTODY: 1199

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB 05/05/75

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO. NORTH 1    TIME WAIVED ____ TWS ____

**PROCEEDING**

OCCO:

JUDGE KENNETH KINGSBURY    DEP. D.A. DARRYL STALLWORTH

DEP. CLERK WANDA BOYNS    DEF. ATTY. DEBORAH LEVY, WALTER PYLE    ☐ Not Present

REPORTER GERALD DOHRMANN    OTHERS _____

**Defendant:** ☒ Present    ☐ Not Present    ☐ Excused    ☒ In Custody    ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights  ☐ Defendant waives arraignment  ☐ Waiver of Rights filed
☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender  ☐ Public Defender files conflict  ☐ Financially ineligible  ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s) _____  ☐ Not Guilty  ☐ Guilty  ☐ No Contest/Found Guilty
☐ Stipulates to:  lesser included / reasonably related  offense of count(s) _____ to charge(s) _____
☐ Time waived for: ☐ Preliminary Examination _____ days  ☐ Trial ☐ Sentence  ☐ Time not waived ☐ Time waiver withdrawn
☐ **Clauses:** ☐ Stricken _____  ☐ Admitted _____  ☐ Sentencing Purposes Only
☐ **Priors:** ☐ Stricken _____  ☐ Admitted _____  ☐ Denied
☐ **Probation:** ☐ **Conditional Sentence:** ☐ Granted for _____ years/months  ☐ See attached conditions
☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____  ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____ , directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☐ Petition/Motion _____  ☐ Granted  ☐ Denied  ☐ Withdrawn
☐ Referred to: ☐ Probation Dept.  ☐ Financial Hearing Officer  ☐ _____
**Restitution:** ☐ Referred to _____ for Determination  ☐ Ordered  ☐ Reserved  ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ **Bench Warrant:** ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $ _____  ☐ No Cite Release ☐ Night Service

2X    CERT-CRT:WWM

---

nt: Date: 2-19-04    Time: 0900 Dept. 06 Proc.: MNT    Date: _____ Time: _____ Dept. _____ Proc.: _____

3 Codes: _____

DOCKET NAME KILGORE,IVAN DAWNELL    CT. DATE 2/17/04    DOCK NO. 141033

0-401 (REV. 5/01)

RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

C00500

**CLERKS DOCKET AND MINUTES**

KILGORE, IVAN          DEPT. **006**   CRT. DATE/TIME **2/19/04   09:00**

EVENT NAME  **KILGORE, IVAN DAWNELL**          RPT. NO. **00-64017**   DOCK NO. **141033**

PROC. **MNT**          CEN. **0373689**   PFN **BBV550**   A DAY **11/01/00**   SJ DATE **3/27/04**

COUNTS          PIC 00S00   AAG—OPD   ACITY OA

CHARGES **1) F187 SC&USE PC 1 PR CONVICTED—J**

STAT  SET  BAIL     **$0.00**   **TOTAL DAYS IN CUSTODY:** 1204

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB **05/05/75**

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO **NORTH 1**   TIME WAIVED **TWS**

**PROCEEDING**          DCCO:

JUDGE  **KENNETH KINGSBURY**          DEP. D.A. **DARRYL STALLWORTH**

DEP. CLERK **WANDA BOYNS**          DEF. ATTY. ~~DEBORAH LEVY~~ WALTER PYLE   ☐ Not Present

REPORTER **GERALD DOHRMANN**          OTHERS _____

Defendant:   ☒ Present   ☐ Not Present   ☐ Excused   ☒ In Custody   ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed
☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender   ☐ Public Defender files conflict ☐ Financially ineligible ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s) _____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to:  lesser included / reasonably related  offense of count(s) _____ to charge(s) _____
☐ me waived for: ☐ Preliminary Examination _____ days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ Clauses: ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only
☐ Priors: ☐ Stricken _____ ☐ Admitted _____ ☐ Denied
☐ Probation: ☐ Conditional Sentence: ☐ Granted for _____ years/months ☐ See attached conditions
☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☒ ~~Petition~~/Motion  **NEW TRIAL  (CONTINUED)** _____ ☐ Granted   ☐ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____
☐ Restitution: ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ Bench Warrant: ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

____ 2X    CERT-CRT: WWM  SW/EX: PHIL GREEN (SGT.), SGT. ENOCH OLIVAS,

MONTE BEERS, DEBORAH LEVY RESUMES, _____,

W/EX IVAN KILGORE

nt. Date: **3-10-04** Time: **0900** Dept. **06** Proc.: **MNT** Date: _____ Time: _____ Dept. _____ Proc.: _____

