C00512

1   more like he was intending to have a post-trial pre-
2   sentence Marsden motion.

3          In reading the motion again, and in reading what
4   Mr. Kilgore was trying to say to the Court, or what I
5   believe he was trying to say to the Court, that may not
6   be the case.

7          The other alternative -- or the inference that I
8   drew from the readings that I have done is that at this
9   point he was not seeking to make a Marsden motion.  What
10  he was seeking to do was to have in part a new trial
11  motion based on ineffective assistance of counsel during
12  the trial.  He wasn't seeking to have Ms. Levy
13  discharged at this point, but was seeking to have a new
14  trial granted based on ineffective assistance of
15  counsel, and in that regard, was asking the Court to
16  appoint a separate attorney, or to have a separate
17  attorney appointed to represent him for the purposes of
18  that motion, given that it would be very difficult for
19  Ms. Levy to argue that motion, since she was the trial
20  lawyer.

21         You tell me, where are we going?

22         THE DEFENDANT:  No.  Basically the other thing
23  about the appointment of the attorney was the fact that
24  I'm not skilled in matters of law.

25         THE COURT:  You have to keep your voice up.
26         THE DEFENDANT:  Some issues I would like to
27  address concerning Ms. Levy's incompetence have to do
28  with matters involving that was another reason for my

GERALD A. DOHRMANN, C.S.R.#2046

1    request for a newly appointed attorney.        C00513

2             THE COURT:  As to this matters, is it a

3    Marsden motion or is it a new trial motion on

4    ineffective assistance of counsel?

5             THE DEFENDANT:  Yes.

6             THE COURT:  I mean at this point the things

7    that have happened have happened.  The trial is in the

8    books.  And other than your motions now, the only thing

9    that remains is sentencing, other than your motions and

10   the resolution of those motions.  It's either going to

11   be --

12            THE DEFENDANT:  It's a motion for a new trial

13   basically grants relief for incompetence of attorney.

14            THE COURT:  And are you asking the Court to

15   seek for you another court-appointed attorney for a

16   motion for new trial?

17            It's my understanding, in reading the Stewart

18   case, which is cited in Ms. Levy's moving papers, it's

19   at 171 Cal.App.3d, the burden on you would be to show to

20   the Court -- I think the language used is a "colorable

21   claim to ineffective assistance of counsel."  Fairly low

22   burden, but nonetheless a burden.

23            If the Court finds a colorable claim, it is my

24   understanding of the law that a separate court-appointed

25   attorney would be appointed to you to represent you for

26   the purposes of that motion, and perhaps other purposes,

27   but initially for the purposes of that motion.

28            THE DEFENDANT:  Correct.

C00514

1          THE COURT:  Is that what you are asking the
2    Court to do?

3          THE DEFENDANT:  Correct.

4          THE COURT:  In terms of your colorable claim,
5    People vs. Stewart, and I believe other cases, have
6    indicated that in some circumstances those claims should
7    be made in open court and in some circumstances those
8    claims should be made in-camera.

9          And I don't know how many claims you have, but it
10   seems to me that unless all of them need to be held
11   in-camera for whatever reason you are going to tell me
12   about, that perhaps, if there are multiple reasons --
13   if, and I don't know whether there are or not, because
14   we haven't talked about it -- if there are multiple
15   reasons, some of which can be discussed in public and
16   some of which can't, is that the situation?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  Is it possible you --
19   and I know you have a spread of papers there -- to
20   separate those that can be discussed in Mr. Stallworth's
21   presence?  Because if it gets to a motion for a new
22   trial, the other side is going to be represented.  I
23   mean that's not going to be --

24         THE DEFENDANT:  Your Honor, I have some 40
25   different issues that I would like to address concerning
26   my attorney's incompetence.

27         THE COURT:  Well --

28         THE DEFENDANT:  Of those 40 issues, as we

GERALD A. DOHRMANN, C.S.R.#2046

6

COO515

```
 1   discussed, some of them I feel that I can address before
 2   Mr. Stallworth.
 3              THE COURT:  I understand.
 4              THE DEFENDANT:  Some I can't.  In looking
 5   through this, it would take some time for me to go
 6   through and decipher which ones I can and can't.
 7              THE COURT:  Do you have them laid out there?
 8              THE DEFENDANT:  Yes, I have all of the note
 9   form and typed -- some of them typed and so forth.
10              THE COURT:  Those are your documents.
11              THE DEFENDANT:  Yes.
12              THE COURT:  You are familiar with them?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Let's start with the first one and
15   go all the way through.  And if you find one of those in
16   looking at it, when you are about to address it, that
17   it's going to say something that for some reason, for
18   instance, might tend to incriminate you at some future
19   trial -- and I don't know about the immunity issue, I'm
20   not advising you in that regard -- if there's some issue
21   about that, set it aside, and then we will discuss
22   whether it's going to be in-camera or not after we go
23   through the ones that aren't.
24         Mr. Stallworth, you seem like a man in need of a
25   tablet.
26              THE DEFENDANT:  Your Honor, counsel just
27   advised me that it is best for me to address all of my
28   issues in-camera.  She doesn't feel there would be any
```

1  necessary need for Mr. Stallworth to be present.

2  THE COURT:  Well, that's nice for her to say.

3  And you have read the Stewart case, as I have, too.  It

4  talks about in-camera if needed.

5  And some of those issues, if they concern things

6  that are part of the public record already that happened

7  at trial, what's the point of asking Mr. Stallworth to

8  leave?  Eventually, when a new motion is made for a new

9  trial, he is going to be there, because it's going to be

10  a written motion, and this is just to decide whether or

11  not there is a colorable claim.

12  So, I'm going to ask you -- and, you know, if it

13  looks like it's going to be disclosing some informa-

14  tion -- and you are aware of the Stewart case; that in

15  that case, if it's the same one I remember, it had

16  something to do with a guy trying to escape, and there

17  were a couple of issues raised in that case.  One is

18  that the gentleman was not -- didn't have all of his

19  mental faculties and was subject to seizures.  I think

20  he said he fell off the roof ladder, and the Court held

21  that that was something that came out at the trial.

22  But the other side of it was, there was a failure

23  to call some specific witnesses.  And that may be

24  something that would be -- something that came out of

25  the trial.

26  You know, do the best you can.  Err on the side

27  of caution if it's something that you think should be

28  in-camera; but if it's something that came out at

000517

1   trial -- and I am probably going to ask Mr. Dohrmann to

2   prepare the transcript of this proceeding -- so try to

3   be -- don't ramble.  I know I tend to.  I'm doing it

4   right now.  But try to be as concise as you can as I'm

5   going to attempt to take notes.

6        And if you would, just say "first" or "one", or

7   something like that, so, you know, I want to be able to

8   do it in an orderly fashion, so that somebody looking at

9   this in the future, if it's necessary, can make sense

10  out of it.

11       And the reason I'm prefacing my remarks among

12  those things that I read was your exhibit No. 1 to the

13  Marsden motion had with Judge Nakahara back in February,

14  and some of that was a bit rambling.  So, be as clear as

15  you can.

16            THE DEFENDANT:  Can I have some time to look

17  through this?  (Examining)

18            THE COURT:  And, Mr. Stallworth, I'm sitting

19  here talking about your position.  I don't even know if

20  you want to be here for this.

21            MR. STALLWORTH:  I do.

22            THE DEFENDANT:  One issue I would like to

23  address to start off is the misstatement counsel made in

24  the language that was used to dismiss the Oklahoma prior

25  as a strike for purpose of impeachment.

26            THE COURT:  Okay.  Let me make a note.  I

27  believe that was discussed on the record; right?

28            THE DEFENDANT:  Yes.  The defendant's

GERALD A. DOHRMANN, C.S.R. #2046

9

C00518

```
 1   anticipated trial testimony was incorrectly stated --
 2   well, if I could.
 3            (Short discussion off the record)
 4            THE COURT:  This is your motion; but, on the
 5   other hand, Ms. Levy is an attorney.
 6            THE DEFENDANT:  If I could, most of things I
 7   have written down to read in court, that way I get all
 8   of the facts and details in, because I don't want to sit
 9   up here and refreshing them out of my memory and
10   misstate them.  So, I would like to read what I have
11   written on my motions to be entered into the Court
12   record.
13            THE COURT:  That's fine, but read them.  Read
14   them knowing I'm going to be listening and writing them
15   down; okay?
16            THE DEFENDANT:  Okay.  Again, I proffered
17   defendant's anticipated trial testimony was incorrectly
18   stated within the content of the motion, in light of
19   that fact counsel has since being appointed to the
20   defendant's case, had in her possession a copy of the
21   defendant's anticipated testimony.
22            THE COURT:  Now, that's the issue, as I
23   recall, that was brought up during the trial about the
24   wording of a motion.
25            THE DEFENDANT:  Yes.
26            THE COURT:  And that motion was a written
27   motion that was filed --
28            THE DEFENDANT:  Yes.
```

GERALD A. DOHRMANN, C.S.R. #2046

```
 1              THE COURT:  -- true?              C00519

 2              THE DEFENDANT:  Yes.  At the initial filing of

 3    that motion, and when counsel gave it to me to review, I

 4    read over it, and I pointed out to her she was incorrect

 5    in the language.  Counsel stated to me at that time that

 6    it was irrelevant.

 7              THE COURT:  And this is on the record.  We had

 8    this discussion on the record and it concerned whether

 9    or not I was going to allow you to be impeached, if you

10    testify, with the situation in Oklahoma.

11              THE DEFENDANT:  Right.

12              THE COURT:  And your point was --

13              THE DEFENDANT:  First of all, she hadn't --

14    she had a copy of my anticipated testimony from the

15    beginning of her appointment.  So, I don't understand

16    how she could have made that mistake.

17              THE COURT:  Now, that point was brought to the

18    Court's attention before the ruling was made; true?

19              THE DEFENDANT:  True.  It was.  I'm moving on

20    because it's going --

21              THE COURT:  I got it.

22              THE DEFENDANT:  -- to go into something else.

23              THE COURT:  That's No. 1.

24              THE DEFENDANT:  Yes.  That's No. 1.

25         As I stated, her response to the misstated

26    language was that it was irrelevant.  Well, the

27    irrelevant language, the language became a factor in the

28    Judge's ruling to allow the Prosecutor to use the
```

```
 1   testimony of the prior to impeach the defendant's
 2   defense of unreasonable self-defense as the attorney had
 3   mistakingly worded the proffer (sic).
 4            THE COURT:   Let me say one thing, that you are
 5   anticipating and trying to think what my rulings were
 6   based on.   My recollection is that that situation was
 7   cleared up by you and Ms. Levy before I made my
 8   decision, and I understood your motion and still made my
 9   decision in the corrected form.   And if that was wrong
10   on my part, it was; but I decided on what I had before
11   me, which included both your and Ms. Levy's correction
12   of what the true situation is alleged to have been;
13   okay?
14            THE DEFENDANT:   Okay.
15            THE COURT:   So, I just want to throw that in
16   as my piece.
17            THE DEFENDANT:   Okay.
18        Well, at the time that counsel acknowledged to
19   the Court the mistake, she pointed out to the defendant
20   that because of this mistaken language and her
21   admonishing the Court of the issue, that the Judge
22   was -- probably most likely upset due to the fact that
23   she was changing the defense from unreasonable self-
24   defense to reasonable self-defense due to the nature of
25   the language.
26        At the time you made your ruling, I asked counsel
27   to file a writ of mandate to address the issue to the
28   appeals court at that moment.   Counsel refused because
```

GERALD A. DOHRMANN, C.S.R. #2046

C00521

1    she didn't know how to file a writ of mandate.   She was

2    uncomfortable.

3            And I like to also address counsel, failed to

4    research the application of the law provided under

5    Evidence Section Code (Sic) 1101(c).

6            THE COURT:   Is this the same point?

7            THE DEFENDANT:   Yes, the same point.   Of

8    1101(c) in a matter of a diligent and conscious effort.

9            Counsel may respond to my comments and saying she

10   wasn't conscious of the fact that the prosecution would

11   seek to introduce the prior on the testimony of this

12   subdivision, being that it was subdivision (c) was only

13   made mention during the hearing.

14           In addressing the 1101(b), I feel that counsel

15   failed to argue --

16           THE COURT:   Is this a different point now, or

17   same point?

