EXHIBIT D

**REPORTER'S TRANSCRIPT OF RECORD ON APPEAL**
**VOLUME 5(PAGES 858-1102)(END)**

1    DISTRICT COURT OF APPEAL OF THE STATE OF CALIFORNIA

2          IN AND FOR THE FIRST APPELLATE DISTRICT

3                        ---oOo---

4

5

6    THE PEOPLE OF THE STATE OF CALIFORNIA,

7              Plaintiff and Respondent,
                                        No.
8         vs.
                                        Alameda Co No.
9                                       141033
     IVAN KILGORE,
10
              Defendant and Appellant.        COPY
11    _____/

12

13

14        **REPORTER'S TRANSCRIPT OF RECORD ON APPEAL**

15      From Judgment of the Superior Court of the State

16      of California, in and for the County of Alameda

17         THE HONORABLE KENNETH R. KINGSBURY, JUDGE

18                        ---oOo---

19      MARCH 24, JUNE 27, JULY 11, JULY 14, JULY 21,

20        AUGUST 15, DECEMBER 5, 2003, JANUARY 9,

21         FEBRUARY 19, MARCH 10 & APRIL 9, 2004

22

23   For the Respondent:      BILL LOCKYER
                              Attorney General of California
24                            455 Golden Gate Ave, Suite 11000
                              San Francisco, CA  94102-3664
25
     For the Appellant:      IN PROPRIA PERSONA
26

27

28   **VOLUME 5 (Pages 858 - 1102)(end)**

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF ALAMEDA

3      BEFORE THE HONORABLE KENNETH R. KINGSBURY, JUDGE

4                  DEPARTMENT NO. 6

5                     ---oOo---

6

7

8   THE PEOPLE OF THE STATE OF CALIFORNIA

9                        Plaintiff,

10            vs.                      Nos.   141033

11   IVAN KILGORE,

12                        Defendant.

13   _____/

14

15

16

17

18    COURTHOUSE, OAKLAND, ALAMEDA COUNTY, CALIFORNIA

19                     ---oOo---

20      TRANSCRIPT OF REPORTER'S RECORD ON APPEAL

21                     ---oOo---

22

23                A P P E A R A N C E S

24   For the Plaintiff:        THOMAS J. ORLOFF
                               District Attorney
25                             BY:   DARRYL STALLWORTH, Deputy

26
     For the Defendant:        DEBORAH LEVY, ESQ.
27                             WALTER K. PYLE, ESQ.

28

GERALD A. DOHRMANN, C.S.R.#2046

```
 1                    - DAYS OF PROCEEDINGS -

 2                         ---o0o---

 3                                                    Page
```

```
 4    MONDAY, FEBRUARY 24, 2003                          1

 5    TUESDAY, FEBRUARY 25, 2003                        11

 6    THURSDAY, FEBRUARY 27, 2003                       40

 7    MONDAY, MARCH 3, 2003                             43

 8    THURSDAY, MARCH 6, 2003                           47

 9    MONDAY, MARCH 10, 2003                            78

10    TUESDAY, MARCH 11, 2003                          221

11    THURSDAY, MARCH 13, 2003                         428

12    FRIDAY, MARCH 14, 2003                           603

13    MONDAY, MARCH 17, 2003                           637

14    TUESDAY, MARCH 18, 2003                          712

15    WEDNESDAY, MARCH 19, 2003                        739

16    MONDAY, MARCH 24, 2003                           858

17    FRIDAY, JUNE 27, 2003                            871

18    FRIDAY, JULY 11, 2003                            906

19    MONDAY, JULY 14, 2003                            911

20    MONDAY, JULY 21, 2003                            920

21    FRIDAY, AUGUST 15, 2003                          923

22    FRIDAY, DECEMBER 5, 2003                         926

23    FRIDAY, JANUARY 9, 2004                          929

24    THURSDAY, FEBRUARY 19, 2004                      960

25    WEDNESDAY, MARCH 10, 2004                       1052

26    FRIDAY, APRIL 9, 2004                          1088
```

```
27

28
```

1

2

3                        **- GENERAL INDEX -**

4                              ---o0o---

5                                            Vol.   Page

6   MOTION TO BIFURCATE                        1      20

7   DUE DILIGENCE HEARING                      1      59

8   COURT'S PRE-INSTRUCTIONS TO THE JURY       1      86

9   OPENING STATEMENT BY MR. STALLWORTH        1      98

10  STIPULATION                                1     159

11  402 HEARING                                2     221

12  STIPULATION                                2     223

13  STIPULATION                                3     593

14  DEFENDANT'S MOTION TO EXCLUDE PRIORS       3     607

15  STIPULATION                                4     653

16  PEOPLE REST                                4     657

17  OPENING STATEMENT BY MS. LEVY              4     658

18  DEFENDANT RESTS                            4     703

19  COURT'S INSTRUCTIONS TO THE JURY           4     748

20  OPENING ARGUMENT BY MR. STALLWORTH         4     782

21  CLOSING ARGUMENT BY MS. LEVY               4     802

22  FINAL ARGUMENT BY MR. STALLWORTH           4     829

23  COURT'S CONCLUDING INSTRUCTIONS            4     848
    TO THE JURY

24

25  VERDICT OF THE JURY                        5     861

26  DEFENDANT'S MOTION FORE NEW TRIAL          5     871
    (In-Camera under separate cover)

27

28  APPOINTMENT OF WALTER K. PYLE, ESQ.        5     920

GERALD A. DOHRMANN, C.S.R. #2046

```
 1 | DEFENDANT'S MOTION FOR NEW TRIAL        5      929
   | (CONT'D)
 2 |
 3 | ARGUMENTS AND RULING ON MOTION FOR      5     1052
   | NEW TRIAL
 4 |
 5 | PROCEEDINGS ON SENTENCE                 5     1088
 6 |
 7 |
 8 |
 9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |
```

```
- INDEX OF WITNESSES -
```

**(Alphabetical)**

---o0o---

| | VOL. | PAGE |
|---|---|---|
| **FOR THE PEOPLE:** | | |
| ANDERSON, SHANAE | 1 | 168 |
| BRYANT, MATTHEW | 2 | 342 |
| CARLSON, PETER | 1 | 60 |
| FESTAG, SEAN | 1 | 114 |
| GREEN, PHIL | 3 | 503,570 |
| HERRMANN, M.D., PAUL | 1 | 152 |
| JONES, RAYMOND | 2 | 224,258 |
| MILLER, ALLAN | 3 | 560 |
| MOORE, BIANCA | 3 | 428 |
| VIGILIENZONE, THOMAS | 1 | 136 |
| | | |
| | | |
| **FOR THE DEFENSE:** | | |
| BEERS, MONTE (Trial & Motion) | 4,5 | 696,973 |
| GREEN, PHIL (Motion) | 5 | 960 |
| KILGORE, IVAN (Motion) | 5 | 1043 |
| LEVY, DEBORAH (Motion) | 5 | 937,975 |
| LOGGINS, MARY | 4 | 659 |
| MILLER, TAYLOR | 4 | 692 |
| OLIVAS, ENOCH JOSEPH (Motion) | 5 | 966 |
| TOMLINSONN, KEVIN | 2 | 401 |
| WASHINGTON, MARY | 4 | 676 |

