1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  IVAN KILGORE,                        )    No. C 07-5124 SI (PR)
                                         )
12            Petitioner,                )    **ORDER DENYING**
       vs.                               )    **PETITION FOR WRIT OF**
13                                       )    **HABEAS CORPUS**
    J. WALKER, Acting Warden,            )
14                                       )
              Respondent.                )
15  _____ )

16                        **INTRODUCTION**

17        This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C.

18  § 2254.  For the reasons stated herein, the petition is DENIED.

19

20                        **BACKGROUND**

21        In 2003, an Alameda Superior Court jury convicted petitioner of first degree murder

22  with the special circumstance of discharging a firearm from a motor vehicle.  The jury also

23  found true an allegation that Petitioner had a prior strike arising from a  1997 Oklahoma

24  conviction  for  involuntary  manslaughter.    The  trial  court  sentenced  petitioner  to  life

25  imprisonment without the possibility of parole.  Petitioner appealed.  The California Court

26  of Appeal for the First Appellate District affirmed Petitioner's conviction.  (Ans., Ex. B-3

27  at 1–2.)  The California Supreme Court denied his petition for review, and his petition for

28
                                         1

writ of habeas corpus.  (Id., Ex. C-2, E-4.)

Evidence presented at trial shows that in 2000, victim William Anderson was shot to death while standing on a sidewalk in Oakland, California by an individual in a moving vehicle — such individual was later determined to have been Petitioner.  (Id. at 2.)  At the time of the shooting, Anderson was accompanied by his cousin, Shanae,[1] Shanae's boyfriend, Terry Dandy, and Anderson's girlfriend, Bianca Moore.  Shanae, Bianca Moore, and Petitioner's driver, Raymond Jones, all testified for the prosecution.  Jones's testimony, as summarized by the state appellate court, provides a useful summary of the events as established by the evidence presented at trial:

> Jones drove [Petitioner]'s Cadillac, at [Petitioner]'s instruction, with Sic [an associate of Petitioner] in the front-passenger seat and [Petitioner] in the back. [Petitioner] directed Jones to drive to San Pablo Avenue, and then north towards Berkeley.  As they approached the corner of San Pablo Avenue and 30th Street, [Petitioner] said, "There they go."  Jones observed a group of "guys and girls" standing on the corner and pulled the car up to the curb.  He believed [Petitioner] was going to fight "the guy" (ostensibly [Anderson]) one on one.  Then [Petitioner] said something like, "What's up, now?  What's up, punk?" and Jones heard a gunshot from the rear seat.  He looked toward the back seat and saw [Petitioner] with a gun.  Jones was shocked.  He had not seen the people on the street display a weapon or do anything before [Petitioner] fired the gun.

(Ans., Ex. B-3 at 6.)

As grounds for federal habeas relief, petitioner alleges that: (1) his due process rights were violated because the trial court ruled that, if petitioner testified, he could be cross-examined with his testimony from a prior case, (2) he received ineffective assistance of appellate counsel because appellate counsel failed to raise the state court's error in failing to instruct the jury on second-degree drive-by murder, (3) his due process rights were violated because the trial court failed to instruct the jury on the doctrine of transferred intent as to a shooting in self-defense, (4) his constitutional rights to confront witnesses and present a defense were violated because the trial court refused to allow bad character evidence of the

---

[1] Shanae's patronymic is also Anderson.  So as to avoid confusion, this order will refer to Shanae Anderson as Shanae.

victim and his companion through the prosecution's witnesses, and (5) he received ineffective assistance of trial counsel.

**DISCUSSION**

A.    <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000). The petitioner bears the burden of showing that the state court's decision was unreasonable. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Where there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the opinion of the state appellate court. <u>See</u> <u>Nunnemaker</u>, 501 U.S. at 801–06; <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079

1    n.2 (9th Cir. 2000).

2

3    **B.    Petitioner's Claims**

4        **1.    Prior Conviction**

5        Petitioner claims that the trial court violated his right to due process when it ruled that

6    should Petitioner testify, the prosecutor would be allowed to cross-examine him regarding

7    his testimony at his 1997 Oklahoma homicide trial. (Pet. at 6.) Petitioner contends that the

8    Oklahoma trial evidence should not have been admitted because "it constituted improper bad

9    character evidence." (Id., P. & A. at 7.)