), ; Codes: _____          ARGUMENT / DECISION

DOCKET NAME  **KILGORE, IVAN DAWNELL**          CT. DATE **2/19/04**   DOCK NO. **141033**

C00501

(RCD - 10/01)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

## EXHIBIT RECORD

Honorable **KENNETH KINGSBURY**, Judge                    Wanda Boyns, Deputy Clerk

**THE PEOPLE OF THE STATE OF CALIFORNIA,** Plaintiff          Dept. No. **006**

**VS.**

**IVAN KILGORE,** Defendant                               Case No. 141033

The following exhibits were marked for identification and/or introduced in evidence in the above action:
**(Motion For New Trial Only)**

| People (P) or Defendant (D) | Number or Letter | DESCRIPTION OF EXHIBITS | Date Marked for Identification | Date Admitted in Evidence |
|---|---|---|---|---|
| Defendant | A | Interview Room Log with six pages of handwritten notes | 2-19-04 | |
| Defendant | B | Statement Oakland Police Department signed by Bianca Moore | 2-19-04 | |
| | | | | |
| | | | | |
| | | F I L E D | | |
| | | ALAMEDA COUNTY | | |
| | | MAR 1 0 2004 | | |
| | | CLERK OF THE SUPERIOR COURT | | |
| | | By Wanda J. Boyns | | |
| | | DEPUTY | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**(Original:** place in exhibit envelope)
**(Copy:** file stamp as the original; register of actions)
Kilgore MNT                                                              Page 1 of 1

I70-401 (REV. 5/01)

RENE DAVIDSON COURTHOUSE

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA    C00502

### CLERKS DOCKET AND MINUTES

FT  KILGORE, IVAN _____ DEPT. 006  CRT. DATE/TIME 3/10/04  09:00

EVENT NAME  KILGORE, IVAN DAWNELL _____ RPT. NO. 00-64017 _____ DOCK NO. 141033

PROC. MNT _____ CEN. 0373689  PFN. BBV550 A DAY 11/01/00  SJ DATE  9/16/04
COUNTS                                              PIC 00S00   AAG-0PD   ACITY 0A
CHARGES 1)F187 SC&USE PC 1 PR CONVICTED-J _____

STAT  SET  BAIL    $0.00    TOTAL DAYS IN CUSTODY:  1224

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ DOB 05/05/75

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO NORTH 1 _____ TIME WAIVED _____ THS _____

### PROCEEDING
                                                    DCC0:
JUDGE  KENNETH KINGSBURY _____ DEP. D.A. DARYL STALLWORTH
DEP. CLERK WANDA BOYNS _____ DEF. ATTY. DEBORAH LEVY, WALTER PYLE ☐ Not Present
REPORTER GERALD DOHRMANN _____ OTHERS

Defendant:  ☐ Present  ☐ Not Present  ☐ Excused  ☒ In Custody  ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment ☐ Waiver of Rights filed
☐ Defendant served: ☐ _____ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender  ☐ Public Defender files conflict  ☐ Financially ineligible  ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s)_____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to: lesser included / reasonably related offense of count(s)_____ to charge(s)_____
Time waived for: ☐ Preliminary Examination _____days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ Clauses: ☐ Stricken _____ ☐ Admitted _____ ☐ Sentencing Purposes Only
☐ Priors: ☐ Stricken _____ ☐ Admitted _____ ☐ Denied
☐ Probation: ☐ Conditional Sentence: ☐ Granted for_____years/months ☐ See attached conditions
  ☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☒ Petition/Motion FOR NEW TRIAL _____ ☐ Granted ☒ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____
Restitution: ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ Bench Warrant: ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

    2X   CERT-CRT:WWM MATTER HAVING BEEN PREVIOUSLY SUBMITTED —

13 ARGUED AND SUBMITTED. ATTY DEBORAH LEVY IS RELIEVED FOR THE

PURPOSE OF SENTENCING AND WALTER PYLE WILL HANDLE THE R+S.

ont Date: 4-9-04 ____ Time: 0900 Dept. 06 Proc.: R+S Date:_____ Time:_____ Dept._____ Proc.:_____

C  3 Codes: _____

DOCKET NAME  KILGORE, IVAN DAWNELL _____ CT. DATE 3/10/04  DOCK NO._____ 141033

ORIGINAL

1

2
C00503

3  Walter K. Pyle
   (Bar No. 98213)                                    F I L E D
4  2039 Shattuck Avenue, Suite 202                    ALAMEDA COUNTY
   Berkeley, CA  94704-1116
5  (510) 849-4424                          '04  APR -8  APR :8₌  2004
   *Attorney for Defendant Ivan Kilgore*
                                          CLERK OF THE SUPERIOR COURT
6                                          By *Wanda G. Deems*
                                                               DEPUTY
7

8  IN THE SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA

9

10 PEOPLE OF THE STATE OF CALIFORNIA,

11                            *Plaintiff,*              No. 141033

12               v.