18           THE DEFENDANT:   It's all in the same essence

19   of the issue.

20           THE COURT:   All right.

21           THE DEFENDANT:   I feel counsel failed to argue

22   that section 1101 prohibits admission of other crime

23   evidence for the purpose of showing the defendant's bad

24   character.

25           THE COURT:   Mr. Kilgore, let me cut you off

26   there.   And the reason I'm doing it is, there was no

27   1101(b) evidence here.   The issue was whether or not you

28   could be impeached if you chose to testify.   This was

C00522

1  | not a case where the Prosecutor made a motion under

2  | 1101(b) that was permitted.  I didn't even know if he

3  | made one at this point, but that's a different bucket of

4  | worms.

5  | If a person makes a motion under 1101(b), the

6  | conduct itself then is allowed to be introduced to

7  | basically show intent, motive, those kinds of things

8  | under 1101(b).  And I don't think there was a 1101(b)

9  | motion here, was there?

10 | MR. STALLWORTH:  No, there wasn't.

11 | THE DEFENDANT:  Well, there was a discussion

12 | of the Evidence Code of 1101(b) due to the fact that the

13 | motion that the District Attorney had failed to impeach

14 | the defendants.

15 | THE COURT:  Different.

16 | THE DEFENDANT:  Two different things.

17 | The other issue I'm addressing, counsel's

18 | arguments and her representation on behalf of that issue

19 | where I felt she fell short to deny it, first of all,

20 | researching the issue of 1101(c).  She did 1101(b) but

21 | not (c).

22 | THE COURT:  All right.  And as I was --

23 | THE DEFENDANT:  And as I was saying, the

24 | section prohibits admission, the arguments fell short

25 | that the section prohibits the admission of other crime

26 | evidence for the purpose of showing defendant's bad

27 | character or criminal propensity.

28 | THE COURT:  I'm aware of the provisions of

1    1101(b).  I know you want -- you know, I know it's
2    frustrating sitting in custody and writing all of this
3    out.  But I'm aware of 1101(b).  And any Appellate Court
4    that reads this is going to be aware of 1101(b).
5             THE DEFENDANT:  Okay.  I'm kind of confused
6    here, because, as I said, I wrote this stuff out, for
7    the purpose of making the record, just read the stuff.
8             THE COURT:  Is it all written out?
9             THE DEFENDANT:  Yes.
10            THE COURT:  You want to file it as written
11   out?
12            THE DEFENDANT:  If I file it, it would be open
13   to public view at the hearing.
14            THE COURT:  No.  I don't know if it would be
15   or not.  I'm trying to get you -- you have now spent
16   about 20 minutes on point No. 1.
17            THE DEFENDANT:  Yeah.
18            THE COURT:  You made your point.  It deals
19   with the Court's rulings and her alleged failure to
20   basically ably represent you with regard to that motion
21   concerning the court's allowing you to be impeached on
22   the behavior as to the prior conviction.  That you have
23   made clear.
24            But, you know, going on and on and on about it, I
25   mean I know the law requires me to explore it, but if
26   you are going to have 40 of these, it's going to take a
27   long time, and I'm going to ask you, do you have access
28   to a typewriter?

C00524

1          THE DEFENDANT:  No.

2          THE COURT:  I'm going to ask, you know, I want

3   you to give me the summary idea at this point.

4          As you know, the only burden you have here is to

5   raise a colorable claim.  This is not your actual motion

6   for a new trial; okay?  Sort of the preliminaries of

7   one.

8          THE DEFENDANT:  Well, just a couple more

9   comments.

10          THE COURT:  All right.  Just read them,

11   please, then.

12          THE DEFENDANT:  Okay.  Furthermore, counsel

13   filed to argue the existence of the policy requiring

14   exclusion of the evidence that forbid the prosecution

15   from using a prior in any form to question the

16   defendant's credibility, because of judicial elements of

17   the crime are not -- do not involve moral turpitude,

18   making an unimpeachable crime; therefore, forbid

19   1101(c).

20          I would like to point out, too, that when my

21   attorney asked the prosecution what fact he chose to

22   prove with the prior testimony, he mentioned something

23   about 27 factors being in my prior testimony that were

24   similar to the present case.

25          My counsel at that time asked, you know, to

26   present to the Court those issues, some 20, I believe he

27   say, and he didn't present any to support his argument

28   for using the prior, which my counsel didn't make any

GERALD A. DOHRMANN, C.S.R.#2046

1  mention of that or refer in her argument.    **C00525**

2      I have to make mention because of that, counsel

3  advised that ruling that the Judge made, counsel advised

4  the defendant not to testify.  She also made a record of

5  that.

6      Well, counsel also failed to make a record that,

7  because of that ruling, she changed my defense in the

8  midst of all of the preparation she had previously made

9  to one of reasonable doubt, which she didn't take

10  anytime to prepare, for before that ruling and for that

11  moment in the trial, proceeded to argue a reasonable

12  doubt defense.  She also failed to call witnesses.

13      THE COURT:  Now, are we into a different point

14  now.

15      THE DEFENDANT:  No.  Let me stop right there

16  before I continue on with that point.

17      And in light of the issue of counsel refusing to

18  file the writ, I would like to state that it's counsel's

19  duty to preserve actions of defendants, counsel due to

20  take all actions to preserve a defendant's right to fair

21  trial.

22      THE COURT:  In theory I'm supposed to know

23  what the law is; okay?  I want to just know what your

24  complaints are.

25      THE DEFENDANT:  Moving onto another issue --

26      THE COURT:  Okay.

27      THE DEFENDANT:  -- I would like to address

28  counsel's comments in the closing arguments concerning

C00526

1   someone firing shots at the car and someone returning

2   fire is self-defense where it's totally unsupported in

3   the evidence that was presented in trial.

4        Counsel also submitted that during that argument

5   this defendant was sitting in the position where the

6   shooter was located in the car, thus making an impli-

7   cation that the defendant fired the shot, which contra-

8   dicted her argument of reasonable doubt.

9        Furthermore, counsel's request of the self-

10  defense instruction was unsupported, I believe, in the

11  evidence, and its purpose was prejudicial to effect the

12  reasonable doubt argument.

13       Also, counsel attempted to persuade the

14  defendant's inquiry as for the instruction and its

15  prejudicial effect.  Counsel sought to introduce this

16  instruction as a tactical strategy to give, quote, the

17  jury any possible means to reach a verdict of not

18  guilty.

19       Hearing the defendant questions counsel's

20  failure -- and this is going to another issue -- call

21  witnesses to support that tactic.  Those witnesses

22  were --

23            THE COURT:  I'm going to need the names, too.

24            THE DEFENDANT:  Those witnesses were Betsy

25  Varela.

26            THE COURT:  Spell that.

27            THE DEFENDANT:  Yes.  B-e-t-s-y, V-a-r-e-l-a;

28  and Halvechia, H-a-l-v-e-c-h-i-a, Osborne,

GERALD A. DOHRMANN, C.S.R. #2046

C00527

```
 1  O-s-b-o-r-n-e; and Jamario Hennen, J-a-m-a-r-i-o,
 2  Hennen, H-e-n-n-e-n.
 3      These witnesses' testimony was relevant to the
 4  argument in front of the instructions to support it,
 5  such as an instruction which may be -- going into
 6  another issue -- pertaining to prior assaults by the
 7  deceased and his gang and prior acts of violence.
 8      I have here, Your Honor, an affidavit, also a
 9  transcribed copy of Jemarrio Hennen's taped statement to
10  homicide officer Lou Cruz, and, again, the affidavits of
11  Betsy Varela and Halvechia Osborne, stating the
12  content -- summary of their testimony.
13      MS. LEVY:  Your Honor, I would ask to review
14  those if I'm going to have an opportunity to respond.  I
15  have not seen them.
16      THE COURT:  All right.  So, that's -- so,
17  failure to call witnesses, you have given me three
18  names.  You have talked about some documents.
19  Apparently, Ms. Levy is looking at them now in terms of
20  what we ought to do with them.
21      That's that point:  Failure to call witnesses?
22      THE DEFENDANT:  Yes.
23      THE COURT:  Got it.  We put what's going to
24  happen with the affidavits on hold.  As a part of the
25  other, the statement that was made to Lou Cruz, I'm
26  assuming that all parties have that already.
27      MS. LEVY:  Correct, Your Honor.
28      THE COURT:  Okay.
```

```
 1            THE DEFENDANT:  I would like to say, in
 2    addition to the statement of Jemarrio Hennen, his
 3    statements would have undermined some of the prose-
 4    cution's argument which he made to the Court, which
 5    counsel failed to present, and Jemarrio Hennen is the
 6    cousin of the deceased.
 7            THE COURT:  Okay.
 8            THE DEFENDANT:  Moving on to another issue, I
 9    would like to address counsel's failure to investigate
10    any of the prosecution witnesses before trial.
11            THE COURT:  Specifically what do you mean?
12            THE DEFENDANT:  Counsel failed to interview
13    witness Matthew Bryant before he testified at trial.
14    Didn't even attempt to make any contact.  And when he
15    say counsel, she didn't give the okay to the investi-
16    gator to contact him.  I discussed this issue with Ms.
17    Levy before.
18            THE COURT:  I have got it:  Failure to contact
19    the witness --
20            THE DEFENDANT:  Yes.
21            THE COURT:  -- Matthew, is it Bryant?
22            THE DEFENDANT:  Matthew Bryant.
23            If I may, I would, would like to discuss some of
24    the possibilities that it -- may have arisen had counsel
25    contacted Mr. Bryant.
26            THE COURT:  I don't think you really have to
27    do that.  Just raise the point.
28            The idea is recognize what your burden is.  You
```

GERALD A. DOHRMANN, C.S.R.#2046

C00529

1    are not arguing your motion at this point; you are just
2    trying to show me why you should be appointed an
3    attorney to handle this issue separately.  That's what
4    you are trying to do.

5            THE DEFENDANT:  Right.  I got a better under-
6    standing.  Thank you.

7            Raising another issue on Matthew Bryant's
8    testimony is, counsel failed to object and request that
9    the tape be edited to exclude the concocted admissions
10   that Matthew Bryant stated or alleged to have come from
11   the defendant.

12           I would also like to make a record, another issue
13   pertaining to those alleged admissions that Matthew
14   Bryant claimed the defendant made, that counsel failed
15   to object to the prosecution using Matthew Bryant's
16   taped statement, and the content of that statement which
17   was outside of the Judge's limited instructions in
18   closing arguments.

19           Moving on to another issue.  Counsel failed to do
20   a demonstrative investigation pertinent to the ability
21   of the witnesses to clearly identify circumstances
22   testified to by those witnesses when viewing through a
23   partially tinted open window.

24           To be a little bit more specific about that
25   issue, there was two issues that I asked counsel, and I
26   know you said I shouldn't get into this, but I feel I
27   need to.

28           One was when counsel did take pictures of the

GERALD A. DOHRMANN, C.S.R.#2046

C00530

1    car, I notified her that it appeared, because of the

2    fact that the car had been released from evidence and

3    sold to the public, that the tint on the windows had

4    been changed, and I wanted her to check into that.  She

5    failed to do it.

6        I also asked her to have someone positioned in

7    the car with my complexion and my height to give the

8    jury an insight on the ability to identify someone.  She

9    failed to do that.

10       Also like to address another issue arising out of

11   the release of the car from the property of the Oakland

12   Police office, I mean department.

13       As counsel failed to file a motion to dismiss the

14   car due to the fact that the possible evidence favoring

15   the defendant was damaged when the car was released from

16   O P.D.'s custody --

17            THE COURT:  You don't mean "dismiss the car."

18   I think you probably mean to exclude evidence concerning

19   the car?

20            THE DEFENDANT:  Yes.  Evidence was excluded.

21   We couldn't review it, we didn't have the opportunity,

22   so forth.  And counsel failed to file the motion to

23   dismiss the case due to the probable evidence that may

24   have been favorable to the defense had we been able to

25   research.