GERALD A. DOHRMANN, C.S.R.#2046

```
 1

 2

 3

 4                    - INDEX OF WITNESSES -

 5                      (CHRONOLOGICAL)

 6                        ---o0o---

 7  FOR THE PEOPLE:            DIR.   CRS.   RED.   REC.   VD.

 8  PETER CARLSON               60     64     68     69
    (Due Diligence)
 9

10  SEAN FESTAG                114    125

11  THOMAS VIGILIENZONE        136    145    150

12  PAUL HERRMANN, M.D.        152    163    167

13  SHANAE ANDERSON            168    190    210    214

14  RAYMOND JONES              224    229
    (402 Hearing)
15

16  RAYMOND JONES              258    287    327    332
                                             340    341
17

18  MATTHEW BRYANT             342    392    396    399

19  BIANCA MOORE               428    457    494    497
                                             501    502
20

21  PHIL GREEN                 503

22  ALLAN MILLER               560    564    568    569

23  PHIL GREEN (Cont'd)               570    645    650
                                             654    655
24

25

26

27

28
```

| FOR THE DEFENDANT: | DIR. | CRS. | RED. | REC. | VD. |
|---|---|---|---|---|---|
| KEVIN TOMLINSONN | 401 411 | 417 | | | 405 |
| MARY LOGGINS | 659 | 665 | 670 | | |
| MARY WASHINGTON | 676 | 681 | 690 | 691 | |
| TAYLOR MILLER | 692 | 695 | | | |
| MONTE BEERS | 696 | 700 | 702 | | |
| DEBORAH LEVY | 937 | | | | |
| PHIL GREEN | 960 | | | | |
| ENOCH JOSEPH OLIVAS | 966 | | | | |
| MONTE BEERS (Recalled) | 973 | | | | |
| DEBORAH LEVY (Continued) | 975 | 1021 | 1029 | | |
| IVAN KILGORE | 1043 | | | | |

GERALD A. DOHRMANN, C.S.R.#2046

```
 1

 2                    - INDEX OF EXHIBITS -

 3                       ---o0o---

 4    FOR THE PEOPLE:                    IDEN.      EVID.

 5    10                                 229        252

 6    11 & 11A                           369

 7    8C                                 532

 8    1                                             604

 9    2 through 8                                   605

10    8B                                            605

11    10 through 12                                 606

12    13                                            607

13    14                                636

14

15    FOR THE DEFENSE:

16    A through D                                   607

17    A (Motion)                        961

18    B (Motion)                        990

19

20

21

22

23

24

25

26

27

28
```

GERALD A. DOHRMANN, C.S.R.#2046

1              **MONDAY, MARCH 24, 2003**

2                        ---o0o---

3            **- P R O C E E D I N G S -**

4                        ---o0o---

5          (Whereupon, the following proceedings were had in

6    open court without the presence of the jury)

7          THE COURT:  In the matter of People versus

8    Kilgore.  The jury is not here.  Ms. Levy is here, and

9    Mr. Stallworth was here but had to go.

10         We have received another note from the jury

11   indicating that they wanted all of the testimony of

12   Shanae Anderson and portions of Sergeant Green's

13   testimony that refer to his interview with Shanae on

14   July 16 and 17.

15         Mr. Dohrmann has indicated that he has the

16   testimony of Shanae Anderson ready to go.  He is working

17   on Sergeant Green's.

18         It is my understanding, Ms. Levy, that you have

19   spoken with Mr. Stallworth, and both of you indicate

20   that in terms of at least Shanae Anderson's testimony,

21   it's okay if he goes up and reads it to them upstairs.

22         MS. LEVY:  That's correct.  And, Judge, even

23   in terms of Sergeant Green's, Darryl's directions to me,

24   or whatever, Jerry and I agree to it, and it should be

25   fine.

26         THE COURT:  So, my suggestion is go ahead and

27   read Shanae's testimony to them, and tell them you are

28   working on Sergeant Green's.  And when you have those

1  portions, give us an idea so we can let Ms. Levy Mr.

2  Stallworth know.  And when we have those portions ready

3  to go, we will do it.

4          (Whereupon, the mid-morning recess was taken)

5                        ---o0o---

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **- AFTERNOON PROCEEDINGS -**

2                         ---o0o---

3          (Whereupon, the following proceedings were had in

4     open court without the presence of the jury)

5          THE COURT:  The record should reflect in the

6     Kilgore matter that counsel are both present.

7          Mr. Dohrmann has prepared the second part of the

8     testimony that's asked for by the jury, and that was the

9     selected portion of Sergeant Green's testimony that

10    dealt with cross-examination of Shanae Anderson.  Copies

11    have been provided.

12         It is my understanding that it's okay for him to

13    read it without us being present?

14              MS. LEVY:  Yes, Your Honor.

15              MR. STALLWORTH:  Yes, Your Honor.

16              THE COURT:  Thanks.  Anybody have anything

17    they want to say for the record at all?

18              MR. STALLWORTH:  No, Your Honor.

19              MS. LEVY:  No, Your Honor.

20         (Record re-read by the Reporter)

21         (Whereupon, the mid-afternoon recess was taken)

22                         ---o0o---

23

24

25

26

27

28

```
 1                     - AFTER RECESS -

 2                        ---o0o---

 3         (Whereupon, the following proceedings were had in

 4   open court without the presence of the jury)

 5              THE COURT:  In the Kilgore matter, both

 6   counsel are present, as is Mr. Kilgore.

 7         Mr. Juarez, you indicated that the jury stated

 8   they have reached a verdict?

 9              THE BAILIFF:  Yes.

10              THE COURT:  All right.  Both sides ready for

11   the jury?

12              MR. STALLWORTH:  Yes, Your Honor.

13              MS. LEVY:  Yes, Your Honor.

14              THE COURT:  Before I call for the jury, ladies

15   and gentlemen, I know this is an emotional time for

16   everybody.  I would ask you to keep your emotions in

17   check.

18         Bring the jury down.

19                        ---o0o---

20         (Whereupon, the following proceedings were had in

21   open court with the presence of the jury)

22                   VERDICT OF THE JURY

23              THE COURT:  Good afternoon, ladies and

24   gentlemen.  The record should reflect that the twelve

25   seated jurors are here.

26         And I understand, juror No. 6, you were selected

27   as the foreperson?

28              JUROR NO. 6:  Yes, Your Honor.
```

1          THE COURT:   Deputy Juarez told me you reached

2    a verdict?

3          JUROR NO. 6:   That's correct.

4          THE COURT:   Could you please give the forms to

5    Deputy Juarez?

6          In just a minute, I'm going to hand these forms

7    to Ms. Boyns for the reading of the verdict.   Please

8    listen carefully to make sure that the verdict as read

9    is your true and individual verdict.

10         Once the verdicts are read, I will ask either

11   attorney if they would like the jury polled.   And what

12   that means is Mrs. Boyns will ask you a question and she

13   will start with juror No. 1:   Is the verdict as read

14   your true and correct verdict?   Yes or no.   No. 2?   No.

15   3?   Et cetera.   (Examining)

16         Ms. Boyns.

17         THE CLERK:   Okay.   Ladies and gentlemen of the

18   jury, will you please listen to the reading of the

19   verdict.   Omitting the title of the court and the cause.

20         Verdict of jury:   We, the jury in the above-

21   entitled cause, find the defendant, Ivan Kilgore, guilty

22   of a felony, to wit:   Murder in the first degree, a

23   violation of section 187 of the Penal Code as charged in

24   the Information.

25         Special circumstance:   We, the jury, further find

26   true the alleged special circumstance that the murder in

27   the first degree was intentional and perpetrated by

28   means of discharging a firearm from a motor vehicle

GERALD A. DOHRMANN, C.S.R.#2046

1     intentionally at another person or persons outside the

2     vehicle, with the intent to inflict death.

3          We, the jury, further find that in and during the

4     commission and attempted commission of the above

5     offense, the said Ivan Kilgore did personally and

6     intentionally discharge a firearm and proximately cause

7     death to William Anderson, 12022.53(d) PC.

8          March 24th, 2003.  Foreperson, No. 6.

9          THE COURT:  Ladies and gentlemen, was the

10    verdict just read by Ms. Boyns your true and correct

11    verdict?

12          (Jury agrees)

13          THE COURT:  Would either side like the jury

14    polled?

15          MR. STALLWORTH:  I do not, Your Honor.

16          MS. LEVY:  Your Honor, the defense would

17    request that.  Thank you.