10       The relevant facts are as follows. Petitioner's defense at both trials was that he shot

11   the victims in self-defense. Petitioner testified to that effect at his Oklahoma trial. Petitioner

12   intended to testify at the Anderson trial that he shot the victim in self-defense.   (Ans., Ex.

13   B-3 at 10.) To bolster such a defense, defense counsel moved to exclude any reference to

14   the Oklahoma trial. (Id. at 11.) The trial court denied Petitioner's motion, finding that these

15   "occurrences [were] unusual enough with their repetition" to suggest that Petitioner's self-

16   defense explanation [in the Anderson trial] was not believable." Id. Petitioner did not testify

17   at trial.

18       The state appellate court affirmed the trial court's ruling, finding that Petitioner's

19   testimony in the Oklahoma case was admissible pursuant to California Evidence Code

20   § 1101(b) and under the doctrine of chances. (Ans., Ex. B-3 at 14.) Under section 1101(b),

21   prior bad act evidence "may be admitted to show identity, common design or plan, or intent,

22   if the other crime was sufficiently similar to the charged offense." (Id.) "The doctrine of

23   chances maintains that with each repetition of an act under similar circumstances, the more

24   reasonable it is to conclude the act was intended and premeditated." (Id. at 15.) The state

25   appellate court concluded that the trial court acted appropriately because the evidence was

26   probative to show "how unlikely it is that [petitioner] shot a second person to death in rather

27   similar circumstances only because he thought he had to defend himself." (Id.)

28

1    The admission of evidence is not subject to federal habeas review unless a specific
2    constitutional guarantee is violated or the error is of such magnitude that the result is a denial
3    of a fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021,
4    1031 (9th Cir. 1999).  The Supreme Court has left open the question of whether admission
5    of propensity evidence violates due process, i.e., whether a constitutional guarantee has been
6    violated. Estelle v. McGuire, 502 U.S. 62, 67–71 (1991).  Based on the Supreme Court's
7    reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's
8    due process right concerning the admission of propensity evidence — such as the Oklahoma
9    case—is not clearly established as required by AEDPA.  Alberni v. McDaniel, 458 F.3d 860,
10   866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008)
11   (reaffirming Alberni).

12        Regarding the magnitude of the error, only if there are no permissible inferences that
13   the jury may draw from the evidence can its admission violate due process such that
14   petitioner was denied a fundamentally fair trial. See Jammal v. Van de Kamp, 926 F.2d 918,
15   920 (9th Cir. 1991).  Here, the prosecutor sought to show that the similarity between the
16   crimes rendered petitioner's contention of self-defense not believable, that the homicide was
17   in fact intentional.  As the state appellate court emphasized, to show intent, "the other crime[]
18   need only be sufficiently similar to the charged offenses to support the inference that the
19   defendant probably harbored the same intent in each instant." (Ans., Ex. B-3 at 14.)  Based
20   on the "sufficiently similar" standard, the court found that,

> In both the Oklahoma case and the instant case, [petitioner] claimed to have killed
> his victims in self-defense. In both cases, he shot at close range an unarmed victim
> with whom he had a dispute. In both cases, he had threatened to harm those who
> had wronged him. In both cases, he carried a gun to the scene, yet claimed that he
> discharged the weapon only because he thought he was about to be shot, either
> because his victim was pulling out a gun or had actually fired. In both instances,
> [petitioner] suffered no harm, while his victims were killed.

25   (Id. at 14–15.)  The court also found that the doctrine of chances led to the same conclusion.
26   (Id. at 15.)  On this record, the Court finds that it was not unconstitutional for the trial court
27   to permit the prosecution to raise the Oklahoma case if Petitioner chose to testify.  For the
28   foregoing reasons, the Court DENIES this claim.

5

### 2.   Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise a claim that the trial court erred by failing to instruct the jury on the lesser-included special circumstance of shooting from a vehicle in a second degree murder under Cal. Pen. Code § 190(d).  (Pet. at 6.)  The state appellate court rejected Petitioner's claim, concluding that California trial courts have no duty to sua sponte instruct the jury on lesser-included enhancements.  (Ans., Ex. B-3 at 20.)