13 IVAN KILGORE,

14                           *Defendant.*              DEFENDANT'S
                                                      SENTENCING MEMO

15

16         Defendant Ivan Kilgore submits the following:

17     OBJECTION TO CIRCUMSTANCES IN AGGRAVATION DESCRIBED IN
                         PROBATION REPORT
18
           Defendant objects on Fourteenth Amendment due process grounds to the
19
   following Circumstances in Aggravation described in the probation report:
20
           **Circumstance:** "The crime involved great violence as the defendant shot and
21
   killed the victim in a drive by shooting."  (Report, p. 4.)
22
           **Objection:** This circumstances is necessarily included in the elements of the
23
   offense as charged, and the Legislature has presumably taken the elements of the
24
   offense into consideration in setting the applicable sentence.  (People v. Clark (1992)
25
   12 Cal. App. 4th 663, 666 ["A circumstance which is an element of the substantive
26
   offense cannot be used as a factor in aggravation."].)
27

28
                                         1

C00504

**Circumstance:** "The victim was particularly vulnerable as he was standing on the corner with his girlfriend and was not armed." (Report, p. 4.)

**Objection:** A victim standing on a street corner is not *particularly* vulnerable. (See People v. Fleetwood (1985) 171 Cal.App.3d 982, 987 (1985) ["Victims inside buildings are more vulnerable to felonious conduct than victims out of doors."].

**Circumstance:** "The manner in which the crime was carried out indicates planning, sophistication or professionalism." (Report, p. 4.)

**Objection:** The facts of the case show no more planning, sophistication or professionalism that any other murder conviction based on a drive-by shooting.

## OBJECTION TO IMPOSITION OF "USE" ENHANCEMENTS

Defendant further objects to the imposition of any enhancements relating to the Use of Firearm Clause (Pen. Code § 12022.53(d)) and Use of Firearm in Motor Vehicle Clause (Pen Code § 12022.55), on the grounds that those potential enhancements have already been taken into account by the Legislature in setting punishment for the "Special Circumstance" described in the information, and any further punishment duplicates punishment for the offense of murder and murder with special circumstances, in violation of due process of law under the Fourteenth Amendment..

## OBJECTION TO USE OF PRIOR CONVICTION

Defendant also requests that the court take judicial notice that his conviction for First Degree Manslaughter in Oklahoma was the equivalent of a conviction of involuntary manslaughter in the State of California, and does not constitute pleading or proof of a serious or violent felony under California law. Any use of this prior would violate the Due Process Clause of the Fourteenth Amendment, and defendant objects to the use of the prior conviction for any purpose.

2

## OBJECTION TO IMPOSITION OF RESTITUTION FOR LOST PROFITS OF RELATIVES

Defendant objects to the imposition of restitution based on the lost profits claimed for undelivered flowers. This claim includes both lost profits and the cost of goods sold, rather than an allocation of the profits attributable to the goods.

In addition, Penal Code § 1202.4 (f)(3)(E) provides that wages or profits lost by the victim are reimbursable, "and if the victim is a minor, wages or profits lost by the minor's parent, parents, guardian, or guardians, due to time spent as a witness or in assisting the police or prosecution." The evidence showed that William Anderson was not a minor. The requested reimbursement for lost profits are not authorized by law, and defendant objects thereto.

_____
Walter K. Pyle
*Attorney for Defendant*

3

Judge Kingsberry

C00506
3-25-03

FILED
ALAMEDA COUNTY
APR 9 - 2004
CLERK OF THE SUPERIOR COURT
By [illegible], Deputy

Hello. As an informal request to the court regarding my case; I request the opportunity to readdress and address; for a record, issues concerning inadequate and ineffective assistance of counsel.

Throughout the trial proceeding Ms. Levy has misrepresented the facts of the case. In a matter of langauge she used in the defense motion to exclude the Oklahoma prior for purposes of impeachment the proffer of the defendants anticipated testimony was incorrect. This mistake I informed her of when she intrially filed the motion. Her response was it didn't matter. Well the langauge she used here later became a factor in your decision making. This was the point counsel then addressed the court concerning the mistake and submitted the correct version. And she only did this because I threatened to address the court myself concerning the issue. After she addresses the issue of the mistake she went on to comment to me that because of the change in the langauge at that point she felt you had become upset and because of this gave a prejudical ruling. I strongly feel that had Ms. Levy corrected the langauge intially when I first notified her of the mistake, your decision would have been un-influenced.

Another issue of ineffectiviness on counsels behalf was during the cross examination, direct examination and arguements presented by her, she mistated the facts provided by the prosecutions witnesses by confusing what

000507

statements were stated by which witness. Thus having a nullifying affect in her attempts to impeach the witness with the use of an inconsistant statement. I attempted to have her correct herself by first pointing out to her the mistake, then requested her to convey the correct issue but she refused to do so.