26       Counsel refused -- this is a new issue -- counsel

27   refused to call or attempt to locate prosecution witness

28   Terry Dandy.

C00531

```
 1              THE COURT:  What's the person's name again?
 2              THE DEFENDANT:  Terry Dandy.
 3              THE COURT:  This was a prosecution witness --
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  -- that the defense failed to
 6    locate?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  And somehow that's prejudice to
 9    your case, that she didn't locate their witness who
10    didn't testify here?
11              THE DEFENDANT:  Yes.  If I may, I can go in to
12    explain.
13              THE COURT:  About 30 seconds' worth.
14              THE DEFENDANT:  I believe it was pertinent to
15    have Mr. Dandy testify in this case due to the fact that
16    he alleged it was two shots fired out there on the
17    scene, for one.  One of those shots was unaccounted for
18    on behalf of the defendant by the prosecution witnesses
19    during the trial, which was a major contradiction.
20              It was also a contradiction had Ms. Levy called
21    Jamarrio Hennen.
22              Terry Dandy was also present during an assault
23    against the defendant in which Terry Dandy struck the
24    defendant.
25              This all occurred two days before the shooting,
26    which contradicted all of the prosecution's accounts as
27    far as these assaults occurring months before this
28    alleged shooting occurred.
```

GERALD A. DOHRMANN, C.S.R.#2046

C00532

```
 1        Moving on -- oh, and also concerning Terry
 2   Dandy's testimony, he drew a map, which I also have an
 3   exhibit here, of when related to other issues that
 4   counsel failed to do on my trial concerning ballistic
 5   testing, firing, and so forth.  Please.
 6        (Short discussion off the record)
 7             THE DEFENDANT:  I like to correct that.
 8   Counsel did do a ballistic test, but she failed to
 9   convey to the expert the specifics of descriptions given
10   by the prosecution witnesses of the gun.  And there is
11   an issue I would like to address outside the presence of
12   Mr. Stallworth concerning that if we can come back to
13   that.
14             THE COURT:  Set that one aside.
15             THE DEFENDANT:  Okay.  Counsel refused to --
16   this is a new issue -- counsel refused to question the
17   integrity of homicide officer Sergeant Green and
18   District Attorney representatives handling the
19   Preliminary Hearing.
20             THE COURT:  Refused to investigate the
21   integrity of Green?
22             THE DEFENDANT:  Investigate and integrity of
23   Sergeant Green.
24             THE COURT:  And who else?
25             THE DEFENDANT:  And the district attorneys who
26   handled the Preliminary Hearing.
27             THE COURT:  Do you know who that is offhand?
28             THE DEFENDANT:  Mean.  Paul Mean.
```

GERALD A. DOHRMANN, C.S.R.#2046

1           MR. STALLWORTH:  Jim Meehan.        C00533

2           THE COURT:  Jim Meehan?

3           THE DEFENDANT:  Counsel failed -- this is

4    another issue -- counsel failed to raise the issues

5    concerning the contradiction between witnesses of the

6    description they gave and all statements which some were

7    inconsistent compared to others.  But they all

8    contradicted concerning the attire that the defendant is

9    alleged to have on that day.  And that was a black

10   beanie, a black cap.  And Shanae Anderson, which counsel

11   failed to raise, was in an afro.

12          Counsel refused -- another contradiction:

13   Counsel refused to establish the contradictions of

14   events described by witnesses Raymond Jones, Mary

15   Washington and Mary Loggins that were in contrast of

16   Bianca Moore's and Shanae Anderson's versions of events

17   pertaining to the moment they were able to identify the

18   shooter.

19          MS. LEVY:  Your Honor, for the record it looks

20   like Mr. Kilgore is on No. 21.

21          THE COURT:  That's fine.

22          THE DEFENDANT:  Counsel failed to address the

23   issue pertaining to the extent of Raymond Jones'

24   involvement in relation to the stolen car report and the

25   location in which the car was found.

26          Moving along, counsel failed to elect from the

27   testimony of defense investigator Monte Beers statements

28   that were made in previous interview with Mary

C00534

```
 1    Washington concerning her version of someone running
 2    from the alleged crime scene and concealing something
 3    under their coat.
 4         And in addressing the matter of law, which I'm
 5    not too clear on, I would like to say that counsel
 6    failed to object or file any type of motion of dismissal
 7    before the prosecution, using perjured testimony before
 8    the course of this trial.
 9         THE COURT:  What do you mean by "perjured
10    testimony"?
11         THE DEFENDANT:  In counsel's closing -- I mean
12    the District Attorney's closing arguments, he stated to
13    the jury that, okay, I will give you that Raymond Jones
14    lied, he was aware of the fact that the gun was in the
15    car at the time they drove over to the scene where the
16    alleged crime occurred.
17         Now, I'm not for sure if that would be considered
18    perjury, use of perjured testimony, knowing on behalf of
19    the prosecution or not, so I said it's an issue of law
20    that another attorney would have to address.
21         THE COURT:  Since, Mr. Stallworth, there is no
22    evidence that Mr. Stallworth was there --
23         THE DEFENDANT:  Excuse me?
24         THE COURT:  Since there is no evidence that
25    Mr. Stallworth was there at the time, I guess that may
26    be his opinion that Mr. Jones gave false testimony about
27    at least portions of it.  And that happens, sadly, in a
28    lot of cases.
```

C00535

```
 1          THE DEFENDANT:  Counsel failed to ask for
 2   instructions relating to the testimony and way the jury
 3   would examine the testimony of a drug addict.
 4          THE COURT:  So, it would go to some
 5   witness's -- if a witness were an addict, you are
 6   suggesting some instruction should have been offered
 7   concerning credibility of a person addicted to drugs?
 8          THE DEFENDANT:  Yes.
 9       Counsel refused to address Raymond Jones'
10   Preliminary Hearing testimony pertaining to his level of
11   intoxication.
12       Counsel also failed to present the conflicting
13   statements of Raymond Jones concerning when the
14   assaults, about when they occurred.
15          THE COURT:  About when they occurred, you
16   said?
17          THE DEFENDANT:  Yes, when they occurred.
18          THE COURT:  And which?  You said involving an
19   assault involving Mr. Jones?
20          THE DEFENDANT:  Assault against the defendant.
21          THE COURT:  Against you.
22          THE DEFENDANT:  Yes.
23          THE COURT:  By --
24          THE DEFENDANT:  The deceased and his gang.
25          THE COURT:  And with conflicting information
26   concerned the dates?
27          THE DEFENDANT:  Yes.
28          THE COURT:  Okay.
```

GERALD A. DOHRMANN, C.S.R.#2046

```
 1          THE DEFENDANT:  Counsel refused to investigate
 2  into all and any involvement by the F.B.I. in this case.
 3          THE COURT:  And, again, to what end did that
 4  prejudice your case?
 5          THE DEFENDANT:  It is my understanding from
 6  having a conversation with Mr. Jones a month or so after
 7  this occurred, after he had been arrested, that he was
 8  being offered a reward that was offered to him by F.B.I.
 9  agents and et cetera.
10          During the hearing, the voluntariness of Raymond
11  Jones, counsel failed to inquire into the coercion of
12  the second arrest and the interaction of the District
13  Attorney in that matter.
14          THE COURT:  I'm not sure I got that one.
15  During the voluntariness of the testimony --
16          THE DEFENDANT:  During the hearing.
17          THE COURT:  -- of Raymond Jones.  Yes.
18          THE DEFENDANT:  Of the voluntariness --
19          THE COURT:  Right.
20          THE DEFENDANT:  -- of Raymond Jones, counsel
21  failed to inquire into the coercion.
22          THE COURT:  Investigate the possibility that
23  those statements were coerced.
24          THE DEFENDANT:  Yes.  And the interaction of
25  the District Attorney.
26          THE COURT:  And the action of whom?
27          THE DEFENDANT:  The interaction of the
28  District Attorney with Mr. Jones relating to that
```

1   coercion.                                    C00537

2           THE COURT:  Got it.

3           THE DEFENDANT:  Counsel failed to establish

4   some type of calendar dates of Bianca Moore's testimony

5   pertaining to the matters which she gave dates, and so

6   forth, concerning events that occurred between the

7   deceased and the defendant.  I'd like to say it was to

8   show lack of credibility on Ms. Moore's behalf.

9           Counsel failed to impeach Ms. Moore concerning

10  the number of times that she claimed to have seen the

11  defendant prior to the shooting.

12          Counsel failed to inquire into issues concerning

13  Bianca Moore's testimony that I have stated or gave --

14  given notes to counsel in relation to Ms. Moore's

15  testimony.

16          I don't know.  That's kind of vague.

17          THE COURT:  You lost me there.

18          THE DEFENDANT:  Well, I gave her notes to ask

19  her certain things, specifics pertaining to her

20  testimony.  And counsel failed to --

21          THE COURT:  Follow-up on notes that you gave

22  Ms. Levy --

23          THE DEFENDANT:  Yes.

24          THE COURT:  -- concerning potential

25  questioning of the witness Bianca Moore.

26          THE DEFENDANT:  Yes.  Also I would like to add

27  with Raymond Jones and Shanae Anderson.  I would say

28  every witness.

C00538

1        Okay.  I think there's about one more issue I

2    would like to address before going or requesting an

3    in-camera hearing, is the fact that counsel failed to

4    request of the Court an instruction for murder in the

5    second degree by means of drive-by shooting and

6    outlining the issues of intent, as the prosecution did

7    for murder in the first degree, by means of drive-by

8    shooting.

9        THE COURT:  Okay.  Does that summarize those

10   things that should be discussed publicly?

11       THE DEFENDANT:  I think that pretty much got

12   to most of them.  Yeah.  If there's anything else, would

13   I be able to call Mr. Stallworth back?

14       THE COURT:  Well, basically you know what this

15   hearing is about.  The idea is for you to explain to me

16   why there may be a colorable claim to have counsel,

17   other than Ms. Levy, represent you at a motion for new

18   trial.  And I have asked you to divide those into a

19   couple of categories.

20       And I know you have looked at this and I know you

21   have got a list in front of you.  But in terms of the

22   things that you are conceding can be discussed publicly,

23   have we pretty much gone through those?

24       THE DEFENDANT:  Yes.

25       THE COURT:  The thing is, if I decide to

26   release Mr. Stallworth, I don't want to send him back

27   downstairs and bring him back up and send him back

28   downstairs and bring him back up.

GERALD A. DOHRMANN, C.S.R. #2046

C00539

1          THE DEFENDANT:  There was one more thing

2    counsel failed to do.

3          THE COURT:  Go ahead.

4          THE DEFENDANT:  Counsel refused, as requested

5    by the defendant, to subpoena all medical records

6    related to the emergency visit.

7          (Short discussion off the record)

8          THE COURT:  Well, I see some disagreement.

9    These are allegations that may be borne out or not borne

10   out.

11         MS. LEVY:  Understood, Your Honor.

12         THE DEFENDANT:  Well, if I could readdress

13   that issue, I would like to.

14         THE COURT:  That's fine.  Your indication is

15   that she basically refused to request or subpoena

16   medical records.

17         THE DEFENDANT:  She failed to request a -- or

18   subpoena those issues from Highland Hospital relating

19   to --

20         THE COURT:  Whose medical records?

21         THE DEFENDANT:  The deceased in relation to

22   the emergency visit due to this incident.

23         THE COURT:  To being shot.

24         THE DEFENDANT:  Yes.

25         THE COURT:  You feel the testimony of the

26   Coroner was not sufficient --

27         THE DEFENDANT:  No, I do not.

28         THE COURT:  -- in certain respects?

GERALD A. DOHRMANN, C.S.R.#2046

1          All right.  Is that it for the public stuff?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Now, with Mr. Stallworth here, in

4     very general terms, why do you believe that the

5     remainder of these things needs to be kept at an

6     in-camera basis?  Just generally speaking.  Don't

7     disclose anything that shouldn't be disclosed.

8                    THE DEFENDANT:  I'm trying to figure out the

9     way to say this.

10                   (Short discussion off the record)

11                   THE DEFENDANT:  The thing I would like to

12    discuss further are things that may tend to incriminate

13    me.

14                   THE COURT:  All right.  And how many of those

15    are there, roughly?

16                   THE DEFENDANT:  I would say five or ten.

17                   THE COURT:  All right.  Mr. Stallworth, it's

18    my understanding in reading the cases, even a general

19    description, that's probably sufficient if there should

20    be a new trial.  So, at this point I'm going to ask you

21    to step outside.  We will phone you when we get ready to

22    go back on the record again.  Same extension?

23                   MR. STALLWORTH:  Yes.

24                   THE COURT:  All right.  At this point, the

25    courtroom should be closed to others.