18          THE COURT:  Thank you.

19          THE CLERK:  Ladies and gentlemen of the jury,

20    I'm going to ask you each individually if the verdict as

21    just read was your true and individual verdict.

22          Juror No. 1, was the verdict as just read your

23    true and individual verdict?

24          JUROR NO. 1:  Yes.

25          THE CLERK:  Juror No. 2, was the verdict as

26    just read your true and individual verdict?

27          JUROR NO. 2:  Yes.

28

1        THE CLERK:   Juror No. 3, was the verdict as

2   just read your true and individual verdict?

3        JUROR NO. 3:   Yes.

4        THE CLERK:   Juror No. 4, was the verdict as

5   just read your true and individual verdict?

6        JUROR NO. 4:   Yes.

7        THE CLERK:   Juror No. 5, was the verdict as

8   just read your true and individual verdict?

9        JUROR NO. 5:   Yes.

10        THE CLERK:   Juror No. 6, was the verdict as

11   just read your true and individual verdict?

12        JUROR NO. 6:   Yes.

13        THE CLERK:   Juror No. 7, was the verdict as

14   just read your true and individual verdict?

15        JUROR NO. 7:   Yes.

16        THE CLERK:   Juror No. 8, was the verdict as

17   just read your true and individual verdict?

18        JUROR NO. 8:   Yes.

19        THE CLERK:   Juror No. 9, was the verdict as

20   just read your true and individual verdict?

21        JUROR NO. 9:   Yes.

22        THE CLERK:   Juror No. 10, was the verdict as

23   just read your true and individual verdict?

24        JUROR NO. 10:   Yes.

25        THE CLERK:   Juror No. 11, was the verdict as

26   just read your true and individual verdict?

27        JUROR NO. 11:   Yes.

28        THE CLERK:   And juror No. 12, was the verdict

```
 1   as just read your true and individual verdict?
 2               JUROR NO. 12:  Yes.
 3               THE CLERK:  Okay.  Your Honor, the verdict has
 4   been affirmed as read by all twelve jurors.
 5               THE COURT:  Any legal cause why the verdict
 6   should not be recorded?
 7               MR. STALLWORTH:  No, Your Honor.
 8               MS. LEVY:  No, Your Honor.
 9               THE COURT:  Record the verdict, please.
10               THE CLERK:  The verdict is recorded.
11               THE COURT:  Thank you.
12           With the recording of the verdict, you will not
13   have to hear me say "do not discuss this case with
14   anyone" again, or "do any independent investigation."
15   At this point all those restrictions are eliminated.
16           I'm directing Mr. Dohrmann right now to have all
17   personal information, such as names, any kind of
18   address -- I don't think there are any phone numbers in
19   the personal information here -- kept confidential from
20   the record.
21           Just as it is your right to speak to anyone you
22   wish to speak to at this point, it is equally and
23   perhaps more important you have a right not to talk to
24   anybody that you don't want to talk to about this case.
25           If someone wants to talk to you, that is
26   completely your decision.  But if you tell them you
27   don't want to talk to them, and they persist, please let
28   the Court know either through the bailiff or telephoning
```

1  this phone number that's listed on the board there, and

2  we will handle it.  I have only had that happen, I

3  think, twice in my career.  It normally doesn't, but I

4  wanted you to know that.

5          This case was a relatively short case, although

6  obviously the issues involved here were very serious.

7  This is the kind of situation that, sitting as a judge

8  and having been in this business for a lot of years, I

9  prefer not to decide this kind of issue myself, because

10  I'm not representative of the whole community, which all

11  of you are.  You bring to us that layman's expertise

12  from the community.

13          I know it's been an imposition on each one of you

14  and your time, on all of your time.  The schedule has

15  been a bit off again on again, but I want to commend you

16  all.  This jury was, once we got started, I think, on

17  time every time, every day, and it certainly made it

18  much easier for the Court to have that happen.

19          Sometimes the attorneys will want to talk to you

20  after a trial just to get your own personal take on how

21  the trial went, on what you thought the evidence showed,

22  on what you thought the evidence didn't show.  They

23  don't do that out of any sense of morbid curiosity, but

24  both Mr. Stallworth and Ms. Levy are professional

25  attorneys, and they are not looking for a report card on

26  their performance, I don't think, but it is helpful

27  perhaps in future cases that both may try if there are

28  things that you observed that you thought made the trial

1    clearer to you or perhaps was left somewhat muddied.

2    They would like to know that, because they will be back

3    in other courtrooms trying cases again.

4         I know that the $15 a day that jurors make, and

5    although our luncheon budget has increased somewhat,

6    there is not a great amount of reward there, either,

7    certainly not for the services you provide for the

8    court.

9         On behalf of the court, on behalf of me

10   personally, you certainly made my life very easy during

11   the course of this trial, and I personally thank you.

12        Your jury duty, as it were, your civic obligation

13   for the year, is now taken up.  If you get called again

14   within a year, please remember this period of time,

15   mid-March, so you can send it back, if you do not wish

16   to serve on another jury for the next year, letting them

17   know, "I served in Department 6 and roughly during March

18   of 2000."

19        With that, you are excused.  And, normally, if

20   the attorneys want to speak with you, they will come up

21   to the 6th floor.  If you don't want to speak with them,

22   pack your stuff up and feel free to leave.

23        If you don't mind talking to them for a few

24   minutes, you can wait on the 6th floor.  They will be

25   here with me for a couple of minutes and after that, I

26   will release them.  Probably less than five minutes.

27        So, you are excused.  Thank you.

28                         ---o0o---

| | |
|---|---|
| 1 | (Whereupon, the following proceedings were had in |
| 2 | open court without the presence of the jury) |
| 3 | THE COURT: I don't know as of this point |
| 4 | whether or not Mr. Kilgore has a bail. It appears he |
| 5 | does not. |
| 6 | In any event, his bail will remain at no bail at |
| 7 | this point. |
| 8 | I'm going to refer Mr. Kilgore's matter to the |
| 9 | probation officer for a report pursuant to 1203 of the |
| 10 | Penal Code. The only question is would you like it on a |
| 11 | time-waiver or no-time-waiver basis? |
| 12 | And, Mr. Kilgore, what that means is, I'm going |
| 13 | to have a probation officer interview you to write a |
| 14 | report for the court and for me to consider at the time |
| 15 | of sentencing. You have a right to have that report |
| 16 | within 20 judicial days, which usually works out to |
| 17 | about a month. |
| 18 | If you wish to waive time for sentencing, I can |
| 19 | set it at some point beyond that, depending on how long |
| 20 | it's going to take your attorney to do whatever she has |
| 21 | to do. |
| 22 | THE DEFENDANT: Yes, I would like to waive |
| 23 | time. |
| 24 | THE COURT: It will be so noted. Do you have |
| 25 | a date in mind, Ms. Levy? |
| 26 | MS. LEVY: No, Your Honor. If I may have a |
| 27 | moment. |
| 28 | THE COURT: Sure. |

```
 1                  MS. LEVY:  (Examining)
 2                  THE COURT:  I'm going to be gone the early
 3   part of May.
 4                  MS. LEVY:  I'm sorry, Your Honor?
 5                  THE COURT:  I will be gone the early a part of
 6   May.
 7                  MS. LEVY:  Your Honor, would the Court be
 8   willing to put this over to the early part of June?  I
 9   know Mr. Kilgore is willing to waive time.
10                  THE COURT:  Any objection?
11                  MR. STALLWORTH:  No objection, Your Honor.
12                  THE COURT:  Pick a day.
13                  MS. LEVY:  Is the Court available on Friday?
14   Or, if not --
15                  THE COURT:  That's my Law & Motion day
16   normally.  Let me just look here.
17                  THE CLERK:  June 6th is Law & Motion.
18                  THE COURT:  It would be on June 13th.
19                  MS. LEVY:  That would be fine, Your Honor.
20                  THE COURT:  All right.  We have the issue
21   remaining as to what to do about that prior conviction.
22                  MR. STALLWORTH:  At this point, given the
23   jury's verdict --
24                  THE COURT:  You want to hold that until the
25   same day?
26                  MR. STALLWORTH:  Yes.
27                  THE COURT:  So, the issue on the prior will
28   also be continued until the 13th.  And hopefully by
```

```
 1   then, if you intend to proceed on that prior, Mr.
 2   Stallworth, you will have whatever documents you need
 3   and be prepared to proceed -- documents and/or
 4   witnesses, obviously.
 5               MR. STALLWORTH:  That's correct, with notice
 6   to both the Court and counsel way ahead of time.
 7               THE COURT:  All right.  You can do that as
 8   late as the 13th, Ms. Levy?
 9               MS. LEVY:  Yes, Your Honor.  That would be
10   fine.
11               THE COURT:  Anything further that either of
12   you would care to say for the record today?
13               MR. STALLWORTH:  No, Your Honor.
14               MS. LEVY:  No, Your Honor.
15               THE COURT:  See you on the 13th at 9:00
16   o'clock for report and sentence.
17               (Whereupon, the evening recess was taken)
18                           ---o0o---
19
20
21
22
23
24
25
26
27
28
```