At trial, the trial court instructed the jury on the substantive offenses of first and second degree murder.  (Ans., Ex. A-5 at 768–74.)  The trial court also instructed the jury that if it found Petitioner guilty of first degree murder, it must then determine whether the special circumstance pertaining to the discharge of a firearm from a motor vehicle with the intent to kill, see Cal. Pen. Code § 190.2(a)(21), was true.  (Id. at 774.)  The trial court did not instruct the jury on the special circumstance for second degree murder, see Cal. Pen. Code § 190(d), which, as the state appellate court stated,  "is a penalty provision for second degree murder, not a substantive offense."   If the special circumstance described under section 190(d) is found true, the defendant is sentenced to a term of twenty years to life. Here, the jury convicted petitioner of first degree murder.

With regard to Petitioner's overarching claim, the Court notes that claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  See Jones v. Barnes, 463 U.S. 745, 751–54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d

at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See Miller at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason — because he declined to raise a weak issue.  Id.

With regard to the underlying issue of the lesser-included enhancement, the Court notes that, generally speaking, juries determine facts, judges determine sentences:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." Rogers v. United States, 422 U.S. 35, 40 (1975). The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion. [Citations removed.]

Shannon v. United States, 512 U.S. 573, 579 (1994).

Here, Petitioner has not shown that appellate counsel's allegedly deficient performance resulted in prejudice.  First, he has not shown that he has a federal constitutional right to have jury instructions on lesser-included special circumstances.[2]  Second, Petitioner has not shown that the jury's verdict would have been different if it had received section 190(d) as an instruction.  Section 190(d) is a sentencing provision only.  Consequently, the trial court, per Shannon, was under no duty to give the jury such an instruction.  Having received correct instructions on the substantive offenses of first and second degree murder, the jury could have found that the evidence supported a finding of one or the other crime. That it did not receive the sentencing provision under section 190(d), which does not change

---

[2] It is clear that the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).  However, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule."  Id. at 929 (citation removed).  Solis suggests that there must be substantial evidence to warrant the instruction on the lesser included offense.  See id. at 929–30.

the standard for the substantive offense, does not raise the possibility that the jury's verdict would have been different. Because the trial court's not having given such instruction was not an error, constitutional or otherwise, appellate counsel's failure to raise this instructional claim did not result in prejudice. This claim is therefore DENIED.

### 3.    Transferred Intent

Petitioner claims his due process right was violated because the trial court failed to instruct the jury on the doctrine of transferred intent as to a shooting in self-defense. (Pet. at 6.)

The state appellate court rejected Petitioner's claim. "As [Petitioner] vigorously contends elsewhere in this appeal, his trial counsel abandoned self-defense during trial, switched to an identity theory, and expressly withdrew the instruction on transferred intent." (Ans. Ex. B-3 at 20.) "The court," the state appellate court wrote, "has no sua sponte duty to give an instruction on a theory the defense has abandoned," or for which there is no substantial evidence. (Id. at 20–21.) "Here, no substantial evidence supported [Petitioner's] claim that he shot William after Terry [the victim's companion] shot at [Petitioner.]" (Id. at 21.)

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings. See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988); Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995) (whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. See Dunckhurst, 67 F.2d at 114.

Due process does not require that an instruction be given unless the evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982). A defendant is entitled to an instruction

1   on his defense theory only "if the theory is legally cognizable and there is evidence upon

2   which the jury could rationally find for the defendant." United States v. Boulware, 558 F.3d

3   971, 974 (9th Cir. 2009) (internal quotations omitted); Menendez v. Terhune, 422 F.3d 1012,

4   1029 (9th Cir. 2005) (the defendant is not entitled to have jury instructions raised in his or

5   her precise terms where "the evidence does not support it").