As previously addressed in the Marsden hearing I felt Ms hevy would be ineffective and inadequate in her representation of the facts of this case, I would like to readdress those issues In the Marsden hearing that where denied because quote the presiding Judge said "that some of the issues where preconceived" therefore having no effect in his decision to grant the motion." Well those preconceived issues have became realities in the trial and sufficiently affected my right to have adequate and effective representation

There are other issues of the same nature of the above mentioned, that for purposes of a record I wish to address the court.

Thank You

Ivan Kilgore

C00508





Judge Kenneth Kingsbury
1225 Fallon St. Dept #6
Oakland CA 94612

94612+4276

Ivan Kilgore BBV550
5325 Broder Blv
Dublin CA 94568

```
 1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2              IN AND FOR THE COUNTY OF ALAMEDA

 3      BEFORE THE HONORABLE KENNETH R. KINGSBURY, JUDGE

 4                    DEPARTMENT NO. 6      FILED
 5                      ---oOo---       ALAMEDA COUNTY

 6                                       APR 9 - 2004

 7                                   CLERK OF THE SUPERIOR COURT
                                     By Wanda G. Boyne
 8   THE PEOPLE OF THE STATE OF CALIFORNIA,        DEPUTY

 9                      Plaintiff,

10          vs.                          Nos.  141033

11   IVAN KILGORE,

12                      Defendant.
                                      ORIGINAL
13   _____/

14

15

16

17     COURTHOUSE, OAKLAND, ALAMEDA COUNTY, CALIFORNIA

18                  FRIDAY, JUNE 27, 2003

19                      ---oOo---

20         DEFENDANT'S MOTION FOR NEW TRIAL

21                      ---oOo---

22

23              A P P E A R A N C E S

24   For the Plaintiff:      THOMAS J. ORLOFF
                             District Attorney
25                           BY:  DARRYL STALLWORTH, Deputy

26
     For the Defendant:      DEBORAH LEVY, ESQ.
27

28
```

GERALD A. DOHRMANN, C.S.R.#2046

1          **FRIDAY, JUNE 27, 2003    C00510**

2                          ---o0o---

3                   **- P R O C E E D I N G S -**

4                          ---o0o---

5              DEFENDANT'S MOTION FOR NEW TRIAL

6          THE COURT:  All right.  In the matter of

7   People versus Kilgore, No. 141033.

8          The record should reflect that Mr. Stallworth is

9   here representing the People; Ms. Levy is here repre-

10  senting Mr. Kilgore; and Mr. Kilgore is present in

11  custody.

12         Just for the record, so it's completely clear,

13  before counsel arrived this morning, when I got here

14  this morning, Mr. Kilgore was here and neither counsel

15  was here.  I had some brief unreported discussions with

16  Mr. Kilgore about the nature of what he was seeking.

17         The reason I did that is because, after reading

18  the transcript of the proceedings on June the 13th and

19  the motion that was filed by Ms. Levy, I got some

20  indication that maybe I had misconstrued what Mr.

21  Kilgore was seeking to do, and I wanted to clarify that,

22  and I believe we did, but perhaps not.  We will discuss

23  that in a moment.

24         In addition to that, just so the record is

25  completely clear, that at Mr. Kilgore's request, I did

26  show him one appellate decision that he cited for me,

27  People vs. Dennis, in 177 Cal.App.3d; I also showed him

28  portions of People vs. Stewart, at 171 Cal.App.3d;

GERALD A. DOHRMANN, C.S.R.#2046

C00511

1   Evidence Code 958, which deals with a possible waiver of

2   attorney-client privilege, where in a criminal case

3   could be brought to bear if there was a claim of

4   ineffective assistance of counsel.

5           That was the sum and substance of it.

6           There was also some discussion about whether the

7   proceeding this morning would be, quote, unquote, in-

8   camera.  My response was, "Depends."

9           There was also a question by Mr. Kilgore as to

10  whether or not things he said during a motion for new

11  trial alleging ineffective assistance of counsel, if

12  they did come to the fore at a formal hearing in that

13  regard, after a formal motion was made, would he have

14  any kind of immunity as to that, and I told Mr. Kilgore

15  I don't give advice.

16          I would be glad to share my books with you, but I

17  don't give legal advice.  Mr. Kilgore that's basically

18  what I remember saying.  Is there anything that you want

19  to add to that?

20              THE DEFENDANT:  No.

21              THE COURT:  All right.  Basically I had

22  calendared this after our initial discussions last time

23  for a Marsden motion.  But in looking at counsel's

24  motion again, which I did not have a great opportunity

25  to do the last hearing, and reading the transcript of

26  what pretty obvious to me Mr. Kilgore was trying to

27  communicate to the Court, I had some second thoughts

28  about what he was seeking to do, and I was looking at it