26                   (Whereupon, Mr. Stallworth leaves the courtroom)

27                   (Whereupon, the in-camera proceedings were had on

28    the record at this time, but not contained herein)

GERALD A. DOHRMANN, C.S.R. #2046

C00541

 1       (Whereupon, Mr. Stallworth enters the courtroom)

 2           THE COURT:  All right.  Back on the public

 3   record then.  Mr. Stallworth has returned.

 4           Does either side have any comment concerning Mr.

 5   Kilgore's list of contentions, both those that were

 6   heard by both parties and some that were heard by only

 7   the defense, as to whether or not he has presented a

 8   colorable claim of ineffective assistance of counsel,

 9   which I recognize "colorable" is a very thin coat, if

10   you will, as to whether or not he should be represented

11   by an attorney other than Ms. Levy for the purpose of

12   filing his motions for new trial?

13           MR. STALLWORTH:  I would only briefly comment

14   that the majority of issues that were brought up, I

15   believe, don't meet that standard.  However, to err on

16   the side of caution, I believe that it may be appro-

17   priate to have the defendant appointed a different

18   counsel in order to make an official record to file the

19   motion.  That's what my brief understanding of the

20   Stewart case is.

21           THE COURT:  And, Ms. Levy, do you wish to be

22   heard?

23           MS. LEVY:  Yes, Your Honor.  Although I am

24   more aware of all of Mr. Kilgore's complaints probably

25   better than the Court in what has been heard today, and

26   all of the specifics, I have to agree with Mr.

27   Stallworth.  I do not believe it reaches a colorable

28   claim; however, I would ask the Court to appoint him a

GERALD A. DOHRMANN, C.S.R.#2046

C00542

1    new attorney, one to protect the records, so that it's

2    not the Court kind of making the decision but another

3    independent attorney assisting Mr. Kilgore.

4         And in view of some of these allegations I feel

5    are below the belt, I rather not represent him.  I mean

6    I can, but at this point I would urge the Court to give

7    him new counsel.

8         THE COURT:  All right.  Based on the totality

9    of the circumstances here -- and I'm not making a

10   specific finding as to colorable claim, although

11   basically the cases that I read don't call for the

12   defense to answer each and every one of these allega-

13   tions, they just indicate that there has to be a

14   colorable claim.  And, frankly, I'm aware of some of

15   them that I heard during the course of the trial.

16        But based on this, on the totality of it, and in

17   the interests of justice, truly, the Court will appoint

18   another counsel, order the appointment of another

19   counsel to represent Mr. Kilgore for a motion for new

20   trial.

21        So, I'm going to ask the clerk, please, Ms.

22   Boyns, to phone the Alameda County Bar Association, the

23   court-appointed division.  I spoke with them the other

24   day, telling them they might be expecting a call from

25   me.

26        Please indicate that the Court wants an attorney

27   to represent Mr. Kilgore on a motion for new trial.  I

28   would like whoever they select, please, to phone the

C00543

1  court, just so I could tell him or her the idea of the

2  complexity of it.

3        But we need to set a court date for that attorney

4  to appear.  And the question is what day do you want it

5  to be?

6        I'm assuming we should get him an attorney soon.

7  How about Thursday, the 3rd?  I have a few motions on

8  that day, but it's pretty open.

9            MS. LEVY:  I'm available, Your Honor.

10           THE COURT:  Are you going to be around?

11           MR. STALLWORTH:  I will be here.

12           MS. LEVY:  And perhaps I should be here just

13  to talk to the attorney.

14           THE COURT:  Absolutely.

15           MS. LEVY:  That would be fine, Judge.

16           THE COURT:  Absolutely.  So, I will see you

17  Thursday.

18           MS. LEVY:  Would that be 9:00 a.m. calendar or

19  9:30?

20           THE COURT:  It will be the 9:00 a.m. calendar.

21  If everybody is here, perhaps we could discuss and you

22  could discuss in chambers with the attorney, just so he

23  will have some idea, and then we will call it and get

24  him to accept the appointment.

25        But I want to make sure whoever it is knows what

26  they are getting into.  Sometimes these are fairly

27  clearly cut; sometimes it's a little broader brush.

28        And, again, I would ask Mr. Dohrmann if you can

GERALD A. DOHRMANN, C.S.R.#2046

1  do so between now and the 3rd prepare the transcript of

2  this proceeding, the public part and then the in-camera

3  part separately under seal.

4          See you Thursday.

5              MR. STALLWORTH:  Thank you, Your Honor.

6                          ---o0o---

```
 1   STATE OF CALIFORNIA )              C00545
                         )  ss.
 2   COUNTY OF ALAMEDA   )

 3

 4              CERTIFICATE OF REPORTER

 5       I, GERALD A. DOHRMANN, Certified Shorthand

 6   Reporter, do hereby certify that I am an Official Court

 7   Reporter of the Superior Court of the State of

 8   California, and that, as such, I reported the

 9   proceedings had in the above-entitled matter at the time

10   and place set forth herein.

11       I further certify that my stenograph notes were

12   thereafter prepared by computer-assisted transcription

13   into typewriting, and that the foregoing pages numbered

14   1 through 35 constitute a full, true and correct

15   transcription of said notes in the above-entitled

16   proceedings.

17       Dated at Oakland, California, this 27th day of

18   June, 2003.

19

20

21                        GERALD A. DOHRMANN, C.S.R. 2046

22

23

24

25

26

27

28
```

GERALD A. DOHRMANN, C.S.R. #2046

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| The People of the State of California, | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Ivan Kilgore    Defendant. | ) |
| | ) |
| | ) |

**FILED**
ALAMEDA COUNTY

NO. 14/033
DEPT. NO. 6

APR 9 - 2004

CLERK OF THE SUPERIOR COURT
By Wanda G. Roums
**DEPUTY**

PFN: BBVSSO
DOB: 5/05/75
CII: 223 13 17 3

## ORDER DIRECTING SUBMISSION OF BLOOD AND SALIVA SAMPLES

The above-named defendant having been convicted of a violation of Section _187_ of the Penal Code, **IT IS ORDERED** that said defendant submit two (2) blood samples and one (1) saliva sample for the purpose of **GENETIC MARKER TYPING** pursuant to Section 290.2 of the Penal Code.

The Alameda County Sheriff's Department is hereby ordered to comply with the sample collection procedures prescribed in 290.2 P.C. Such samples will be obtained in a medically approved manner.

If defendant is in custody, the sampling will take place as soon as possible, in time for defendant's next court appearance.

If defendant is out of custody at the time this order is issued, defendant will report to the Santa Rita Rehabilitation nter lobby with a copy of this order, Mondays, Tuesdays, or Wednesdays between the hours of 3:30 to 6:30 PM. In order to ensure time for sampling, out of custody offenders must appear by 5:30 PM. The Sheriff's Department will conduct the prescribed sample collection for all qualifying out of custody offenders at this place and time.

Defendant is: [✓] in custody  [ ] out of custody.

The defendant is ordered to return to Court on _____ at _____, in
Department No. _____ for _____.

_4/9/04_
Date

_Kenneth Kyle_
Judge of the Above-Entitled Court

Defendant appeared on _____ and complied with the Order.

_____
Name and Title of Person Certifying Under Penalty of Perjury

_____        _____
Date                                            Signature

**Copies:** Orig.White:Ct.File/Green:Prob./Canary:DA/Pink:Bailiff/Golden:Defendant

OAK-025

1

2

Walter K. Pyle

3 (Bar No. 98213)
2039 Shattuck Avenue, Suite 202
4 Berkeley, CA 94704-1116
(510) 849-4424
5 *Attorney for Defendant Ivan Kilgore*

6

**FILED**
ALAMEDA CO

RECEIVED    APR 9 - 2004

**CLERK OF THE**
'04  APR -8  P  By Manda
                      DEPUTY

7 **IN THE SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA**

8

9 PEOPLE OF THE STATE OF CALIFORNIA,

10                                              *Plaintiff,*

11                            v.

12 IVAN KILGORE,

13                                              *Defendant.*

No. 141033

DECLARATION ON
INABILITY TO PAY
RESTITUTION FINE

14

15 Ivan Kilgore declares as follows:

16 I am currently incarcerated at Santa Rita County Jail, where I have resided since I

17 was taken into custody in this matter, many months ago. I am unemployed and have

18 been since my incarceration. I do not have any savings or other assets, and I do not

19 know of any source of any substantial income or assets likely to become available to

me in the foreseeable future.

20 I have been unable to afford an attorney, and because of my indigency an

21 attorney was appointed by the court to represent me in this case.

22 If I am sentenced to prison, I have been informed and I believe that there are

23 decreased opportunities for employment while incarcerated at the Department of

24 Corrections, particularly when long sentences are involved, and that there are frequent

25 lockdowns, where inmates are confined to their cells for long periods of time. I am also

26 informed that the starting wages in the prison system, even if work can be obtained, is

27 approximately 9¢ per hour.

28

C00548

I am aware that the minimum restitution fund fine is $200. However, I do not presently have the ability to pay a restitution fund fine which substantially exceeds that amount. Penal Code § 1202.4(c) states, "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the two-hundred-dollar ($200) or one hundred-dollar ($100) minimum."

I request that the court consider my inability to pay in setting the amount of the restitution fund fine.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


April _9_ , 2004


Ivan Kilgore
*Defendant*

170-401 (REV. 8/01)

# RENE DAVIDSON COURTHOUSE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA    C000549

## CLERKS DOCKET AND MINUTES

DOCKET  **KILGORE, IVAN**                                    DEPT. **006**   CRT. DATE/TIME  **4/09/04   09:00**

EVENT NAME  **KILGORE, IVAN DAWNELL**                   RPT. NO. **00-64017**   DOCK NO. **141033**

PROC. **R&S**                    CEN. **0373689**  PFN. **BBV550** A DAY **11/01/00** SJ DATE **10/18/04**

**COUNTS**                                          **PIC 00S00   AAG-OPD   ACITY OA**

CHARGES  **1)F187 SC&USE PC 1 PR CONVICTED-J**

---

**STAT SET  BAIL      $0.00      TOTAL DAYS IN CUSTODY: 1254**

BAIL _____ STAT. _____ BOND DT. _____ BOND DT. _____ DOB **05/05/75**

BAIL _____ STAT. _____ BOND DT. _____ BOND CO. _____ BAC _____

FINE/REST. _____ DATE PAID _____ REC. NO. **NORTH 1**  TIME WAIVED **TWS** _____

## PROCEEDING

DCCO:

JUDGE  **KENNETH KINGSBURY**             DEP. D.A. DARRYL STALLWORTH

DEP. CLERK  **WANDA BOYNS**              DEF. ATTY. WALTER PYLE

REPORTER  **GERALD DOHRMANN**            OTHERS                          ☐ Not Present

**Defendant:** ☒ Present  ☐ Not Present  ☐ Excused  ☒ In Custody  ☐ Pro Per
☐ Interpreter _____ is present. Language spoken: _____
☐ Defendant duly arraigned/advised as to constitutional rights ☐ Defendant waives arraignment  ☐ Waiver of Rights filed
☐ Defendant served: _____ ☐ Complaint ☐ Discovery ☐ Petition ☐ Motion ☐ Protective Order (PC 136.2)
☐ Referred to Public Defender  ☐ Public Defender files conflict  ☐ Financially ineligible  ☐ Private counsel appointed
☐ Plea Withdrawn ☐ Change of Plea ☐ Plea to count(s)_____ ☐ Not Guilty ☐ Guilty ☐ No Contest/Found Guilty
☐ Stipulates to:  lesser included / reasonably related  offense of count(s)_____ to charge(s)_____
Time waived for: ☐ Preliminary Examination _____ days ☐ Trial ☐ Sentence ☐ Time not waived ☐ Time waiver withdrawn
☐ Clauses: ☐ Stricken _____ ☐ Admitted_____ ☐ Sentencing Purposes Only
☐ Priors: ☐ Stricken_____ ☐ Admitted_____ ☐ Denied
☐ Probation: ☐ Conditional Sentence: ☐ Granted for_____ years/months ☐ See attached conditions
☐ Revoked ☐ Restored ☐ Modified ☐ Extended to _____ ☐ Continue on same terms and conditions ☐ Terminated
☐ Defendant admits probation violation ☐ Previous order revoking probation vacated, set aside, defendant restored to probation
☐ Submit to search and seizure of person, residence, vehicle or any property under defendant's control _____
☐ No contact with / not to annoy _____, directly or indirectly: stay at least _____ away
☐ Additional order(s): _____
☐ Petition/Motion _____ ☐ Granted ☐ Denied ☐ Withdrawn
☐ Referred to: ☐ Probation Dept. ☐ Financial Hearing Officer ☐ _____
**Restitution:** ☐ Referred to _____ for Determination ☐ Ordered ☐ Reserved ☐ Modified
☐ Bail Forfeited ☐ Bail Forfeiture Set Aside ☐ Bail Reinstated ☐ Bail Exonerated ☐ Summary Judgment Entered
☐ Bench Warrant: ☐ Issued ☐ Withheld ☐ Withdrawn ☐ Bail Set at $_____ ☐ No Cite Release ☐ Night Service