1              **FRIDAY, JUNE 27, 2003**

2                    ---o0o---

3              **- P R O C E E D I N G S -**

4                    ---o0o---

5              DEFENDANT'S MOTION FOR NEW TRIAL

6              THE COURT:  All right.  In the matter of

7    People versus Kilgore, No. 141033.

8              The record should reflect that Mr. Stallworth is

9    here representing the People; Ms. Levy is here repre-

10   senting Mr. Kilgore; and Mr. Kilgore is present in

11   custody.

12             Just for the record, so it's completely clear,

13   before counsel arrived this morning, when I got here

14   this morning, Mr. Kilgore was here and neither counsel

15   was here.  I had some brief unreported discussions with

16   Mr. Kilgore about the nature of what he was seeking.

17             The reason I did that is because, after reading

18   the transcript of the proceedings on June the 13th and

19   the motion that was filed by Ms. Levy, I got some

20   indication that maybe I had misconstrued what Mr.

21   Kilgore was seeking to do, and I wanted to clarify that,

22   and I believe we did, but perhaps not.  We will discuss

23   that in a moment.

24             In addition to that, just so the record is

25   completely clear, that at Mr. Kilgore's request, I did

26   show him one appellate decision that he cited for me,

27   People vs. Dennis, in 177 Cal.App.3d; I also showed him

28   portions of People vs. Stewart, at 171 Cal.App.3d;

```
 1   Evidence Code 958, which deals with a possible waiver of
 2   attorney-client privilege, where in a criminal case
 3   could be brought to bear if there was a claim of
 4   ineffective assistance of counsel.
 5         That was the sum and substance of it.
 6         There was also some discussion about whether the
 7   proceeding this morning would be, quote, unquote, in-
 8   camera.  My response was, "Depends."
 9         There was also a question by Mr. Kilgore as to
10   whether or not things he said during a motion for new
11   trial alleging ineffective assistance of counsel, if
12   they did come to the fore at a formal hearing in that
13   regard, after a formal motion was made, would he have
14   any kind of immunity as to that, and I told Mr. Kilgore
15   I don't give advice.
16         I would be glad to share my books with you, but I
17   don't give legal advice.  Mr. Kilgore that's basically
18   what I remember saying.  Is there anything that you want
19   to add to that?
20              THE DEFENDANT:  No.
21              THE COURT:  All right.  Basically I had
22   calendared this after our initial discussions last time
23   for a Marsden motion.  But in looking at counsel's
24   motion again, which I did not have a great opportunity
25   to do the last hearing, and reading the transcript of
26   what pretty obvious to me Mr. Kilgore was trying to
27   communicate to the Court, I had some second thoughts
28   about what he was seeking to do, and I was looking at it
```

| | |
|---|---|
| 1 | more like he was intending to have a post-trial pre- |
| 2 | sentence Marsden motion. |

3          In reading the motion again, and in reading what
4   Mr. Kilgore was trying to say to the Court, or what I
5   believe he was trying to say to the Court, that may not
6   be the case.

7          The other alternative -- or the inference that I
8   drew from the readings that I have done is that at this
9   point he was not seeking to make a Marsden motion.  What
10  he was seeking to do was to have in part a new trial
11  motion based on ineffective assistance of counsel during
12  the trial.  He wasn't seeking to have Ms. Levy
13  discharged at this point, but was seeking to have a new
14  trial granted based on ineffective assistance of
15  counsel, and in that regard, was asking the Court to
16  appoint a separate attorney, or to have a separate
17  attorney appointed to represent him for the purposes of
18  that motion, given that it would be very difficult for
19  Ms. Levy to argue that motion, since she was the trial
20  lawyer.

21          You tell me, where are we going?

22          THE DEFENDANT:  No.  Basically the other thing
23  about the appointment of the attorney was the fact that
24  I'm not skilled in matters of law.

25          THE COURT:  You have to keep your voice up.

26          THE DEFENDANT:  Some issues I would like to
27  address concerning Ms. Levy's incompetence have to do
28  with matters involving that was another reason for my

```
 1   request for a newly appointed attorney.
 2              THE COURT:  As to this matters, is it a
 3   Marsden motion or is it a new trial motion on
 4   ineffective assistance of counsel?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  I mean at this point the things
 7   that have happened have happened.  The trial is in the
 8   books.  And other than your motions now, the only thing
 9   that remains is sentencing, other than your motions and
10   the resolution of those motions.  It's either going to
11   be --
12              THE DEFENDANT:  It's a motion for a new trial
13   basically grants relief for incompetence of attorney.
14              THE COURT:  And are you asking the Court to
15   seek for you another court-appointed attorney for a
16   motion for new trial?
17         It's my understanding, in reading the Stewart
18   case, which is cited in Ms. Levy's moving papers, it's
19   at 171 Cal.App.3d, the burden on you would be to show to
20   the Court -- I think the language used is a "colorable
21   claim to ineffective assistance of counsel."  Fairly low
22   burden, but nonetheless a burden.
23         If the Court finds a colorable claim, it is my
24   understanding of the law that a separate court-appointed
25   attorney would be appointed to you to represent you for
26   the purposes of that motion, and perhaps other purposes,
27   but initially for the purposes of that motion.
28              THE DEFENDANT:  Correct.
```

```
 1              THE COURT:  Is that what you are asking the
 2   Court to do?
 3              THE DEFENDANT:  Correct.
 4              THE COURT:  In terms of your colorable claim,
 5   People vs. Stewart, and I believe other cases, have
 6   indicated that in some circumstances those claims should
 7   be made in open court and in some circumstances those
 8   claims should be made in-camera.
 9              And I don't know how many claims you have, but it
10   seems to me that unless all of them need to be held
11   in-camera for whatever reason you are going to tell me
12   about, that perhaps, if there are multiple reasons --
13   if, and I don't know whether there are or not, because
14   we haven't talked about it -- if there are multiple
15   reasons, some of which can be discussed in public and
16   some of which can't, is that the situation?
17              THE DEFENDANT:  Yes.
18              THE COURT:  All right.  Is it possible you --
19   and I know you have a spread of papers there -- to
20   separate those that can be discussed in Mr. Stallworth's
21   presence?  Because if it gets to a motion for a new
22   trial, the other side is going to be represented.  I
23   mean that's not going to be --
24              THE DEFENDANT:  Your Honor, I have some 40
25   different issues that I would like to address concerning
26   my attorney's incompetence.
27              THE COURT:  Well --
28              THE DEFENDANT:  Of those 40 issues, as we
```