6          In the instant matter, the Court finds no constitutional error in the state appellate

7   court's determination because (1) Petitioner abandoned his contention of self-defense, and

8   (2) there was insufficient evidence to support an assertion of self-defense, even if Petitioner

9   had not abandoned such defense.  As to the first point, this Court must presume as correct

10  the state appellate court's factual determination that Petitioner abandoned his contention of

11  self-defense during trial.  See 28 U.S.C. § 2254 (e)(1).  Even without such deference, that

12  defense counsel withdrawal of the transferred intent instruction supports such determination.

13  In sum, the trial court cannot have erred when Petitioner himself abandoned the defense.

14         As to the second point, the Court must also presume as correct that there was no

15  evidence to support Petitioner's assertion that his actions were taken in self-defense.  Even

16  without such deference, the record provides evidence sufficient to show that the state

17  appellate court's determination was not unreasonable.  As the state appellate court stated,

18         [T]here is little or no credible evidence that there was more than one shot fired,
            and even if there had been, no witness testified that any shot came from Terry (or
19         William) or that anyone fired at [Petitioner].  Nor was there any physical evidence
            to that effect, such as strike marks on [Petitioner's] car.  [Petitioner's] self-defense
20         theory is unsubstantiated.

21  (Ans., Ex. B-3 at 23.)  Because there was no evidence to support petitioner's defense theory,

22  the trial court did not violate Petitioner's constitutional rights by not instructing the jury on

23  the application of the transferred intent doctrine as to self-defense.  Petitioner's claim is

24  therefore DENIED.

25

26

27

28

**4.     Bad Character Evidence**

Petitioner claims that his constitutional rights to confront witnesses and present a defense were violated because the trial court refused to allow the introduction of the victim's and his companion's bad character.  (Pet. at 6(A).)  Petitioner sought to introduce such evidence through the  testimony of Shanae, and Kevin Tomlinsonn, Petitioner's landlord.

As discussed above, questions involving the admission of evidence are not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).

**A.     Shanae**

The state appellate court summarized the relevant facts regarding the testimony of Shanae as follows:

> Shanae testified on direct examination that she had never seen [Anderson, the victim] or Terry, in her presence, engaged in violent or illegal behavior.
>
> On cross-examination of Shanae, defense counsel attempted to elicit evidence which, [Petitioner] claims, would have rebutted the good character evidence offered by Shanae and shown [Anderson's] and Terry's violent behavior. Defense counsel asked Shanae: "are you aware William Anderson and Terry Dandy had twice assaulted and robbed [Petitioner]?" The prosecutor objected on the ground that the question called for speculation.  The court sustained the objection, noting as well that the question assumed facts not in evidence and contained an "insinuation" the court and counsel had previously discussed.  In the latter regard, the court stated: "It's one of those things we talked about, the question that has an insinuation with it.  So, sustained."
>
> [Petitioner] contends that Shanae's testimony on direct examination about [Anderson's] and Terry's good character opened the door to cross-examination regarding their violent behavior . . . The reason the trial court sustained the objection, however, was not because the question called for impermissible character evidence, but because of the question's form.
>
> [Petitioner] does not explain how the trial court might have abused its discretion in sustaining the prosecutor's objection to the question's form. The question may not have really asked Shanae to speculate, as the prosecutor insisted it did, since it arguably inquired whether she was or was not aware of the incidents of violence.  However, as the court correctly noted, the question assumed facts that were at that time not in evidence. Although greater leeway in this regard may be given on cross-examination, we also detect that the trial court was concerned with the prejudicial and misleading "insinuation" in the question, which suggests that the court was motivated to sustain the objection

10

on grounds of undue prejudice as well. On balance, [Petitioner] has not established an abuse of discretion.

Regardless, any error the court may have made in precluding [Petitioner]'s cross-examination of Shanae was harmless. [Petitioner] was permitted to ask other witnesses about [Anderson's] propensity for violence, eliciting testimony from Jones and Tomlinsonn that they had observed [Petitioner] with injuries from two assaults. Jones testified specifically that [Petitioner] claimed he had twice been assaulted by [Anderson] and Terry, and Jones had seen them fleeing the scene on one of those occasions. Furthermore, defense investigator Beers testified that Bianca reported [Anderson] being in three fights with [Petitioner]. There was, therefore, no prejudice arising from defense counsel's inability to obtain much the same evidence from Shanae. Nor did the ruling make any substantial difference in the defense's efforts to discredit Shanae's credibility, especially since she admitted that she was [Anderson's] cousin and had lied to the police about Terry's identity.