2X    CERT-CRT:WWM PROB DENIED, FRML ARR FOR SENT WAIVED

Δ SENT SP LIFE WO PAROLE ; RF $6,500.00 PC 1202.4(b) ; $5,000.00

STATE VICTIMS COMP BOARD ; $1,162.54 SAMUEL & GERLEN ANDERSON ; PC 296 ;

ITS 1850 ACTUAL ; APPEAL RIGHTS ; REMANDED ALAMEDA COUNTY SHERIFF

---

Cont: Date:_____ Time: _____ Dept. _____ Proc.: _____ Date: _____ Time: _____ Dept. _____ Proc.: _____

Codes: _____

---

DOCKET NAME  **KILGORE, IVAN DAWNELL**              CT. DATE **4/09/04**  DOCK NO. **141033**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**                Dept. No. 006

Date: **April 9, 2004**          Hon. KENNETH R. KINGSBURY, Judge          Wanda Boyns, Dep.Clk.
Gerald Dohrmann, Reporter

PEOPLE OF THE STATE OF CALIFORNIA

Plaintiff

vs.

**IVAN KILGORE**

Defendant

Counsel appearing for Plaintiff: Darryl Stallworth, Deputy District Attorney

Counsel appearing for Defendant: Walter Pyle, Esq

Probation Officer appearing: No Appearance

Nature of Proceedings:    **REPORT AND SENTENCE**

Case No. **141033**
PFN: **BBV550**
CEN: **0373689**

Defendant is present.
Probation is denied.
Defendant having been convicted by jury of the felony offense(s) shown below. The defendant waives formal arraignment for sentence and has no legal cause to show why the judgment of this Court should not be pronounced against him.

The Court pronounces judgment. Defendant is to be punished by imprisonment in the State Prison of the State of California for:

1.  Defendant was convicted of the commission of the following felonies:

| CNT. | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (Month/Date/Year) | CONVICTED Jury | CONVICTED Court | CONVICTED Plea | Con-current | Con-secu-tive | 654 Stay |
|------|------|-------------|-------|----------------------|--------------------------------------|------|-------|------|---------|--------|------|
|      | PC   | 187*        | MURDER in the First Degree | 2000 | 03-24-03 | X | | | | X | |

2.  ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|------|-------------|-----|-------------|-----|-------------|-----|-------------|-----|-------|
| 01   | 12022.53(d) | S   |             |     |             |     |             |     |       |

The defendant is sentenced to **LIFE WITHOUT PAROLE.**

Defendant is ordered to pay Restitution Fine of $6,500.00 pursuant to Penal Code section 1202.4(b).

Defendant is ordered to pay the State Victim Compensation Board $5,000.00, Claim #608643.
Defendant is further ordered to pay $1,162.54 to Samuel and Gerlen Anderson, 873 30th Street, Oakland, CA 94608.

Defendant is to submit to blood/saliva sample for DNA testing pursuant to Penal Code section 296.

Defendant has been in custody for 1250 actual days as a result of the same criminal act for which he has been convicted.

Defendant is advised of his appeal rights.

Defendant is remanded to the custody of the Sheriff of the County of Alameda to be delivered by him to Director of Corrections at the California State Prison at San Quentin, San Quentin, California.

C:\Documents and Settings\wboyns\Desktop\141033 KILGORE\SPMO.doc
(Rev. 04/07/03)

**ABSTRACT OF JUDGMENT – PRISON COMMITMENT - INDETERMINATE**
[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]

000551

CR-292

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
BRANCH OR JUDICIAL DISTRICT **RENE' C. DAVIDSON**

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: **IVAN KILGORE**          DOB: **05-05-75**

141033   -A   FILED
ALAMEDA COUNTY
-B
APR 9 - 2004

AKA:
CII#: **22313173**
BOOKING INFORMATION: PFN: **BBV550**  CEN: **0373689**

☐ NOT PRESENT

**CLERK OF THE SUPERIOR COURT**
By Hendu. G. Porter
-D                    DEPUTY

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT          ☐ AMENDED ABSTRACT

DATE OF HEARING **04-09-04**  DEPT. NO. **006**  JUDGE **KENNETH R. KINGSBURY**

CLERK **Wanda Boyns**  REPORTER **Gerald Dohrmann**  PROBATION NO. OR PROBATION OFFICER **No Appearance**

COUNSEL FOR PEOPLE ☒ Deputy District Attorney ☐ State Attorney General **Darryl Stallworth**
COUNSEL FOR DEFENDANT ☐ Deputy Public Defender ☒ Private Counsel **Walter Pyle**

1. Defendant was convicted of the commission of the following felonies:
☐ Additional counts are listed on attachment
___ (number of pages attached)

| CNT. | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (Month/Date/Year) | CONVICTED BY |  |  | Con- current | Con- secu- tive | 654 Stay |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
|  |  |  |  |  |  | Jury | Court | Plea |  |  |  |
| 01 | PC | 187* | MURDER in the First Degree | 2000 | 03-24-03 | X |  |  |  | X |  |
|  |  |  |  |  | - - |  |  |  |  |  |  |
|  |  |  |  |  | - - |  |  |  |  |  |  |
|  |  |  |  |  | - - |  |  |  |  |  |  |
|  |  |  |  |  | - - |  |  |  |  |  |  |
|  |  |  |  |  | - - |  |  |  |  |  |  |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 01 | 12022.53(d) | S |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTION OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

Defendant was sentenced to State Prison for an INDETERMINATE TERM as follows
4. ☒ LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts **ONE**
5. ☐ LIFE WITH THE POSSIBILITY OF PAROLE on counts ___
6. a. ☐ 15 years to Life on counts ___   c. ☐ ___ years to Life on counts ___
   b. ☐ 25 years to Life on counts ___   d. ☐ ___ years to Life on counts ___
   PLUS enhancement time shown above.
7. ☐ Additional determinate term (see CR-290).
8. Defendant was sentenced pursuant to ☐ PC 667(b)-(i) or PC 1170.12  ☐ PC 667.61  ☐ PC667.7  ☐ other (specify):
This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for indeterminate sentences. Attachments may be used but must be referred to in this document.

Adopted for Mandatory Use          ABSTRACT OF JUDGMENT – PRISON COMMITMENT – INDETERMINATE          Penal Code
Judicial Council of California          [NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]          §§ 1213, 1213.5
CR-292 (Rev. January 1, 2003)

C:\Documents and Settings\wboyns\Desktop\141033 KILGORE\SP Abstract.doc

| PEOPLE OF THE STATE OF CALIFORNIA vs. DEFENDANT: **IVAN KILGORE** | | | | | | | |
|---|---|---|---|---|---|---|---|
| **141033** | **-A** | | **-B** | | **-C** | | **-D** |

ย. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):

a. **Restitution Fine(s):**
Case A: $6,500.00  per PC 1202.4(b) forthwith per PC 2085.5;   $0      per PC 1202.45 suspended unless parole is revoked.
Case B: $_____  per PC 1202.4(b) forthwith per PC 2085.5;   $_____   per PC 1202.45 suspended unless parole is revoked.
Case C: $_____  per PC 1202.4(b) forthwith per PC 2085.5;   $_____   per PC 1202.45 suspended unless parole is revoked.
Case D: $_____  per PC 1202.4(b) forthwith per PC 2085.5;   $_____   per PC 1202.45 suspended unless parole is revoked.

b. **Restitution per PC 1202.4(f):**
Case A: $_____  ☐ Amount to be determined   to:  ☐ victim(s)*   ☐ Restitution Fund
Case B: $_____  ☐ Amount to be determined   to:  ☐ victim(s)*   ☐ Restitution Fund
Case C: $_____  ☐ Amount to be determined   to:  ☐ victim(s)*   ☐ Restitution Fund
Case D: $_____  ☐ Amount to be determined   to:  ☐ victim(s)*   ☐ Restitution Fund
(*List victim name(s) if known and amount breakdown in item 11, below.)

c. **Fine(s):**
Case A: $_____  per PC 1202.5. $_____   per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ CC  ☐ CS
Case B: $_____  per PC 1202.5. $_____   per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ CC  ☐ CS
Case C: $_____  per PC 1202.5. $      per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ CC  ☐ CS
Case D: $_____  per PC 1202.5. $_____   per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ CC  ☐ CS

d. **Lab Fee and Drug Program Fee:**
Case A: Lab Fee: $_____   per HS 11372.5(a) for counts _____.   ☐ Drug Program Fee of $150 per HS 11372.7(a).
Case B: Lab Fee: $_____   per HS 11372.5(a) for counts _____.   ☐ Drug Program Fee of $150 per HS 11372.7(a).
Case C: Lab Fee: $_____   per HS 11372.5(a) for counts _____.   ☐ Drug Program Fee of $150 per HS 11372.7(a).
Case D: Lab Fee: $_____   per HS 11372.5(a) for counts _____.   ☐ Drug Program Fee of $150 per HS 11372.7(a).

10. TESTING
    ☐ AIDS pursuant to PC 1202.1   b. ☒ DNA pursuant to PC 296   c. ☐ other (specify):

11. OTHER ORDERS (specify): Defendant to the State Victims Compensation Board, $5,000.00, Claim #608643.
Defendant further ordered to pay $1,162.54 to Samuel and Gerlen Anderson, 873 30th Street, Oakland, CA 94608

12. EXECUTION OF SENTENCE IMPOSED
    a. ☒ at initial sentencing hearing.         d. ☐ at resentencing per recall of commitment.  (PC 1170(d).)
    b. ☐ at resentencing per decision on appeal.   e. ☐ other (specify):
    c. ☐ after revocation of probation.