GERALD A. DOHRMANN, C.S.R.#2046

```
 1   discussed, some of them I feel that I can address before
 2   Mr. Stallworth.
 3               THE COURT:  I understand.
 4               THE DEFENDANT:  Some I can't.  In looking
 5   through this, it would take some time for me to go
 6   through and decipher which ones I can and can't.
 7               THE COURT:  Do you have them laid out there?
 8               THE DEFENDANT:  Yes, I have all of the note
 9   form and typed -- some of them typed and so forth.
10               THE COURT:  Those are your documents.
11               THE DEFENDANT:  Yes.
12               THE COURT:  You are familiar with them?
13               THE DEFENDANT:  Yes.
14               THE COURT:  Let's start with the first one and
15   go all the way through.  And if you find one of those in
16   looking at it, when you are about to address it, that
17   it's going to say something that for some reason, for
18   instance, might tend to incriminate you at some future
19   trial -- and I don't know about the immunity issue, I'm
20   not advising you in that regard -- if there's some issue
21   about that, set it aside, and then we will discuss
22   whether it's going to be in-camera or not after we go
23   through the ones that aren't.
24         Mr. Stallworth, you seem like a man in need of a
25   tablet.
26               THE DEFENDANT:  Your Honor, counsel just
27   advised me that it is best for me to address all of my
28   issues in-camera.  She doesn't feel there would be any
```

```
1   necessary need for Mr. Stallworth to be present.

2           THE COURT:  Well, that's nice for her to say.

3   And you have read the Stewart case, as I have, too.  It

4   talks about in-camera if needed.

5           And some of those issues, if they concern things

6   that are part of the public record already that happened

7   at trial, what's the point of asking Mr. Stallworth to

8   leave?  Eventually, when a new motion is made for a new

9   trial, he is going to be there, because it's going to be

10  a written motion, and this is just to decide whether or

11  not there is a colorable claim.

12          So, I'm going to ask you -- and, you know, if it

13  looks like it's going to be disclosing some informa-

14  tion -- and you are aware of the Stewart case; that in

15  that case, if it's the same one I remember, it had

16  something to do with a guy trying to escape, and there

17  were a couple of issues raised in that case.  One is

18  that the gentleman was not -- didn't have all of his

19  mental faculties and was subject to seizures.  I think

20  he said he fell off the roof ladder, and the Court held

21  that that was something that came out at the trial.

22          But the other side of it was, there was a failure

23  to call some specific witnesses.  And that may be

24  something that would be -- something that came out of

25  the trial.

26          You know, do the best you can.  Err on the side

27  of caution if it's something that you think should be

28  in-camera; but if it's something that came out at
```

GERALD A. DOHRMANN, C.S.R.#2046

```
 1  trial -- and I am probably going to ask Mr. Dohrmann to
 2  prepare the transcript of this proceeding -- so try to
 3  be -- don't ramble. I know I tend to. I'm doing it
 4  right now. But try to be as concise as you can as I'm
 5  going to attempt to take notes.
 6      And if you would, just say "first" or "one", or
 7  something like that, so, you know, I want to be able to
 8  do it in an orderly fashion, so that somebody looking at
 9  this in the future, if it's necessary, can make sense
10  out of it.
11      And the reason I'm prefacing my remarks among
12  those things that I read was your exhibit No. 1 to the
13  Marsden motion had with Judge Nakahara back in February,
14  and some of that was a bit rambling. So, be as clear as
15  you can.
16          THE DEFENDANT: Can I have some time to look
17  through this? (Examining)
18          THE COURT: And, Mr. Stallworth, I'm sitting
19  here talking about your position. I don't even know if
20  you want to be here for this.
21          MR. STALLWORTH: I do.
22          THE DEFENDANT: One issue I would like to
23  address to start off is the misstatement counsel made in
24  the language that was used to dismiss the Oklahoma prior
25  as a strike for purpose of impeachment.
26          THE COURT: Okay. Let me make a note. I
27  believe that was discussed on the record; right?
28          THE DEFENDANT: Yes. The defendant's
```

GERALD A. DOHRMANN, C.S.R.#2046

```
1   anticipated trial testimony was incorrectly stated --
2   well, if I could.
3              (Short discussion off the record)
4              THE COURT:  This is your motion; but, on the
5   other hand, Ms. Levy is an attorney.
6              THE DEFENDANT:  If I could, most of things I
7   have written down to read in court, that way I get all
8   of the facts and details in, because I don't want to sit
9   up here and refreshing them out of my memory and
10  misstate them.  So, I would like to read what I have
11  written on my motions to be entered into the Court
12  record.
13             THE COURT:  That's fine, but read them.  Read
14  them knowing I'm going to be listening and writing them
15  down; okay?
16             THE DEFENDANT:  Okay.  Again, I proffered
17  defendant's anticipated trial testimony was incorrectly
18  stated within the content of the motion, in light of
19  that fact counsel has since being appointed to the
20  defendant's case, had in her possession a copy of the
21  defendant's anticipated testimony.
22             THE COURT:  Now, that's the issue, as I
23  recall, that was brought up during the trial about the
24  wording of a motion.
25             THE DEFENDANT:  Yes.
26             THE COURT:  And that motion was a written
27  motion that was filed --
28             THE DEFENDANT:  Yes.
```

```
 1              THE COURT:  -- true?

 2              THE DEFENDANT:  Yes.  At the initial filing of

 3   that motion, and when counsel gave it to me to review, I

 4   read over it, and I pointed out to her she was incorrect

 5   in the language.  Counsel stated to me at that time that

 6   it was irrelevant.

 7              THE COURT:  And this is on the record.  We had

 8   this discussion on the record and it concerned whether

 9   or not I was going to allow you to be impeached, if you

10   testify, with the situation in Oklahoma.

11              THE DEFENDANT:  Right.

12              THE COURT:  And your point was --

13              THE DEFENDANT:  First of all, she hadn't --

14   she had a copy of my anticipated testimony from the

15   beginning of her appointment.  So, I don't understand

16   how she could have made that mistake.

17              THE COURT:  Now, that point was brought to the

18   Court's attention before the ruling was made; true?

19              THE DEFENDANT:  True.  It was.  I'm moving on

20   because it's going --

21              THE COURT:  I got it.

22              THE DEFENDANT:  -- to go into something else.

23              THE COURT:  That's No. 1.

24              THE DEFENDANT:  Yes.  That's No. 1.

25          As I stated, her response to the misstated

26   language was that it was irrelevant.  Well, the

27   irrelevant language, the language became a factor in the

28   Judge's ruling to allow the Prosecutor to use the
```

1  testimony of the prior to impeach the defendant's

2  defense of unreasonable self-defense as the attorney had

3  mistakingly worded the proffer (sic).

4         THE COURT:  Let me say one thing, that you are

5  anticipating and trying to think what my rulings were

6  based on.  My recollection is that that situation was

7  cleared up by you and Ms. Levy before I made my

8  decision, and I understood your motion and still made my

9  decision in the corrected form.  And if that was wrong

10 on my part, it was; but I decided on what I had before

11 me, which included both your and Ms. Levy's correction

12 of what the true situation is alleged to have been;

13 okay?

14         THE DEFENDANT:  Okay.

15         THE COURT:  So, I just want to throw that in

16 as my piece.

17         THE DEFENDANT:  Okay.

18         Well, at the time that counsel acknowledged to

19 the Court the mistake, she pointed out to the defendant

20 that because of this mistaken language and her

21 admonishing the Court of the issue, that the Judge

22 was -- probably most likely upset due to the fact that

23 she was changing the defense from unreasonable self-

24 defense to reasonable self-defense due to the nature of

25 the language.