(Ans., Ex. B-3 at 24–25.)

The Court finds no constitutional error in the trial or state appellate court's decision. The record supports the trial court's decision: the question was based on facts not in evidence. This Court must accord such decisions by the trial court great deference. See Holmes v. South Carolina, 547 U.S. 319, 324 (2006). Furthermore, the record does not support a finding of prejudice. As the state appellate court noted, Petitioner was permitted to ask other witnesses about Anderson's propensity for violence. Because Petitioner was allowed to pursue such a line of questioning, there is no indication that, had the trial court denied the prosecutor's objection, the outcome of the trial would have been different. Accordingly, Petitioner's claim is DENIED.

## B. Tomlinsonn

With respect to Tomlinsonn, defense counsel requested that Tomlinsonn be permitted to testify that he believed the victim was a drug dealer. (Id. at 25.) The trial court denied the request "because there was no evidence linking the murder to a drug transaction, and the victim's character was irrelevant except insofar as it concerned his reputation for violence." (Id.) The state appellate court found that even if the trial court erred in precluding Tomlinsonn's testimony, such error was harmless. (Id.)

Petitioner has not shown that he is entitled to habeas relief on this claim. First, he was not prejudiced by the trial court's ruling. As with the above claim, Petitioner had the opportunity to introduce evidence of Anderson's bad character. Second, the trial court's ruling was reasonable under the circumstances. Specifically, Petitioner failed to show that Anderson's alleged drug transactions were relevant to the charged killing. Excluding such irrelevant evidence cannot, on this record, be found unconstitutional. Accordingly, petitioner's claim is DENIED.

### 5.      Assistance of Trial Counsel

Petitioner claims that trial counsel rendered ineffective assistance in various ways, which are represented in the petition as claims 5(A)–5(L), each of which the Court will detail below. (Pet. at 6(A)–6(B).)

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687–68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

**A.    Oklahoma Conviction and Defense Theories**

The state appellate court's opinion on these issues — corresponding to Petitioner's

claims 5(A)–5(F) — is worth quoting at length:

> In connection with defense counsel's motion to exclude the evidence of [Petitioner]'s Oklahoma testimony, [Petitioner] asserts that his attorney provided ineffective assistance in three ways: failing to obtain a timely ruling before trial on the admissibility of the testimony, so she could have made a definite decision whether to pursue self-defense or an identity defense; abandoning the self-defense theory and switching to an identity defense; and presenting an erroneous offer of proof that [Petitioner] thought Terry was reaching for a gun rather than firing a gun.
>
> None of these purported failures of counsel was prejudicial to [Petitioner]'s case, as neither the identity defense nor the self-defense theory had any merit and neither would have improved if counsel had performed as [Petitioner] insists she should have.
>
> As to the purported identity defense, Bianca and Shanae identified [Petitioner] as the shooter.  These identifications, from just feet away, were corroborated by evidence that it was [Petitioner] who had a motive to shoot [Anderson] in that he owed [Anderson] money and had been beaten by [Anderson], [Petitioner] said he was going to "smoke" people who robbed him, he directed Jones to take him where he had just seen the people with whom he had been "having problems," he fled after the shooting, he reported his car stolen within minutes after the shooting, he remained at large for several months, and he confessed the murder to both Jones and Bryant.  Indeed, [Petitioner] agrees that the identity defense was "hopeless."
>
> But the self-defense claim was no better.  As discussed ante, there was little if any evidence of more than one shot being fired.  Moreover, there was no testimony or physical evidence that any shot had been fired by [Anderson] or Terry, or that anyone had fired at [Petitioner] or his car.  In addition, the evidence was clear that it was [Petitioner] who sought out his victim with an intent to kill him: after finding [Anderson] and Terry, he coaxed Jones to drive him to their location, armed with a gun and, after shooting [Anderson] from 8–12 feet away, returned and aimed his gun at [Anderson] again.
>
> [Petitioner]'s self-defense claim would not have gotten any better in the absence of trial counsel's purported errors.  In particular, the theory of self-defense would not have become meritorious if counsel had merely obtained an earlier ruling on the admissibility of the Oklahoma evidence, or pursued the weak self-defense theory throughout the entire trial.
>
> Nor would it have improved if she had advised the judge from the beginning that Terry was not just reaching for a gun, but firing it.  In this regard, [Petitioner] notes that the claim of Terry reaching for the gun was similar to [Petitioner]'s explanation in the Oklahoma case that Emery was reaching for a gun, and thus contributed to the court's conclusion in this case that the Oklahoma testimony was admissible under Evidence Code section 1101. Although defense counsel corrected this error before the actual ruling on the Oklahoma evidence, the trial court was not persuaded by counsel's changing the facts.  The implication, [Petitioner] urges, is that, if defense counsel had been accurate in her initial offer of proof, the court would not have ruled the