13. CREDIT FOR TIME SERVED

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | | | CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|---|---|---|---|---|---|
| A | 1250 | 1250 | 0 | ☐ 4019 | ☒ 2933.1 | C | | | ☐ 4019 | ☐ 2933.1 |
| B | | | | ☐ 4019 | ☐ 2933.1 | D | | | ☐ 4019 | ☐ 2933.1 |

| DATE SENTENCE PRONOUNCED: 04-09-04 | TIME SERVED IN STATE INSTITUTION: ☐ DMH | ☐ CDC | ☐ CRC |
|---|---|---|---|

14. Defendant is remanded to the custody of the sheriff: ☒ forthwith   ☐ after 48 hours excluding Saturdays, Sundays and holidays.
To be delivered to: ☐ the reception center designated by Director, California Department of Corrections: ☒ San Quentin   ☐ Chowchilla
    ☐ other (specify):

CLERK OF THE COURT
I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE    Wanda Boyns | DATE 04-09-04 |
|---|---|

C:\Documents and Settings\wboyns\Desktop\141033 KILGORE\SP Abstract.doc

C00553

2

Walter K. Pyle
3  (Bar No. 98213)
   2039 Shattuck Avenue, Suite 202
4  Berkeley, CA 94704-1116
   (510) 849-4424
5  *Attorney for Defendant Ivan Kilgore*

6

FILED
ALAMEDA COUNTY

APR 0 9 2004

CLERK OF THE SUPERIOR COURT
By_____ Marie    Marquez_____
                              Deputy

7  # IN THE SUPERIOR COURT OF ALAMEDA COUNTY, CALIFORNIA

8

9  PEOPLE OF THE STATE OF CALIFORNIA,

                                  *Plaintiff,*
10

                    v.                          No. **141033**
11

   IVAN KILGORE,
12
                                  *Defendant.*        NOTICE OF APPEAL
13

14

15      Defendant Ivan Kilgore hereby appeals this court's judgment and sentence
16  entered April 9, 2004.

17

18      Defendant requests that the court appoint an attorney on appeal. Defendant is
19  indigent, incarcerated, and counsel was appointed for him in the Superior Court

20

21  _____

22           Ivan Kilgore
              *Defendant*

23

24

25

26

27

C00554

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA, STATE OF CALIFORNIA**

FILED

ALAMEDA COUNTY

THE PEOPLE OF THE STATE OF CALIFORNIA

VS

APR 9 - 2004

**KILGORE, IVAN**

CLERK OF THE SUPERIOR COURT

By _Wanda  G. Kaymt_ DEPUTY

DEFENDANT

## PROBATION OFFICER'S REPORT AND RECOMMENDATION

| EVENT NAME | **KILGORE, IVAN DAWNELL** | | | |
|---|---|---|---|---|
| C.I.I. NAME | **KILGORE, IVAN D** | | JUDGE | KINGSBURY |

| ADDRESS | Unknown | | | DEPARTMENT NO. | **006** |
|---|---|---|---|---|---|

| D.O.B | **05/05/75** | (AGE: **27** ) | DOCKET NO. | **141033** |
|---|---|---|---|---|

| SEX | **MALE** | ETHNIC **BLACK** | REFERRAL DATE | **03/24/03** |
|---|---|---|---|---|

HT. **5FT  9IN** WT. **165**     HAIR **BLACK**

C.I.I. NO. **22313173**       COURT DATE **06/13/03**

'N. **0373689**         DEFENSE ATTORNEY **DEBORAH LEVY**

PFN. **BBV550**         REPORT BY __Jeff Wilson__      ᴅᴊᴀ
                    DEPUTY PROBATION OFFICER

CHARGES FILED   **PC 187 SC&USE 1/PR F**

CURRENT CHARGES   **PC 187 SC&USE 1/PR F**

CHARGE STATUS   Jury Trial

DATE AND PLACE OF   **ARREST**       ARREST AGENCY **OAKLAND PD**

**11/01/00 PALM AND HILLSIDE   OA**

CURRENT CUSTODY STATUS   **IN CUSTODY**     DAYS IN JAIL THIS CHARGE ____955____

JSTODY STATUS THIS CHARGE **IN CUSTODY**
                    O.R. ON       BAILED ON       AMOUNT $

MARRIED:  Yes _Unknown_ No ____   LIVES WITH ___unknown___     INCOME SOURCE ___unknown___

FORM 240-58 (REV 9-78)

KILGORE, IVAN                                                                                                    Docket #: 141033

## CRIMINAL HISTORY

Juvenile: The defendant has no known Juvenile Court findings.

Adult:

| Date | Offense and Disposition |
|------|------------------------|
| 11-26-95 | Offense: 1st degree manslaughter |
| Oklahoma | |
| | Disposition: 09-11-97 4 years prison. |

Pending Criminal Cases: The defendant has a pending charge of section 4573.6(felony) of the Penal Code. The case is set for DISP on 06-06-03 in Pleasanton Department 701 at 9:00 a.m..

Prior Probation History: The defendant has no known prior probation history.

Institutional and Parole History: The defendant was sentenced to 4 years prison out of Seminole County in Oklahoma in 1997 following a conviction of 1st degree manslaughter.

## PRESENT OFFENSE

Offense Summary: According to Oakland Police report #00-064017 on 07-16-00 at approximately 05:57 p.m. officers responded to a report of a shooting with at least one person down. As officers arrived they found the victim, William Anderson, lying on the ground and not moving. He did not have a pulse and he had a pool of blood on his shirt that appeared to be coming from a gun shot wound to his chest. An officer began CPR until medical personnel arrived. At 06:35 p.m. the victim was pronounced dead.

Witnesses reported that an individual known as "Ivan" was the person responsible for shooting the victim. It was reported that Ivan was in the backseat of a gray Cadillac when he pointed a shotgun out the window of the vehicle and shot the victim. The victim's girlfriend advised that the victim told her that he saw Ivan in the vehicle prior to his being shot. She added that he also told her that he and Ivan had been having problems and that they used to be friends.

The District Attorney reported that the defendant saw the victim while driving to Home Depot. He then went home and retrieved his shotgun and had Raymond Jones drive him back to where the victim was while he rode in the back seat. The defendant then told the driver to slow down when they got closer to the victim. The defendant then pulled out his shotgun, stared at the victim, and stated, "What's up now, punk!" He then pulled the trigger and the victim was hit in the stomach and died shortly thereafter. The District Attorney also reported that the defendant and victim had previously been in fist fights and that one of the fights left the defendant with a black eye.

Codefendant(s): None.

2

<u>Negotiated Plea:</u> According to the District Attorney's letter the defendant was found guilty of 1st degree murder and found the special circumstances of "Drive by Shooting" to be true and it is mandated by law that the defendant be sentenced to prison for life, without the possibility of parole.

<u>Attorney Statements:</u>

    <u>District Attorney:</u>  Attached.

    <u>Defense Attorney:</u>  Not received.

<u>Defendant's Statement Re Offense:</u>  The defendant refused to participate in the interview process.

<u>Defendant's Statement Re Probation/Diversion:</u>  Not applicable.

<u>Defendant's Statement of Assets:</u>  Not yet received.

<u>Victim Information:</u>  See Confidential Information.

<u>Fines and Fees:</u>  The defendant is subject to the standard fines and/or fees for this offense.  Further, the Probation Officer has determined that the defendant does not have the ability to pay a probation service fee pursuant to Penal Code Section 1203.1b at this time.

<u>Compliance with Section 296 of the Penal Code:</u>  Blood and saliva samples have not yet been submitted.

<u>Time in Custody:</u> 955 days.

| Arrest | Release | Status | Total |
|--------|---------|--------|-------|
| 11-01-00 | | held | 955 days. |

## SOCIAL FACTORS

The undersigned went to interview the defendant at Santa Rita jail on 05-28-03.  The defendant failed to cooperate with the interview process as he refused to answer any questions.

## SENTENCING FACTORS

<u>Rule 413:</u>    <u>Probation Eligibility When Probation is Limited:</u>

(a)    The defendant appears to be statutorily ineligible for because of the provisions of section 1203.06 (a)(1) of the Penal Code.

<u>Rule 414:</u>    <u>Criteria Affecting Probation:</u>

Because the defendant is ineligible for probation, these factors will not be addressed.

3

Rule 421:      Circumstances in Aggravation:

(a)    (1)    The crime involved great violence as the defendant shot and killed the victim in a drive
              by shooting.

(a)    (3)    The victim was particularly vulnerable as he was standing on the corner with his
              girlfriend and was not armed.

(a)    (8)    The manner in which the crime was carried out indicates planning, sophistication or
              professionalism.

(b)    (3)    The defendant has served one prior prison term.

Rule 423:      Circumstances in Mitigation:

None of the factors in regard to the crime or to the defendant appear applicable.


## EVALUATION

The defendant is an ineligible and unsuitable candidate for probation. The District Attorney reported
that the defendant has been convicted of 1st degree murder with the Special Circumstance of "Drive by
Shooting" and that it is mandated by law that the defendant be sentenced to prison for life, without the
possibility of parole. This disposition appears to be appropriate. It should be noted that the defendant
has a prior conviction for 1st degree manslaughter that he was sentenced to 4 years state prison for in
1997 in Oklahoma.

The defendant refused to answer any questions during the interview process for the sentencing report
and the social factors section could not be completed. The victim's family will be present at sentencing
and several family members and friends would like to read impact statements.


## RECOMMENDATION

It is respectfully recommended that probation be denied, and that a restitution fine in the amount of
10,000.00 be imposed pursuant to Section 1202.4(b) of the Penal Code.

If the sentence includes a period of parole, it is recommended that an additional restitution fine be
imposed pursuant to Section 1202.45 of the Penal Code in the same amount, and that the fine be
suspended unless parole is revoked.

It is further recommended that the defendant be ordered to pay restitution of $5,000.00 to the VCB
program and $1,162.54 to Samuel and Gerlen Anderson as specified under Confidential Cover of the
report; said order shall be enforceable as a civil judgment.

It is further recommended that the defendant participate in an anger management program while in
prison.

KILGORE, IVAN

C00558

Defendant shall submit blood and saliva samples pursuant to section 296 of the Penal Code.

Date typed:  05-29-03
JW

Respectfully submitted,

WAYNE G. TUCKER
INTERIM CHIEF PROBATION OFFICER

Approved by:

Pat Baker
Unit Supervisor

By:

Jeff Wilson
Deputy Probation Officer

I have read and considered
the foregoing report.

JUDGE
\\probile\group\CFA\bov550\RS 06-13-03 KILGORE.doc
Revised: 1/22/03

5

C00559

| | |
|---|---|
| **CONFIDENTIAL RECORD INFORMATION** | |

PURSUANT TO TITLE 42, CHAPTER I, SUBCHAPTER A, OF FEDERAL REGULATIONS AND SECTIONS 5328-5330 CALIFORNIA WELFARE AND INSTITUTIONS CODE PATIENT WAIVER OF CONFIDENTIALITY, THIS INFORMATION IS RESTRICTED TO THE COURT, DISTRICT ATTORNEY, DEFENSE COUNSEL AND PROBATION/PAROLE.

**TO:** **Court** Rene C. Davidson Courthouse **Department No.** 006 **Court Date** 6-13-03

**RE:** **Docket No.** 141033 **PFN No.** BBV550 **CEN No.** 0373689

**Defendant** KILGORE, IVAN

**FROM:** **Deputy Probation Officer** Jeff Wilson

240-744

G:\CFA\Forms\CONFIDENTIAL RECORD INFORMATION.doc

KILGORE, IVAN                                                                 Docket #: 141033

**C00560**

## Victim Information:

Victim's Notification: On 04-09-03 the undersigned mailed restitution information along with the defendant's sentencing date and custody credits to Samuel and Gerlen Anderson. They are the parents of the deceased, William Anderson. The undersigned also spoke with Mr. and Mrs. Anderson by telephone on numerous occasions. The Andersons' filed a claim with the VCB program and the program paid out $5,000.00 for funeral expenses. The Andersons are also requesting $1,162.54 in wage losses. They have submitted their documentation.

Victim's Statement: Mrs. Anderson reported that she and her husband along with other family members and friends will attend the sentencing hearing. She advised that six people would like to read statements at the hearing. The statements that they wish to read are also attached.

Restitution: It will be recommended that the defendant pay $5,000.00 in restitution to the VCB program and $1,162.54 to Samuel and Gerlen Anderson.

6

C00561

May 20, 2003

RE:  Ivan Kilgore
PFN:  BBV550
NO:  141033
PLEA:  Jury Verdict of 1st degree Murder
R&S:  June 13, 2003

Adult Probation Office
400 Broadway
Oakland, Ca. 94607

The following information is provided to assist you in your investigation concerning the above-named defendant.

## SUMMARY OF OFFENSE:

In the Spring of 2000 defendant and victim (William Anderson) had two maybe three fist fights, one of which left defendant with a black eye. Although victim lived in Fresno he would quite often visit his parents who lived near 30th and San Pablo Ave. in Oakland. On the afternoon July 16, 2000 while driving to Home Depot defendant spotted victim hanging out near the corner of 30th and San Pablo with his girlfriend, his cousin, and his best friend. Defendant made a U-turn and headed back to his apartment where he retrieved his shotgun and had Raymond Jones drive him back to where the victim was.

As they got closer to the victim, defendant told the driver to slow down. Defendant then pulled out his shotgun, stared at victim, and stated, "What's up now, punk!" Defendant then pulled the trigger. Victim was hit in the stomach and died shortly thereafter.

## VICTIM INFORMATION:

Victim's parents Gerlin and Samuel Anderson were at the trial everyday and were instrumental is helping the prosecution bring defendant to justice.

## SIGNIFICANT CRIMINAL HISTORY:

1997   1st degree Manslaughter from Seminole County, Oklahoma, 4yrs Sp

## **RECOMMENDATION:**

The jury found defendant guilty of 1st degree Murder and found the Special Circumstance of "Drive by Shooting" to be true. Consequently it is mandated by law that defendant be sentenced to prison for life, without the possibility of parole.