26         At the time you made your ruling, I asked counsel

27 to file a writ of mandate to address the issue to the

28 appeals court at that moment.  Counsel refused because

GERALD A. DOHRMANN, C.S.R. #2046

```
 1   she didn't know how to file a writ of mandate.  She was
 2   uncomfortable.
 3            And I like to also address counsel, failed to
 4   research the application of the law provided under
 5   Evidence Section Code (Sic) 1101(c).
 6            THE COURT:  Is this the same point?
 7            THE DEFENDANT:  Yes, the same point.  Of
 8   1101(c) in a matter of a diligent and conscious effort.
 9            Counsel may respond to my comments and saying she
10   wasn't conscious of the fact that the prosecution would
11   seek to introduce the prior on the testimony of this
12   subdivision, being that it was subdivision (c) was only
13   made mention during the hearing.
14            In addressing the 1101(b), I feel that counsel
15   failed to argue --
16            THE COURT:  Is this a different point now, or
17   same point?
18            THE DEFENDANT:  It's all in the same essence
19   of the issue.
20            THE COURT:  All right.
21            THE DEFENDANT:  I feel counsel failed to argue
22   that section 1101 prohibits admission of other crime
23   evidence for the purpose of showing the defendant's bad
24   character.
25            THE COURT:  Mr. Kilgore, let me cut you off
26   there.  And the reason I'm doing it is, there was no
27   1101(b) evidence here.  The issue was whether or not you
28   could be impeached if you chose to testify.  This was
```

```
 1   not a case where the Prosecutor made a motion under
 2   1101(b) that was permitted.  I didn't even know if he
 3   made one at this point, but that's a different bucket of
 4   worms.
 5          If a person makes a motion under 1101(b), the
 6   conduct itself then is allowed to be introduced to
 7   basically show intent, motive, those kinds of things
 8   under 1101(b).  And I don't think there was a 1101(b)
 9   motion here, was there?
10          MR. STALLWORTH:  No, there wasn't.
11          THE DEFENDANT:  Well, there was a discussion
12   of the Evidence Code of 1101(b) due to the fact that the
13   motion that the District Attorney had failed to impeach
14   the defendants.
15          THE COURT:  Different.
16          THE DEFENDANT:  Two different things.
17          The other issue I'm addressing, counsel's
18   arguments and her representation on behalf of that issue
19   where I felt she fell short to deny it, first of all,
20   researching the issue of 1101(c).  She did 1101(b) but
21   not (c).
22          THE COURT:  All right.  And as I was --
23          THE DEFENDANT:  And as I was saying, the
24   section prohibits admission, the arguments fell short
25   that the section prohibits the admission of other crime
26   evidence for the purpose of showing defendant's bad
27   character or criminal propensity.
28          THE COURT:  I'm aware of the provisions of
```

```
1   1101(b).  I know you want -- you know, I know it's
2   frustrating sitting in custody and writing all of this
3   out.  But I'm aware of 1101(b).  And any Appellate Court
4   that reads this is going to be aware of 1101(b).
5             THE DEFENDANT:  Okay.  I'm kind of confused
6   here, because, as I said, I wrote this stuff out, for
7   the purpose of making the record, just read the stuff.
8             THE COURT:  Is it all written out?
9             THE DEFENDANT:  Yes.
10            THE COURT:  You want to file it as written
11  out?
12            THE DEFENDANT:  If I file it, it would be open
13  to public view at the hearing.
14            THE COURT:  No.  I don't know if it would be
15  or not.  I'm trying to get you -- you have now spent
16  about 20 minutes on point No. 1.
17            THE DEFENDANT:  Yeah.
18            THE COURT:  You made your point.  It deals
19  with the Court's rulings and her alleged failure to
20  basically ably represent you with regard to that motion
21  concerning the court's allowing you to be impeached on
22  the behavior as to the prior conviction.  That you have
23  made clear.
24            But, you know, going on and on and on about it, I
25  mean I know the law requires me to explore it, but if
26  you are going to have 40 of these, it's going to take a
27  long time, and I'm going to ask you, do you have access
28  to a typewriter?
```

```
1              THE DEFENDANT:  No.

2              THE COURT:  I'm going to ask, you know, I want

3    you to give me the summary idea at this point.

4              As you know, the only burden you have here is to

5    raise a colorable claim.  This is not your actual motion

6    for a new trial; okay?  Sort of the preliminaries of

7    one.

8              THE DEFENDANT:  Well, just a couple more

9    comments.

10             THE COURT:  All right.  Just read them,

11   please, then.

12             THE DEFENDANT:  Okay.  Furthermore, counsel

13   filed to argue the existence of the policy requiring

14   exclusion of the evidence that forbid the prosecution

15   from using a prior in any form to question the

16   defendant's credibility, because of judicial elements of

17   the crime are not -- do not involve moral turpitude,

18   making an unimpeachable crime; therefore, forbid

19   1101(c).

20             I would like to point out, too, that when my

21   attorney asked the prosecution what fact he chose to

22   prove with the prior testimony, he mentioned something

23   about 27 factors being in my prior testimony that were

24   similar to the present case.

25             My counsel at that time asked, you know, to

26   present to the Court those issues, some 20, I believe he

27   say, and he didn't present any to support his argument

28   for using the prior, which my counsel didn't make any
```

GERALD A. DOHRMANN, C.S.R. #2046

1  mention of that or refer in her argument.

2       I have to make mention because of that, counsel

3  advised that ruling that the Judge made, counsel advised

4  the defendant not to testify.  She also made a record of

5  that.

6       Well, counsel also failed to make a record that,

7  because of that ruling, she changed my defense in the

8  midst of all of the preparation she had previously made

9  to one of reasonable doubt, which she didn't take

10  anytime to prepare, for before that ruling and for that

11  moment in the trial, proceeded to argue a reasonable

12  doubt defense.  She also failed to call witnesses.

13       THE COURT:  Now, are we into a different point

14  now.

15       THE DEFENDANT:  No.  Let me stop right there

16  before I continue on with that point.

17       And in light of the issue of counsel refusing to

18  file the writ, I would like to state that it's counsel's

19  duty to preserve actions of defendants, counsel due to

20  take all actions to preserve a defendant's right to fair

21  trial.

22       THE COURT:  In theory I'm supposed to know

23  what the law is; okay?  I want to just know what your

24  complaints are.

25       THE DEFENDANT:  Moving onto another issue --

26       THE COURT:  Okay.

27       THE DEFENDANT:  -- I would like to address

28  counsel's comments in the closing arguments concerning

1   someone firing shots at the car and someone returning

2   fire is self-defense where it's totally unsupported in

3   the evidence that was presented in trial.

4        Counsel also submitted that during that argument

5   this defendant was sitting in the position where the

6   shooter was located in the car, thus making an impli-

7   cation that the defendant fired the shot, which contra-

8   dicted her argument of reasonable doubt.

9        Furthermore, counsel's request of the self-

10  defense instruction was unsupported, I believe, in the

11  evidence, and its purpose was prejudicial to effect the

12  reasonable doubt argument.

13       Also, counsel attempted to persuade the

14  defendant's inquiry as for the instruction and its

15  prejudicial effect.  Counsel sought to introduce this

16  instruction as a tactical strategy to give, quote, the

17  jury any possible means to reach a verdict of not

18  guilty.