Oklahoma testimony admissible. In light of our discussion of the admissibility of the Oklahoma evidence ante, we doubt the trial court would have reached that conclusion. Even if it had, and [Petitioner] had thereupon decided to testify, the self-defense theory was still so weak that we are confident no more favorable outcome would have been obtained.

Which brings us to [Petitioner]'s argument that the self-defense case would have been stronger with his testimony, and counsel thus erred by not having him testify. As to this argument as well, we are not persuaded.

At the hearing on the new trial motion, [Petitioner] explained that on the afternoon of the murder, he, Jones and Sic went to Home Depot to buy cleaning supplies. As Jones drove [Petitioner]'s car back to their apartment, he "made a sudden U-turn and approached some individuals on the corner that he had identified to be [Anderson] and T." In the process of making the U-turn, Jones stated, "there goes [Anderson] and T." As Jones approached the corner where [Anderson] and T were standing, [Petitioner] saw T "pulling a weapon out from underneath his coat, and he fired at us, and I responded by firing back at T." The shotgun [Petitioner] used was in the back seat of the Cadillac. When [Petitioner] noticed that "someone had fell," Jones made another "U-turn and turned back around." [Petitioner] then observed that [Anderson] "had been struck." [Petitioner] testified that he did not intend to hit [Anderson].

While [Petitioner]'s testimony would have stated his self-defense theory directly, it would not have made it any more persuasive. It purported to explain why Jones was driving, why [Petitioner] was in the back seat, and why there happened to be a loaded shotgun next to him. But Jones's act of making a U-turn and going back toward [Anderson] and Terry is inconsistent with a theory of self-defense. Furthermore, [Petitioner]'s version of the events would have had little credibility in light of the evidence from the Oklahoma homicide, which would have been properly admitted if [Petitioner] testified. Due to the inferences the jury could have drawn from the Oklahoma evidence — which [Petitioner] elsewhere in this appeal insists would have been severely prejudicial — it certainly was not unreasonable for trial counsel to conclude it unwise to put [Petitioner] on the stand. Nor was the failure to call [Petitioner] as a witness prejudicial. Indeed, once the court ruled that the prior homicide was admissible, [Petitioner] agreed that it was better for him not to testify, and to instead pursue an identity defense.

(Ans., Ex. B-3 at 27–29.)

Petitioner has failed to show that he suffered prejudice because of defense counsel's allegedly deficient performance. Not only was the evidence of guilt strong, but his defense theories were insufficiently supported. Turning to the first point, the evidence of Petitioner's guilt was very strong, as the state appellate court found. For example, eyewitnesses (Shanae, Moore, and Jones) testified as to Petitioner's actions, which they had closely observed, and an associate of Petitioner's, Matthew Bryant, told police that Petitioner had confessed to shooting Anderson. As to the second point, there was little evidence to support Petitioner's

defense theories of self-defense or mistaken identity.  With regard to his assertion of self-defense, Anderson was quite vulnerable to an attack as he stood on the sidewalk.  Petitioner, however, was quite safe in the backseat of the moving vehicle from any actions Anderson may have taken.  With respect to the defense of mistaken identity, such defense was flatly contradicted by the eyewitnesses, who unequivocally identified Petitioner as the shooter.  Moreover, Petitioner offered little evidence to support his assertion that another person committed the offense.  On this record, the Court is not persuaded that there is a reasonable possibility that had defense counsel performed as Petitioner wished, that the outcome of the trial would have been different.  Accordingly, Petitioner's claim is DENIED.