Respectfully yours,

THOMAS J. ORLOFF
District Attorney

By:

Darryl Stallworth
Deputy District Attorney

C00563

**ANDERSON STERLING FLORAL & BRIDAL DESIGN**
3740 Grand Ave.
Oakland, Ca 94610
Phone: (510) 763-1778
Fax: (510) 763-1778

## FAX COVER SHEET

**TO:** Jeff Wilson

**COMPANY:** County of Alameda Probation Department

**PHONE:** (925)803-7064

**FAX:** (925)551-6798

**FROM:** Samuel & Gerlen Anderson

**FAX:** (510) 763-1778

**DATE:** May 21, 1903

Here are copies of our witness impact statements &
A copy of the income that I lost during the days of the
trial. From FTD (Florist Transworld Delivery) These orders had to be
Canceld and also suspenden for the days of the trial.

If there are any additional question please feel free to call me
At (510) 763-1778.

Thank you

14 pgs including cover sheet

C00564

# ALAMEDA COUNTY PROBATION DEPARTMENT RESTITUTION CLAIM FORM

CASE NAME: Kilgsde, Ivan
PROBATION OFFICER: Jeff Wilson
TELEPHONE: 925/803-7064
FAX: 925/551-6798

PROBATION CASE NUMBER: 141033
OFFENSE DATE: 11-1-00
OFFENSES: PC 187 fel.ov.y
DOCKET NUMBER: 141033

VICTIM:
Samuel + Gerlen Anderso

## CHECK ALL BOXES THAT APPLY

( ) I do not claim restitution.
( ) I plan to seek recovery through civil suit and do not wish to make a claim.
( ) I have filed, or will file, a claim through the State Victims of Crime Program.
( ) I have received $          from the State Victims of Crime Program.
( ) I request restitution as documented below.

PROPERTY/WAGE LOSS (including base salary and commission income)

| Description | Current or Replacement Value |
|---|---|
| Comm. Sales | $ 1162.54 |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

PERSONAL INJURY/TREATMENT

| Description | Cost of Treatment |
|---|---|
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

Is treatment ongoing? ( ) Yes     ( ) No

Restitution should be paid to (PRINT CLEARLY)     TOTAL CLAIM $ 1162.54

Mr. Samuel or Gerlen Anderson
Name

873 30th Street
Street Address

Oakland, Ca 94608
City/State

_____
Business Reference Number (If any)

CLAIM: Under penalty of perjury, I declare that all statements on this form are correct.

Gorlen Anderson     5/21/02
Signature          Date

Home Phone: 510-452-3982

Work Phone: 510-763-1778

Documentation Required: Attach copies of bills, receipts, estimates, employer's verification of wage loss and commission income for the 12 months preceding the offense. KEEP ORIGINALS FOR YOUR RECORDS

250100-2

C00565



FLORISTS' TRANSWORLD
DELIVERY
PO BOX 7023
DOWNERS GROVE, IL 60516-7023
1-800-788-9000

**REPORT OF ORDERS FILLED**
DO NOT REPORT INTERFLORA ORDERS ON THIS REPORT
DO NOT REPORT CREDIT CARD ORDERS ON THIS REPORT

ANDERSON STERLING FLORAL
3740 GRAND AVE
OAKLAND        CA 94610

Your
Member No. ____ 05-8172

CIRCLE ⊕ IF HOLIDAY SPECIAL

DO NOT REPORT MERCURY ORDERS ON THIS FORM, ALL MERCURY
ORDERS ARE AUTOMATICALLY REPORTED TO THE CLEARING HOUSE.

Date of
This Report  *MARCH 10, 11, 13, 14, 6, 18TH, 2008*
             MONTH - DAY - YEAR

| ITEM NO. | SENDING MEMBER CODE NUMBER (05 to 8172) | DELIVERY DATE MONTH - DAY | CHECK HERE IF IT IS A RELATED ORDER | RECIPIENT - DELIVERED (OR FLORAL GRAVES) | OCCASION CODE | GROSS DOLLAR AMOUNT INC. DEL. CHARGES |
|---|---|---|---|---|---|---|
| 01 | 05-8172 | 3/10 | √ | NANCY PEREZ | 8 | 59.99 |
| 02 | 90-8400 | 3/11 | √ | ERIN CITTEE | 8 | 40.99 |
| 03 | 90-8400 | 3/11 | √ | SR. MARIE MYER | 8 | 44.99 |
| 04 | 90-8400 | 3/10 | √ | CHRISTINE DAUGHERTY | 8 | 48.99 |
| 05 | 90-8400 | 3/10 | √ | LUCY BELLAMY | 8 | 54.49  54.49 |
| 06 | 04-0667 | 3/12 | √ | ALICE JAKEL | 8 | 57.99 |
| 07 | 05-7778 | 3/13 | √ | Judge Roletson | 8 | 72.00 |
| 08 | 90-0904 | 3/14 | √ | EMILIE SHEA | 5 | 59.99 |
| 09 | 05-8972 | 3/14 | √ | Tricia Freeman | 8 | 94.70 |
| 10 | 90-8400 | 3/14 | √ | TINA LOCSIN | 8 | 69.99 |
| 11 | 90-8400 | 3/14 | √ | BRANDI BRYAN | 3 | 68.49 |
| 12 | 90-8400 | 3/13 | √ | STACY STUDEBAKER | 7 | 64.99 |
| 13 | 90-9077 | 3/14 | √ | GILLIAN & BRUCE | 8 | 67.99 |
| 14 | 90-8400 | 3/18 | √ | LAURA RAMBIN | 8 | 60.99 |
| 15 | 90-8400 | 3/18 | √ | Bob & Cici HOOVER | 8 | 40.99 |
| 16 | 90-8400 | 3/18 | √ | OLIVE SANTOS | 8 | 82.99 |
| 17 | 90-8400 | 3/18 | √ | JACQUELINE CRUM | 8 | 59.99 |
| 18 | 90-8400 | 3/18 | √ | JOCELYN MANIULIT | 8 | 64.99 |
| 19 | 37-3753 | 3/18 | √ | QUYEN PHAN | 8 | 39.99 |
| 20 | | | | | | 1,162.54 |

Check Here for Reorder☐   Envelopes ☐   Sheets ☐      **Total Amount:** $ 1,163.44

MAIL ORIGINAL (WHITE) COPY TO THE F.O. ADDRESS ABOVE. RETAIN DUPLICATE (YELLOW) COPY FOR YOUR FILES.

111.2 m.

FIRST OF ALL I'd LiKe To TAKe This
OPPORTUNITY TO THANK THe OAKLAND Police
depARTMENT AND THe CALiFORNIA SUPERIOR
COURT FOR THEIR PATIENCE AND PROFESSIONALISM
IN THe CAPTURE AND PROSECUTION OF A This
INSIPID LiTTLe MAN IVAN KILGORE.

AS A RESIDENT OF OAKLAND AND
A NATIVE CALiFORNIAN, I'm PROUD TO SAY
OUR SYSTEM IN CALiFORNIA WORKS, I'm
SHURE IVAN KILGORE IS COMING TO THe
REALITY OF how WELL iT WORKS.

IVAN KILGORE iT MUST Be hell
SITTING IN your SEAT WONdERING WHAT
THe JUDGE is ThiNKING, KNOWING THAT
He REPRESENTS OUT THe PEOPLe OF OUR
COMMUNITY.

YOUR honOR IVAN KILGORE hAS
BEEN CONVICTED OF MURDERING MY
NEPHEW William ANDERSON. I've LEARNED
THAT he ALSO MURDERED A MAN IN
OKLAHOMA. IN MY OPINION IVAN KILGORE
IS NO LESS OR MORE THAN A LOWLIFE,
NO GOOD, MURDEROUS SON OF A biTCh
THAT Should Be EXECUTED BY THe STATe
OF CALiFORNIA.

YOUR honOR is MORE EDUCATED IN
These MATTERS AND I PUT MY FAITh IN THe
SYSTEM. So I'm ShORE YOUR honOR WiLL —

000567

AND FAIR

deTERMiN AN APROPRIATe SENTENRe

THANK YOU

Bill Ward

000568

FROM :0000000000 000000000 000000000    FAX NO. :510 747 6335    May. 13 2003 07:24AM P2

Fred' Statement:

William Anderson
William Bentley Anderson
Was murdered by this man who no longer has a name. Forever he will be known as William Bentley Anderson's Murderer. A killer. I would rather that he did not but if this no named murder must live the rest of his life I want it to be in torment. I warn him to wake up every morning and remember the man my brother " William Anderson". I want him to suffer in a living hell were his mental and physical suffering could only be released by his own death. And in that death be victimized by the devils henchmen. I want him to lay awake at night tortured by his nightmares and I want him to remember William Anderson, William Bentley Anderson.
To the no named murderer of William Anderson, I want this name will live with you, haunt your dreams, torture your soul, crush your hopes, be your fears. To the end of your life you are nothing, will always be nothing with no name. The only name that will matter in your world is "William Anderson". You may have taken his physical life, but by doing this you sacrificed your soul.

May the demons of hell have their way with you for eternity.

C00569

$\partial$ min

## This is for Will

Good morning Judge _____ and thank you for the opportunity to address the court and all those here today. I have had the pleasure of knowing William Anderson Jr., and his family living next door to their home in Oakland. As a native of San Francisco and presently a resident of Oakland, I'd like to thank the Oakland police department, law enforcement and judicial system for the guilty verdict of Ivan Kilgore. Ivan Kilgore took a very young life in a most cowardly way. William was barely 21 years old when this tragic incident took place and after almost three years, this sordid conclusion will not bring him back. William gone is a loss of a young man's life, a pain that will never go away.

During the extensive court hearings, arraignments, and trial, I've often thought how Ivan Kilgore could turn to William's family and just smile? Ivan Kilgore, your arrogance will soon meet others inside the walls of the State Penitentiary. Ivan Kilgore, will you be smiling there like you have been in the court room over the past two and a half years? A tough guy such as yourself, who couldn't accept losing a fist fight, and couldn't say, "peace Brother William, lets' be friends" is a weak and pitiful individual. It's too late to say your sorry, if that thought was ever in your mind. Too much time has passed to make a sincere word in that direction. Hell awaits you.

William Anderson, Jr. could be alive today if you fessed up to the misunderstanding. You could have been "big enough" and let it go Instead, you sought revenge, by shooting William in his back. Your disrespect of life, of yourself, has affected not only the loss of William, but the loss of a family member, a friend and now you will pay with your own life. Ivan Kilgore, you should have been put away a long time ago.

I really hope that you are tougher than you think you are, because where you're going you are really going to need to be just that and more. Have you heard the term "fight you tooth and nail"? If you haven't, you will have time to think about it and soon do it.

Judge ___, the court, William's family and friends, I continue to be in shock at the loss of this young man's life. William did not deserve to die this way. William had dreams for a future, a girlfriend, his buddies and a loving, giving family. Ivan Kilgore, you damaged a lot of people's lives.
Right now, William is looking down from up above at all of us in this court room, and he is smiling because he is at peace.

You took a life, you do life!

Aloha, Ivan Kilgore, this is just the beginning of the end.

Thank you your honor, members of the court room, prosecution and the jury and William's family

Sincerely,


Riki Paàlapaà

C00570

## NO WORRIES
### BY ROCHELLE WILLIAMS
### (FRIEND OF FAMILY)

This is a little sonnet for Mr. Kilgore called No Worries

These are just a few things in life you no longer have to worry about.

No wife or congicale visits
No Children or additional if you have any
No more meaningful holidays
No more meaningful birthdays
No car notes, therefore no car
No creditors bugging you
No utility bills
No cutting grass on weekends
No working in or on apartment buildings
You might see your mother or sister maybe
No more buying brooms at home depot
No more 911 calls to report you car stolen
No more trips to Wewoka, Oklahoma or anywhere
else for the matter
Best of all no more lives taken by you & no more drive-bys.

Congratulations for you have no more of lifes meaningful worries.

PS The one thing you must worry about is dropping the soap.

Your Honor I ask that the maximum sentence is given to this person and he gets just what he deserves.

Thank You

C00571

## Sam & Gerlen Anderson's
## IMPACT STATEMENT

To your Honor Judge Kingsbury & the officers of the court.

If anyone would have told me I would be standing here today talking with the murderer of my son I would have never believed them.