19       Hearing the defendant questions counsel's

20  failure -- and this is going to another issue -- call

21  witnesses to support that tactic.  Those witnesses

22  were --

23             THE COURT:  I'm going to need the names, too.

24             THE DEFENDANT:  Those witnesses were Betsy

25  Varela.

26             THE COURT:  Spell that.

27             THE DEFENDANT:  Yes.  B-e-t-s-y, V-a-r-e-l-a;

28  and Halvechia, H-a-l-v-e-c-h-i-a, Osborne,

GERALD A. DOHRMANN, C.S.R.#2046

```
 1   O-s-b-o-r-n-e; and Jamario Hennen, J-a-m-a-r-i-o,
 2   Hennen, H-e-n-n-e-n.
 3         These witnesses' testimony was relevant to the
 4   argument in front of the instructions to support it,
 5   such as an instruction which may be -- going into
 6   another issue -- pertaining to prior assaults by the
 7   deceased and his gang and prior acts of violence.
 8         I have here, Your Honor, an affidavit, also a
 9   transcribed copy of Jemarrio Hennen's taped statement to
10   homicide officer Lou Cruz, and, again, the affidavits of
11   Betsy Varela and Halvechia Osborne, stating the
12   content -- summary of their testimony.
13         MS. LEVY:  Your Honor, I would ask to review
14   those if I'm going to have an opportunity to respond.  I
15   have not seen them.
16         THE COURT:  All right.  So, that's -- so,
17   failure to call witnesses, you have given me three
18   names.  You have talked about some documents.
19   Apparently, Ms. Levy is looking at them now in terms of
20   what we ought to do with them.
21         That's that point:  Failure to call witnesses?
22         THE DEFENDANT:  Yes.
23         THE COURT:  Got it.  We put what's going to
24   happen with the affidavits on hold.  As a part of the
25   other, the statement that was made to Lou Cruz, I'm
26   assuming that all parties have that already.
27         MS. LEVY:  Correct, Your Honor.
28         THE COURT:  Okay.
```

```
1          THE DEFENDANT:  I would like to say, in
2    addition to the statement of Jemarrio Hennen, his
3    statements would have undermined some of the prose-
4    cution's argument which he made to the Court, which
5    counsel failed to present, and Jemarrio Hennen is the
6    cousin of the deceased.
7          THE COURT:  Okay.
8          THE DEFENDANT:  Moving on to another issue, I
9    would like to address counsel's failure to investigate
10   any of the prosecution witnesses before trial.
11         THE COURT:  Specifically what do you mean?
12         THE DEFENDANT:  Counsel failed to interview
13   witness Matthew Bryant before he testified at trial.
14   Didn't even attempt to make any contact.  And when he
15   say counsel, she didn't give the okay to the investi-
16   gator to contact him.  I discussed this issue with Ms.
17   Levy before.
18         THE COURT:  I have got it:  Failure to contact
19   the witness --
20         THE DEFENDANT:  Yes.
21         THE COURT:  -- Matthew, is it Bryant?
22         THE DEFENDANT:  Matthew Bryant.
23         If I may, I would, would like to discuss some of
24   the possibilities that it -- may have arisen had counsel
25   contacted Mr. Bryant.
26         THE COURT:  I don't think you really have to
27   do that.  Just raise the point.
28         The idea is recognize what your burden is.  You
```

GERALD A. DOHRMANN, C.S.R.#2046

```
1   are not arguing your motion at this point; you are just

2   trying to show me why you should be appointed an

3   attorney to handle this issue separately.  That's what

4   you are trying to do.

5           THE DEFENDANT:  Right.  I got a better under-

6   standing.  Thank you.

7           Raising another issue on Matthew Bryant's

8   testimony is, counsel failed to object and request that

9   the tape be edited to exclude the concocted admissions

10  that Matthew Bryant stated or alleged to have come from

11  the defendant.

12          I would also like to make a record, another issue

13  pertaining to those alleged admissions that Matthew

14  Bryant claimed the defendant made, that counsel failed

15  to object to the prosecution using Matthew Bryant's

16  taped statement, and the content of that statement which

17  was outside of the Judge's limited instructions in

18  closing arguments.

19          Moving on to another issue.  Counsel failed to do

20  a demonstrative investigation pertinent to the ability

21  of the witnesses to clearly identify circumstances

22  testified to by those witnesses when viewing through a

23  partially tinted open window.

24          To be a little bit more specific about that

25  issue, there was two issues that I asked counsel, and I

26  know you said I shouldn't get into this, but I feel I

27  need to.

28          One was when counsel did take pictures of the
```

GERALD A. DOHRMANN, C.S.R.#2046

```
 1   car, I notified her that it appeared, because of the
 2   fact that the car had been released from evidence and
 3   sold to the public, that the tint on the windows had
 4   been changed, and I wanted her to check into that.  She
 5   failed to do it.
 6        I also asked her to have someone positioned in
 7   the car with my complexion and my height to give the
 8   jury an insight on the ability to identify someone.  She
 9   failed to do that.
10        Also like to address another issue arising out of
11   the release of the car from the property of the Oakland
12   Police office, I mean department.
13        As counsel failed to file a motion to dismiss the
14   car due to the fact that the possible evidence favoring
15   the defendant was damaged when the car was released from
16   O P.D.'s custody --
17        THE COURT:  You don't mean "dismiss the car."
18   I think you probably mean to exclude evidence concerning
19   the car?
20        THE DEFENDANT:  Yes.  Evidence was excluded.
21   We couldn't review it, we didn't have the opportunity,
22   so forth.  And counsel failed to file the motion to
23   dismiss the case due to the probable evidence that may
24   have been favorable to the defense had we been able to
25   research.
26        Counsel refused -- this is a new issue -- counsel
27   refused to call or attempt to locate prosecution witness
28   Terry Dandy.
```

```
 1                    THE COURT:  What's the person's name again?
 2                    THE DEFENDANT:  Terry Dandy.
 3                    THE COURT:  This was a prosecution witness --
 4                    THE DEFENDANT:  Yes.
 5                    THE COURT:  -- that the defense failed to
 6     locate?
 7                    THE DEFENDANT:  Yes.
 8                    THE COURT:  And somehow that's prejudice to
 9     your case, that she didn't locate their witness who
10     didn't testify here?
11                    THE DEFENDANT:  Yes.  If I may, I can go in to
12     explain.
13                    THE COURT:  About 30 seconds' worth.
14                    THE DEFENDANT:  I believe it was pertinent to
15     have Mr. Dandy testify in this case due to the fact that
16     he alleged it was two shots fired out there on the
17     scene, for one.  One of those shots was unaccounted for
18     on behalf of the defendant by the prosecution witnesses
19     during the trial, which was a major contradiction.
20               It was also a contradiction had Ms. Levy called
21     Jamarrio Hennen.
22               Terry Dandy was also present during an assault
23     against the defendant in which Terry Dandy struck the
24     defendant.
25               This all occurred two days before the shooting,
26     which contradicted all of the prosecution's accounts as
27     far as these assaults occurring months before this
28     alleged shooting occurred.
```

GERALD A. DOHRMANN, C.S.R.#2046

1          Moving on -- oh, and also concerning Terry

2     Dandy's testimony, he drew a map, which I also have an

3     exhibit here, of when related to other issues that

4     counsel failed to do on my trial concerning ballistic

5     testing, firing, and so forth.   Please.

6          (Short discussion off the record)

7          THE DEFENDANT:   I like to correct that.

8     Counsel did do a ballistic test, but she failed to

9     convey to the expert the specifics of descriptions given

10    by the prosecution witnesses of the gun.   And there is

11    an issue I would like to address outside the presence of

12    Mr. Stallworth concerning that if we can come back to

13    that.

14          THE COURT:   Set that one aside.

15          THE DEFENDANT:   Okay.   Counsel refused to --

16    this is a new issue -- counsel refused to question the

17    integrity of homicide officer Sergeant Green and

18    District Attorney representatives handling the

19    Preliminary Hearing.

20          THE COURT:   Refused to investigate the

21    integrity of Green?

22          THE DEFENDANT:   Investigate and integrity of

23    Sergeant Green.

24          THE COURT:   And who else?

25          THE DEFENDANT:   And the district attorneys who

26    handled the Preliminary Hearing.