## B.    Character Evidence

Petitioner claims that defense counsel rendered ineffective assistance when she "opened the door" to bad character evidence.  (Pet. at 6(B); Claim 5(G).)  The state appellate court summarized the facts as follows:

> On direct examination, Tomlinsonn testified that he found [Petitioner] to be reliable and trustworthy.  The charges against [Petitioner] had not changed his opinion, and he would hire [Petitioner] again, notwithstanding those charges. Defense counsel attempted to elicit Tomlinson's opinion as to [Petitioner]'s reputation for truthfulness and veracity but could not lay an adequate foundation.

> On cross-examination, the prosecutor asked Tomlinsonn whether the 1997 felony conviction would change his decision whether to hire [Petitioner]. The court permitted the questioning, because the door was opened when Tomlinsonn stated the current charges did not affect his view of [Petitioner]'s reliability and trustworthiness or whether he would rehire [Petitioner].

> [Petitioner] argues that his attorney should not have introduced evidence of his good character because it opened the door to the prosecutor asking Tomlinsonn whether he was aware of [Petitioner]'s 1997 felony conviction.

> [Petitioner] has not established, on this record, that his trial counsel had no legitimate tactical purpose in eliciting character evidence from Tomlinsonn. It was not unreasonable for defense counsel to conclude that the benefit of Tomlinsonn's testimony regarding [Petitioner]'s reliability and trustworthiness outweighed any harm to be caused by reference to [Petitioner]'s 1997 felony conviction.  Counsel had already spoken to Tomlinsonn and reasonably believed that Tomlinsonn's good opinion of [Petitioner] was unaffected by the 1997 conviction.  Indeed, that was precisely how Tomlinsonn testified.

Furthermore, the prosecution witnesses also had criminal records. Jones had been convicted of misdemeanor possession of stolen property. Bryant had been convicted of grand theft and possession of narcotics. Shanae and Bianca admitted falsely identifying Terry as Richard Davis because they thought he was the subject of a warrant. In these circumstances, evidence that [Petitioner] had a 1997 felony conviction — without reference to the crime of which he was convicted — was minimally prejudicial, and it was not probable that he would have obtained a better verdict if the evidence had not been introduced.

(Ans., Ex. B-3 at 29–30.)

Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based on investigation; and (3) the decision appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Whether counsel's decisions were indeed tactical is a question of fact considered under 28 U.S.C. 2254(d)(2);[3] whether those actions were reasonable is a question of law considered under 28 U.S.C. § 2254 (d)(1). Edwards v. LaMarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

Here, defense counsel's tactical decision to call Tomlinsonn deserves this Court's deference. First, such decision was based on the strategic consideration that Tomlinsonn's positive characterization of Petitioner outweighed the fact that his testimony would allow the prosecution to introduce rebuttal evidence. Such strategic considerations were based on the need to support Petitioner's believability and trustworthiness, characteristics highly relevant to his defense theories of mistaken identity and self-defense. Second, such decision was informed by defense counsel's investigation. Defense counsel had been assured by Tomlinsonn that his good opinion was not shaken by his knowledge of Petitioner's Oklahoma conviction. In the event, Tomlinsonn testified as expected. Third, such decision was reasonable, based on the record before the Court. Petitioner's good character and trustworthiness were highly relevant to Petitioner's defense theories, and testimony on such issues from Tomlinsonn, who knew and trusted Petitioner, was a reasonable tactical decision. On this record, Petitioner has not shown that trial counsel's performance was deficient.

[3] The state appellate court determined that defense counsel's decision was tactical. (Ans., Ex. B-3 at 30.) This Court is bound by that court's factual determination. See 28 U.S.C. § 2254(e)(1).

Furthermore, Petitioner has not shown that he was prejudiced by defense counsel's performance.  As stated in detail above, the evidence of Petitioner's guilt was quite strong, and his defenses were not fairly supported by the record.  Accordingly, Petitioner's claim is DENIED.