I looked into the dictionary to find a discription of what you were and I found.

| | |
|---|---|
| Ignorance | Violent |
| Viscioness | Vengeful |
| Unforgiving | Spitefulness |
| Inhuman | Mean |
| Cruel | Heartless |
| Gutless | Mindless |

And an assassin. Oh and one more (NUMB NUT) I just threw that one in to describe your future.

Our son will never see the Ocean, but neither will you.
Our son will never see the world grow and change around him but neither will you.
Our son will never have children – we will never be grandparents from this wonderful young man. And if you have any children neither will you.

Our son is dead by your hand.
You are dead by your own hand. For you will loose your name and become a number, you will loose your dignity and become –whatever- .

I am now a mother a peace, not because by son is gone but because I know God holds us in the palm of his hand and delt out the justice you deserve.
Your mother if she is still living and cares about you in any shape form or fashion will be forever in torment with what she bore into this world. Instead of a shining star she was delt a demon of evil.

My husband Sam and I ask you Judge Kingsbury no we plead with you Judge to place this (BEAST) away for the remainder of his natural life in hell's outhouse wherever that may be, where no one but God will be able to show him mercy.

Oh I forget that God does not dwell in unclean places or an unclean heart.

My husband and myself and all of William Bentley Anderson's family and friends Wish to thank the Jurors for the verdict.

We would like to thank Attorney Darrel Stallworth for speaking for our son who had no voice, and to Judge Kingsbury for the opportunity to relieve our hearts and the final justice.

God surely answers prayer.

C00573

## IMPACT STATEMENT
## BY
## PEARL J. WARD (GRANDMOTHER)

First I would like to thank the court for allowing me this opportunity to speak.

I was born on January 1, 1930, and for my (73 ) of my life on this earth I have been a Christian.

I have heard about Satin, read about satin and the eviiness that he can pocess, but up until now have I seen sating face to face.

The organ in your chest that beats as a heart, harbors, cowardess, hate, malice and a true distain for respect for human life.

The devestation that you wrought is unimaginable.

William was a young man that traveled with his parents, brother and myself, all over these United States. William was a avet toy collector and he saw the world as a wonderful place, full of promise for his future.

Going to the movies was his favorite thing to do besides playing video games with his brother Fred. He was standing on the corner to go see the X-Men movie when you murdered him.

The love for my grandson was indescribable. Because of what you did there is a void that can never be filled, at Christmas, birthdays, family gatherings, concerts and just plain good old life.

C00574

You murdered my grandson, you tried to lie about it but the court did not buy it.

When I wish upon a star I will be glad to know where you are and to know that dreams do come true.

You wanted the worst that life had to offer. So now your honor along with the State of California and my families support we want to make his wish come true.

We want to make sure that this man (for all practicle purposes) never sees anything but a cell for the rest of his natural days on this earth.

Thank you your Honor for your justice and I would like to thank Mr. Stallworth for your patience and understanding.

For I truly loved my grandson and he loved me.

3mw    *Will's Auntie - Shirok Williams*    C00575

Today I stand here not full of joy or glee that you are being sentenced but I'm here to speak for the who can not speak for himself. **William Bentley Anderson** (affectionately known as) My Baby. I've called him that every since he came into this world sucking on his two fingers to the time you murdered him. You took away my William you heartless, cruel piece of wasted flesh and blood.

I will not address you by name because I have no respect for you. You are nameless as far as I'm concerned your just another part of the ecosystem an animal killing the next in line.

How your mother could ever spread her legs and produce a man child as evil such as you I'll never know. She would have done better keeping the placenta than bringing you into this world. What a waste of the African American man. Another damn static. How ignorant. Now you will rot in jail or die and for what because you couldn't be a man with intelligence and deal with my Baby with your mind. NO, you had to MURDER him.

Obviously you have no idea of what love is. And to even think you know God is an oxymoron of great proportions. I have had practically three years to relive this horrific event. And standing here today brings it all back again. I have prayed for this nightmare to end but it won't because the harsh reality is that this is not a dream any of us who loved my Baby can awaken. This act of cruelty is imprinted in our minds and in our hearts. I could stand here and curse you and hate you. But I am going to do what God told me to do. It is the hardest challenge I have ever had in my life. But I'm going to do it.

So against my own will, but in my almighty, omnipresent, and all knowing God's will I'm going to do what I need to do to heal. And that is I pray that you not get the death penalty but rather you get life imprisonment. And while you go through your 30's, 40's, 50's, 60's, 70,s and hopefully your 80's you'll find God in that cold jail cell. Not like some of the inmates who claim they know God because it's the in thing to do. No! No! No! I pray you really find God so that you can know what true agape love is. Then and only then will you be able to understand what you've done. What I've come to realize about you is that you are an empty shell which means you have no life. But I want you to have life. I want you to be above the your grave.

This is your second murder which tells me all you know is evil and hate therefore you are desensitized from the hurt and pain you have caused us. Ohhhhhhh but when you get it when you find out who God really is that is when your torture will begin. I pray you spend every waking and sleeping moment thinking of **William Bentley Anderson**. That that day replays and replays and replays over and over again in your mind until you won't be able to think of anything else but **William Bentley Anderson**. Then and only then will you begin to feel. I pray every breathe you take will be thought of the breath **William Bentley Anderson** could have had. I pray every step you take will be thought of the steps **William Bentley Anderson** could have had. I pray every laugh you take will be thought of the laughs **William Bentley Anderson** could have had. I pray that you watch the seasons come and go knowing you'll never enjoy them like **William Bentley Anderson** and I want you to watch the sunrise and set knowing you'll never be able to enjoy it like **William Bentley Anderson**.

I pray until God says enough and it is time for your death that you'll here over and over again his name:**William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson, William Bentley Anderson.** I have purposely repeated his name for the 21 years of his short life.

C00576

Ivan – I didn't think I would ever have to do this in my life to stand face to face before someone who has taken away a love one's life.

You have truly hurt all of us when you took our baby WILLIAM life away from us.

I was an Aunt to this young man. I was the fourth person to see him and hold him when he came into this world.

William took his first plane ride with me when he was 10 years old. I watched him grow from a baby into a young man; I took him to school; picked him up from school; bath him, held him; loved him; played with him and I took him to church. Can you see the picture I just presented to you? We were bonded; there was a love connection you took away. I loved William like a son, in fact he was the son I never had-Now he is GONE BECAUSE OF YOU!

I can't stop thinking about him. I miss seeing William. When he would see me it was always with a smile and kiss, saying "Hi Auntie", and introducing me to his friends. Now I will no longer hear his voice or see him, all of that is GONE because of you IVAN, because of your ANGER and MADNESS and wanting to get back at William over nothing. WHY IVAN? I'll tell you why, because you did not stop to think nor did you care to think about what you were getting ready to do.--Take a life. You took away a son, a brother, a grandson, a nephew and a friend. Now he's gone from this world because of you. Ivan you let your no caring feelings control you, and your cold madness made you take our boy's life because of your so call out of control anger thinking you were Mr. Big Stuff.

Ivan because of your ANGER you have brought much pain and hurt upon our family, we will never see William's smile again or hear his hellos' or hold the children he may have had.

I am truly hurt and heart broken because of you – yet I feel sorry for you-because I realize YOU did not have what WILLIAM had. William had a lot of love that surrounded him from his family and friends. IVAN may God Have mercy on your soul because he is the only one that can.

_____ Jennifer Williams (Aunt)

Alameda County
**District Attorney's Office**
Thomas J. Orloff, District Attorney

00D877

RE: KILGORE, RYAN D
DOCKET #: 14033
RAS: 06/13/2001

PEN: BRV650
DEPT. 6

**NOTICE OF VICTIM COMPENSATION CLAIMS**

TO: DPO (ASSIGNED REPORT WRITER)
BY: Heather Farquhar, Legal Asst.
    (510) 272-6188

DATE PREPARED: April 8, 2008
E-MAIL US @: "Restitution, DA"

**CLAIMS AND PAYMENTS**

Claims for this case have been filed with (and payments made by) the State Victim Compensation Board (VCB) as noted below:

| Victim/Claimant | Claim # | Paid |
|---|---|---|
| 1. Samuel Anderson | 6343 | 5,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

TOTAL PAID TO DATE: 5,000.00

**Please recommend that the court make separate restitution order(s) payable to the Victim Compensation Board (VCB) for each individual claim number(s) in the amount(s) paid to date. (P.C. 1202.4(f)(2)).**

**JOINT AND SEVERAL ORDERS** should issue in all cases where multiple defendants are responsible for the loss. People v. Campbell (1994) 21 Cal.App.4th 825. Please recommend joint several orders **specifying the related defendants and dollar**

**THIS NOTICE MAY NOT REFLECT ALL LOSSES** for which a victim is entitled to restitution. It covers only VCB expenses. It *does not include* expenses for which the victim is otherwise reimbursed and property losses, etc. Please get this information from the victim. Have restitution ordered directly payable to the victim for these losses.

**RESTITUTION RESERVED:** In any *case* where restitution might be an issue the court should *always reserve jurisdiction* for future restitution orders even when a specific order is also made. (P.C. 1202.4(f); 1202.46)

Please contact me at anytime for further, up to the minute payment information to include in your sentencing report.

```
Claim                                Ver. Total Awarded  Claimant Lien
Number          Claimant Name        Team    To Date     Flag   Number
------ ------------------------------ ---- -----------  - ---------------
508643 SAMUEL M ANDERSON              T001    5,000.00    N
                    ****** End of Data ******
```

Claim number: _____          Page Total:     5,000.00

```
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  retrn quit                     bkwrd frwrd                     main
```

000579

04/09/03          CALIFORNIA STATE BOARD OF CONTROL      Program: VCFINSP2
          10:51:09               Revenue Management Screen              PAGE:   1
                          Financial Detail for Victims of Crime Program

                                  Claim Number 608643
                            Victim Name: WILLIAM B ANDERSON
                           Claimant Name: SAMUEL M ANDERSON

Provider: EMERGENCY FUND - FB
 Amount     Paid      Paid    Amount Service Service Hearing  Issued Sta
 Billed  Provider Claimant Pending  Start    End    Date    Date  tus
--------- -------- -------- -------- -------- -------- -------- -------- ---
 5492.38 2992.38  569.62    0.00 07-21-00             07-28-00 07-28-00 PRC
 1438.00 1438.00    0.00    0.00 07-21-00             07-28-00 07-28-00 PRC



Alameda County
**District Attorney's Office**
Thomas J. Orloff, District Attorney

**C00580**

**RE:** KILGORE, IVAN D.
**DOCKET #:** 141033    **PFN:** BBV550
**R&S:** 6/13/2003    **DEPT.** 006

## NOTICE OF VICTIM COMPENSATION CLAIMS

**TO: DPO JEFF WILSON**

**BY:** Jing Jing Shia, Legal Asst (ac)     **DATE PREPARED:** April 8, 2003
(510) 271-5188     **E-MAIL US @:** "Restitution, DA"

### CLAIMS AND PAYMENTS

Claims for this case have been filed with (and payments made by) the
**State Victim Compensation Board (VCB)** as noted below:

| Victim/Claimant | Claim # | Paid |
|---|---|---|
| 1. Samuel Anderson | 608643 | $5,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**TOTAL PAID TO DATE: $5,000.00**

**Please recommend that** the court make **separate restitution order(s)**
**payable to the Victim Compensation Board (VCB)** for each *individual* claim
**number(s)** in the amount(s) paid to date. (PC 1202.4(f)(2))

**JOINT AND SEVERAL ORDERS** should be issued in all cases where multiple
defendants are responsible for the losses. *People v. Campbell* (1994) 21
Cal.App.4th 825. Please recommend joint & several orders **specifying the**
**related defendants and docket numbers**.

**THIS NOTICE MAY NOT REFLECT ALL LOSSES** for which a victim is entitled
to restitution. It covers *only* VCB expenses. It *does not include* expenses
for which the victim was otherwise reimbursed and property losses, etc.
Please get this information from the victim. Have restitution ordered
directly payable to the victim for these losses.

**RESTITUTION RESERVED:** In *any case* where restitution might be an issue the
court should *always reserve jurisdiction* for future restitution orders even
when a specific order is also made. (P.C. 1202.4(f); 1202.46)

Please contact me at anytime for further, up to the minute payment informa-
tion to include in your sentencing report.