27          THE COURT:   Do you know who that is offhand?

28          THE DEFENDANT:   Mean.   Paul Mean.

GERALD A. DOHRMANN, C.S.R.#2046

```
1              MR. STALLWORTH:   Jim Meehan.

2              THE COURT:   Jim Meehan?

3              THE DEFENDANT:   Counsel failed -- this is

4    another issue -- counsel failed to raise the issues

5    concerning the contradiction between witnesses of the

6    description they gave and all statements which some were

7    inconsistent compared to others.  But they all

8    contradicted concerning the attire that the defendant is

9    alleged to have on that day.  And that was a black

10   beanie, a black cap.  And Shanae Anderson, which counsel

11   failed to raise, was in an afro.

12             Counsel refused -- another contradiction:

13   Counsel refused to establish the contradictions of

14   events described by witnesses Raymond Jones, Mary

15   Washington and Mary Loggins that were in contrast of

16   Bianca Moore's and Shanae Anderson's versions of events

17   pertaining to the moment they were able to identify the

18   shooter.

19             MS. LEVY:   Your Honor, for the record it looks

20   like Mr. Kilgore is on No. 21.

21             THE COURT:   That's fine.

22             THE DEFENDANT:   Counsel failed to address the

23   issue pertaining to the extent of Raymond Jones'

24   involvement in relation to the stolen car report and the

25   location in which the car was found.

26             Moving along, counsel failed to elect from the

27   testimony of defense investigator Monte Beers statements

28   that were made in previous interview with Mary
```

1   Washington concerning her version of someone running
2   from the alleged crime scene and concealing something
3   under their coat.

4        And in addressing the matter of law, which I'm
5   not too clear on, I would like to say that counsel
6   failed to object or file any type of motion of dismissal
7   before the prosecution, using perjured testimony before
8   the course of this trial.

9        THE COURT:   What do you mean by "perjured
10  testimony"?

11       THE DEFENDANT:   In counsel's closing -- I mean
12  the District Attorney's closing arguments, he stated to
13  the jury that, okay, I will give you that Raymond Jones
14  lied, he was aware of the fact that the gun was in the
15  car at the time they drove over to the scene where the
16  alleged crime occurred.

17       Now, I'm not for sure if that would be considered
18  perjury, use of perjured testimony, knowing on behalf of
19  the prosecution or not, so I said it's an issue of law
20  that another attorney would have to address.

21       THE COURT:   Since, Mr. Stallworth, there is no
22  evidence that Mr. Stallworth was there --

23       THE DEFENDANT:   Excuse me?

24       THE COURT:   Since there is no evidence that
25  Mr. Stallworth was there at the time, I guess that may
26  be his opinion that Mr. Jones gave false testimony about
27  at least portions of it.  And that happens, sadly, in a
28  lot of cases.

GERALD A. DOHRMANN, C.S.R.#2046

```
 1              THE DEFENDANT:  Counsel failed to ask for
 2   instructions relating to the testimony and way the jury
 3   would examine the testimony of a drug addict.
 4              THE COURT:  So, it would go to some
 5   witness's -- if a witness were an addict, you are
 6   suggesting some instruction should have been offered
 7   concerning credibility of a person addicted to drugs?
 8              THE DEFENDANT:  Yes.
 9          Counsel refused to address Raymond Jones'
10   Preliminary Hearing testimony pertaining to his level of
11   intoxication.
12          Counsel also failed to present the conflicting
13   statements of Raymond Jones concerning when the
14   assaults, about when they occurred.
15              THE COURT:  About when they occurred, you
16   said?
17              THE DEFENDANT:  Yes, when they occurred.
18              THE COURT:  And which?  You said involving an
19   assault involving Mr. Jones?
20              THE DEFENDANT:  Assault against the defendant.
21              THE COURT:  Against you.
22              THE DEFENDANT:  Yes.
23              THE COURT:  By --
24              THE DEFENDANT:  The deceased and his gang.
25              THE COURT:  And with conflicting information
26   concerned the dates?
27              THE DEFENDANT:  Yes.
28              THE COURT:  Okay.
```

```
 1              THE DEFENDANT:  Counsel refused to investigate
 2   into all and any involvement by the F.B.I. in this case.
 3              THE COURT:  And, again, to what end did that
 4   prejudice your case?
 5              THE DEFENDANT:  It is my understanding from
 6   having a conversation with Mr. Jones a month or so after
 7   this occurred, after he had been arrested, that he was
 8   being offered a reward that was offered to him by F.B.I.
 9   agents and et cetera.
10              During the hearing, the voluntariness of Raymond
11   Jones, counsel failed to inquire into the coercion of
12   the second arrest and the interaction of the District
13   Attorney in that matter.
14              THE COURT:  I'm not sure I got that one.
15   During the voluntariness of the testimony --
16              THE DEFENDANT:  During the hearing.
17              THE COURT:  -- of Raymond Jones.  Yes.
18              THE DEFENDANT:  Of the voluntariness --
19              THE COURT:  Right.
20              THE DEFENDANT:  -- of Raymond Jones, counsel
21   failed to inquire into the coercion.
22              THE COURT:  Investigate the possibility that
23   those statements were coerced.
24              THE DEFENDANT:  Yes.  And the interaction of
25   the District Attorney.
26              THE COURT:  And the action of whom?
27              THE DEFENDANT:  The interaction of the
28   District Attorney with Mr. Jones relating to that
```

```
 1   coercion.
 2             THE COURT:  Got it.
 3             THE DEFENDANT:  Counsel failed to establish
 4   some type of calendar dates of Bianca Moore's testimony
 5   pertaining to the matters which she gave dates, and so
 6   forth, concerning events that occurred between the
 7   deceased and the defendant.  I'd like to say it was to
 8   show lack of credibility on Ms. Moore's behalf.
 9             Counsel failed to impeach Ms. Moore concerning
10   the number of times that she claimed to have seen the
11   defendant prior to the shooting.
12             Counsel failed to inquire into issues concerning
13   Bianca Moore's testimony that I have stated or gave --
14   given notes to counsel in relation to Ms. Moore's
15   testimony.
16             I don't know.  That's kind of vague.
17             THE COURT:  You lost me there.
18             THE DEFENDANT:  Well, I gave her notes to ask
19   her certain things, specifics pertaining to her
20   testimony.  And counsel failed to --
21             THE COURT:  Follow-up on notes that you gave
22   Ms. Levy --
23             THE DEFENDANT:  Yes.
24             THE COURT:  -- concerning potential
25   questioning of the witness Bianca Moore.
26             THE DEFENDANT:  Yes.  Also I would like to add
27   with Raymond Jones and Shanae Anderson.  I would say
28   every witness.
```

GERALD A. DOHRMANN, C.S.R.#2046

| | |
|---|---|
| 1 | Okay.  I think there's about one more issue I |
| 2 | would like to address before going or requesting an |
| 3 | in-camera hearing, is the fact that counsel failed to |
| 4 | request of the Court an instruction for murder in the |
| 5 | second degree by means of drive-by shooting and |
| 6 | outlining the issues of intent, as the prosecution did |
| 7 | for murder in the first degree, by means of drive-by |
| 8 | shooting. |
| 9 | THE COURT:  Okay.  Does that summarize those |
| 10 | things that should be discussed publicly? |
| 11 | THE DEFENDANT:  I think that pretty much got |
| 12 | to most of them.  Yeah.  If there's anything else, would |
| 13 | I be able to call Mr. Stallworth back? |
| 14 | THE COURT:  Well, basically you know what this |
| 15 | hearing is about.  The idea is for you to explain to me |
| 16 | why there may be a colorable claim to have counsel, |
| 17 | other than Ms. Levy, represent you at a motion for new |
| 18 | trial.  And I have asked you to divide those into a |
| 19 | couple of categories. |
| 20 | And I know you have looked at this and I know you |
| 21 | have got a list in front of you.  But in terms of the |
| 22 | things that you are conceding can be discussed publicly, |
| 23 | have we pretty much gone through those? |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  The thing is, if I decide to |
| 26 | release Mr. Stallworth, I don't want to send him back |
| 27 | downstairs and bring him back up and send him back |
| 28 | downstairs and bring him back up. |