### C.    Redaction of Recording

Petitioner claims that defense counsel rendered ineffective assistance when she failed to have a comment redacted from a recording of a prosecution witness's police interview.  (Pet. at 6(B); Claim 5(H).)  The comment was that Petitioner was "known to sell weed." (Ans., Ex. B-3 at 30.)  The state appellate court found that even if the failure to redact was an error, such error was harmless because key prosecution witnesses had criminal convictions, and were equally impeachable with such evidence.  (Id. at 30–31.)

Petitioner has failed to demonstrate prejudice.  Such a comment can have had only the slightest effect on the jury, considering the strong evidence of Petitioner's guilt, which is detailed above.  Petitioner's claim is DENIED.

### D.    Failure to Request Instruction on Transferred Intent[4]

The Court earlier considered the underlying issue — whether there was sufficient evidence of transferred intent to support the giving of an instruction on that matter — and found it without merit.  Because such a claim is without merit, Petitioner is unable to show that he was prejudiced by defense counsel's failure to request such instruction.  Accordingly, Petitioner's claim is DENIED.

### E.    Failure to Object to Alleged Misstatement of the Law

Petitioner claims that defense counsel's failure to object to the prosecutor's incorrect statement of the law resulted in ineffective assistance of counsel.  (Pet. at 6(B); Claim 5(K).) Petitioner contends that the prosecutor erroneously suggested that first degree murder did not

---

[4] Claim 5(J).

require a finding of an intent to kill.  The record indicates that the prosecutor stated that shooting from a car has been deemed "so inherently dangerous that it's pretty much strict liability." (Ans., Ex. B-3 at 31.)  The prosecutor also stated that drive-by murder did not require the jury to find premeditation and deliberation.  (Id.)

The state appellate court rejected Petitioner's claim, finding that the trial court correctly instructed on the applicable law, and further instructed the jury that it must follow the court's instructions, and not those of counsel, should counsel's instructions conflict with those given by the court.  (Id.)

This Court finds no constitutional error in the state appellate court's decision.  The trial court correctly instructed the jury on the relevant law, and jurors are presumed to follow the court's instructions.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987).  Petitioner has not overcome this presumption.  On this record, the Court concludes that Petitioner has failed to show that defense counsel's allegedly deficient performance resulted in prejudice. Accordingly, Petitioner's claim is denied.

### F.  Failure to Call Witnesses

Petitioner claims that defense counsel rendered ineffective assistance when she did not call Petitioner's sister and girlfriend to testify as to Anderson's violent character.  (Pet. at 6(B); Claim 5(I).   The state appellate court did not address this claim in its written opinion.

Petitioner has not established that he was prejudiced by defense counsel's actions.  As stated above, Petitioner was able to introduce such evidence through the testimony of other witnesses.  Accordingly, Petitioner's claim is DENIED.

### G.  Failure to Object to Ballistics Evidence

Petitioner claims that defense counsel was ineffective when she failed to object to the ballistics testimony.  (Pet. at 6(B); Claim 5(L).)  The state appellate court did not address this claim in its written opinion.

The trial court heard testimony that Anderson was killed by a single shotgun blast which came from eight to twelve feet away from Anderson.  Petitioner contends that the person who testified to this, Dr. Hermann, was not qualified to render such an opinion. (Pet., Mem. of P. & A. to State Supreme Court Petition for Review at 40–41.)

Petitioner has not shown that he was prejudiced by defense counsel's inaction.  The central issue in the case was whether there was sufficient evidence to support the charge that Petitioner shot Anderson.  As the Court has determined, there was strong evidence to support such a charge.  Petitioner has not shown that but for the introduction of Dr. Hermann's allegedly improper expert opinion that there is a reasonable possibility that the outcome of the trial would have been different.  Consequently, Petitioner has not shown that defense counsel's inaction resulted in prejudice.  Accordingly, Petitioner's claim is DENIED.

## CONCLUSION

For the above reasons, the petition for a writ of habeas corpus is hereby DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

A certificate of appealability will not issue.  Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.

**IT IS SO ORDERED.**

DATED:  December 28, 2009

_____
SUSAN ILLSTON
United States District Judge